```
FILED: JUNE 27, 2008
08CV 3682
JUDGE DOW
MAGISTRATE JUDGE KEYS
EDA
```

## UNITED STATES DISTRICT COURT DISTRICT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| OMAR HAKIM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| ACCENTURE UNITED STATES | ) | |
| PENSION PLAN, | ) | ERISA CLASS ACTION |
| | ) | |
| and | ) | |
| | ) | |
| ACCENTURE LLP, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

COMES NOW, Plaintiff, Omar Hakim, individually and on behalf of all others similarly situated, and for his Complaint against Defendants, Accenture United States Pension Plan and Accenture LLP, states as follows:

<u>The Parties</u>

1.    Plaintiff Omar Hakim is a citizen of the United States who resides Austin, Texas, and is a "participant" in the Accenture United States Pension Plan within the meaning of the Employment Retirement Income Security Act ("ERISA") § 3(7), 29 U.S.C. § 1002(7).

2.    Defendant Accenture United States Pension Plan (the "Plan") is a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).  The Plan, formerly known as the Accenture United States Retirement Plan, is the successor in interest to the Andersen Consulting LLP Retirement Plan which, in turn, was the

successor in interest to the Andersen Worldwide Societe Cooperative United States Retirement Plan.  The Plan is administered in Chicago, Illinois, in this judicial District.

3.     Defendant Accenture LLP ("Accenture") is a limited liability partnership doing business and administering the Plan in Chicago, Illinois, in this judicial District, and is "the Plan Administrator" and "Plan Sponsor" of the Accenture United States Pension Plan within the meaning of ERISA § 3(16), 29 U.S.C. § 1002(16).

<u>Jurisdiction and Venue</u>

4.     This is a civil enforcement action brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and (c).  This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

5.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. §1132(e)(2), in that the breach upon which the suit is premised occurred in this District, damages occurred directly to Plaintiff in this District and/or because the Plan may be found in this District.

<u>Nature of this Action</u>

6.     In Counts I and II, Plaintiff and the Class seek injunctive relief against Defendants pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of a declaration that the purported amendment to the Plan purportedly effective on July 1, 1996, is ineffective because of defective and insufficient notice in violation of ERISA § 204(h), 29 U.S.C. § 1054(h).

7.     In Count III Plaintiff and the Class seek injunctive relief against Defendants pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of a declaration that

the Summary Plan Descriptions distributed to Plaintiff and other participants beginning in 1997 are insufficient in violation of ERISA § 102, 29 U.S.C. § 1022.

8.     In Counts I-III, Plaintiff and the Class seek injunctive relief pursuant to ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3), in the form of a court order requiring Defendants to recalculate their pension benefits under the terms of the Plan in effect prior July 1, 1996.

9.     Incidental to the injunctive relief sought in Counts I-III against Defendants pursuant to ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3), and mechanically flowing from that injunctive relief, Plaintiff and the Class also seek a court order requiring Defendants to create a common fund from which Defendants are ordered to make actuarially equivalent lump sum payments to Plaintiff and Class members in an amount equal to the difference between their pension benefits as calculated under the unlawful purported amendment and as re-calculated under the terms of the Plan in effect prior to July 1, 1996.

10.     Alternatively, in Count IV, Plaintiff and the Class seek a judgment against Defendants pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), for the unlawful computation of their pension benefits in violation of ERISA as set out in Counts I-III and seek damages in the form of a common fund from which Defendants are ordered to make actuarially equivalent lump sum payments to Plaintiff and Class members in an amount equal to the difference between their pension benefits as calculated under the unlawful purported amendment and as re-calculated under the terms of the Plan in effect prior to July 1, 1996.

11.    In Count V, Plaintiff and the Class seeks statutory damages against Defendants pursuant to ERISA § 502(c)(1), 29 U.S.C. §1132(c)(1), for failing to provide summary plan descriptions which set out their ERISA rights in compliance with ERISA § 104(c), 29 U.S.C. § 1024(c).

General Allegations of Fact

12.    Accenture LLP (then known as Andersen Consulting LLP) hired Plaintiff on October 4, 1993, to work in its Los Colinas, Texas office (in the Dallas/Ft. Worth metroplex).

13.    At the time Plaintiff was hired, Accenture had a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

14.    As of October 4, 1993, Plaintiff became a "participant" in the Plan within the meaning of ERISA §3(7), 29 U.S.C. § 1002(7), and accrued benefits under the terms of the Plan.

15.    Upon information and belief, at some time in 1996 Accenture purportedly adopted an amendment to the Plan to be effective July 1, 1996 (the "Purported Amendment").

16.    Upon information and belief, the Purported Amendment purportedly revised and narrowed the Plan's eligibility rules set out in Section 2.2(b) of the Plan.

17.    Upon information and belief, the purported effect of the Purported Amendment was to "grandfather" a participant's eligibility and accrual of benefits under the terms of the Plan in effect prior to July 1, 1996, until the participant transferred or promoted to a new service line within Accenture.

18.     Upon information and belief, Accenture purportedly distributed a notice to participants notifying them of the Purported Amendment.

19.     Plaintiff did not receive any notice of the Purported Amendment.

20.     Plaintiff continued to accrue benefits under the terms of the Plan after the Purported Amendment.

21.     On December 16, 1999, Accenture promoted and transferred Plaintiff to a new service line within the company.

22.     Upon information and belief, Plaintiff's accrual of benefits under the Plan ceased on December 16, 1999.

23.     The fact that Plaintiffs' accrual of benefits under the Plan purportedly ceased on December 16, 1999, was unknown to Plaintiff at that time or at any time until after his subsequent termination of employment with Accenture.

24.     Plaintiff terminated his employment with Accenture on May 16, 2003.

25.     On or about July 7, 2003, Plaintiff received a final statement of benefits from Defendants showing that for 6.202 years of service from October 4, 1993 to May 16, 2003, he accrued a monthly benefit in the amount of $766.28 from the Plan in the form annuity payable commencing at age 62.

26.     On July 21, 2003 Plaintiff contacted Defendants to request a recalculation of his monthly benefit using 9.619 years of service to his May 16, 2003 termination date, which, according to Plaintiff's current calculations, should produce an annuity payable commencing at age 62 in the amount of $1,963.76 per month.

27.     Defendants refused Plaintiff's July 21, 2003 request for benefits and have denied all subsequent requests and appeals.

28.    On December 12, 2003, Defendants informed Plaintiff that pursuant to the terms of the Purported Amendment he was designated ineligible to participate in the Plan on December 16, 1999.

29.    Defendants' December 12, 2003, correspondence did not inform Plaintiff of his rights under ERISA or inform him of the process for making an administrative claim.

30.    In response to letter from Plaintiff notifying Defendants that he intended to file a lawsuit, on July 9, 2007, Defendants informed Plaintiff that he had not exhausted his administrative remedies and invited him to do so.  A copy of this letter is attached hereto as Exhibit 1.

31.    On July 27, 2007, Plaintiff made an administrative claim for benefits.

32.    On November 20, 2007, Defendants denied Plaintiff's administrative claim. A copy of the denial letter is attached hereto as Exhibit 2.

33.    On November 29, 2007, Plaintiff appealed the denial of his claim for benefits.

34.    On April 2, 2008, Defendants denied Plaintiff's appeal, informed him that he had now exhausted his administrative remedies under the Plan's terms, and notified him that could "exercise his right to bring a civil lawsuit in federal court under Section 502(a) of ERISA to challenge this adverse benefit determination" within 120 days of the date of the letter.  A copy of the final denial letter is attached hereto as Exhibit 3.

35.    Plaintiff exhausted his administrative remedies.

36.    The Plan is adequately funded in accordance with the requirements of ERISA and the Internal Revenue Code.

Class Action Allegations

37.   Plaintiff requests that this Court certify the following Class for Counts I-IV:

> All individuals (and their beneficiaries) who participated in and
> accrued benefits under the Accenture United States Pension Plan or
> its predecessor or successor plans at any time before July 1, 1996,
> and who continued to accrue benefits for any period of time after
> July 1, 1996.

38.   Certification of this class is appropriate pursuant to Rule 23(b)(1), Fed. R. Civ. P. 23(b)(1), because there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for Defendants regarding the proper method for computing the pension benefits of all similarly situated participants.

39.   Certification of this class is also appropriate pursuant to Rule 23(b)(2), Fed. R. Civ. P. 23(b)(2), because Defendants have miscalculated and continues to miscalculate the pension benefits of Plaintiff and all similarly situated participants using the same methodology contested here; and therefore the Defendants acted or refused to act on grounds generally applicable to the Class making appropriate final injunctive relief or declaratory relief with respect to the Class as a whole.

40.   The conduct complained of is widespread, affecting thousands of active and vested former Plan participants, making joinder of all claims impracticable.

41.   Plaintiff's claims are typical of those of the Class in that the conduct complained of is Defendants failure to notify the Class of the Purported Amendment in accordance with the requirements of ERISA, failure to distribute summary plan descriptions in accordance with the requirements of ERISA, and failure to lawfully calculate their pension benefits.

42.    There are common questions of law and fact which predominate.   The common questions of law and fact include, among others:

    i.    Whether Defendants violated ERISA § 204(h) by failing to provide Plaintiff and Class members with a written notice setting forth the Purported Amendment within 15 days of its purported effective date;

    ii.    Whether Defendants violated ERISA § 204(h) by failing to provide Plaintiff and Class members with a written notice setting forth the Purported Amendment;

    iii.    Whether the Purported Amendment is ineffective as a matter of law;

    iv.    Whether Defendants violated ERISA § 102(a), by failing to provide Plaintiff and Class members with Summary Plan Descriptions written in a manner calculated to be understood by the average plan participant and sufficiently accurate and comprehensive to apprise participants and beneficiaries of their rights and obligations under the plan;

    v.    Whether Defendants violated ERISA § 102(b), by failing to provide Plaintiff and Class members with Summary Plan Descriptions containing the Plan's eligibility requirements for benefits as well as the circumstances which may result in disqualification, ineligibility or denial or loss of benefits;

vi.    Whether Plaintiff and the Class members are entitled to injunctive relief;

vii.   Whether Plaintiff and the Class are entitled to damages;

viii.  Whether Defendants violated ERISA § 104(c), by failing to provide Plaintiff and Class members with Summary Plan Descriptions containing a statement of ERISA rights of participants; and

ix.    Whether Plaintiff and the Class members are entitled to statutory damages.

43.    Plaintiff will fairly and adequately represent the interests of the members of the Class.  His interests are the same as, and not in conflict with, the other members of the Class.  Plaintiff's counsel is experienced in and competent to handle class actions and complex litigation of this type.

## COUNT I

### (Violation of ERISA § 204(h)—Failure to Give Timely Notice)

44.    Plaintiff incorporates by reference the allegations of paragraphs 1-43 above in this Count.

45.    Section 204(h) of ERISA (the version in effect in 1996) provided that a plan may not be amended to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides written notice, setting forth the plan amendment and its effective date to each participant in the plan. ERISA § 204(h), 29 U.S.C. § 1054(h) (1996).

46.    The Purported Amendment, if effective, significantly reduced Plaintiff's rate of benefit accrual—it reduced it to zero.

47.    The Purported Amendment would have been effective on July 1, 1996.

48.    In order to comply with Section 204(h), Defendants were required by law to provide Plaintiff and the Class with written notice of the Purported Amendment no later than June 15, 1996.

49.    Defendants failed to provide Plaintiff and the Class with written notice of the Purported Amendment by June 15, 1996.

50.    Defendants failed to provide Plaintiff with written notice of the Purported Amendment until some time after his termination of employment.

51.    Defendants' failure to provide timely notice of the Purported Amendment violated ERISA § 204(h), 29 U.S.C. § 1054(h) (1996).

52.    As a result of Defendants' violation of Section 204(h), Plaintiff and the Class have lost substantial sums in pension benefits.

53.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3), Plaintiff and the Class are entitled to appropriate equitable relief to redress the Defendants' violation of Section 204(h) in the form of an order declaring the Purported Amendment ineffective and for the incidental monetary relief mechanically flowing from that injunctive relief in a common fund equal to the difference between their pension benefits as calculated under the unlawful Purported Amendment and as re-calculated under the terms of the Plan in effect prior to July 1, 1996.

## COUNT II

**(Violation of ERISA § 204(h)—Failure to Give Proper Notice)**

54.    Plaintiff incorporates by reference the allegations of paragraphs 1-43 above in this Count.

55.    Section 204(h) of ERISA (the version in effect in 1996) provided that a plan may not be amended to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides written notice, setting forth the plan amendment and its effective date to each participant in the plan. ERISA § 204(h), 29 U.S.C. § 1054(h) (1996).

56.    The Purported Amendment, if effective, significantly reduced Plaintiff's rate of benefit accrual—it reduced it to zero.

57.    The Purported Amendment would have been effective on July 1, 1996.

58.    In order to comply with Section 204(h), Defendants were required by law to provide Plaintiff and the Class with written notice of the wording of the amendment and the fact that their benefits may be reduced by the amendment.

59.    Defendants failed to provide Plaintiff and the Class with written notice of the wording of the amendment and the fact that their benefits may be reduced by the amendment.

60.    Defendants' failure to provide Plaintiff and the Class with written notice of the wording of the amendment and the fact that their benefits may be reduced by the amendment violated ERISA § 204(h), 29 U.S.C. § 1054(h) (1996).

61.    As a result of Defendants' violation of Section 204(h), Plaintiff and the Class have lost substantial sums in pension benefits.

62.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3), Plaintiff and the Class are entitled to appropriate equitable relief to redress the Defendants' violation of Section 204(h) in the form of an order declaring the Purported Amendment ineffective and the incidental monetary relief mechanically flowing from that injunctive relief in a common fund equal to the difference between their pension benefits as calculated under the unlawful Purported Amendment and as re-calculated under the terms of the Plan in effect prior to July 1, 1996.

## COUNT III

**(Violation of ERISA § 102—Failure to Provide Proper Summary Plan Descriptions)**

63.    Plaintiff incorporates by reference the allegations of paragraphs 1-43 above in this Count.

64.    Section 102(a) of ERISA requires that summary plan descriptions must be written in a manner calculated to be understood by the average plan participant and must be sufficiently accurate and comprehensive to apprise participants and beneficiaries of their rights and obligations under the plan.   ERISA § 102(a), 29 U.S.C. § 1022(a).

65.    Section 102(b) of ERISA requires that summary plan descriptions must contain the plan's eligibility requirements for benefits as well as the circumstances which may result in disqualification, ineligibility or denial or loss of benefits. ERISA § 102(b), 29 U.S.C. § 1022(b).

66.    The eligibility requirements set forth in Defendants' 1997 Summary Plan Description fail to comply with Section 102 of ERISA.

67.    The eligibility requirements set forth in Defendants' 1999 Summary Plan Description fail to comply with Section 102 of ERISA.  A copy of the 1999 Summary Plan Description of the Andersen Consulting LLP Retirement Plan is attached hereto as Exhibit 4.

68.    But for the incomprehensible description of eligibility in Defendants' 1997 and 1999 Summary Plan Descriptions, Plaintiff would have acted differently with respect to accepting his promotion and transfer to a new service line within Andersen Consulting on December 16, 1999.

69.    The eligibility requirements set forth in Defendants' 2001 Summary Plan Description fail to comply with Section 102 of ERISA.

70.    The eligibility requirements set forth in Defendants' 2003 Summary Plan Description fail to comply with Section 102 of ERISA.  A copy of the 2003 Accenture United States Retirement Plan Summary Plan Description is attached hereto as Exhibit 5.

71.    But for the incomprehensible description of eligibility in Defendants' 2001 and 2003 Summary Plan Descriptions, Plaintiff would have acted differently with respect to continuing employment without accruing pension benefits.

72.    As a result of Defendants' violation of Section 102, Plaintiff has lost a substantial sum in pension benefits.

73.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3), Plaintiff is entitled to appropriate equitable relief to redress the Defendant's violation of Section 204(h) in the form of an order declaring the Purported Amendment ineffective and the incidental monetary relief mechanically flowing from that injunctive relief in a common fund equal to the difference between their pension benefits as calculated under the unlawful

Purported Amendment and as re-calculated under the terms of the Plan in effect prior to July 1, 1996.

## COUNT IV

### (Alternatively, Claim for Benefits Due Pursuant to ERISA § 502(a)(1)(B))

74.    Plaintiff incorporates by reference the allegations of paragraphs 1-73 above in this Count.

75.    Alternatively, pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), Plaintiff and the Class seeks damages in a common fund equal to the difference between their pension benefits as calculated under the unlawful purported amendment and as re-calculated under the terms of the Plan in effect prior to July 1, 1996.

## COUNT V

### (Violation of ERISA § 104—Failure to Provide Summary Plan Descriptions)

76.    Plaintiff incorporates by reference the allegations of paragraphs 1-43 above in this Count.

77.    Plaintiff requests that this Court certify the following Class for Count V:

> All individuals (and their beneficiaries) who participated in and accrued benefits under the Accenture United States Pension Plan or its predecessor or successor plans at any time before July 1, 1996, and who requested in writing a summary plan description.

78.    Section 104(c) of ERISA provides that the Secretary of Labor may by regulation require that plan administrators of employee benefit plans furnish to each participant and to each beneficiary receiving benefits under the plan a statement of ERISA rights of participants and beneficiaries.  ERISA § 104(c), 29 U.S.C. § 1024(c).

79.    Pursuant to regulations promulgated by the Secretary at 29 C.F.R. 2520.102-3(t), summary plan description must contain a statement of ERISA rights advising

participants of their rights to receive information about their plans and benefits, their plan administrators' fiduciary obligations to them, their right to be free of retaliation, and the claims procedure to enforce their rights.  29 C.F.R. 2520.102-3(t).

80.    On July 21, 2003, Plaintiff made a written request to Defendants requesting help determining his pension eligibility and benefit.

81.    Defendants failed and continue to fail to provide Plaintiff with a summary plan description which set forth his ERISA rights and administrative claims procedures in compliance with Section 104(c) of ERISA.

82.    Defendants' 1995 Summary Plan Description fails to comply with Section 104(c) of ERISA.

83.    Defendants' 1997 Summary Plan Description fails to comply with Section 104(c) of ERISA.

84.    Defendants' 1999 Summary Plan Description fails to comply with Section 104(c) of ERISA.

85.    Defendants' 2001 Summary Plan Description fails to comply with Section 104(c) of ERISA.

86.    Defendants' 2003 Summary Plan Description fails to comply with Section 104(c) of ERISA.

87.    Upon information and belief, Defendants' 2005 Summary Plan Description fails to comply with Section 104(c) of ERISA.

88.    Defendants' 2007 Summary Plan Description fails to comply with Section 104(c) of ERISA.

89.    Plan summaries which do not comply with Section 104(c) of ERISA do not qualify as summary plan descriptions under ERISA.

90.    Pursuant to ERISA § 502(c)(1), 29 U.S.C. §1132(c)(1), Plaintiff and the Class seek statutory damages for each day Defendants failed, upon written request, to provide them with a Summary Plan Description which complied with ERISA § 104(c).

WHEREFORE, Plaintiff and the Class pray for the following relief:

1.    Certification of this action as a class action with the Class defined as set out above;

2.    A declaration that Defendant Accenture violated ERISA § 204(h);

3.    A declaration that the Defendant Plan's amendment purportedly effective on July 1, 1996, is ineffective;

4.    A declaration that the Summary Plan Descriptions provided since the purported amendment purportedly effective on July 1, 1996, violated ERISA § 102;

5.    A declaration that the method of computing Plaintiff's pension benefits and the pension benefits of all similarly situated participants based upon the purported amendment purportedly effective on July 1, 1996, was and is unlawful;

6.    Judgment for Plaintiffs and the class against Defendants on all claims asserted herein;

7.    A permanent injunction preventing the Plan from calculating pension benefits in violation of ERISA and ordering a recalculation of the pension benefits in accordance with the terms of the Plan prior to July 1, 1996;

8.      Creation of a common fund equal to the amount of pension benefits due Plaintiffs and the Class in accordance with the terms of the Plan prior to July 1, 1996;

9.      Pre- and post-judgment interest;

10.     Attorneys' fees and costs of this action pursuant to the common fund/benefit doctrine or any other applicable law;

11.     Attorneys' fees and costs expended by Plaintiff exhausting his administrative remedies beginning in 2003; and

12.     Any other and further relief as the Court deems appropriate under the circumstances.

Dated:  June 27, 2008                           respectfully submitted,

**Schlichter, Bogard & Denton**

/s/ Matthew H. Armstrong
Matthew H. Armstrong
Jerome J. Schlichter
Roger C. Denton
100 S. Fourth Street, Suite 900
St. Louis MO 63102
Tel:    314-621-6115
Fax:    314-621-7151
marmstrong@uselaws.com
jschlichter@uselaws.com
rdenton@uselaws.com

08CV 3682
JUDGE DOW
MAGISTRATE JUDGE KEYS
EDA

*Hakim*
*v.*
*Accenture United States Pension Plan, et al.*

# Exhibit 1

# accenture

Accenture LLP
161 North Clark Street • Chicago, IL 60601-3200
accenture.com

July 9, 2007

**VIA FACSIMILE: (512) 343-8410**

Richard H. Anton
3636 Executive Center Drive
Suite 207
Austin TX 78731

*Re: Hakim v. Accenture – ERISA Claim*

Dear Mr. Anton:

Our records indicate that Mr. Hakim never formally appealed his issue to Accenture. In order to exhaust his remedies prior to any litigation under ERISA, I suggest he address an appeal to the Secretary of the Accenture Appeals Committee: Peter C. Zackrison.

Peter's contact information is below: and mailing address:

Peter Zackrison
Accenture, LLP
180 North LaSalle Street
Chicago, Illinois 60601-3110
Phone: (312) 693-1619
fax: (312) 652-1619

Very truly yours,

ACCENTURE LLP

By   *Keri B. Halperin*

Keri B. Halperin

(Enclosure)

CC:    Peter Zackrison
       Quincy R. Maquet

08CV 3682
JUDGE DOW
MAGISTRATE JUDGE KEYS
EDA

*Hakim*
*v.*
*Accenture United States Pension Plan, et al.*

# Exhibit 2



Accenture LLP
180 North LaSalle Street • Chicago, IL 60601-3110
accenture.com

Tuesday, November 20, 2007

<u>**VIA FACSIMILE (512.343.8410) AND OVERNIGHT MAIL**</u>

Mr. Richard H. Anton
Law Office of Richard H. Anton
P.O. Box 26797
Austin, TX 78755-0797

Re:    <u>Benefits Claim of Omar Hakim Dated July 27, 2007</u>

Dear Mr. Anton:

This letter is in response to your letter dated July 27, 2007, in which you challenge the calculation of Mr. Hakim's years of benefit service under the Accenture United States Pension Plan, as amended (the "Plan"). Pursuant to our letter dated October 29, 2007, the time period for responding to Mr. Hakim's claim was extended to January 27, 2008.

Your July 27 letter sent on Mr. Hakim's behalf is considered a claim for benefits under the Plan. The Accenture ERISA Benefit Claims Committee (the "Committee") has the discretionary authority to decide claims for benefits under the Plan. The Committee has reviewed Mr. Hakim's claim in accordance with Section 503 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and the Plan's claims procedures. For the reasons set forth below, the Committee has determined that Mr. Hakim is not entitled to additional years of benefit service under the Plan. Therefore, the Committee is denying Mr. Hakim's claim for benefits under the Plan.

<u>Background</u>

Mr. Hakim was hired by Accenture LLP (then known as Andersen Consulting LLP) on October 4, 1993 and was classified in the OM/NI group, which became the Business Process Management service line. He was transferred to TIS Americas/Network Solutions in 1996 and was later moved to the Government unit in 1998. Mr. Hakim transferred to the Consultancy service line of Communications and High-Tech Global Markets/Networks ("C&HT") on December 16, 1999. He remained employed in the Consultancy service line of C&HT until he terminated employment with Accenture LLP on May 16, 2003.

Prior to July 1, 1999, Accenture LLP (then known as Andersen Consulting LLP) was a participating employer in the Andersen Worldwide Societe Cooperative United States Retirement Plan (the "Andersen Worldwide Plan"). The Plan was established effective as

Nov 20 2007 4:17PM    LAW OFFICE OF RICHARD H.    (512)343-8410         p.2

ACCENTURE           Fax:3127379540           Nov 20 2007  16:16      P.02

Page 2

of July 1, 1999. On that date, the accrued benefits of the Andersen Worldwide Plan members employed by Accenture LLP (and its affiliates) were transferred to the Plan. Employees of Accenture LLP (and its affiliates) who were members of the Andersen Worldwide Plan immediately before July 1, 1999 became members of the Plan on July 1, 1999.

Applicable Plan Provisions and Reasons for Denial

In your July 27 letter, you challenge the calculation of Mr. Hakim's retirement benefit under the Plan. Specifically, you assert that Mr. Hakim's service with Accenture LLP from December 16, 1999 through May 16, 2003 should be taken into account in calculating the amount of Mr. Hakim's retirement benefit under the Plan (in addition to his service from October 4, 1993 through December 15, 1999).

As noted above, the Plan was established effective July 1, 1999, as a spin-off from the Andersen Worldwide Plan. Section 4.1 of the Plan provides that a member's average monthly earnings and years of benefit service are used to calculate the member's retirement benefit under the Plan. Section 2.10 of the Plan governs the calculation of years of benefit service under the Plan. It provides, in relevant part, that "'Years of benefit service' are all full years of service during which an individual is an eligible employee...."

Section 2.10 of the Plan also provides that for members who were employed by Accenture LLP prior to July 1, 1999 and whose benefit under the Andersen Worldwide Plan was transferred to the Plan, years of benefit service include all years of benefit service the member had been credited with under the Andersen Worldwide Plan as of July 1, 1999. Like the Plan, Section 2.9 of the Andersen Worldwide Plan provided that "'Years of benefit service' are all full years of service during which an individual is an eligible employee...."

Because Mr. Hakim was employed by Accenture LLP prior to July 1, 1999 and his benefit under the Andersen Worldwide Plan was transferred to the Plan, his years of benefit service under the Plan consist of his years of service as an eligible employee credited under the Andersen Worldwide Plan as of July 1, 1999 plus his years of service as an eligible employee on and after July 1, 1999.

1.    Years of Service as an Eligible Employee Prior to July 1, 1996

Under Section 2.2(b) of the Andersen Worldwide Plan as in effect on Mr. Hakim's date of hire:

> Each employee who is classified as an associate partner of
> Andersen Consulting shall be considered an eligible
> employee regardless of the service line of Andersen
> Consulting in which such employee is employed. Each other

Nov 20 2007 4:17PM    LAW OFFICE OF RICHARD H.    (512)343-8410        p.3

ACCENTURE            Fax:3127379540          Nov 20 2007  16:16        P.03

Page 3

> employee of Andersen Consulting shall be considered an
> eligible employee, except that employees employed in the
> following service lines of Andersen Consulting shall not be
> considered eligible employees: (i) Strategic Services; (ii)
> Change Management Services; and (iii) Systems Integration.

Effective July 1, 1995, Section 2.2(b) of the Andersen Worldwide Plan was amended to
provide, in relevant part, that:

> An employee of Andersen Consulting LLP or an employee of
> an employer that is under common control with Andersen
> Consulting LLP shall be considered an eligible employee only
> if such employee is classified in one of the following
> categories: (i) Associate Partners of Andersen Consulting
> LLP; (ii) Practice Management; (iii) Business Process
> Management; (iv) Position-based Business Unit Personnel.

Mr. Hakim was classified as an employee in the Business Process Management service line
of Andersen Consulting LLP beginning on his date of hire, October 4, 1993. Therefore, he
was an eligible employee under Section 2.2(b) of the Andersen Worldwide Plan beginning
on October 4, 1993, and he remained an eligible employee when Section 2.2(b) of the
Andersen Worldwide Plan was amended effective July 1, 1995. Pursuant to Section 2.9 of
the Andersen Worldwide Plan, Mr. Hakim earned years of benefit service under the
Andersen Worldwide Plan beginning on October 4, 1993 for his service as an eligible
employee in the Business Process Management service line.

2. _Years of Service as an Eligible Employee on and after July 1, 1996_

Effective July 1, 1996, Section 2.2(b) of the Andersen Worldwide Plan was amended to
provide, in relevant part, that:

> An employee of Andersen Consulting LLP or an employee of
> an employer that is under common control with Andersen
> Consulting LLP shall be considered an eligible employee only
> if such employee is classified in one of the following
> categories: (i) Associate Partners of Andersen Consulting
> LLP; (ii) Practice Management; (iii) Business Process
> Management; (iv) Position-based Business Unit Personnel.

Notwithstanding the foregoing provisions of this Subsection (b):

(1)    Each employee of Andersen Consulting LLP (or an
       employer under common control with Andersen

Page 4

Consulting LLP) who was employed by Andersen Consulting LLP (or an employer under common control with Andersen Consulting LLP) prior to July 1, 1996, will be an eligible employee on and after July 1, 1996, so long as (A) such employee was an eligible employee under the terms of the plan as in effect immediately prior to July 1, 1996, and (B) such employee remains employed in the service line of Andersen Consulting LLP (or an employer under common control with Andersen Consulting LLP) in which the employee was employed on June 30, 1996. If an employee transfers from the service line in which the employee was employed on June 30, 1995, and the employee is not then employed in a category described in (i) through (iv) above, such employee shall cease to be an eligible employee on the later of (A) July 1, 1996, or (B) the date of the employee's transfer.

This amendment to Section 2.2(b) of the Andersen Worldwide Plan was adopted in connection with Accenture LLP's review of the career models of all workforces to evaluate whether they were aligned to the correct business organization. Through this review, Accenture LLP determined that certain employment classifications that had been treated as pension-eligible were in line with the Consulting career track, which is not pension-eligible. With regard to Mr. Hakim in particular, Accenture LLP reclassified his position with TIS Americas/Network Solutions as a Consulting position, rather than a Business Process Management position, effective July 1, 1996.

Although Mr. Hakim's position was reclassified as a Consulting position on July 1, 1996, he retained his status as an eligible employee from July 1, 1996 through December 15, 1999 because he satisfied the special "grandfathering" rule in Section 2.2(b)(1) of the Andersen Worldwide Plan. Specifically, as described above, Mr. Hakim was an eligible employee under the terms of the Andersen Worldwide Plan as in effect immediately prior to July 1, 1996. In addition, from July 1, 1996 through December 15, 1999, he remained employed in the service line of Accenture LLP in which he had been employed on June 30, 1996.

The July 1, 1996 amendment to Section 2.2 of the Andersen Worldwide Plan, including the special grandfathering rule in Section 2.2(b)(1), was communicated to members in a legal notice that was distributed in June 1996. A copy of this notice and the related cover member are enclosed for your reference. The special grandfathering rule is also described in the Plan's Summary Plan Description.

Page 5

On December 16, 1999, Mr. Hakim transferred to the Consultancy service line of C&HT. Pursuant to Section 2.2 of the Plan, he became an ineligible employee on the date of his transfer.    Specifically, Section 2.2 of the Plan contains language substantially similar to Section 2.2(b)(1) of the Andersen Worldwide Plan as in effect on July 1, 1996. It provides, in relevant part, that:

> Each employee of the company [Accenture LLP] (or an affiliate) who was employed by the company (or an affiliate) prior to July 1, 1996, shall be an eligible employee on and after July 1, 1996, so long as (i) such employee was an eligible employee under the terms of the plan as in effect immediately prior to July 1, 1996, and (ii) such employee remains employed in the service line of the company (or an affiliate) in which the employee was employed on June 30, 1996.  If an employee transfers from the service line in which the employee was employed on June 30, 1995, and the employee is not then employed in a category described in paragraph (d)(i) through (vi) above [i.e., an eligible category], such employee shall cease to be an eligible employee on the later of (i) July 1, 1996, or (ii) the date of the employee's transfer.

Because Mr. Hakim transferred to the Consultancy service line of C&HT from the service line in which he was employed on June 30, 1995, and the Consultancy service line is not an eligible category described in Section 2.2 of the Plan, Mr. Hakim ceased to be an eligible employee on the date of his transfer, December 16, 1999. Pursuant to Section 2.10 of the Plan, because Mr. Hakim was not an eligible employee during his period of service in the Consultancy service line of C&HT from December 16, 1999 through his termination of employment on May 16, 2003, he did not earn years of benefit service under the Plan for that period of service.

3.    Total Years of Benefit Service

Based on the Plan provisions described above, Mr. Hakim earned years of benefit service under the Plan for his service as an eligible employee from October 4, 1993 through December 15, 1999.  Mr. Hakim's service as an ineligible employee in the Consultancy service line of C&HT from December 16, 1999 through May 16, 2003 does not count as years of benefit service under the Plan. Thus, as described in the benefits statements he has received from the Accenture Benefits Center, Mr. Hakim earned a total of 6.202 years of benefit service under the Plan.

The Committee has a fiduciary responsibility to administer the Plan in accordance with the terms of the Plan document. The Plan cannot pay benefits to an individual in excess of the

benefits provided for under the terms of the Plan. Under the terms of the Plan, Mr. Hakim is entitled to a retirement benefit that is calculated based on his 6.202 years of benefit service and his average monthly earnings and payable in the form of an annuity in accordance with the terms of the Plan.

### Determination

Mr. Hakim is entitled to 6.202 years of benefit service under the Plan for his service as an eligible employee from October 4, 1993 through December 15, 1999. He is not entitled to years of benefit service under the Plan for his service as an ineligible employee from December 16, 1999 through May 16, 2003. Therefore, his claim for additional years of benefit service under the Plan is denied.

### Appeal Rights

If Mr. Hakim wishes to pursue this matter further, he has the right to appeal the denial of his claim to the Committee within 60 days of receiving this letter. If he decides to appeal, he (or his duly authorized representative) should submit a letter stating the reasons why he believes he is entitled to additional years of benefit service under the Plan and include any supporting documentation with his request. He may request, free of charge, copies of the Plan document and other information relevant to his claim for benefits. Any appeal or request for information should be in writing and sent to my attention at Accenture LLP, 180 North LaSalle Street, Chicago, IL 60601-3110.

If a timely appeal is received, the appeal will be reviewed by the Committee and a decision rendered within 60 days of the receipt of the appeal or, if special circumstances exist that require an extension of time for reviewing the appeal, Mr. Hakim will receive notice of the extension within 60 days of the receipt of his appeal. If no written appeal is submitted within 60 days after receiving this letter, the decision set forth in this letter shall be deemed final. No action at law or in equity may be brought to recover benefits under the Plan until Mr. Hakim's appeal rights have been exercised and the Plan benefits requested in such appeal have been denied in whole or in part.

If Mr. Hakim decides to appeal and his appeal is denied, should he wish to pursue his claim further, he has the right to bring a civil action in a federal court under Section 502(a) of ERISA. However, he must commence the legal action within 120 days after the date of the final denial of his claim.

Page 7

Sincerely,

Peter C. Zackrison
On behalf of the Accenture ERISA
Benefit Claims Committee

Enclosures

Copy to:  Mr. Omar Hakim

Action Required By 06/14/96

To:      US Office HR Leads.Americas.AC
cc:      USH-Benefits Coords Lotus.OA.AASC, James P. Stackhouse, Brian F. Broadbent, Claire M. Grazioso, Don Shaw, Dorothy Muller, Patti B. Johnson, Susann F. Bresnahan, Christopher P. Mammoser, Larry F. Solomon, Genevieve C. Cassels, Karl C. Meyer, Michael K. Adamson, David Drysdale, Mary B. Fulton, Dorothy Muller, Dennis J. Nirtaut, Rochelle T. O'Hara, David L. Reed, Jesse B. Tutor, Richard C. Wyman.
From:    Jeanette Harris
Date:    06/13/96 04:57 PM
Subject: U.S. Employee Retirement Benefits

Please distribute the following memo and attachment to all personnel in your location. The memo notifies employees of the changes in retirement eligibility and is similar to the memo distributed earlier to all of HR. The attachment is a legally required document that must be delivered no later than Friday afternoon, June 14, 1996.

Thank you for your cooperation.

## ANDERSEN CONSULTING

To:       All U.S. Andersen Consulting Personnel

From:     William T. Van Lieshout, New York
          Patricia R. Willard, Chicago - 33W

Date:     June 13, 1996

Subject:  U.S. Employee Retirement Plan Benefits

Currently, retirement plan benefits are provided for personnel in Practice Management, Business Process Management and for associate partners. Some personnel in other competency groups and business organizations receive retirement plan benefits as well. With the implementation of the Career Development Model, however, personnel from different organizational entities have merged into skill tracks within competency groups, thereby creating situations in which personnel with different benefits packages are working in the same skill track. With that in mind, the Americas Executive Committee has reviewed the eligibility requirements of the retirement plan and has made some modifications.

### Retirement Eligibility

Retirement plan benefits for personnel in Practice Management (PM), Business Process Management

(BPM), and for associate partners and position-based business unit personnel *will remain unchanged.* Effective July 1, 1996, personnel in Process, Change Management, Strategy, and Technology in the Consulting and Solution Center, Business Integration Providers, and Americas Information and Technology Support (AI&TS) organizations will not be eligible for retirement plan benefits. All new hires and employee transfers into these groups *will not be added to the plan.* This ensures that personnel in the same competency group or business organization receive the same benefits package and that we meet IRS regulations regarding the classifications of employees. If, at any time, a retirement eligible employee transfers to a non-eligible group, as described above, s/he will remain a plan member but will become inactive. Only those years accrued as an active member qualify as benefit service for the employee. (Employees continue to accrue vesting service even as inactive members.)

However, there may be personnel who are now in Change Management, Strategy, Process and Technology who were retirement eligible before the implementation of the Career Development Model. Some examples include:

- Employees classified as Systems Resource Group prior to September 1, 1994.
- Employees in the Americas Information and Technology Support organization (AI&TS organization) who were classified as Practice Management prior to September 1, 1994.

These employees have been grandfathered, as they accepted positions with retirement plan benefits. They continue to be active plan members and their years of service continue to accrue as benefit service. Any employee who transferred or was hired into one of the grandfathered groups between September 1, 1994, and June 30, 1996, will also be included in the grandfather clause. However, if a grandfathered employee transfers to a non-eligible group, as described above, s/he is still a plan member but becomes inactive.

If an employee transfers from the service line of Anderson Consulting LLP in which the employee was employed on June 30, 1995, to an ineligible category, the employee will cease accruing benefits as of the later of (a) July 1, 1996, or (b) the date of transfer to the ineligible category. Only those years accrued as an active member qualify as benefit service for the employee. (Employees continue to accrue vesting service even as inactive members.)

Attached is a legally required notification of these plan changes. If you have any questions, please contact your Benefits Coordinator.

Copies to:
U.S. Benefits Coordinators
U.S. Competency Group Human Resource Directors
U.S. Market Unit Human Resource Directors
U.S. Office Human Resource Directors
Michael K. Adamson, Chicago-33W
David Drysdale, Minneapolis
Mary B. Fulton, Northbrook
Dorothy Muller, New York
Dennis J. Nirtaut, Chicago-69W
Rochelle T. OHara, Chicago-100S
Lauren C. Palmer, San Francisco

Nov 20 2007 4:22PM   LAW OFFICE OF RICHARD H.   (512)343-8410        p.10

ACCENTURE            Fax:3127379540        Nov 20 2007  16:17      P.10

David L. Reed, Chicago-33W
Jesse B. Tutor, Houston
Marc H. Weinstein, Seattle
Richard C. Wyman, Las Colinas



204HRETLDOC

**Categories:**

© 1995 Andersen Worldwide SC. All Rights Reserved. For Internal Use Only.

## JUNE 13, 1996

## NOTICE OF CHANGE IN BENEFIT ACCRUALS

As described in the memorandum dated June 13, 1996, the Andersen Worldwide Societe Cooperative United States Retirement Plan has been amended to modify the accrual of benefits under the Plan for employees of Andersen Consulting LLP. The Plan amendment is effective July 1, 1996. This notice is being provided to you pursuant to the requirements of Section 204(h) of the Employee Retirement Income Security Act of 1974 (ERISA).

The US Retirement Plan, as amended, provides that an employee of Andersen Consulting LLP will accrue benefits under the Plan only if the employee is classified in one of the following categories:

    (1)    Associate partners of Andersen Consulting LLP;

    (2)    Practice Management;

    (3)    Business Process Management; or

    (4)    Position-based Business Unit Personnel.

A special rule applies to employees who were hired by Andersen Consulting LLP prior to July 1, 1996. Each employee of Andersen Consulting LLP who was hired by Andersen Consulting LLP prior to July 1, 1996, will accrue additional benefits under the US Retirement Plan if the following requirements are met:

    (A)    The employee was an eligible employee under the terms of the US Retirement Plan as in effect immediately prior to July 1, 1996; and

    (B)    The employee remains employed in the same service line of Andersen Consulting LLP in which the employee was employed on June 30, 1996 (even if the employee is not employed in a class of employees described in (1) through (4) above).

However, if an employee transfers from the service line of Andersen Consulting LLP in which the employee was employed on June 30, 1995, and the employee is not employed in a category described in (1) through (4) above, that employee will cease accruing benefits as of the later of (a) July 1, 1996, or (b) the date of transfer to the ineligible category.

If you have any questions concerning this notice or the memorandum date June 13, 1996, please contact your local Benefits Coordinator.

08CV 3682
JUDGE DOW
MAGISTRATE JUDGE KEYS
EDA

*Hakim*
*v.*
*Accenture United States Pension Plan, et al.*

# Exhibit 3

# accenture

Accenture LLP
180 North LaSalle Street • Chicago, IL 60601-3110
accenture.com

April 2, 2008

<u>VIA FACSIMILE (512.343.8410) AND OVERNIGHT MAIL</u>

Mr. Richard H. Anton
Law Office of Richard H. Anton
P.O. Box 26797
Austin, TX 78755-0797

Re:    <u>Benefits Appeal of Omar Hakim</u>

Dear Mr. Anton:

This letter is in response to your letter dated November 29, 2007, in which you appeal the
November 20, 2007 denial of Mr. Hakim's claim for additional years of benefit service under
the Accenture United States Pension Plan, as amended (the "Plan"). Pursuant to our letter dated
February 1, 2008, the time period for responding to Mr. Hakim's appeal was extended to April 2,
2008.

The Accenture ERISA Benefit Claims Committee (the "Committee") has the discretionary authority
to decide appeals under the Plan. The Committee has reviewed Mr. Hakim's appeal in accordance
with the Plan's benefit claim procedures under Section 503 of the Employee Retirement Income
Security Act of 1974, as amended ("ERISA"), and the regulations thereunder. For the reasons set
forth below, the Committee has concluded that the denial of Mr. Hakim's claim for additional years
of benefit service under the Plan must be upheld. Therefore, the Committee is denying Mr. Hakim's
claim appeal.

<u>Applicable Plan Provisions and Reasons for Denial</u>

In your claim and appeal letters, you assert that Mr. Hakim's service with Accenture LLP from
December 16, 1999 through May 16, 2003 should be taken into account in calculating the amount
of Mr. Hakim's retirement benefit under the Plan (in addition to his service from October 4, 1993
through December 15, 1999).

As explained in our letter dated November 20, 2007, Mr. Hakim earned years of benefit service
under the Plan for his service as an eligible employee from October 4, 1993 through December 15,
1999. However, Mr. Hakim's service as an ineligible employee in the Consultancy service line of
C&HT from December 16, 1999 through May 16, 2003 is not taken into account in calculating the
amount of his retirement benefit. As described in more detail in our letter dated November 20,
2007:

Mr. Richard H. Anton
April 2, 2008
Page 2

- Section 2.2(b) of the Andersen Worldwide Societe Cooperative United States Retirement Plan (the "Andersen Worldwide Plan") was amended effective July 1, 1996 in connection with Accenture LLP's review of the career models of all workforces to evaluate whether they were aligned to the correct business organization. Through this review, Accenture LLP determined that certain employment classifications that had been treated as pension-eligible were in line with the Consulting career track, which is not pension-eligible. With regard to Mr. Hakim in particular, Accenture LLP reclassified his position with TIS Americas/Network Solutions as a Consulting position, rather than a Business Process Management position, effective July 1, 1996.

- Although Mr. Hakim's position was reclassified as a Consulting position on July 1, 1996, he retained his status as an eligible employee from July 1, 1996 through December 15, 1999 because he satisfied a special "grandfathering" rule in Section 2.2(b)(1) of the Andersen Worldwide Plan. Specifically, Mr. Hakim was an eligible employee under the terms of the Andersen Worldwide Plan as in effect immediately prior to July 1, 1996. In addition, from July 1, 1996 through December 15, 1999, he remained employed in the service line of Accenture LLP in which he had been employed on June 30, 1996. Therefore, Mr. Hakim earned years of benefit service under the Andersen Worldwide Plan and the Plan for his service as an eligible employee from July 1, 1996 through December 15, 1999.

- On December 16, 1999, Mr. Hakim transferred to the Consultancy service line of C&HT. Because Mr. Hakim transferred to the Consultancy service line of C&HT from the service line in which he was employed on June 30, 1995, and the Consultancy service line is not an eligible category described in Section 2.2 of the Plan, Mr. Hakim ceased to be an eligible employee on the date of his transfer, December 16, 1999. Pursuant to Section 2.10 of the Plan, because Mr. Hakim was not an eligible employee during his period of service in the Consultancy service line of C&HT from December 16, 1999 through his termination of employment on May 16, 2003, he did not earn years of benefit service under the Plan for that period of service.

In the appeal letter you submitted on Mr. Hakim's behalf, you did not provide any new information or documentation in support of Mr. Hakim's claim that he is entitled to additional years of benefit service under the Plan. You asserted that Mr. Hakim should be entitled to years of benefit service under the Plan for his service in the Consultancy service line of C&HT from December 16, 1999 through May 16, 2003 because no representative of Accenture informed him that his transfer to the Consultancy Service line of Accenture would result in his becoming ineligible to accrue additional years of benefit service.

In reviewing Mr. Hakim's appeal, the Committee reviewed the various communications Mr. Hakim received regarding the Plan's eligibility rules. The Committee concluded that Mr. Hakim received all legally required communications regarding the Plan terms, including information on the special

Mr. Richard H. Anton
April 2, 2008
Page 3

grandfathering rule for employees who remain employed in the service line of Accenture LLP in which they were employed on June 30, 1996 and the effect of transfers of employment. Specifically:

- As required by ERISA, the July 1, 1996 amendment to Section 2.2 of the Andersen Worldwide Plan, including the special grandfathering rule in Section 2.2(b)(1), was communicated to Andersen Worldwide Plan members in a legal notice (a "204(h) notice") that was distributed in June 1996. We previously provided a copy of this notice and the related cover member to you for your reference.

- The Plan's special grandfathering rule and the effect of transfers of employment are also described in the Plan's Summary Plan Description. As required by ERISA, Summary Plan Descriptions describing the major terms of the Plan have been prepared, updated regularly, and provided to Plan members. We previously provided copies of the Summary Plan Descriptions for the Andersen Worldwide Plan and the Plan in effect from 1995 through 2003 and the most recent version to you for your reference.

In addition to these legally required communications, Mr. Hakim received an individual benefits statement dated June 30, 2000 that clearly described his ineligibility to participate in the Plan (then known as the Retirement Plan). This statement contained the following text:

> Because of your current employment classification, you are ineligible
> to participate in the Retirement Plan. However, you have earned a
> monthly benefit based on your prior period(s) as an eligible employee.
> Contact the Andersen Consulting Benefits Information Center and
> select the Retirement Plan option if you would like more information.

The June 30, 2000 benefits statement was mailed to all employees as a hard copy in August 2000. We previously provided a copy of the Plan administrative records that show the information contained in Mr. Hakim's June 30, 2000 benefits statement to you for your reference. Also, as you have noted, Mr. Hakim received a Statement of Deferred Benefit dated July 6, 2003 that showed he was ineligible to participate in the Plan since his transfer to the Consultancy service line of C&HT.

After reviewing the relevant Plan terms, the Committee has concluded that Mr. Hakim became ineligible to participate in the Plan when he transferred from the service line in which he was employed on June 30, 1996 to the Consultancy service line of C&HT on December 16, 1999. In addition, the Committee has concluded that Accenture provided Mr. Hakim with all legally required communications regarding the Plan terms (including information on the special grandfathering rule for employees who remain employed in the service line of Accenture LLP in which they were employed on June 30, 1996 and the effect of transfers of employment), as well as additional personalized communications regarding his Plan benefit. Finally, the Committee has a fiduciary responsibility to administer the Plan in accordance with the terms of the Plan document. The Plan

Mr. Richard H. Anton
April 2, 2008
Page 4

cannot pay benefits to an individual in excess of the benefits provided for under the terms of the Plan. Based on the foregoing, the Committee has concluded that Mr. Hakim is entitled to a Plan benefit that is (i) calculated based on his 6.202 years of benefit service and average monthly earnings for his service as an eligible employee from October 4, 1993 through December 15, 1999, and (ii) payable in the form of an annuity in accordance with the terms of the Plan. Mr. Hakim's claim appeal for additional years of benefit service under the Plan is denied.

Determination

Your appeal letter on behalf of Mr. Hakim does not provide any basis to overturn the Committee's November 20, 2007 determination that he is not entitled to years of benefit service under the Plan for his service as an ineligible employee in the Consultancy service line of C&HT from December 16, 1999 through May 16, 2003. Therefore, his claim appeal for additional years of benefit service under the Plan is denied.

Rights under the Plan

This letter is intended to constitute a final claim denial within the meaning of Department of Labor Regulation Section 2560.503-1(h). Under ERISA, Mr. Hakim is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to his claim appeal. His administrative review remedies under the Plan are now exhausted. Under the terms of the Plan, Mr. Hakim now has 120 days from the date of this letter to exercise his right to bring a civil lawsuit in federal court under Section 502(a) of ERISA to challenge this adverse benefit determination.

Sincerely,

On behalf of the Accenture ERISA
Benefit Claims Committee

Copy to: Mr. Omar Hakim

08CV 3682
JUDGE DOW
MAGISTRATE JUDGE KEYS
EDA

*Hakim*
*v.*
*Accenture United States Pension Plan, et al.*

# Exhibit 4

**SUMMARY PLAN DESCRIPTION**

**OF**

**ANDERSEN CONSULTING LLP RETIREMENT PLAN**

**October 1999**

# TABLE OF CONTENTS

**Page**

Introduction............................................................................................... 1

Background.............................................................................................. 1

Eligibility ............................................................................................... 2

Summary of Retirement Benefits ........................................................... 2

Benefit Formula ..................................................................................... 3

Normal Retirement Benefit .................................................................... 3

Deferred Retirement Benefit .................................................................. 3

Early Retirement Benefit........................................................................ 3

Deferred Vested Benefit......................................................................... 3

Normal Forms of Payment ..................................................................... 4

Optional Forms of Payment ................................................................... 4

Death Benefits ....................................................................................... 5

Rehired Participants............................................................................... 6

Form of Elections .................................................................................. 6

Miscellaneous ........................................................................................ 6

Glossary of Terms.................................................................................. 8

# Andersen Consulting LLP Retirement Plan

## Introduction

This summary explains the main features of the Andersen Consulting LLP Retirement Plan (Retirement Plan). The Plan was established by Andersen Consulting LLP (Andersen Consulting) effective July 1, 1999. Andersen Consulting sponsors the Retirement Plan to provide you with retirement and other benefits.

Andersen Consulting is the administrator of the Retirement Plan. Andersen Consulting may delegate responsibilities for plan administration to other persons. The administrator of the Retirement Plan is referred to in this summary as the "Plan Administrator."

The Retirement Plan covers eligible employees of Andersen Consulting LLP and its subsidiaries that have adopted the Retirement Plan. Where appropriate, references to "Andersen Consulting" will include the subsidiaries that have adopted the Retirement Plan.

The terms of the Retirement Plan are complicated. This summary is intended to explain the principal terms of the Retirement Plan in non-technical language. The complete terms and conditions of the Retirement Plan are described in a complex legal document. This summary is not intended to cover every circumstance covered in the plan document. Should there be any inconsistency between this summary and the plan document, the terms of the plan document will govern. No benefits shall be provided based on the terms of this summary, unless such benefits are provided for under the terms of the plan document. (Of course, you may examine the complete plan document on which this summary is based. It is available from Andersen Consulting.)

## Background

Prior to July 1, 1999, employees of Andersen Consulting were eligible to participate in the Andersen Worldwide Societe Cooperative United States Retirement Plan (AW Plan). On July 1, 1999, assets and liabilities attributable to current and former employees of Andersen Consulting were transferred to the Plan. If you were a participant in the AW Plan, your accrued benefit under the AW Plan has been transferred to this Plan. All your compensation and years of service under the AW Plan will be counted under the Retirement Plan. Also, your accrued benefit under the Plan will not be less than the benefit you had accrued under the AW Plan.

On page 7 of this summary, you will find a Glossary of Terms used in this Summary. You will better understand this summary if you first read the Glossary of Terms.

## Eligibility

If you were a participant in the AW Plan, you will continue to participate in the Retirement Plan without interruption, subject to the terms of the Plan. If you were employed prior to July 1, 1996, you will cease to accrue benefits under the Retirement Plan if you transfer from the service line in which you were employed on June 30, 1996, to a service line that is not listed below.

If you are not yet a participant in the Retirement Plan, you will be eligible to participate in the Plan if you meet the following requirements:

(1)     You are employed by Andersen Consulting within the United States or Puerto Rico; and

(2)     You are classified in one of the following categories:  (a) Associate Partners; (b) Global Business Practices; (c) Global Services Organization; (d) Business Process Management; (e) Process Innovation and Enablement; or (f) Business Integration Providers.

If you are employed by a subsidiary of Andersen Consulting, you will only be eligible for the Retirement Plan if you transferred employment from Andersen Consulting LLP to the subsidiary **and** you were eligible for the Retirement Plan immediately prior to your transfer. If you are a participant in the Andersen Consulting LLP Transfer Retirement Plan, you are not eligible to participate in the Retirement Plan.

If you meet these eligibility requirements, you will become a participant in the Retirement Plan on the January 1 or July 1 as of which you have completed one Year of Service.

## Summary of Retirement Benefits

Your retirement benefit is calculated under a formula that considers your pay and years of service with Andersen Consulting.  You may begin to receive retirement benefits on your Normal Retirement Date, Deferred Retirement Date, or Early Retirement Date.

The Retirement Plan offers several forms of payment.  If you are married, spousal consent may be required to elect certain forms of payment.

## Benefit Formula

Your normal monthly retirement benefit is calculated under the following formula:

(1)    1.25% of your Average Monthly Earnings multiplied by your Years of Benefit Service (maximum of 25) **plus**

(2)    $20 multiplied by your Years of Benefit Service (maximum of 25).

The current maximum normal monthly retirement benefit any employee can receive is $2,250.

## Normal Retirement Benefit

Your normal retirement benefit is payable beginning on your Normal Retirement Date.

## Deferred Retirement Benefit

Your deferred retirement benefit is payable beginning on your Deferred Retirement Date. Your deferred retirement benefit is a monthly benefit equal to your normal retirement benefit calculated based on your Average Monthly Earnings and Years of Benefit Service as of your Deferred Retirement Date.

## Early Retirement Benefit

Your early retirement benefit is payable on your Early Retirement Date. Unless your age and Years of Service (both are rounded down) total 80 at your Early Retirement Date, your early retirement benefit will be reduced to reflect that your benefits may be paid for a longer period of time than if you began receiving your benefits at your Normal Retirement Date. Your monthly benefit will be reduced by 0.5% for each month by which payment of your benefit precedes your attainment of age 62. This reduction will be applied before applying the Retirement Plan's cap on the monthly benefit (currently $2,250).

## Deferred Vested Benefit

If you terminate employment before your retirement or death, but after you have completed at least 5 Years of Service, you will have a nonforfeitable right to 100% of your benefit earned to the date of your termination. If you terminate employment before

completing 5 Years of Service, you will forfeit your benefit. (If you are reemployed by Andersen Consulting, you may continue to vest in your benefit.)

Your deferred vested benefit normally will commence on your Normal Retirement Date. However, you may elect to have your monthly deferred vested benefit commence on an Early Retirement Date. If you elect to commence your benefit on an Early Retirement Date, your deferred vested benefit will be reduced to reflect that your benefits may be paid for a longer period of time than if you began receiving your benefits at your Normal Retirement Date. Your monthly benefit will be reduced by 0.5% for each month by which payment of your benefit precedes your attainment of age 62. This reduction will be applied after applying the Retirement Plan's cap on the monthly benefit (currently $2,250).

## Normal Forms of Payment

**Not Married—Life Annity**. Your benefits will be paid in the form of a life annuity if you are not legally married on the date payments commence and do not waive the life annuity form of payment. If you are married, you may elect to receive your benefit in the form of a life annuity if you legally waive the joint and survivor annuity form of payment with your spouse's consent (as described below). The life annuity is a monthly benefit payable during your lifetime.

**Married—Qualified Joint and Survivor Annuity** Your benefits will be paid in the form of a qualified joint and survivor annuity if you (1) are legally married on the date payments commence and (2) do not waive the qualified joint and survivor annuity. The qualified joint and survivor annuity is an actuarially reduced monthly benefit payable during your lifetime, and if your spouse is living at your date of death, payment of 50% of such reduced monthly benefit to your spouse until your spouse's death. You may elect to have a 75% or 100% joint and survivor annuity method of payment instead of the 50% qualified joint and survivor annuity method of payment described above without your spouse's consent.

## Optional Forms of Payment

In lieu of the normal forms of payment described above, before payment of your benefits has commenced, you may elect to receive an actuarially equivalent benefit in one of the following methods:

- **Life and 10-Year Certain Annuity**. A reduced monthly payment terminating at your death and, if you die within 120 months of the date payments commenced, a

continuing monthly payment of the same amount to a person designated by you for the balance of the 120-month period.

- **Joint and 50%, 75%, or 100% Survivor Annuity.** A reduced monthly payment during your lifetime. If the person designated by you is living at the time of your death, such person will receive payments for such person's lifetime equal to 50%, 75%, or 100% of the monthly amount payable to you during your life.

- **Indexed Life Annuity.** A reduced monthly retirement benefit payable during your lifetime, with the last payment to be made for the month in which you die. As of January 1 of each calendar year, the amount of the monthly benefit will be increased by 3%.

- **Indexed Joint and 50% Spousal Annuity.** A reduced monthly payment during your lifetime and, if your spouse is living at the time of such participant's death, payment of 50% of the last amount payable you while living, to your spouse as long as your spouse lives. Your spouse means the spouse to whom you were married at the date payment of your benefit commenced. As of January 1 of each calendar year, the amount of the monthly benefit payable will be increased by 3%.

## Death Benefits

If you die prior to the date on which you were to begin receiving benefits under the Retirement Plan, your spouse will receive a benefit if you were legally married on the date of your death. Your spouse's benefit will be a monthly benefit for the life of your spouse. The amount of your spouse's benefit will be an amount determined as follows:

(1)    If, as of the date of your death, you had attained your Normal Retirement Date, 50% of your monthly retirement benefit determined as if you had retired and benefit payments had commenced immediately prior to your date of death with benefits payable in a qualified joint and survivor annuity form.

(2)    If, as of the date of your death (or earlier retirement), you had attained your Early Retirement Date, 50% of the monthly early retirement benefit determined as if you had retired and benefit payments had commenced immediately prior to your date of death with benefits payable in a qualified joint and survivor annuity form.

(3)    If, as of the date of your death (or earlier termination of employment), you had not met the requirements in (1) or (2) above, 50% of the monthly deferred vested benefit (based upon your Years of Benefit Service as of your date of death or

earlier termination of employment) to which you would have been entitled at the earliest age at which the benefits could have commenced with benefits payable in a qualified joint and survivor annuity form.

In lieu of the benefit described in (1), (2), or (3), whichever is applicable, your spouse may elect, prior to commencement of the spouse's benefit, to receive an actuarially reduced spouse's benefit, the amount of which is increased by 3% as of January 1 of each calendar year.

## Rehired Participants

If you terminate employment after becoming a Retirement Plan participant and are reemployed by Andersen Consulting, you will become an active participant in the Retirement Plan on the later of your date of reemployment or the date you become eligible for participation in the Retirement Plan. You will receive credit for all your Years of Service and Years of Benefit Service that you had earned prior to your termination of employment.

## Form of Elections

Each election or request required or permitted to be made must be made in accordance with the rules and procedures established by the Plan Administrator and shall be effective as determined by the Plan Administrator.

## Miscellaneous

- The Plan Administrator has complete discretion to determine all questions arising under the Retirement Plan, such as questions arising because of ambiguities, inconsistencies, or omissions in the plan document and questions as to the rights or eligibility of employees or participants and their beneficiaries and the value of their benefits under the Retirement Plan. Any interpretation of the Retirement Plan and any good faith decision on any matter within the Plan Administrator's discretion is binding on all persons. A misstatement or other mistake of fact shall be corrected when it becomes known, and the Plan Administrator shall make such adjustment as it considers equitable and practicable.

- Andersen Consulting expects and intends that the Retirement Plan will continue indefinitely. However, Andersen Consulting reserves the right to amend or terminate the Retirement Plan at any time in its sole discretion.

- Your benefits under the Retirement Plan are not assignable (except pursuant to a qualified domestic relations order) nor may you pledge your benefits as security for a loan.

- All contributions to the Retirement Plan are actuarially determined and are made by Andersen Consulting.

# GLOSSARY OF TERMS

**Average Monthly Earnings**:  Generally, the monthly average of the Earnings paid to you during the 3 consecutive Plan Years for which your Earnings were the highest within the last 10 Plan Years prior to your termination of employment.

**Deferred Retirement Date**:  The first day of the month following the date you retire after age 62.

**Early Retirement Date**:  The first day of the month following the date you retire before your Normal Retirement Date, but after you have completed 5 Years of Service and attained age 55.

**Earnings**:  Generally, the total amount paid to you by Andersen Consulting as taxable compensation, plus amounts that would have been taxable except for your election to make tax-deferred 401(k) contributions under the Profit Sharing Plan or your election of a benefit under the Andersen Consulting LLP Flexible Benefits Program that is in lieu of cash compensation.  Your Earnings do not include taxable expense reimbursements or allowances.  As required by the Internal Revenue Code, Earnings for any Plan Year in excess of $160,000 (as adjusted periodically by the Internal Revenue Service) are not used to determine your benefits under the Retirement Plan.

**Normal Retirement Date**:  The first day of the month following the date you attain age 62.

**Plan Administrator**:  The administrator of the Retirement Plan.  Andersen Consulting (or its designee) is the Plan Administrator.

**Plan Year**:  The twelve-month period ending on each June 30.

**Profit Sharing Plan**:  Andersen Consulting LLP Employees' Profit Sharing and 401(k) Plan.

**Year of Benefit Service**:  Each 12-month period of association as an employee with Andersen Consulting during which you are an eligible employee under the Retirement Plan. Years of Benefit Service include both full and fractional years.

**Year of Service**:  Each 12-month period of association as an employee with Andersen Consulting.  Years of Service include both full and fractional years.

*Hakim*
*v.*
*Accenture United States Pension Plan, et al.*

# Exhibit 5

Accenture United States Retirement Plan

Summary Plan Description

(Effective January 1, 2003)

TABLE OF CONTENTS

INTRODUCTION .......................................................................................................... 1

BACKGROUND .......................................................................................................... 1

ELIGIBILITY.............................................................................................................. 1
    Rehired Participants ............................................................................................ 2

THE RETIREMENT BENEFIT ...................................................................................... 2
    Summary of Retirement Benefits ...................................................................... 2
    Benefit Formula .................................................................................................. 3

TYPES OF RETIREMENT BENEFITS........................................................................... 3
    Normal Retirement Benefit ................................................................................ 3
    Deferred Retirement Benefit .............................................................................. 3
    Early Retirement Benefit.................................................................................... 3
    Deferred Vested Benefit ..................................................................................... 4
    Reemployment ................................................................................................... 4

HOW THE BENEFIT IS PAID....................................................................................... 4
    Normal Forms of Payment................................................................................. 4
    Optional Forms of Payment............................................................................... 5
    Mandatory Lump Sum Payment ....................................................................... 6

SURVIVING SPOUSE BENEFIT.................................................................................... 6

FORM OF ELECTIONS................................................................................................. 6

MISCELLANEOUS....................................................................................................... 7

GLOSSARY OF TERMS ............................................................................................... 8

# INTRODUCTION

This summary explains the main features of the Accenture United States Retirement Plan (Retirement Plan) as in effect on January 1, 2003. The Plan was established by Accenture LLP (Accenture), effective July 1, 1999. Accenture sponsors the Retirement Plan to provide you with retirement and other benefits.

Accenture is the administrator of the Retirement Plan. Accenture may delegate responsibilities for plan administration to other persons. The administrator of the Retirement Plan is referred to in this summary as the "Plan Administrator."

The Retirement Plan covers eligible employees of Accenture and its subsidiaries that have adopted the Retirement Plan. Where appropriate, references to "Accenture" will include the subsidiaries that have adopted the Retirement Plan.

The terms of the Retirement Plan are complicated. This summary is intended to explain the principal terms of the Retirement Plan in non-technical language. The complete terms and conditions of the Retirement Plan are described in a complex legal document. This summary is not intended to cover every circumstance covered in the plan document. Should there be any inconsistency between this summary and the plan document, the terms of the plan document will govern. No benefits shall be paid based on the terms of this summary, unless such benefits are provided for under the terms of the plan document. (Of course, you may examine the complete plan document on which this summary is based. It is available from Accenture.)

Later in this summary, you will find a Glossary of Terms. You will better understand this summary if you first read the Glossary of Terms.

# BACKGROUND

Prior to July 1, 1999, employees of Accenture were eligible to participate in the Andersen Worldwide Societe Cooperative United States Retirement Plan (AW Plan). On July 1, 1999, assets and liabilities attributable to current and former employees of Accenture were transferred to the Retirement Plan. If you were a participant in the AW Plan, your accrued benefit under the AW Plan has been transferred to this Plan. All your compensation and years of service under the AW Plan will be counted under the Retirement Plan. Also, your accrued benefit under the Retirement Plan will not be less than the benefit you had accrued under the AW Plan.

# ELIGIBILITY

If you were a participant in the AW Plan, you will continue to participate in the Retirement Plan without interruption, subject to the terms of the Plan. If you were employed prior to July 1, 1996, you will cease to accrue benefits under the Retirement Plan if you transfer from the service line in which you were employed on June 30, 1996, to a service line that is not listed below.

If you are not yet a participant in the Retirement Plan, you will be eligible to participate in the Plan if you meet the following requirements:

1. You are employed by Accenture (or a subsidiary that has adopted the Retirement Plan) within the United States or Puerto Rico;

2. You are classified by your employer as an employee for purposes of wage withholding of federal income taxes; and

3.  You are classified in one of the following Workforces:

   a.  Enterprise;

   b.  Services; or an

   c.  Associate Partner in the Consulting Workforce.

   Employees employed by Accenture Technology Solutions – US, Inc., however, must be classified as an Associate Partner or Senior Manager to be eligible to participate in the Retirement Plan. Additionally, effective January 1, 2003, all employees of Accenture HR Services, Inc. are eligible to participate regardless of their employment classification (if they meet the other eligibility requirements).

With the exception of employees of Accenture Technology Solutions – US, Inc. and Accenture HR Services, Inc. described in the paragraph above, if you are employed by a subsidiary of Accenture, you will be eligible for the Retirement Plan only if you transferred employment from Accenture to the subsidiary **and** you were eligible for the Retirement Plan immediately prior to your transfer.

You are not eligible to participate in the Retirement Plan if you are a partner of an employer, an independent contractor, a leased employee, or an employee who is covered by a collective bargaining agreement unless the collective bargaining agreement specifically provides for participation in the Retirement Plan. In addition, you are not eligible to participate in the Retirement Plan if you are a participant in the Accenture United States Transfer Retirement Plan. If you do not satisfy the eligibility requirements described above, any subsequent determination by your employer, a government agency, a court, or other third party that you are an eligible employee will not have a retroactive effect for purposes of your eligibility to participate in the Retirement Plan, even if the determination is applicable to prior years.

If you meet the eligibility requirements described above, you will become a participant in the Retirement Plan on the January 1, May 31 or July 1 as of which you have completed one Year of Service and remain employed by Accenture.

### Rehired Participants

If you terminate employment after becoming a Retirement Plan participant and are reemployed by Accenture, you will become an active participant in the Retirement Plan on the later of your date of reemployment or the date you become eligible for participation in the Retirement Plan. You will receive credit for all your Years of Service and Years of Benefit Service that you had earned prior to your termination of employment.

THE RETIREMENT BENEFIT

### Summary of Retirement Benefits

Your retirement benefit is calculated under a formula that considers your eligible pay and Years of Benefit Service with Accenture. You may begin to receive retirement benefits on your Normal Retirement Date, Deferred Retirement Date, or Early Retirement Date. The Retirement Plan offers several forms of payment. If you are married, spousal consent may be required to elect certain forms of payment.

## Benefit Formula

Your normal monthly retirement benefit is calculated under the following formula:

- 1.25% of your Average Monthly Earnings multiplied by your Years of Benefit Service (maximum of 25) **plus**

- $20 multiplied by your Years of Benefit Service (maximum of 25).

However, the current maximum monthly retirement benefit any employee can receive is $2,250.

Special rules may apply in calculating your benefit under the Retirement Plan if you became employed by Accenture between July 1, 1999 and June 30, 2001 and you were employed by Arthur Andersen LLP immediately before you were employed by Accenture.

## TYPES OF RETIREMENT BENEFITS

### Normal Retirement Benefit

The normal retirement benefit is payable beginning on your Normal Retirement Date. Your Normal Retirement Date is the first day of the month following the date you attain age 62 (your normal retirement age). You are fully vested (that is, you have a nonforfeitable right to your accrued benefit) when you reach age 62.

### Deferred Retirement Benefit

The deferred retirement benefit is payable beginning on your Deferred Retirement Date. Your deferred retirement benefit is a monthly benefit equal to your normal retirement benefit calculated based on your Average Monthly Earnings and Years of Benefit Service as of your Deferred Retirement Date.

In general, you may not begin to receive your Retirement Plan benefits until you terminate employment with Accenture and all of its affiliates. However, in certain circumstances, you may elect to begin your benefits after you attain age 70½ even if you continue to work for Accenture (or an Accenture affiliate). If you make such an election, the benefits you accrue after your benefits have commenced will be actuarially reduced to reflect benefits paid to you.

### Early Retirement Benefit

The early retirement benefit is payable on your Early Retirement Date. You may elect to have your early retirement benefit commence on your Early Retirement Date or on the first day of any month after your Early Retirement Date. Unless your age and Years of Service (both are rounded down) total 80 at your Early Retirement Date, your early retirement benefit will be reduced to reflect that your benefits may be paid for a longer period of time than if you began receiving your benefits at your Normal Retirement Date. Your monthly benefit will be reduced by 0.5% for each month by which payment of your benefit precedes your 62nd birthday. This reduction will be applied before applying the Retirement Plan's cap on the monthly benefit (currently $2,250).

## Deferred Vested Benefit

If you terminate employment before your retirement or death, but after you have completed at least 5 Years of Service, you will have a nonforfeitable right to 100% of your benefit earned to the date of your termination. If you terminate employment before completing 5 Years of Service, you will forfeit your benefit. (If you are reemployed by Accenture, you may continue to vest in your benefit.)

Payment of your deferred vested benefit normally will commence when you reach age 62. However, you may elect to have your monthly deferred vested benefit commence after you have attained age 55. If you elect to commence your benefit after age 55 but before age 62, your deferred vested benefit will be reduced to reflect that your benefits may be paid for a longer period of time than if you began receiving your benefits at age 62. Your monthly benefit will be reduced by 0.5% for each month by which payment of your benefit precedes your attainment of age 62. This reduction will be applied after applying the Retirement Plan's cap on the monthly benefit (currently $2,250). If, however, the present value of your deferred vested benefit is determined to be $5,000 or less, your benefit will be paid to you in a lump sum.

## Reemployment

If you terminate employment after becoming a Retirement Plan participant and are reemployed by Accenture, you will receive credit for all your Years of Service and Years of Benefit Service that you had earned prior to your termination of employment. If you previously received a lump sum payment of your accrued benefit, upon your subsequent termination of employment, your retirement benefit will be determined in accordance with the rules of the Retirement Plan then in effect based on your combined periods of employment, but it will be reduced by the amount of your accrued benefit that you previously received.

If you are receiving a monthly retirement benefit and you are reemployed before you reach age 70½, your retirement payments will be suspended. Upon your subsequent retirement, your retirement benefit will be determined in accordance with the rules of the Retirement Plan then in effect based on your combined periods of employment, but reduced to take into account the payments that you previously received. If you are reemployed after you reach age 70½, your reemployment will not affect benefits payable under the Retirement Plan with respect to your prior employment.

## HOW THE BENEFIT IS PAID

### Normal Forms of Payment

- **Not Married—Life Annuity:** Your benefits will be paid in the form of a life annuity if you are not legally married on the date payments commence and you do not waive the life annuity form of payment. If you are married, you may elect to receive your benefit in the form of a life annuity if you legally waive the qualified joint and survivor annuity form of payment with your spouse's consent (as described below). The life annuity is a monthly benefit payable during your lifetime.

- **Married—Qualified Joint and Survivor Annuity:** Your benefits will be paid in the form of a qualified joint and survivor annuity if you are legally married on the date payments commence and you do not waive the qualified joint and survivor annuity (as described below). The qualified joint and survivor annuity is an actuarially reduced monthly benefit payable during your lifetime, and if your spouse is living at your date of death, payment of 50% of such reduced monthly benefit to your spouse until your spouse's death. Your spouse means the spouse to whom you were married at the date payment of your benefits commenced. You may elect to have a 75% or 100% qualified joint and survivor annuity method of payment instead of the 50% qualified joint and survivor annuity method of payment described above without your spouse's consent.

If you are married, you may waive the qualified joint and survivor annuity and elect either a life annuity or an optional form of payment described below. Your election will be effective only if your spouse consents to the election in writing and his or her consent acknowledges the effect of the waiver and is witnessed by a notary public. In addition, your election to waive the qualified joint and survivor annuity must be made within the 90-day period before your payments begin.

## Optional Forms of Payment

In lieu of the normal forms of payment described above, before payment of your benefits has commenced, you may elect to receive an actuarially equivalent benefit in one of the following forms:

- **Life and 10-Year Certain Annuity:** A reduced monthly payment terminating at your death and, if you die within 120 months of the date payments commenced, a continuing monthly payment of the same amount to a person designated by you for the balance of the 120-month period.

- **Joint and 50%, 75%, or 100% Survivor Annuity:** A reduced monthly payment during your lifetime. If the person designated by you (other than your spouse) is living at the time of your death, such person will receive payments for such person's lifetime equal to 50%, 75%, or 100% of the monthly amount payable to you during your life.

- **Indexed Life Annuity:** A reduced monthly retirement benefit payable during your lifetime, with the last payment to be made for the month in which you die. As of January 1 of each calendar year, the amount of the monthly benefit will be increased by 3%.

- **Indexed Joint and 50% Spousal Annuity:** A reduced monthly payment during your lifetime and, if your spouse is living at the time of your death, payment of 50% of the last amount payable to you while living to your spouse as long as your spouse lives. Your spouse means the spouse to whom you were married at the date payment of your benefits commenced. As of January 1 of each calendar year, the amount of the monthly benefit payable will be increased by 3%.

Payment of your Retirement Plan benefits under any of the normal or optional forms of payment must satisfy the IRS's required minimum distribution requirements.

**Mandatory Lump Sum Payment**

If the present value of your vested accrued benefit does not exceed $5,000 as of your benefit distribution date, your benefit will be paid to you in a lump sum.

## SURVIVING SPOUSE BENEFIT

If you die prior to the date on which you were to begin receiving benefits under the Retirement Plan, your spouse will receive a benefit if you were legally married on the date of your death. The amount of your spouse's benefit will be an amount determined as follows:

1. If, as of the date of your death, you had attained your Normal Retirement Date, 50% of your monthly retirement benefit determined as if you had retired and benefit payments had commenced immediately prior to your date of death with benefits payable in a qualified joint and survivor annuity form.

2. If, as of the date of your death (or earlier retirement), you had attained your Early Retirement Date, 50% of the monthly early retirement benefit (based upon your Years of Benefit Service as of your date of death or earlier retirement) to which you would have been entitled at your Normal Retirement Date with benefits payable in a qualified joint and survivor annuity form.

3. If, as of the date of your death (or earlier termination of employment), you had not met the requirements in (1) or (2) above, 50% of the monthly deferred vested benefit (based upon your Years of Benefit Service as of your date of death or earlier termination of employment) to which you would have been entitled at your Normal Retirement Date with benefits payable in a qualified joint and survivor annuity form.

Your spouse's benefit will be a monthly benefit for the life of your spouse. In lieu of a life annuity, your spouse may elect, prior to commencement of the spouse's benefit, to receive an actuarially reduced spouse's benefit, the amount of which is increased by 3% as of January 1 of each calendar year.

Payment of your spouse's benefit will begin on the later of (1) the first day of the month following your date of death or (2) the date that would have been your Normal Retirement Date. However, your spouse may elect to have his or her payments begin on the earliest date on which your benefits could have commenced. Your spouse's monthly benefit will be reduced for commencement prior to what would have been your 62nd birthday as provided under the Retirement Plan. If the present value of your spouse's benefit does not exceed $5,000, the benefit will be paid in a lump sum.

## FORM OF ELECTIONS

Each election or request required or permitted to be made must be made in accordance with the rules and procedures established by the Plan Administrator and shall be effective as determined by the Plan Administrator.

## MISCELLANEOUS

The Plan Administrator has complete discretion to determine all questions arising under the Retirement Plan, such as questions arising because of ambiguities, inconsistencies, or omissions in the plan document and questions as to the rights or eligibility of employees or participants and their beneficiaries and the value of their benefits under the Retirement Plan. Any interpretation of the Retirement Plan and any good faith decision on any matter within the Plan Administrator's discretion is final and binding on all persons. Benefits will be paid under the Retirement Plan only if the Plan Administrator, or its delegate, decides in its discretion that the claimant is entitled to them.

A misstatement or other mistake of fact shall be corrected when it becomes known, and the Plan Administrator shall make such adjustment as it considers equitable and practicable. For example, if a participant or beneficiary receives a payment from the Retirement Plan that is greater than the payment that should have been made to the participant or beneficiary, or if a person receives an erroneous payment from the Retirement Plan, the Plan Administrator has the right to recover the excess amount or erroneous payment from the recipient. In certain circumstances, the Plan Administrator may deduct the amount of the excess or erroneous payment from any future benefits payable to the participant or beneficiary.

Accenture expects and intends that the Retirement Plan will continue indefinitely. However, Accenture reserves the right to amend or terminate the Retirement Plan at any time in its sole discretion.

Nothing in this summary says or implies that participation in the Retirement Plan is a guarantee of continued employment with Accenture or its affiliates, nor is it a guarantee that benefit levels will remain unchanged in future years.

Your benefits under the Retirement Plan are not subject to the claims of your creditors and cannot be assigned in any way or pledged as security for a loan, except as may be required by the tax withholding provisions of the Internal Revenue Code or any state's income tax act, by the enforcement of a federal tax levy, by a qualified domestic relations order (QDRO) or pursuant to special IRS rules. If you become divorced or separated, however, a QDRO could require part or all of your benefits to be paid to your spouse or children. You and your beneficiaries can obtain, without charge, a copy of the Retirement Plan's policy and procedures for the submission and approval of a domestic relations order by contacting the Plan Administrator.

All contributions to the Retirement Plan are actuarially determined and are made by Accenture.

Each participant must notify the Plan Administrator of his or her post office address and must promptly notify the Plan Administrator of each change of address. Neither the Plan Administrator nor an employer is required to search for or locate a participant or the participant's beneficiary.

In the unlikely event that the Retirement Plan becomes a "top-heavy" plan in any plan year, the vesting schedule and minimum benefit under the Retirement Plan would be determined in accordance with special rules that are stated in the Retirement Plan document. The Retirement Plan would become a "top-heavy" plan if "key employees" have more than 60% of the accrued benefits of all participants in Accenture's tax-qualified plans.

GLOSSARY OF TERMS

**Accrued Benefit**
The monthly retirement benefit payable at your Normal Retirement Date (or your Deferred Retirement Date if you have passed your Normal Retirement Date) in the form of a life annuity.

**Average Monthly Earnings**
Generally, the monthly average of the Earnings paid to you during the 3 consecutive benefit computation periods for which your Earnings were the highest within the last 10 benefit computation periods prior to your termination of employment.

**Benefit Computation Period**
Each 12-month period beginning on July 1 and ending on the following June 30.

**Benefit Distribution Date**
The date following your termination of employment as of which the present value of your vested accrued benefit may be paid to you in a lump sum.

**Deferred Retirement Date**
The first day of the month following the date you retire after age 62.

**Early Retirement Date**
The first day of the month following the date you retire before your Normal Retirement Date, but after you have completed 5 Years of Service and attained age 55.

**Earnings**
Generally, the total amount paid to you by Accenture as taxable compensation, plus amounts that would have been taxable except for your election to make tax-deferred 401(k) contributions under the Profit Sharing Plan or your election of a benefit under the Accenture United States Flexible Benefits Program or a qualified transportation fringe plan that is in lieu of cash compensation. Your Earnings do not include taxable expense reimbursements or allowances, any income attributable to stock or stock-based compensation programs, and severance payments. As required by the Internal Revenue Code, Earnings for any benefit computation period in excess of $200,000 (as adjusted periodically by the Internal Revenue Service) are not used to determine your benefits under the Retirement Plan.

**Normal Retirement Date**
The first day of the month following the date you attain age 62 (your normal retirement age).

**Plan Administrator**
The administrator of the Retirement Plan. Accenture is the Plan Administrator. Accenture may delegate responsibilities for plan administration to other persons.

**Plan Year**
The twelve-month period ending on each May 30.

**Profit Sharing Plan**
Accenture United States Profit Sharing and 401(k) Plan.

**Year of Benefit Service**
Each 12-month period of association as an employee with Accenture during which you are an eligible employee under the Retirement Plan. Years of Benefit Service include both full and fractional years.

**Year of Service**

Each 12-month period of association as an employee with Accenture or an Accenture affiliate. Years of Service include both full and fractional years.