IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OMAR HAKIM, | ) |
| | ) |
| Plaintiff, | )    Civil Action No.  08-CV-3682 |
| v. | ) |
| | )    Judge Robert M. Dow, Jr. |
| ACCENTURE UNITED STATES | ) |
| PENSION PLAN and  ACCENTURE LLP, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS THE COMPLAINT

Defendants ACCENTURE UNITED STATES PENSION PLAN (the "Plan") and

ACCENTURE LLP ("Accenture"), by their attorneys Seyfarth Shaw LLP, and pursuant to Fed.

R. Civ. P. 12(b)(6), submit this memorandum in support of their motion to dismiss the complaint.

### INTRODUCTION

The complaint contains five counts, each of which focuses on a purported lack of notice

to plaintiff Omar Hakim of the July 1, 1996 Amendment ("1996 Amendment") to the Plan.[1]  The

1996 Amendment reduced plaintiff's rate of benefit accrual, and plaintiff asserts that the alleged

lack of notice renders the 1996 Amendment invalid.

Count I alleges that the 1996 Amendment violated ERISA § 204(h), 29 U.S.C. § 1054(h)

(1996), ("ERISA § 204(h)") because defendants failed to provide plaintiff with written notice of

the 1996 Amendment *fifteen days prior to its adoption*.

Count II alleges that the 1996 Amendment failed to comply with ERISA § 204(h)

because Defendants did not provide Plaintiff with notice that the 1996 Amendment *might reduce*

*his benefit accruals*.

---

[1] The defendant Plan is a defined benefit plan.  The Plan, formerly known as the Accenture United States Retirement Plan, is the successor  to the Andersen Consulting LLP Retirement Plan which, in turn is the successor to the Andersen Worldwide Societe Cooperative United States Retirement Plan.  Compl. ¶ 2.

Count IV is a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ("ERISA § 502(a)(1)(B)"), the validity of which turns entirely on whether plaintiff received proper notice under ERISA § 204(h). Plaintiff argues that his benefits should be recalculated under the Plan in effect prior to the 1996 Amendment.

Counts III and V allege that certain of the Plan's Summary Plan Descriptions ("SPDs") failed to provide plaintiff with a comprehensible description of eligibility for participation in the Plan in violation of ERISA § 102, 29 U.S.C. § 1022(b) ("ERISA § 102") and failed to provide plaintiff with an SPD that sets forth his ERISA rights and administrative claims procedures, in violation of ERISA § 104(c), 29 U.S.C. § 1024(c) ("ERISA § 104(c)"), respectively. Plaintiff also seeks statutory penalties in Count V because he did not receive plan documents in 2003, under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1) ("ERISA § 502(c)(1)").

Defendants submit that this Court should dismiss the complaint on several independent and overlapping grounds. First, Counts I, II, III and IV of the complaint are barred by the Separation Agreement/Employee Release (the "Release") that plaintiff executed on May 15, 2003.

Second, even if the Court decides that plaintiff may proceed despite the Release he signed, Counts I through IV still are not viable because those claims are time-barred by the Illinois limitations period that ERISA adopts as to those counts.

Third, Count III should be dismissed because, as a matter of law, the SPDs complied with ERISA § 102.

Fourth, Count V should be dismissed because, as a matter of law, (i) the SPDs at issue complied with ERISA § 104(c), (ii) plaintiff does not allege that he made a written request for the SPDs or any other plan documents in 2003, a precondition to stating an ERISA § 502(c)(1) claim, and (iii) Count V is time-barred by the Illinois limitation period adopted by ERISA as to that count.

## FACTS ALLEGED IN THE COMPLAINT[2]

Accenture (then Andersen Consulting LLP) hired plaintiff on October 4, 1993 in its Los Colinas, Texas office. Compl. ¶ 12. At the time of hire, plaintiff participated in the Plan. Compl. ¶¶ 13, 14. During most of his employment with Accenture, plaintiff was eligible for and did accrue benefits under the Plan. Compl. ¶ 14.

Accenture adopted an amendment to the plan in 1996, which altered the eligibility rules set out in Plan Section 2.2(b). Compl. ¶ 15-16. Although plaintiff admits that Accenture distributed a notice of the 1996 Amendment, he complains that *he* did not receive notice. Compl. ¶¶ 18-19. The effect of the 1996 Amendment was to safeguard (i.e. "grandfather") a participant's eligibility and accrual of benefits under the terms of the Plan in effect prior to July 1, 1996 *until* the participant transferred or promoted to a new service line within Accenture. Compl. ¶ 17. On December 16, 1999, plaintiff transferred to a new service line within Accenture, at which point his Plan benefits ceased to accrue in accordance with the 1996 Amendment. Compl. ¶¶ 20 -22.

Plaintiff alleges that he did not know that his pension benefits ceased to accrue until after he was terminated on May 16, 2003. Compl. ¶¶ 23, 24. However, plaintiff admits to receiving copies of the 1997 and 1999 SPDs, which contained descriptions of eligibility, including the new accrual rule set forth in the 1996 Amendment, *before* he transferred to the new service line within Accenture on December 16, 1999. Compl. ¶ 68. The individual benefit statement plaintiff received on June 30, 2000, moreover, clearly states that he would no longer accrue pension benefits because of his transfer:

> Because of your current employment classification, you are ineligible to participate in the Retirement Plan. However, you have engaged a monthly benefit based on your prior period(s) as an eligible employee. Contact the Andersen Consulting Benefits Information Center and select the Retirement Plan option if you would like more information.

Exhibit A hereto (HAKIM 00033).[3]

---

[2] The facts in the complaint are taken as true only for motion to dismiss purposes.

Plaintiff terminated his employment with Accenture on May 16, 2003. Compl. ¶ 24. His termination was part of a reduction in force, and as a part of that reduction, Accenture offered all affected employees a Separation Benefits Plan in exchange for signing a release of claims. Plaintiff's Release is attached as Exhibit B hereto.[4] The Release provided that plaintiff "forever release[d], waiv[ed] and discharge[ed] Accenture [ ] from any and all claims of any nature whatsoever, known or unknown which you now have, or at any time may have had, against the Released Parties up to and including the date you signed this Agreement." *See* Exhibit B hereto, internal pg. 5.

On July 21, 2003, plaintiff contacted defendants by email to request "help in correcting [his] pension eligibility dates." Compl. ¶ 26. Defendants have attached the July 21, 2003 email as Exhibit C hereto (HAKIM 00377).[5] On December 12, 2003, plaintiff was told that, pursuant to the terms of the 1996 Amendment, he was designated ineligible to accrue benefits after December 16, 1999. Compl. ¶ 28.

Almost four years later - on July 9, 2007 – plaintiff notified defendant that he intended to file a lawsuit. Compl. ¶ 30. Plaintiff then pursued an administrative claim for benefits, which

---

[3] Plaintiff attached as Exhibit 3 to the complaint a letter dated April 2, 2008. The letter references this benefit statement. Comp. Ex. 3, at pg. 3 (also Exhibit A hereto). Under Fed. R. Civ. P. 10(c), "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (describing Fed. R. Civ. P. 10(c) as "permissive in nature" and holding that "[a] plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but a defendant may introduce pertinent documents if the plaintiff failed to do so"); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("The exception to Rule 12(b) that these cases carve . . . has been thought to follow from Rule 10(c); the concern is that, were it not for the exception, the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved his claim had no merit.").

[4] The Court may properly consider the release in connection with this motion without converting it to a motion for summary judgment because its authenticity cannot be disputed and it is central to the complaint. *Tierney*, 304 F.3d at 738-39 (considering letters on motion to dismiss because the letters were central to the complaint and their authenticity was not in dispute).

[5] The Court may properly consider the July 21, 2003 email in connection with this motion without converting it to a motion for summary judgment because it is referred to his the complaint, its authenticity cannot be disputed, and it is central to the complaint. *See* n. 4, *supra*.

the Accenture ERISA Benefit Claims Committee (the "Committee") denied on November 20, 2007. Compl. ¶ 31-32; Compl. Ex. 2. Plaintiff appealed the denial of his claim for benefits, and this appeal was denied on April 2, 2008. Compl. ¶¶ 33, 34; Compl. Ex. 3. Plaintiff commenced this action on June 27, 2008.

**ARGUMENT**

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is proper where no set of facts is alleged that would entitle a plaintiff to relief. *Szumny v. American General Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001). A plaintiff "may plead himself out of court by including factual allegations which, if true, show that his legal rights were not invaded." *Lekas v. Briley*, 405 F.3d 602, 613 (7th Cir. 2005). In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), the Supreme Court said, in the context of a Rule 12(b)(6) motion, that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires *more than labels and conclusions*, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-5 (citations omitted; emphasis added).

**I.      COUNTS I, II, III AND IV SHOULD BE DISMISSED BASED UPON PLAINTIFF'S UNEQUIVOCAL RELEASE OF "ANY AND ALL" CLAIMS.**

Plaintiff generally released "any and all" claims against defendants by accepting the separation benefits and signing the Release. *See* Exhibit B hereto. "It is well-established a general release is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry." *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1990) (holding a general release barred the ERISA claims); *Lefebvre v. Ivex Packaging Corp.*, 1998 U.S. Dist. LEXIS 9121 (N.D. Ill. June 10, 1998) (enforcing release of ERISA claims that was "unambiguous as a matter of law"); *accord Chaplin v. Nationscredit Corp.*, 307 F.3d 368 (5th Cir. 2002); *Leavitt v. Northwestern Bell Telephone Co.*, 921 F.2d 160 (8th Cir. 1990). Plaintiff's Release is just like the releases in these cases.

Defendants add that nothing in the anti-alienation provision of ERISA, 29 U.S.C. § 1056(a)(1)[6] prevents contested pension claims from being released. The Seventh Circuit has found that pension entitlements are subject to the anti-alienation provision of ERISA, but contested pension claims are "simply outside the realm of the [anti-alienation] provision." *Lynn v. CSX Transp, Inc.,* 84 F.3d 970, 975 (7th Cir. 1996) (*quoting Lumpkin v. Envirodyne Indus., Inc.,* 933 F.2d 449, 456 (7th Cir. 1991)). Contested pension claims include not only those claims that were actually contested before signing a release, but also those claims that the claimant had actual or constructive knowledge of at the time of signing the release. *Lynn,* 84 F.3d at 975.

Plaintiff signed his Release on May 15, 2003. Plaintiff had actual knowledge of the adverse effect of the 1996 Amendment on his eligibility to accrue Plan benefits no later than 2000 when he received the his individual Benefit Statement. The Benefit Statement advised him that "[b]ecause of [his] current employment classification, [he was] ineligible to participate in the Retirement Plan." *See* Exhibit A hereto. Plaintiff also alleges that he received the 1997 and 1999 SPDs *prior* to his transfer on December 16, 1999, Compl. ¶ 68, and received the 2001 and 2003 SPDs before he signed his Release, Compl. ¶ 71. Counts I through IV in the complaint accrued prior to, and are barred, by the Release plaintiff signed in 2003.

## II.    COUNTS I, II, III AND IV SHOULD BE DISMISSED BECAUSE THEY ARE TIME-BARRED.

### A.    The Illinois Five-Year Statute of Limitations Should Apply To The Claims Asserted In Counts I, II, III and IV.

Counts I, II, III and IV in the complaint focus on an alleged omission -- the failure to provide proper statutory notice of the 1996 Amendment -- that occurred over a decade ago. Compl. ¶¶ 45, 55, 58. ERISA does not contain a statute of limitations for statutory notice claims. It is well-established that courts look to analogous state statutes of limitations where no express

---

[6] ERISA provides that "each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

limitations period is specified in a federal statute as old as ERISA.[7] *See, e.g., Jenkins v. Local 795 Int'l Bhd. of Teamsters Pension Plan*, 713 F.2d 247, 252 (7th Cir. 1983); *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1137 (7th Cir. 1992); *Teumer v. General Motors Corp.*, 34 F.3d 542, 546 (7th Cir. 1994) ("when Congress fails to provide a statute of limitations for claims arising under federal statutes, the courts generally turn to the most analogous state statute of limitations"). This requires courts to "characterize the essence" of the federal claim in question and find the most analogous cause of action in Illinois law. *Teumer*, 34 F.3d at 546-47, *citing Wilson v. Garcia*, 471 U.S. 261, 267-70 (1985).

The most analogous Illinois statute of limitations for Counts I, II, III and IV is the catch-all limitations period for "all civil actions not otherwise provided for," which is five-years. *See* 735 ILCS 5/13-205; *see, e.g., Romero v. Allstate Corp.*, 404 F.3d 212, 221 (3rd Cir. 2005) (concluding that Pennsylvania's residual six-year limitations period applied to the § 204(h) claim); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1181-82 (3rd Cir. 1992) (holding that an ERISA § 204(g) claim involves "complex issues of statutory interpretation" and has no counterpart in Pennsylvania law; therefore, the applicable statute of limitations was Pennsylvania's general six-year period").

Count IV is styled as a claim for benefits under ERISA § 502(a)(1)(B), but in substance it is a statutory notice claim. Count IV is just an artful way of restating Counts I and II because it seeks benefits that would have accrued but for the 1996 Amendment *simply because that amendment did not comply with ERISA § 204(h)*. Compl. ¶ 75. "It is clear that the characterization of a particular action for the purpose of selecting the most appropriate state statute of limitations is ultimately a question of federal law. In order to determine the appropriate state statute of limitations, the court must first properly characterize the action." *Jenkins*, 713 F.2d at 251-52.

---

[7] *See* 28 U.S.C. § 1658(a), providing a federal catch-all limitations period of four years, applies only to statutes that post-date December 1, 1990.

The Seventh Circuit has held that where a "complaint is based on § 502(a)(1)(B) of [ERISA], *and* [an employee] is seeking pension benefits and a clarification of his rights *under the terms of an employee pension benefit plan based on the written terms of the Plan*, [ ] the most analogous Illinois statute is the one for actions on a written contracts." *Id.* (emphasis added). But resolution of Count IV rests upon an interpretation and application of ERISA statutory provisions, rather than upon an interpretation and application of ERISA plan provisions. *Jenkins* has no application to Count IV because Count IV does not seek to interpret Plan terms. Count IV seeks to invalidate the 1996 Amendment by relying solely on ERISA § 204(h). The five-year catch-all Illinois limitations period also should apply to Count IV.[8]

**B.      The Five-Year Limitations Period Commenced No Later Than June 30, 2000.**

The Seventh Circuit has stated: "Even when relying on an analogous state statute of limitations, [courts] look to federal common law for purposes of determining the accrual date of a cause of action under a federal statute such as ERISA." *See, e.g., Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 65 (7th Cir. 1996); *Tolle*, 977 F.2d at 1138. In a federal question case, and in the absence of any contrary directive from Congress, courts employ the federal "discovery rule" to determine when the federal claim accrues for limitations purposes. *Romero*, 404 F.3d at 222, *citing Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) (holding that the discovery rule is "read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from state law)"). Under the discovery rule, a claim will accrue when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim. *Travelers Cas. & Sur. Co. of Am., Inc. v. Northwestern Mut. Life Ins. Co.*, 480 F.3d 499, 504 (7th Cir. 2007).

---

[8] Count III also is a claim of statutory interpretation with no counterpart in Illinois law. In Count III, plaintiff alleges that defendants violated ERISA § 102 because the SPDs at issue failed to provide a comprehensible description of eligibility for participation in the Plan. The Illinois catch-all five-year limitations period should govern this claim as well.

Courts have found that an ERISA non-fiduciary claim will accrue before a formal administrative denial of benefits when there has been a "clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary." *Daill*, 100 F.3d at 66; *see also, Miles v. N.Y. State Teamsters Conf. Pension and Retirement Fund*, 698 F.2d 593, 598 (2nd Cir. 1983); *Romero*, 404 F.3d at 223 (applying the "clear repudiation of certain rights" standard in the ERISA § 204(h) context); *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 521 (3d Cir. N.J. 2007) ("We …follow the *Seventh*, Eighth, and Ninth Circuits in holding that an ERISA claim accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff -- regardless of whether the plaintiff has filed a formal application for benefits.  In other words, *some 'event other than a denial of a claim' may trigger the statute of limitations by clearly alerting the plaintiff that his entitlement to benefits has been repudiated.*") (emphasis added).

Counts I, II and IV challenge under ERISA § 204(h) the legality and thus effectiveness of a Plan amendment that became effective on July 1, 1996. Compl. ¶ 47.  Plaintiff alleges "Defendant failed to provide Plaintiff with written notice of the Purported Amendment until some time after his termination of employment." Compl. ¶ 50.  However, specific allegations in the complaint contradict this conclusory assertion.  Plaintiff alleges that he received the 1997 and 1999 SPDs, which contain the benefit accrual language he seeks to invalidate, *before December 1999*. Compl. ¶ 68.  Documents integral to the complaint reveal as well that plaintiff knew of the 1996 Amendment since no later than June 30, 2000, when he received his individual Benefit Statement that described his ineligibility to participate in the Plan at issue in the complaint.  *See* Exhibit A hereto.  Plaintiff cannot plausibly dispute that he was informed on three separate occasions that he was not eligible for post-transfer pension benefits *more than five years prior to the commencement of this action. See Twombly*, 127 S.Ct. at 1964-5 (2007) (holding that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires *more than labels and conclusions.*" (citations omitted; emphasis added); *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (same).

Likewise, as to Count III, plaintiff received the first SPD containing the purported "incomprehensible description of eligibility" in 1997. Compl. ¶ 68. He transferred to an ineligible position in December 1999. Am. Compl. ¶ 68. In 2000, he received notice that he was ineligible to receive benefits. *See* Exhibit A hereto. Plaintiff thus could have brought a claim at that point; yet, he waited well more than five years to commence this action. Counts I through IV of the complaint are time-barred and should be dismissed.

## III. COUNT THREE SHOULD BE DISMISSED BECAUSE THE SPDS AT ISSUE IN THE COMPLAINT, AS A MATTER OF LAW, COMPLIED WITH ERISA § 102.

Plaintiff alleges that the "eligibility requirements" set forth in the 1997, 1999, 2001, and 2003 SPDs fail to comply with the requirements of ERISA § 102(a) and (b). Compl. ¶¶ 66, 67, 69, and 70. ERISA § 102(a) provides, in relevant part:

> The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participant and beneficiaries of their rights and obligations under the plan.

ERISA § 102(b) provides, in relevant part:

> The summary plan description shall contain the following information: ...the plan's requirements respecting eligibility for participation and benefits; ... circumstances which may result in disqualification, ineligibility, or denial or loss of benefits;....

The Seventh Circuit has stated:

> ERISA [§ 102] requires that an SPD be "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. §1022(a)(1). In particular, an SPD must list the circumstances in which disqualification, ineligibility, denial, or loss of benefits may occur. *See* 29 U.S.C. §1022(b); 29 C.F.R. § 2520.102-3.

*Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1021 (7th Cir. 1998).

To fulfill the requirements of ERISA § 102, the plan administrator must take into account the education of typical plan participants and the complexity of the plan's terms. "Consideration of these factors will usually require the limitation or elimination of technical jargon and of long, complex sentences." 29 C.F.R. § 2520.102-2(a).  Department of Labor ("DOL") regulations also require that an SPD's format "not mislead or fail to inform participants and beneficiaries about the plan," and that "any limitations or restrictions of plan benefits must not be minimized, rendered obscure, or otherwise made to appear unimportant." 29 C.F.R. § 2520.102-2(b).  An SPD, however, can satisfy the requirements of ERISA § 102 even if it does not explain in detail each and every situation in which the participant would be ineligible for benefits. *Lorenzen v. Employee Retirement Plan of Sperry and Hutchinson Co., Inc.*, 896 F.2d 228, 236 (7th Cir. 1990); *Cummings v. Briggs & Stratton Retirement Plan*, 797 F.2d 383, 387 (7th Cir. 1986). Rather, SPDs need only advise the participant of the plan's terms and conditions in situations common enough to affect a sizable group of participants. *Tegtmeier v. Midwest Operating Eng'r. Pension Trust Fund,* 390 F.3d 1040, 1048 (7th Cir. 2004).

The 1997 SPD complied with ERISA § 102, as a matter of law.[9]  That SPD provided notice that a change in employment classification adversely affects Plan benefit accruals.  The 1997 SPD's section entitled "Becoming Eligible For the Benefits" stated:  "You must meet three conditions to be eligible for an Andersen retirement plan benefit:  You must be eligible to join the retirement plan, *and* You must become a plan member, *and* You must complete the vesting requirements."  *See* Exhibit D hereto, pg. RT-3.  Under a section entitled "Eligibility," the 1997

---

[9] Courts in this Circuit consider plan documents attached to a defendant's motion to dismiss, but not to the plaintiff's complaint, without converting the defendant's motion to one for summary judgment. *See, e.g., Ruhnke v. Pipe Fitters' Welfare Fund*, 2005 U.S. Dist. LEXIS 15963, at *2 (N.D. Ill. Aug. 4, 2005) (considering plan amendments attached to defendant's 12(b)(6) motion to dismiss without converting to motion for summary judgment); *Rizzo v. Bankers Life & Casualty Co.*, 2004 U.S. Dist. LEXIS 7386, at *2-3 (N.D. Ill. April 28, 2004) (considering group health policy, summary plan description, and reimbursement agreement attached to defendant's 12(b)(6) motion to dismiss without converting to motion for summary judgment); *see also Nielsen v. Greenwood*, 849 F.Supp. 1233, 1248-49 (N.D. Ill. 1994) (noting that "[d]espite frequent references to those offering materials, plaintiffs failed to attach any of them to their complaint," and considering SEC filings attached to defendants' motion to dismiss without converting motion to one for summary judgment).

SPD lists several eligible employment categories and then states "as long as you remain in an eligible employment category, you are an *active* plan member. If you transfer or are promoted out of an eligible employment category, you become *inactive*, however, you are still a plan member. *See* Exhibit D hereto, pg. RT-3. The 1997 SPD further specified the circumstances that may result in ineligibility in a section entitled "If Your Employment Category Changes," stating "[i]f you move out of an eligible employment category, your plan membership and benefits could be affected." *See* Exhibit D hereto, pg. RT-4. Additionally, that SPD stated: "Generally, your membership status and vesting service are not affected when you move out of an eligible employment category. However, you will not continue to earn benefit service and earnings credit after your classification changes . . . ." *See* Exhibit D hereto, pg. RT-22. Finally, in a Section entitled "Benefit Service" the SPD stated: "Benefit service is the amount of time spent in an eligible employment category during your career with [Accenture] . . . . When you move out of an eligible employment category, you stop accruing benefit service." *See* Exhibit D hereto, pg. RT-13.

The 1999, 2001 and 2003 SPDs referred to in the complaint also complied with ERISA § 102. Each of those SPDs provided notice that a change in employment classification could adversely affect Plan benefit accruals. These SPDs all contained a section entitled "Eligibility" and stated in pertinent part: "If you were employed prior to July 1, 1996, you will cease to accrue benefits under the Retirement Plan if you transfer from the service line in which you were employed on June 30, 1996, to a service line that is not listed below." *See* Compl. Ex. 4, internal pg. 2; Compl. Ex. 5, internal pg. 1-2; and Exhibit E hereto, internal pg. 1-2. Directly below the statement is a list of the only service line classifications that are eligible for the Plan. *See id.*

The SPDs thus explained the eligibility and cessation of benefit accruals in short, clear sentences. Furthermore, the SPDs' formatting was sufficient to guide an average participant towards relevant language. The SPDs provided notice of how a participant's accruals are adversely affected if changes his employment classification. The SPDs comply with ERISA § 102, as a matter of law, so the Court should dismiss Count III.

IV.   **COUNT V SHOULD BE DISMISSED BECAUSE THE SPDS AT ISSUE COMPLIED WITH ERISA § 104(C) AND BECAUSE COUNT V FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER ERISA § 502(C)(1)(B).**

A.   **The SPDs Complied With ERISA § 104(c) Because They Included A Statement Of ERISA Rights And Administrative Claims Procedures.**

Plaintiff alleges that he is entitled to statutory damages under ERISA § 502(c)(1)(B) because the Plan's 1995, 1997, 1999, 2001, 2003, 2005 and 2007 SPDs did not include a statement of ERISA rights and administrative claims procedures as required by ERISA § 104(c). Compl. ¶ 81.   ERISA § 104(c) provides:

> The Secretary [of Labor] may by regulation require that the administrator of any employee benefits plan furnish to each participant and to each beneficiary receiving benefits under the plan a statement of the rights of participants and beneficiaries under this subchapter.

The Secretary of Labor has so specified in 29 C.F.R. § 2520-102-3(t).   Compl. ¶ 79.

The SPDs all contained a statement of ERISA rights and administrative claims procedures.   Plaintiff fails to allege in the complaint, but the referenced plan documents show, that Accenture divides its SPDs into two parts.   The first part described the benefits provided under the relevant plan, and the second part contained a statement of ERISA rights and administrative claims procedures for all plans, entitled "General Information."   Each of the "General Information" SPDs included information regarding a participant's ERISA rights and the Plan's procedures governing claims for benefits, under a section entitled "Employee Rights and Protections."   There was no violation of ERISA § 104(c) or 29 C.F.R. § 2520-102-3(t). *See* Exhibits F, internal pg. 6-7; G, internal pg. 6-7; H, internal pg. 4-5; I, internal pg. 3-4; J, internal pg. 4; K, internal pg. 4; L, internal pg. 4 hereto.[10]   The Court should dismiss Count V's ERISA § 104 claim.

---

[10] *See* footnote 9 above.

**B.    The Complaint Fails To Allege All Of The Elements of An ERISA §
502(c)(1)(B) Claim.**

Count V also purports to state a claim under ERISA § 502(c)(1)(B). That section
provides:

> Any administrator (B) who fails or refuses to comply with a request for information
> which such administrator is required by this subchapter to furnish to a participant or
> beneficiary (unless such failure or refusal results from matters reasonably beyond the
> control of the administrator) by mailing the material requested to the last known address
> of the requesting participant or beneficiary within 30 days after such request may in the
> court's discretion be personally liable to such participant or beneficiary in the amount of
> up to $100 a day from the date of such failure or refusal , and the court may in its
> discretion order such other relief as it deems proper.

The purpose of Section 502(c)(1) is to compel an administrator to provide materials upon
a written demand from a participant. *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618,
622 (7th Cir. 1987). To establish whether a plan administrator's disclosure obligations have
been triggered, the participant must allege that: (1) the administrator was required by ERISA to
make available to the participant the information requested, and (2) the participant requested the
information in writing. *Kleinhans*, 810 F.2d at 622.

First, a violation of the DOL regulations cannot form the basis for an ERISA §
502(c)(1)(B) claim. *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 406-07 (7th Cir.
1996). Plaintiff attempts to impose a duty to disclose where none exists by relying on ERISA §
104(c) and the accompanying DOL regulation, 29 C.F.R. § 2520.102-3(t). Section 104(c)
creates no disclosure requirement at all, and DOL regulations cannot form the basis for an
ERISA § 501(c)(1)(B) claim. *See Wilczynski*, 93 F.3d at 406 (holding that the Secretary of
Labor does not have the "power to decide that plan administrators' conduct is to be penalized"
under § 501(c)(1)(B)); *Berg v. BCS Fin. Corp.*, 372 F.Supp.2d 1080 (N.D. Ill. 2005)(granting
motion to dismiss § 502(c)(1)(B) claim where plaintiff alleged that the administrator failed to
disclose documents pursuant to 29 C.F.R. § 2560.503-1, a DOL regulation).

Second, ERISA § 502(c)(1)(B) requires a plaintiff to make a *written* request for copies of
plan documents. *Clark v. Hewitt Assoc., LLC*, 294 F.Supp.2d 946, 952 (N.D. Ill. 2003) (granting
defendants' motion to dismiss plaintiff's § 502(c)(1) claim because plaintiff failed to allege that

she requested in writing detailed information on the insurance policy's terms and conditions and the policy itself); *Gassner v. Inter'l Business Machines Corp.*, 2004 U.S. Dist. LEXIS 18069, at *30-31 (N.D. Ill. Sept. 7, 2004) (holding that plaintiff failed to make a written request for the documents and his general requests for benefits failed to comply). Plaintiff vaguely alleges that on July 21, 2003 he made a request for help, but does not allege that he made a written request. Compl. ¶ 80. It is obvious why plaintiff made no such allegation. Nothing in his July 21, 2003 correspondence is a request for copies of the SPD or a description of the administrative appeals process. *See* Exhibit C hereto. Failure to make a written demand is fatal to plaintiff's Count V ERISA § 502(c)(1)(B) claim, and the Court should dismiss that claim.[11]

---

[11] The ERISA § 502(c)(1)(B) claim should be dismissed for additional reasons. Count V does not allege harm resulting from any failure to disclose. *See Clark*, 294 F.Supp.2d at 952. Plaintiff alleges no harm because he actually received notice (before he signed his Release) that the 1996 Amendment would cease his benefit accruals if he transferred to an affected job. *See DeBartolo v. Blue Cross Blue Shield of Ill.*, 375 F.Supp.2d 710, 715 (N.D. Ill. 2005)(dismissing plaintiff's ERISA § 502(c)(1) claim because he failed to show how he was injured as a result of defendant's failure to provide him with a copy of the plan documents).

Plaintiff's Count V § 502(c)(1)(B) claim also is time-barred by the most analogous Illinois statute of limitations. Courts have concluded that Section 502(c) is most analogous to a civil penalty statute. *See e.g., Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) (accepting without discussion district court's application of New York limitations period for statutory penalty claims to plaintiff's Section 502(c) claim); *Bryant v. Food Lion, Inc.*, 100 F. Supp. 2d 346, 377 (D.S.C. 2000) (applying a one-year statute of limitations governing actions under a South Carolina penalty statute); *Adams v. Cyprus Amax Mineral Co.*, 44 F. Supp. 2d 1126, 1140 (D. Colo. 1999) (applying a one-year limitation applicable in Colorado for penalties under the state penal statute). Under Illinois law, any claim for statutory penalties must be make within two years. 735 ILCS 5/13-202. Plaintiff did not bring his ERISA § 502(c)(1)(B) claim within two years after August 20, 2003 when he allegedly did not receive the documents he requested. *See Tritt v. Automatic Data Processing, Inc. Long Term Disability Plan Adm'r*, 2008 U.S. Dist. LEXIS 41208, 22-26 (D. Conn. May 27, 2008) (applying Connecticut's one year limitations period for actions to recover civil statutory penalties and finding that Plaintiff's cause of action under Section 502(c) accrued thirty days after she made this request and, therefore, expired one year after that). *Alternatively see also, Walker v. Pharmaceutical Research and Manufacturers of America*, 2008 U.S. Dist. LEXIS 59947, at *26 (D.D.C. August 7, 2008) (reasoning that the failure to disclose plan information under §502(c) was a breach of fiduciary duty); 29 U.S.C. § 1113 (fiduciary breach limitations period is three years for actual knowledge claims; plaintiff had actual knowledge that defendants did not produce the documents that he allegedly requested more than three years prior to the commencement of this action).

## CONCLUSION

The Court should dismiss the complaint.

| **Date**: August 26, 2008 | Respectfully submitted,<br><br>ACCENTURE UNITED STATES PENSION PLAN and ACCENTURE LLP<br><br>By:   s/   Mark Casciari<br>         One of its attorneys |
| --- | --- |

Mark Casciari
mcasciari@seyfarth.com
Ian H. Morrison
imorrison@seyfarth.com
Barbara H. Borowski
bborowski@seyfarth.com
Seyfarth Shaw, LLP
131 S. Dearborn, Suite 2400
Chicago, IL 60603
Phone: 312/460-5000
Facsimile: 312/460-7000

## CERTIFICATE OF SERVICE

I, Barbara H. Borowski, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT to be served upon the following counsel through the Court's electronic notification system, on this 26th day of August, 2008:

**Matthew H. Armstrong**
**Jerome J. Schlichter**
**Roger C. Denton**
Schlichter Bogard & Denton LLP
100 South Fourth Street
Suite 900
St. Louis, MO 63102
314-621-6115
marmstrong@uselaws.com


s/  Barbara H. Borowski

# EXHIBIT A



Your 2000
Benefit Statement

0260-021091
OMAR B. HAKIM
P.O. BOX 825
WHITEWRIGHT, TX  75491

Andersen
Consulting

Hakim 00033

## Andersen Consulting US Personnel



Making Andersen Consulting a great place to work includes providing you with quality benefit programs. The attached benefit statement shows the value of your current Andersen Consulting benefits—a portion of your total compensation package.

Watch for more detailed communications about benefit plan changes, including a new Preferred Provider Organization (PPO) health plan and premium free basic life insurance for 2001, as well as 401(k) and Profit Sharing investment fund changes this Fall.

We are excited about these changes and encourage you to take an active role in listening and learning about your benefit programs.

Marie T. Campagna
Managing Partner, US Geographic Support Services

## About This Statement

This personalized benefit statement is a summary of your 2000 benefit coverage, *based on information on file as of June 30, 2000.*

### All About You

If any of the information below is incorrect, please call the Americas Service Center (ASC) at 1-800-432-2729. If you are calling from outside the United States, please call 1-312-693-8499.

Birth Date: 09/09/64
Annual Compensation: $160,000
Personnel Number: 000333128
Employment or Rehire Date: 10/04/93

**CONFIDENTIAL**

If you have a balance in the Profit Sharing/401(k) Plan, you recently received a separate account statement.

0260-021091
OMAR B. HAKIM
P.O. BOX 825
WHITEWRIGHT, TX  75491

Hakim 00034



## A Summary Of Your Benefits

| Plan | Coverage |
|---|---|
| **Insurance Benefits** | |
| Medical | $500 Deductible Plan; You Only |
| Dental | You Only |
| Reimbursement Accounts • Health Care • Dependent Care | • You did not elect to contribute for 2000 • You did not elect to contribute for 2000 |
| Short-Term Disability (STD) | 100% of pay for 90 days |
| Long-Term Disability (LTD) | 50% of salary |
| Life Insurance | No Coverage |
| Dependent Life Insurance | No Coverage |
| Accidental Death and Dismemberment (AD&D) Insurance | • Andersen Consulting-provided 2½ x salary: $400,000 • Supplemental: $400,000 |
| **Retirement Benefits** | |
| Profit Sharing/401(k) • Vesting • 401(k) contribution rate • Account balance  – Profit Sharing*  – 401(k) | You are 100% vested at all times 11% of pay  $30,139.01 $69,979.20 |
| Total | $100,118.21 |
| **Paid Time Off** | |
| • Vacation • Holidays | • 20 days per year • 9 standard days per year |

*This balance reflects the entire profit sharing allocation for 2000, including the June 2000 allocation.

## Additional Benefits

### Adoption Benefits
You may receive up to $5,000 for each child or stepchild you adopt.

### Workers' Compensation
Workers' Compensation benefits, which are paid for by Andersen Consulting and which vary by state, are available for job-related disabilities.

### The International Assistance Access Program (SOS)
The SOS program is available 24 hours a day, seven days a week, and offers access to emergency medical services and personal services to you and your family when traveling outside the United States on business. To reach the SOS program, call 1-800-523-8661.

### Employee Assistance Program (EAP)
The EAP is a confidential service that helps you and your family deal with a variety of personal problems. You may receive short-term counseling at no cost, or the EAP counselor may refer you to an outside professional if further assistance is needed. For more information or to make a confidential appointment, call 1-800-635-2842.

### LifeWorks Family Resource Program
Call 1-800-635-0606 to speak with an experienced consultant who can help you find a way to more effectively manage your commitments at work and in your personal life. Consultants can offer advice and useful materials, or refer you to resources including child or elder care providers, support groups, schools, crisis intervention, leisure activities, and more. You can also visit the LifeWorks website at http://www.lifeworks.com

## Saving for Your Future

### Profit Sharing/401(k) Plan
Your account is valued daily and your total benefit grows through:

- **Profit sharing.** For each plan year (July 1 through June 30), Andersen Consulting may make a discretionary profit sharing contribution on behalf of each eligible employee.

  *Your 2000 profit sharing contribution has been recorded in your contribution receivable fund and will be invested on March 31, 2001, according to your Investment Election on file.*

- **401(k) contributions.** You decide how much of your salary (if any) to set aside in the plan on a tax-deferred basis. You defer paying most income taxes on your contributions until you receive your money. You may elect to contribute between 1% and 15% of your pay to your account through payroll deductions.

### Taking a 401(k) Loan
While you're employed at Andersen Consulting, you may be able to borrow from your 401(k) and rollover accounts and pay yourself back with interest.

### Withdrawals
The Profit Sharing/401(k) Plan is designed to help you save for retirement. In certain hardship situations, however, the plan allows for withdrawals from part of your account.

### Viewing Your Account
You can access your Profit Sharing/401(k) account on the "Your Benefits Resources" web site at http://resources.hewitt.com/andersenconsulting

## How Your Account Can Grow

Look at how your Profit Sharing/401(k) Plan account balance can grow.



| ☐ | Andersen Consulting Profit Sharing Contributions |
| ☒ | Your Contributions (401(k), rollover, etc.) |

**About the Assumptions Used in This Statement**
For calculations under "How Your Account Can Grow," the following assumptions have been used:

- Your current contribution rate and your salary do not change.
- Andersen Consulting makes a discretionary Profit Sharing contribution to your account equal to 6% of plan compensation each year.
- Your account earns an annual investment return of 3% (this return is expressed net of inflation to keep the return on a current dollar basis).



Hakim 00035

HAKIM 00035



## The Retirement Plan

Because of your current employment classification, you are ineligible to participate in the Retirement Plan. However, you have earned a monthly benefit based on your prior period(s) as an eligible employee. Contact the Andersen Consulting Benefits Information Center and select the Retirement Plan option if you would like more information.

## Retirement Income

Where will you get the money you need for retirement? Here's a look at what your monthly retirement income might be, assuming you stay with Andersen Consulting *until you reach age 62 (October 1, 2026).*

**Total Estimated Monthly Retirement Income: $9,469**



- ■ Profit Sharing Contributions and Earnings ($3,607)
- ■ Your 401(k) Contributions and/or Other Contributions Plus Earnings ($4,603)
- □ Social Security* ($1,259)

The chart above does not include benefits from the Retirement Plan.

*Please note: If you begin collecting your Social Security benefits before your Social Security retirement age, your benefits are reduced for early payment. Also, the Social Security estimate shown here assumes you've worked your entire adult life. Since Andersen Consulting may not have records of your full career history, this estimate may be incomplete. Contact the Social Security Administration at 1-800-772-1213 for your actual benefit amount.*

## Adding It All Up

Together, you and Andersen Consulting pay the total cost of your benefits. The portion Andersen Consulting contributes is a significant part of your total compensation. Here's how it all adds up:

| | Andersen Consulting's Cost | Your Cost | Total Cost |
|---|---|---|---|
| Medical | $ 1,693 | $ 1,099 | $ 2,792 |
| Dental | $ 160 | $ 160 | $ 320 |
| LTD | $ 0 | $ 547 | $ 547 |
| Life | $ 0 | $ 0 | $ 0 |
| Dependent Life | $ 0 | $ 0 | $ 0 |
| AD&D | $ 58 | $ 58 | $ 116 |
| Profit Sharing | $ 9,025 | $ 0 | $ 9,025 |
| Social Security (estimated) | $ 7,025 | $ 7,025 | $ 14,050 |
| Total Costs | $ 17,961 | $ 8,889 | $ 26,850 |

Your total compensation is the combination of your base annual salary and the value of the benefits Andersen Consulting provides for you.

| | |
|---|---|
| Andersen Consulting's annual cost for your benefits: | $17,961 |
| Your base annual salary as of June 30, 2000 (includes $17,846 in vacation and holiday pay): | + $160,000 |
| YOUR TOTAL ANNUAL COMPENSATION: | $177,961 |

**About the Assumptions Used in This Statement**

For calculations under "Retirement Income," the following assumptions have been used:

- Your current contribution rate and your salary do not change.
- Andersen Consulting makes a discretionary Profit Sharing contribution to your account equal to 6% of plan compensation each year.
- Your account earns an annual investment return of 3% (this return is expressed net of inflation to keep the return on a current dollar basis).
- Your projected Profit Sharing and 401(k) balances have been converted to single life annuities, making monthly payments when you retire.

## More Information

If you have questions about the information contained in this statement, call the Andersen Consulting Benefits Information Center at 1-877-732-2242, toll-free in the United States or Canada. If you are calling from outside the United States or Canada, dial 1-847-883-0829. (This is not a toll-free number.)

All the plans are governed by legal documents that have the final say on benefit eligibility and amount. The figures in this statement are based on your earnings and benefit status as shown in our records as of June 30, 2000. Your actual benefits may be different from the estimates shown in this statement.

The Profit Sharing/401(k) and Retirement Plan estimates are based on information on file with Andersen Consulting. They do not reflect federal, state or local taxes, or any other deductions for tax purposes.

CONFIDENTIAL

Hakim 00036

# EXHIBIT B

1111
MAY 16 2003 09:07 FR ACCENTURE          512 320 5970 TO 46323326          P.02/09
12:55:11 p.m.    07-24-2008
1/9



## TERMINATION CERTIFICATION

### FOR U.S. PERSONNEL AND FOR PERSONNEL
### OUTSIDE OF THE U.S., WHERE APPLICABLE

This is to certify that I do not have in my possession, nor have I failed to return: (1) computer software in any form or medium belonging to Accenture and/or any of its divisions, affiliated entities, successors and assigns or any of its clients; (2) any information or materials intended to be of a confidential nature and in any way pertaining to any of Accenture's computer software products or those of its clients; (3) any information or materials intended to be of a confidential nature obtained during the course of my employment by Accenture; or (4) any records, documents, data, laboratory sketches, notes, reports, proposals, or copies of them, or other documents or materials, equipment or other property belonging to Accenture, or any of its clients.

I further certify that I have complied with and will continue to comply with all the terms of Accenture's policies as set forth on the Accenture Policies website, and in particular the policies reflected therein relating to confidentiality and intellectual property rights. I acknowledge having read and understood my obligations stated in such policies within the Accenture Policies website, shortly after the commencement of my employment with Accenture. I hereby reaffirm my understanding of these obligations.

I certify that I have fully and completely reported to Accenture any inventions and original works of authorship, conceived or made by me (solely or jointly with others), during the course of my employment with Accenture, to which Accenture retains all rights of ownership.

I further agree that I will preserve as confidential all trade secrets and confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, mask works, formulas, test data, computer programs and databases and other original works of authorship, consumer lists, business plans, marketing plans and strategies and pricing strategies or other subject matter pertaining to any business of Accenture or any of its clients, customers, consultants, licensees or affiliates.

Dated: _May 15_ , 200 _3_

_____
Signature

_Omar Hakim_
Print Name

MAY 16 2003 09:07 FR ACENTURE                    512 320 5970 TO    46323326          P.01/09

| Post-it® Fax Note | 7671 | Date | # of pages ▶ |
|---|---|---|---|
| To Sarah Foley | | From | |
| Co./Dept. | | Co. | |
| Phone # (336) 221-8177 | | Phone # | |
| Fax # (704) 632-3326 | | Fax # | |

# accenture

## Employee Info

Name: **Omar Hakim**
Personnel #: **000333108**

Phone #:
GMU/LMU:                    /

## Equipment Information

How many computers does this user have?

| Description Make/Model Type: | Asset Tag | Serial Number |
|---|---|---|

Other Info/Comments:

| Returned Component Checklist | Cost | Returned Y/N? | LTS Use Only |
|---|---|---|---|
| ▪ Battery | $185 | Y | |
| ▪ CD or DVD ROM Drive | $360 | Y | |
| ▪ AC Adaptor & power cord | $91 | Y | |
| ▪ Xircom Card | $180 | Y | |
| ▪ Pigtail(s) | $20 | Y | |
| ▪ Floppy Drive | $104 | Y | |
| ▪ Security Cable | $19 | N | |
| ▪ Carrying Case | $72 | W | |
| ▪ ~~Armada M300 Base Unit *~~ | ~~$350~~ | | |
| ▪ ~~Portege 3480 Port Replicator *~~ | ~~$113~~ | | |
| ▪ Other loaned equiHRent | | | |
| ▪ SecurID token ** | $26 | Y | |

\* These parts specific to this particular model.
\*\* Not all people will have been issued one of these.

Physical condition of returned equiHRent / comments or other notes: **Great**

## "Nice to Have Info"

HR Rep:                                    Screen Saver Password: _____
                                           Power-On-Password: _____

Returned By: _____    _____    **5/16/03**
             Please Print        Omar Hakim Signature    Date

Received By (HR): _____    _____    _____
                  Please Print        Signature           Date

Received By (LTS): **Daniel C. Bryce**    *Danny Bryce*    **5/16/2003**
                   Please Print            Signature         Date

After receiving all signatures please fax to: 703.947.7486

MAY 16 2003 09:07 FR ACCENTURE          512 320 5970 TO 17046323326      P.03/09

*Hakim, Omar B.*

## ACCENTURE UNITED STATES SEPARATION BENEFITS PLAN

### SEPARATION AGREEMENT - CONSULTING WORKFORCE
### (EMPLOYEE RELEASE)

May 15, 2003

*To: Natasha Sikorsky*
*From: Omar Hakim*
*7 pages*

<u>By U.S. Mail</u>

Dear Accenture employee:

We regret to inform you that your employment with Accenture LLP ("Accenture") will be terminated due to a workforce reduction.

You will be paid your regular salary or wages (including any approved overtime) through the effective date of your termination of employment, as well as any paid-time off due in accordance with Accenture's policies. To mitigate your employment loss, you will be eligible for Separation Benefits as provided in the Accenture United States Separation Benefits Plan, as amended from time to time (the "Plan"), if you submit a signed copy of this letter to Accenture by the deadline specified below (and, if you reside in Minnesota, do not revoke this Agreement). You have received a summary plan description of the Plan.

Accenture is offering all employees terminated as a result of this workforce reduction the opportunity to receive Separation Benefits under the Plan in exchange for signing a general release of claims and the other terms and conditions set forth in this letter. If you accept the terms and conditions set forth below and want to enter into a binding agreement with Accenture, you must sign and date this letter where indicated no later than fourteen (14) days after the date you receive this letter and return it to Accenture by facsimile or mail as follows:

<u>By Fax:</u>         Accenture
                703-947-7486
                Attn: Natasha Sikorsky, Accenture HR Services

<u>By Mail:</u>       Accenture
                11951 Freedom Drive
                Reston, VA 20190

                Attn: Natasha Sikorsky, Accenture HR Services

The terms and conditions of this separation agreement are set forth below shall be referred to as the "Agreement."

*Consulting (Workforce Reduction - Standard) -*
*Under age 40*

CH99 4080182-3.054815.0032

1111
    Case 1:08-cv-03682    Document 22-3    Filed 08/26/2008    Page 5 of 10    4/9
                                         12:56:18 p.m.  07-24-2008



1.    **Separation Benefits**

        In consideration of your acceptance of all of the terms and conditions of this Agreement, Accenture will provide you with Separation Benefits under the Plan as described below. Please note that capitalized terms used in this Agreement are defined in the Plan (and summarized in the summary plan description).

**Separation Pay.** If you meet the Plan's requirements, your Separation Pay will consist of (1) a base benefit determined by your career level as of your Termination Date, (2) a variable benefit based on your Years of Service, and (3) a COBRA Payment. The total amount of your base and variable benefits will be subject to a maximum number of weeks of Separation Pay. You will be eligible for the COBRA Payment only if you were enrolled in the Active Medical Plan and/or the Dental Plan immediately prior to your Termination Date. The amount of your Separation Pay shall be determined as follows (as applicable):

| Career Level | Base Benefit | Variable Benefit | Maximum Total of Base and Variable Benefits | COBRA Payment |
|---|---|---|---|---|
| Associate Partner | 10 weeks | 1 week for each complete Year of Service (rounded down to last complete Year of Service) | 20 weeks | Total number of weeks of base and variable benefits (as limited by maximum number of weeks); rounded up to next complete month |
| Senior Manager | 8 weeks | 1 week for each complete Year of Service (rounded down to last complete Year of Service) | 14 weeks | Total number of weeks of base and variable benefits (as limited by maximum number of weeks); rounded up to next complete month |
| Manager | 6 weeks | 1 week for each complete Year of Service (rounded down to last complete Year of Service) | 10 weeks | Total number of weeks of base and variable benefits (as limited by maximum number of weeks); rounded up to next complete month |

[Separation Agreement page 2 of 7]

*Consulting (Workforce Reduction Standard) -*
*Under age 40*

MAY 16 2003 09:08 FR ACCENTURE          512 320 5970 TO 17046323326          P.05/09

| Experienced Consultant or Consultant | 3 weeks | 1 week for each complete Year of Service (rounded down to last complete Year of Service) | 6 weeks | Total number of weeks of base and variable benefits (as limited by maximum number of weeks); rounded up to next complete month |
| Experienced Analyst or Analyst | 2 weeks | 1 week for each complete Year of Service (rounded down to last complete Year of Service) | 4 weeks | Total number of weeks of base and variable benefits (as limited by maximum number of weeks); rounded up to next complete month |

**COBRA Payment and COBRA Continuation Coverage.** If you are enrolled in the Active Medical Plan and/or Dental Plan immediately prior to your Termination Date, you will receive the COBRA Payment whether or not you elect COBRA Continuation Coverage; however, your receipt of the COBRA Payment does not automatically entitle you to COBRA Continuation Coverage. To receive COBRA Continuation Coverage under the Active Medical Plan and/or Dental Plan, you must elect the coverage and pay the required premiums when due. COBRA Continuation Coverage will be governed by and will terminate in accordance with the provisions of the Active Medical Plan and/or the Dental Plan.

**Payment.** Your Separation Pay generally will be paid to you in a cash lump sum on the next regular payroll date after you submit your signed Separation Agreement to Accenture and, if you reside in Minnesota, following the expiration of the revocation period for the Separation Agreement (or as soon as administratively practicable thereafter).

All legally required taxes will be deducted from your Separation Pay. Any amounts you owe to Accenture may be deducted from your Separation Pay.

If you die before receiving payment of your Separation Pay, your Separation Pay will be paid to your estate.

**STD Leave.** If you are on a short-term disability (STD) leave as of your Termination Date, your Separation Pay also will include an amount equal to your Base Pay (as described below) for the lesser of (i) the number of weeks (if any) remaining in the paid-time portion of your scheduled STD leave or (ii) six weeks. If you were scheduled to commence an STD leave no later than thirty days following your Termination Date, your Separation Pay also will include an amount equal to your Base Pay (as described below) for the lesser of (i) the number of weeks in the paid-time portion of your scheduled STD leave or (ii) six weeks. However, if the number of weeks in (or remaining in) your paid-time portion of your scheduled leave is not known prior to the payment of your Separation Pay, you will receive six weeks of Base Pay. For purposes of this

[Separation Agreement page 3 of 7]

*Consulting (Workforce Reduction Standard) -*
*Under age 40*

CHI99 40801K2-3,054815,0032

paragraph only, "Base Pay" means your short-term disability pay as determined by Accenture in accordance with Accenture's Short-Term Disability Leave Policy, as amended from time to time.

**Transition Services**. Transition Services will be provided by an outside firm selected by Accenture. You will receive separate, detailed information about the Transition Services, including the types of available services, how to enroll, and the locations of available programs. The available programs are:

| Career Level | Transition Services |
|---|---|
| Associate Partners | 12-month senior executive program |
| Senior Managers and Managers | 3-month executive program |
| Experienced Consultants and Consultants | 1-month program |
| Experienced Analysts and Analysts | 3-day workshop |

It is your responsibility to enroll in the available Transition Services; enrollment is not automatic. You may enroll for Transition Services after you submit your signed Separation Agreement and, if you reside in Minnesota, following the expiration of the revocation period for the Separation Agreement. To receive Transition Services, you must enroll no later than forty-five days following the later of your Termination Date or the expiration of any revocation period for your Separation Agreement (if any).

You may not receive cash in lieu of Transition Services.

**Re-employment – Repayment of Separation Benefits**. If you accept a job offer from Accenture after your Termination Date, but prior to payment of your Separation Pay, you will not be entitled to receive payment of your Separation Pay. If you are re-employed by Accenture after you receive your Separation Pay, you must repay to Accenture an amount equal to your Separation Pay. (You will not be required to repay the cost of any Transition Services.) Such repayment must be made within fifteen days following your reemployment date (or such later date as may be specified by Accenture).

You will not, however, be required to repay your Separation Pay in the following circumstances:

[Separation Agreement page 4 of 7]

*Consulting (Workforce Reduction Standard) -*
*Under age 40*

1111    MAY 16 2003 09:09 FR ACCENTURE          512 320 5970 TO 17046323326    P.07/09

12:57:34 p.m.    07-24-2008          7/9

(i)    You will not be required to repay all or any portion of your Separation Pay if
Accenture decides not to apply this requirement to you. Accenture has complete
discretion to decide whether (and to what extent) to require repayment of any
particular Participant, taking into account, among other things, the best interests
of Accenture.

(ii)    You will not be required to repay your Separation Pay if you are rehired by
Accenture after a period equal to the total number of weeks represented by your
Separation Pay. For this purpose, your COBRA Payment will not be taken into
account.

For example, assume you received eight weeks of Base Pay. If your re-
employment date occurred eight weeks or more after your Termination Date, no
repayment would be required. If your re-employment date occurred less than
eight weeks after your Termination Date, you would be required to repay a
portion of your Separation Pay. Thus, if your re-employment date occurred five
weeks after your Termination Date, you would be required to repay three weeks
of your Base Pay.

2.    <u>General Release of Claims</u>

As a material inducement to Accenture to enter into this Agreement and as part of the
consideration for the Separation Benefits offered to you, to which you agree you are not
otherwise entitled, you hereby forever release, waive and discharge Accenture LLP, its parents,
subsidiaries, divisions, affiliates, predecessors, successors and assigns, and all of their present
and former directors, officers, partners, employees, representatives, fiduciaries, attorneys and
agents ("Released Parties") from any and all claims of any nature whatsoever, known or
unknown which you now have, or at any time may have had, against the Released Parties up to
and including the date you sign this Agreement ("Claims"). This General Release of Claims
includes, without limitation, any Claims related to your employment, your activities on behalf of
Accenture and its predecessors, parents, subsidiaries, divisions and affiliates, the termination and
layoff of your employment, Claims of wrongful discharge, Claims for the payment of any salary,
wages, bonuses and commissions, Claims of discrimination under the common law or any
federal or state statute (including, without limitation, Title VII of the Civil Rights Act of 1964
and the Americans with Disabilities Act, all as amended), Claims relating to the Company's
intellectual property, confidential and proprietary information and trade secrets, Claims of
misrepresentation, Claims of detrimental reliance, and all other statutory, common law or other
Claims of any nature whatsoever. This General Release of Claims does not apply to any Claims
concerning a breach of this Agreement or any Claims arising after you sign this Agreement.

With respect to the Claims you are waiving herein, you are waiving your right to receive
money or other relief in any action instituted by you or on your behalf by any person, entity or
government agency. Nothing in this Agreement shall limit the rights of any government agency

[Separation Agreement page 5 of 7]

*Consulting (Workforce Reduction Standard) -
Under age 40*

CH99 4080182-3.054815.0032

or your right of access to, cooperation or participation with any government agency, including without limitation, the United States Equal Employment Opportunity Commission.

*For California employees only:* You expressly waive any benefits of Section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

3.    <u>Entire Agreement</u>

This Agreement constitutes the full understanding and entire Agreement between you and Accenture and supersedes any other agreements of any kind, whether oral or written, formal or informal concerning the subject matter of this Agreement, <u>provided however</u>, that you shall remain bound by and must comply with any continuing obligations under conditions of employment, and/or any intellectual property and/or confidentiality agreements, and you must continue to comply with Accenture's policies with respect to intellectual property and confidentiality.

4.    <u>Miscellaneous</u>

This Agreement is binding upon and shall inure to the benefit of you, your heirs, administrators, representatives and executors and upon the successors and assigns of Accenture. You and Accenture agree that the failure of either party at any time to require performance of any provision of this Agreement shall not affect, diminish, obviate or void in any way either party's full right or ability to require performance of the same or any other provisions of this Agreement at any time thereafter.

5.    <u>Notice and Right to Consider</u>

You are advised to review this Agreement with an attorney of your choice before signing this Agreement. In any event, you should thoroughly review and understand the effect of this Agreement and its General Release of Claims before taking action upon them. You may have up to fourteen (14) days from the date you receive this letter to complete your review and sign it. You acknowledge that if you sign this Agreement prior to the expiration of the fourteen (14)-day period that you did so voluntarily.

*For Minnesota employees only:* In accordance with Minn. S.A. § 363.031, you shall have fifteen (15) days from the date you sign this Agreement to change your mind and revoke it. You may revoke this Agreement by submitting a written notice of revocation to Accenture by facsimile or mail (as directed on the first page of this Agreement) no

[Separation Agreement page 6 of 7]

*Consulting (Workforce Reduction Standard) -*
*Under age 40*

CHI99 4080182-3.054815.0032





later than fifteen (15) days after the date you sign this Agreement. This Agreement will not become valid or enforceable until the fifteen (15)-day revocation period has expired.

6.    Acknowledgement

By signing this Agreement, you agree and acknowledge that you have carefully read and fully understand all of its provisions and that you are voluntarily entering into this Agreement. By signing this Agreement you agree and acknowledge that you have not relied upon any promise, inducement, representation or statement, whether oral or in writing, made by Accenture or Accenture's agents, representatives or attorneys with regard to the subject matter, basis, or effect of this Agreement, except as expressly set forth in this Agreement.

*** 

If you wish to enter into this Agreement with Accenture, please sign and date below and return it to Accenture within the time period and as directed on the first page and in paragraph 5 of this letter.

We thank you for your service to Accenture and wish you the very best in the future.

Sincerely,

*Larry Solomon*

Larry F. Solomon
Managing Partner, U.S. Geographic Services

**I have reviewed the Agreement in its entirety. I understand its contents. I voluntarily agree to all of the terms and conditions of the Agreement.**

_____        May 15, 2003
Employee signature              Date

Employee print name:    Omar Hakim

Employee social security number:    062 - 62 - 3917

[Separation Agreement page 7 of 7]

*Consulting (Workforce Reduction Standard) - Under age 40*

# EXHIBIT C

From: Omar Hakim <omar@omarhakim.net>
Subject: **Hakim Pension Question**
Date: July 21, 2003 1:11:31 PM CDT
To: Sarah Foley <sarah.foley@accenture.com>



Hi Sarah,

Hope all is well.

I just got off of the phone with the Accenture Benefits Center. They suggested that I speak with you regarding the following questions.

My pension plan information has me listed as "pension eligible" from 10/04/93 (my start date) until 12/16/99. I'm considered no longer "pension eligible" from 12/16/99 until my termination date (5/16/03).

The Accenture Benefits Center said that HR should be contacted as to why I was no longer considered "pension eligible" after 12/16/99. That date is strange to me, since it doesn't signify any career milestones that I'm aware of.

I'm writing to you to ask for your help in correcting my pension eligibility dates so that they reflect my dates of service (10/04/93 thru 05/16/03).

Please let me know if you'd like to discuss this on the phone or if you need any further information. Thanks for your help Sarah.

Omar
(512) 577-7000
omar@omarhakim.net

Hakim 00377

HAKIM 00377

# EXHIBIT D

# RETIREMENT PLAN

For principals, tax and audit aides and assistants, Practice Management personnel, Practice Services personnel, and Practice Other personnel of Arthur Andersen and for Andersen Consulting associate partners, Practice Management personnel, Business Process Management Personnel, Position-based Business Unit personnel, and certain grandfathered personnel, the Andersen Worldwide SC U.S. Retirement Plan can be a major source of monthly income during retirement. Even if you are not currently eligible for the retirement plan, you may want to read this section. You could become eligible for a retirement benefit if your employment category changes.

This section is a summary of the retirement plan. It is written in everyday language rather than the technical legal language of the plan document. Every effort has been made to explain the provisions clearly and completely. If, however, there is any conflict between this material and the plan document, the plan document will rule.

## Information Covered in This Section

|  | Page |
|---|---|
| *Becoming Eligible for the Benefit* | 3 |
| Eligibility | |
| Joining the Plan | |
| Vesting Requirements | |
| Other Andersen Benefits During Retirement | |
| If Your Employment Category Changes | |
| | |
| *Plan Overview* | 5 |
| About the Plan | |
| Who Receives the Benefit | |
| Available Benefits | |
| Benefit Service | |
| When Benefits Begin | |
| How the Benefit is Paid | |
| Surviving Spouse Protection | |
| | |
| *Retirement Options* | 8 |
| Normal Retirement | |
| Early Retirement | |
| Rule of 80 Retirement | |
| Deferred Retirement | |
| Deferred Vested Termination | |
| | |
| *Payment Method Options* | 10 |
| Your Payment Choices | |
| Normal Payment Methods | |
| Optional Payment Methods | |

© 1997 ANDERSEN WORLDWIDE SC
ALL RIGHTS RESERVED

## Information Covered in This Section
*(continued)*

|  | Page |
|---|---|
| *How the Benefit is Calculated* | 13 |
| Benefit Service | |
| Calculating the Fixed Benefit | |
| Calculating the Variable Benefit | |
| | |
| *Benefit Adjustments* | 17 |
| Normal Retirement | |
| Early Retirement | |
| Rule of 80 Retirement | |
| Deferred Retirement | |
| Deferred Vested Termination | |
| | |
| *Applying for the Benefit* | 21 |
| How to Apply | |
| Proof of Age | |
| Taxes on Your Benefit | |
| If Your Application is Denied | |
| | |
| *Conditions Affecting Your Membership and Benefit* | 22 |
| Leave of Absence | |
| Change in Employment Status | |
| Becoming a Partner | |
| Termination | |
| Rehires | |
| U.S. Citizens Working Outside the U.S. and Puerto Rico | |
| Citizens of Countries Other Than the U.S. Working in the U.S. or Puerto Rico | |
| | |
| *Other Information* | 27 |
| Assignment of Benefits/Qualified Domestic Relations Orders | |
| Incompetency | |
| Employment Rights | |
| Changes of Address, Requests for Forms and Information | |
| | |
| *A Word About Social Security* | 28 |
| | |
| *Definitions* | 29 |

## BECOMING ELIGIBLE FOR THE BENEFIT

You must meet three conditions to be eligible for an Andersen retirement plan benefit:

- You must be eligible to join the retirement plan, *and*
- You must become a plan member, *and*
- You must complete the vesting requirements.

### Eligibility

You are eligible for membership in the retirement plan if --

- You are employed by Andersen on a full-time or part-time basis, as a regular or temporary employee, within the United States or Puerto Rico, *and*

- You are in one of the following covered employment categories:

| *Arthur Andersen* | *Andersen Consulting* |
|---|---|
| Principals | Associate Partners |
| Tax and Audit Aides and Assistants | Practice Management Personnel |
| Practice Management Personnel | Business Process Management Personnel |
| Practice Services Personnel | Position-based Business Unit Personnel |
| Practice Other Personnel | Certain Grandfathered Personnel |

### Joining the Plan

Eligible personnel automatically become retirement plan members on the January 1 or July 1 following the date they complete at least one year of vesting service.

Once you enter the plan, you become a plan member. As long as you remain in an eligible employment category, you are an *active* plan member. If you transfer or are promoted out of an eligible employment category, you become *inactive*; however, you are still a plan member.

### Vesting Service

Vesting service begins the first day you work at least one hour in any employment category and ends the day you terminate. This includes any time spent on an approved leave of absence.

## Vesting Requirements

Plan members become eligible for a retirement plan benefit when they --

- Complete five years of vesting service, *or*

- Reach age 62, if they have less than five years of vesting service, *or*

- Enter the plan after turning age 62.

Once you are vested in the plan, you become a *vested* plan member. If you are an active plan member at the time you vest, you become an *active vested* member. If you are an inactive plan member at the time you vest, you are an *inactive vested* plan member. If you move out of an eligible employment category after meeting the vesting requirements, you become an inactive vested plan member. However, you may still be eligible for a retirement plan benefit.

## Other Andersen Benefits During Retirement

Once you are eligible to receive a retirement plan benefit, you may also qualify for group medical, retiree dental and employee life insurance coverage during retirement. For further information, see *Andersen Retiree Coverage* in the *Eligibility and Enrollment* section of this binder.

## If Your Employment Category Changes

If you move out of an eligible employment category, your plan membership and benefits could be affected. See *Conditions Affecting Your Membership and Benefit* in this section for further information.

Partners are not eligible to join the retirement plan. However, if you are a plan member at the time you become a partner, your plan membership does not end. If you meet the vesting requirements either before or after you become a partner, you are eligible for a retirement plan benefit.

## PLAN OVERVIEW

### About the Plan

The retirement plan is designed to supplement benefits from the Andersen Worldwide SC U.S. Employees' Profit Sharing Plan which is expected to provide a major portion of retirement income.

Employees make no contribution to the retirement plan. Andersen supports the plan with contributions equal to or more than the minimum funding requirements of the Employee Retirement Income Security Act of 1974 (ERISA). The amount contributed is based on generally accepted actuarial principles and procedures. Contributions are invested and accumulated in the Andersen Worldwide SC U.S. Profit Sharing, 401(k) and Retirement Trust which provides funds to pay retirement benefits. The name and address of the plan trustee is shown in the Plan Information section of this binder.

In the event of plan termination, the retirement plan is insured by the Pension Benefit Guaranty Corporation (PBGC), a government agency established to insure benefits under certain types of pension plans. (See the *Plan Information* section of this binder for further information about the PBGC.)

### Who Receives the Benefit

Only plan members who have met the vesting requirements (explained under *Becoming Eligible for the Benefit* in this section) are eligible to receive a retirement plan benefit.

### Available Benefits

There are two parts to your retirement plan benefit --

- The *fixed* benefit which is equal to $240 per year of benefit service up to a maximum of 25 years (maximum benefit of $6,000 per year; $500 per month), *plus*

- The *variable* benefit which is based on your years of benefit service and average monthly earnings for the highest three consecutive plan years of the last ten preceding or coinciding with your termination date, retirement date or date you transferred to an ineligible classification, up to an annual maximum benefit of $18,000 ($1,500 per month).

To determine the amount of your retirement benefit and how it may be affected by the type of retirement you take and the payment method you elect, please see *How the Benefit is Calculated* and *Benefit Adjustments* in this section.

## Benefit Service

Benefit service is the amount of time spent in an eligible employment category during your career with Andersen, including time spent on an approved leave of absence. (Vesting service -- the amount of time spent in *any* employment category including time spent on an approved leave of absence -- determines when you become vested in the plan.)

## When the Benefit Begins

You must be vested in the plan in order to receive a retirement plan benefit. The benefit does *not* begin automatically; you must apply for it.

- The normal retirement age for vested plan members is age 62. If you retire from Andersen at or after age 62, your payments can begin the first of the month following the date you retire.

- If you continue to work after age 62, you may be eligible for a retirement benefit. (See *Retirement Options* in this section for further information.)

- The plan also allows for early retirement at age 55. If you retire at or after age 55, benefit payments can begin the first of any month following the date you retire. However, there may be a benefit reduction associated with early retirement. (See *Benefit Adjustments* in this section for further information.)

If you die after benefit payments begin and you have elected a payment method with a survivor provision, benefit payments for your beneficiary can begin on the first day of the month following your death.

## How the Benefit is Paid

When you apply for your retirement benefit, you will elect the payment method which best suits your personal situation. The payment method you elect may effect the amount of your benefit. You may change your payment election anytime *before* your benefit begins, but not after it begins. (See *Payment Method Options* in this section for further information.)

## Protecting Your Surviving Spouse

❑    **If You Die *Before* Your Retirement Benefit Begins**

Your surviving spouse (i.e., the person married to you at the time of your death) will receive a monthly benefit for his or her lifetime. The benefit is in the form of a Qualified Joint and Survivor annuity equal to approximately 50% of what your retirement benefit would have been at the time of your death.

Retirement Plan　　　　　　　　　RT-7　　　　　　　　　1/1/94

---

**Protecting Your Surviving Spouse** *(cont'd)*

> If you die before your early retirement date (the first of the month following your 55th birthday), the benefit can begin on your early retirement date or the first of any following month. If you die after your early retirement date, the benefit can begin the first of the month following your death, or the first of any following month.

☐　**If You Die** *After* **Your Retirement Benefit Begins**

> Once your benefit has begun, your spouse will only receive a continuing benefit if you have elected a payment method which provides for a surviving spouse. (See *Payment Method Options* in this section for further information.)

## RETIREMENT OPTIONS

Vested plan members have several retirement options from which to choose. The normal retirement date is the first day of the month following your 62nd birthday. (Plan members with less than five years of vesting service who retire on or after their normal retirement date are automatically vested at age 62.) However, you may also elect to retire before, or defer retirement beyond, your 62nd birthday. The type of retirement you take may affect the amount of your benefit.

The following information explains your retirement options as a vested member in the plan.

### Normal Retirement

Your normal retirement date is the first day of the month following your 62nd birthday. Your benefit will begin the first day of the month following the date you retire.

### Early Retirement

Your early retirement date is the first day of the month following your 55th birthday. If you retire on or after your 55th birthday and before your normal retirement date, your benefit can begin the first day of the month following the date you retire or the first day of any following month.

The amount of your benefit will be subject to an *early payment adjustment* of one-half percent (.005) for each month of payments preceding your normal retirement date (the first of the month following your 62nd birthday). For example, if you request that your benefit begin at age 57 instead of age 62, you would receive payments for five extra years (60 months), and your benefit would be reduced by 30% (60 x .005).

You can also elect to defer your benefit until your normal retirement date. Payments would then start the first day of the month following your 62nd birthday and would not be subject to the early payment adjustment.

### Rule of 80 Retirement

If you retire on or after your early retirement date (the first of the month following your 55th birthday) and your years of vesting service (total years with Andersen) plus your age when you retire equal 80 or more, your benefit will *not* be subject to the early payment adjustment. (Age and vesting service (total years with Andersen) must be in whole years rounded down.) Payments can begin the first day of the month following the date you retire.

## Rule of 80 Retirement *(cont'd)*

You will qualify for rule of 80 retirement if:

| Your age at retirement is - | And your vesting service is -- |
|---|---|
| 55 *(minimum)* | 25 years |
| 56 | 24 years |
| 57 | 23 years |

| Your age at retirement is - | And your vesting service is -- |
|---|---|
| 58 | 22 years |
| 59 | 21 years |
| 60 | 20 years |
| 61 | 19 years |

## Deferred Retirement

Deferred retirement occurs when you continue to work for Andersen after your normal retirement date (the first day of the month following your 62nd birthday).

In most cases, the benefit cannot begin until you actually stop working for Andersen. However, if you are between the ages of 62 and 70-1/2 and work 40 hours or less in any month, you are entitled to a benefit for that month. (You will receive payment by the first day of the third month following the month you work 40 hours or less.)

If you work beyond age 70-1/2, you will be required to begin your benefit by April 1 of the calendar year following the year you turn 70-1/2.

## Deferred Vested Termination

If you are a vested plan member and leave Andersen before your early retirement date, you are eligible for a retirement benefit even though you are no longer working for Andersen. After you terminate, you will receive a letter stating the amount payable at your normal retirement date.

Payments can begin the first of the month following your 55th birthday (your early retirement date) or the first day of any following month, but they will be subject to an early payment adjustment. You can also elect to defer the start of your benefit until the first of the month following your 62nd birthday (your normal retirement date), and the early payment adjustment will not apply. However, there is no advantage in delaying the start of your payments beyond your normal retirement date, since your payments will not increase. *Please remember that you must apply for your benefit; it will not begin automatically.*

The plan provisions in effect at the time you terminate will apply to your benefit unless stipulated; however, your accrued benefit cannot be reduced by future plan changes.

## PAYMENT METHOD OPTIONS

When you apply for your retirement benefit, you must also elect a payment method -- the way you wish your benefit to be paid. You can change your payment election anytime *prior* to the start of payments; however, once they begin, you cannot make any changes.

If your spouse dies or you are divorced before payments begin, your election is automatically revoked, and you will need to elect another payment method. Your election is also revoked automatically if you die before payments begin, and none will be made regardless of the type of payment method you elected. (Your spouse may be eligible for the surviving spouse benefit explained under *Plan Overview* in this section.)

### Your Payment Method Choices

As a vested plan member, you have two *normal* payment methods and five *optional* payment methods from which to choose. If you do not make an election, the normal payment method appropriate for your marital status will be used.

If you are married and wish to elect one of the five optional payment methods, your spouse must provide signed and notarized consent. If your spouse revokes his or her consent *before* benefits begin, your election automatically reverts to the normal payment method appropriate for your marital status. To re-elect another optional payment method, your spouse must again provide signed and notarized consent.

The payment method you select can affect the amount of your benefit. If before making your election you wish to see the amount of your adjusted benefit under the optional payment methods, contact the Andersen Benefits Center and speak to an ABC Representative.

### Normal Payment Methods

If you do *not* make an election, one of the following payment methods will be used:

☐ **Lifetime Only - Single Vested Members**

A monthly benefit is paid for your lifetime. No payments are made after your death.

■ *Payment Method Adjustment:* None

☐ **Qualified Joint and Survivor - Married Vested Members**

The monthly benefit is paid at a reduced rate for your lifetime. At your death, 50, 75 or 100 percent (as you choose) of the reduced benefit is paid to your surviving spouse for the rest of his or her life. If you do not indicate a percentage for the continuing benefit, 50 percent is automatic.

## Normal Payment Methods *(cont'd)*

If your spouse dies *after* payments begin, you *cannot* designate a new beneficiary, and the reduced benefit continues for your lifetime.

- ■ *Payment Method Adjustment:*  Based on your spouse's age relative to your age, and the percentage of continuing benefit.

## Optional Payment Methods

If you are married and wish to elect one of the following payment methods, your spouse must provide signed and notarized consent.

❑  **Lifetime Only - Married Vested Members**

A monthly benefit is paid for your lifetime.  No payments are made after your death.  If you die *after* payments begin, payments will *not* continue for your surviving spouse.

- ■ *Payment Method Adjustment:*  None

❑  **Indexed Life Annuity - All Vested Members**

A reduced monthly benefit is paid for your lifetime.  Each January 1, your monthly benefit will increase by 3%.  No payments are made after your death.

- ■ *Payment Method Adjustment:*  Your benefit will be reduced to an actuarial equivalent to reflect that payments increase each January.

❑  **50% Indexed Joint and Survivor Annuity - Married Vested Members**

A reduced monthly benefit is paid for your lifetime.  Each January 1, your monthly benefit will increase by 3%.  When you die, 50% of the benefit you were receiving at your death will be paid to your surviving spouse for the rest of his or her life. Each January 1, your surviving spouse's monthly benefit will increase by 3%.  (50% is the only continuation percent you can elect under the indexed payment method.)

If your spouse dies *after* payments begin, you *cannot* designate a new beneficiary.

- ■ *Payment Method Adjustment:*  Based on your spouse's age relative to your age, and reduced to an actuarial equivalent to reflect that payments increase each January.

Retirement Plan                                    RT-12                                    1/1/96

## Optional Payment Methods *(cont'd)*

☐    **Life and 120-Month - All Vested Members**

A reduced monthly benefit is paid for your lifetime.  If you die during the first 120
months of payments, the benefit is paid to your beneficiary for the remainder of the
120 month period or until your beneficiary's death -- whichever comes first.  The
benefit ends at that time.  If you are still living at the end of the first 120 months of
benefit payments, your benefit continues for your lifetime, but *no* payments are
made to your beneficiary after you die.

If your beneficiary dies *before* the end of the 120 month period, you *can* designate a
new beneficiary.

■    *Payment Method Adjustment:*  Your benefit will be reduced to 95
        percent of the benefit you would receive under the *Lifetime Only*
        optional payment method.

☐    **Joint and Survivor/Non spouse Beneficiary - All Vested Members**

The monthly benefit is paid at a reduced rate for your lifetime.  At your death, 50, 75
or 100 percent (as you choose) of the reduced benefit is paid to a non-spouse
beneficiary for the rest of his or her life.  If you do not indicate a percentage for the
continuing benefit, 50 percent is automatic.

If your non-spouse beneficiary dies *after* payments begin, you *cannot* designate a
new beneficiary, and the reduced benefit continues for your lifetime.

■    *Payment Method Adjustment:*  Based on your beneficiary's age relative
        to your age and the percentage of continuing benefit.  If you want to
        provide a reduced benefit to a non-spouse beneficiary more than 10
        years younger than you, the percentage may be reduced to comply
        with Internal Revenue Service regulations.

## HOW THE BENEFIT IS CALCULATED

The retirement plan benefit is the combination of --

- The *fixed* benefit which is equal to $240 per year of *benefit service* up to a maximum of 25 years (a maximum benefit of $6,000 per year; $500 per month), *plus*

- The *variable* benefit which is based on your years of *benefit service* and average monthly earnings for the highest three consecutive plan years of the last ten preceding or coinciding with your termination date, retirement date or date you transferred to an ineligible classification, up to an annual maximum benefit of $18,000 ($1,500 per month).

Adjustments are made to your retirement benefit based on the type of retirement you take and the payment method you elect. (See *Benefit Adjustments* in this section.)

### Benefit Service

Benefit service is the amount of time you are in an eligible employment category, including time spent on an approved leave of absence. Depending on your employment category at the time, it can begin on the first day of work and continue until you leave Andersen. When you move out of an eligible employment category, you stop accruing benefit service.

Benefit service is stated in whole years with partial years shown as decimals. For example, 8 years and 3 months would be 8.2500 years.

### Calculating the Fixed Benefit

To determine your *monthly* fixed retirement benefit, use the following calculation.

| *Years of Benefit Service* | x | $240 | ÷ | 12 | = | *Monthly Fixed Benefit* |
|---|---|---|---|---|---|---|

❑    **Maximum Benefit Service**

When calculating the fixed benefit, use your years and months (shown as decimals) of benefit service up to a maximum of 25 years.

❑    **Sample Calculation**

The following is an example of how the annual fixed benefit would be calculated if you were a vested plan member with 20 years and 3 months of benefit service *before* any adjustments have been made. To determine the *monthly* benefit, divide the annual benefit by 12.

## Calculating the Fixed Benefit *(cont'd)*

$$\underset{\substack{\text{Years of}\\\text{Benefit Service}}}{\underline{20.2500}} \times \$240 = \underset{\substack{\text{Annual}\\\text{Fixed Benefit}}}{\underline{\$4,860}} \div 12 = \underset{\substack{\text{Monthly}\\\text{Fixed Benefit}}}{\underline{\$405}}$$

## Calculating the Variable Benefit

To determine your *monthly* variable retirement benefit, use the following calculation:

$$\boxed{\substack{\text{Years of}\\\text{Benefit}\\\text{Service}}} \times \boxed{\substack{\text{25-Year Rule Factor}\\\text{OR}\\\text{20-Year Rule Factor}}} \times \boxed{\substack{\text{Average}\\\text{Monthly}\\\text{Earnings}}} = \boxed{\substack{\text{Monthly}\\\text{Variable}\\\text{Benefit}}}$$

❏   **Maximum Benefit Service**

When calculating your variable benefit, use your years and months (shown as decimals) of benefit service up to a maximum of either 25 years or 20 years. For most vested plan members, the maximum amount of benefit service is 25 years. However, if you were a plan member *and* age 40 or older on June 1, 1976, your maximum amount of benefit service is 20 years.

❏   **Maximum Benefit Service Factors**

The maximum amount of benefit service for most vested plan members is 25 years, and the 25-year rule factor is used. However, if your maximum amount of benefit service is 20 years, your variable benefit is calculated using the 20-year rule factor:

- ■   25-Year Rule Factor   =   1.25%   (.0125)
- ■   20-Year Rule Factor   =   1.5625%   (.015625)

❏   **Average Monthly Earnings**

The earnings used to determine your variable benefit are those you earned while in an eligible employment category up to a maximum set by the Internal Revenue Service for qualified plans for a plan year -- July 1 through the following June 30. (Earnings paid in foreign currency are converted to U.S. dollars.) Your earnings are the total of:

- ■   The compensation reported on Form W-2 for Federal income tax purposes *minus* compensatory reimbursements, *and*

- ■   Before-tax payroll deductions for 401(k) contributions, group insurance coverages and the reimbursement accounts.

## Calculating the Variable Benefit *(cont'd)*

❑   **Calculating Your Average Monthly Earnings**

1.   First identify the ten *plan* years (July 1 through the following June 30) preceding or coinciding with your termination date, retirement date or date you transferred to an ineligible classification, and your earnings for each of those years. *Please note:*

   ▪ If you move out of an eligible employment category or leave Andersen *before* the last working day in June, your earnings for that plan year will *not* be considered.  However, if you move out of an eligible employment category or leave Andersen *on* the last working day in June, your earnings for that plan year *will* be considered.

   ▪ If you move into an eligible employment category anytime during the plan year, your earnings for that entire plan year *will* be considered.

2.   Then identify the three *consecutive* plan years in which your earnings are the highest.  (Special rules apply if you do not have earnings for three consecutive years.)

3.   Finally, total your annual earnings for those three plan years; then divide that total by 36.  The result is your average monthly earnings for the three year period.

❑   **Sample Calculations**

The following are examples of how the variable benefit would be calculated for a vested member with 25 years of benefit service and a vested plan member with 20 years of benefit service.  Each example uses the *same* average monthly earnings.

## Calculating the Variable Benefit *(cont'd)*

### *Average Monthly Earnings*

First determine the average monthly earnings for the highest consecutive three plan years. In the following example, the highest earnings for any consecutive three years is $112,700 (plan years 1992, 93 and 94). No other three consecutive plan years have a higher total (column 3). $112,700 divided by 36 months results in average monthly earnings of $3,130.56 (column 4).

| (1) 10 Prior Plan Years (A) | (2) Earnings per Plan Year 7/1 - 6/30 | (3) Total Last 3 Years of Earnings | (4) Average Monthly Earnings (B) |
|---|---|---|---|
| 1987 | $34,500 | N/A | N/A |
| 1988 | 35,100 | N/A | N/A |
| 1989 | 35,900 | $105,500 | $2,930.56 |
| 1990 | 36,200 | 107,200 | 2,977.78 |
| 1991 | 36,800 | 108,900 | 3,025.00 |
| 1992 | 37,200 | 110,200 | 3,061.11 |
| 1993 | 37,900 | 111,900 | 3,108.33 |
| 1994 | 37,600 | 112,700 | 3,130.56 |
| 1995 | 37,000 | 112,500 | 3,125.00 |
| 1996 | 36,800 | 111,400 | 3,094.44 |

A.    Ten full plan years immediately prior to termination.
B.    Total of highest three years of earnings divided by 36 months.

### *25 Year Rule Factor*

If the 25-year rule applies to you and you have monthly earnings of $3,130.56 with 25 years of benefit service, your variable benefit would be $978.30 *excluding* any adjustments.

| 25 | x | .0125 | = | .3125 | x | $3,130.56 | = | $978.30 |
|---|---|---|---|---|---|---|---|---|
| Years of Benefit Service | | 25-Year Rule Factor | | | | Average Monthly Earnings | | Monthly Variable Benefit |

### *20 Year Rule Factor*

If the 20-year rule applies to you and you have monthly earnings of $3,130.56 with 20 years of benefit service, your variable benefit would be $978.30 *excluding* any adjustments.

| 20 | x | .015625 | = | .3125 | x | $3,130.56 | = | $978.30 |
|---|---|---|---|---|---|---|---|---|
| Years of Benefit Service | | 20-Year Rule Factor | | | | Average Monthly Earnings | | Monthly Variable Benefit |

## BENEFIT ADJUSTMENTS

The amount of your retirement plan benefit will be adjusted in the following situations:

❑  **Early Retirement**

You request that benefit payments begin at early retirement.

Your benefit will be reduced by one-half percent (.005) for each month payments precede your normal retirement date (the first of the month following your 62nd birthday). For example, if you start your benefit at age 57, your payments will begin five years (60 months) before your normal retirement date, and your benefit will be reduced by 30% (60 x .005).

❑  **Variable Benefit Exceeds Maximum**

The maximum variable benefit amount available is $1,500 per month ($18,000 per year). If the calculation results in a higher figure, your variable benefit will automatically be reduced to $1,500 per month ($18,000 per year).

❑  **Elect Payment Method with Indexed and/or Survivor Benefits**

You elect a payment method which provides an indexed benefit and/or survivor benefit or payments to a beneficiary after you die. (See *Payment Method Options* in this section for further information.)

■  *Indexed Life Annuity:* Your benefit will be reduced to an actuarial equivalent to reflect payments increase each January.

■  *Qualified Joint and Survivor:* The adjustment is based on your spouse's age relative to your age and the percentage of the benefit you elect to continue after your death.

■  *Indexed 50% Joint and Survivor Annuity:* The adjustment is based on your spouse's age relative to your age, and reduced to an actuarial equivalent to reflect payments increase each January.

■  *Life and 120 Month:* Your benefit will be reduced to 95% of the benefit you would receive under the lifetime only payment method.

■  *Joint and Survivor/Non-spouse Beneficiary:* The adjustment is based on your beneficiary's age relative to your age and the percentage of the benefit you elect to continue after your death.

The type of retirement you take determines which adjustments apply to your benefit as well as the order in which they are applied. (The five types of retirement are explained under *Retirement Options* in this section.)

## Normal Retirement

Normal retirement occurs when you retire on your normal retirement date -- the first day of the month following your 62nd birthday. To determine your normal retirement benefit, complete the following steps in the order shown:

| | | |
|---|---|---|
| 1 | *Variable and Fixed Benefits* | Calculate your fixed and variable benefits as explained in *How Benefits Are Calculated*. |
| 2 | *Maximum Benefit Adjustment* | Reduce your variable benefit to $1,500/month ($18,000/year), if applicable. |
| 3 | *Early Payment Adjustment* | Does not apply to normal retirement. |
| 4 | *Retirement Plan Benefit* | Total your variable benefit after the maximum benefit adjustment (if applicable) and your fixed benefit to determine your retirement benefit. |
| 5 | *Payment Method Adjustment* | Make any necessary reductions to your retirement benefit resulting from the payment method you elect. |

## Early Retirement

Early retirement occurs when you retire on the first of the month following your 55th birthday (or the first of any month thereafter) but before your normal retirement date. Early retirement gives you the option of starting payments before your normal retirement date. To determine the amount of your early retirement benefit, complete the following steps in the order shown:

| | | |
|---|---|---|
| 1 | *Variable and Fixed Benefits* | Calculate your fixed and variable benefits as explained in *How Benefits Are Calculated*. |
| 2 | *Early Payment Adjustment* | Apply the early payment adjustment to your variable benefit and your fixed benefit *only if you wish payments to begin before your normal retirement date*. |
| 3 | *Maximum Benefit Adjustment* | Reduce your variable benefit to $1,500/month ($18,000/year), if applicable. |
| 4 | *Retirement Plan Benefit* | Total your variable benefit after the maximum benefit adjustment (if applicable) and your fixed benefit to determine your retirement benefit. |
| 5 | *Payment Method Adjustment* | Make any necessary reductions to your retirement benefit resulting from the payment method you elect. |

## Rule of 80 Retirement

Rule of 80 retirement allows you to retire before your normal retirement date with no early payment reduction to your benefit if your age at retirement plus your years of vesting service (total years with Andersen) equal or exceed 80. Your age and vesting service (total years with Andersen) must be in whole years rounded down. To determine the amount of your retirement benefit under rule of 80 retirement, complete the following steps in the order shown:

| | | |
|---|---|---|
| 1 | *Variable and Fixed Benefits* | Calculate your fixed and variable benefits as explained in *How Benefits Are Calculated*. |
| 2 | *Early Payment Adjustment* | Does not apply to rule of 80 retirement. |
| 3 | *Maximum Benefit Adjustment* | Reduce your variable benefit to $1,500/month ($18,000/year), if applicable. |
| 4 | *Retirement Plan Benefit* | Total your variable benefit after the maximum benefit adjustment (if applicable) and your fixed benefit to determine your retirement benefit. |
| 5 | *Payment Method Adjustment* | Make any necessary reductions to your retirement benefit resulting from the payment method you elect. |

## Deferred Retirement

Deferred retirement occurs when you continue to work for Andersen after your normal retirement date. To determine the amount of your deferred retirement benefit, complete the following steps in the order shown:

| | | |
|---|---|---|
| 1 | *Variable and Fixed Benefits* | Calculate your fixed and variable benefits as explained in *How Benefits Are Calculated*. |
| 2 | *Early Payment Adjustment* | Does not apply to deferred retirement. |
| 3 | *Maximum Benefit Adjustment* | Reduce your variable benefit to $1,500/month ($18,000/year), if applicable. |
| 4 | *Retirement Plan Benefit* | Total your variable benefit after the maximum benefit adjustment (if applicable) and your fixed benefit to determine your retirement benefit. |
| 5 | *Payment Method Adjustment* | Make any necessary reductions to your retirement benefit resulting from the payment method you elect. |

## Deferred Vested Termination

If you are a vested plan member and terminate before your early retirement date, you are eligible for a retirement benefit based on the plan provisions in effect on the date of termination even though you are no longer working for Andersen. You can elect to begin benefit payments at your early retirement date, or delay the start of payments until your normal retirement date. However, there is no advantage in delaying the start of your payments beyond your normal retirement date, since your payments will not increase. To determine your deferred vested benefit, complete the following steps in the order shown:

| | | |
|---|---|---|
| 1 | *Variable and Fixed Benefits* | Calculate your fixed and variable benefits as explained in *How Benefits Are Calculated.* |
| 2 | *Maximum Benefit Adjustment* | Reduce your variable benefit to $1,500/month ($18,000/year), if applicable. |
| 3 | *Early Payment Adjustment* | Apply the early payment adjustment to your variable benefit and your fixed benefit *only if you wish payments to begin before your normal retirement date.* Please note that even if you are age 55 or older when your benefit begins and your years of vesting service plus your age equal 80 or more, your benefit is *still* subject to the early payment adjustment. |
| 4 | *Retirement Plan Benefit* | Total your variable benefit after the maximum benefit adjustment (if applicable) and your fixed benefit to determine your retirement benefit. |
| 5 | *Payment Method Adjustment* | Make any necessary reductions to your retirement benefit resulting from the payment method you elect. |

Following termination, you will receive a letter stating the benefit payable at your normal retirement date.

## APPLYING FOR THE BENEFIT

Your retirement benefit does not start automatically; you must apply for it. Before applying, you can request an estimate of your benefit based on each of the payment methods. To do so, call the Andersen Benefits Center and notify an ABC Representative that you intend to retire. The Andersen Benefits Center will calculate your retirement benefit and send you personalized retirement information. Also enclosed will be the appropriate forms that must be completed and returned.

### How to Apply

To apply for the benefit, you must complete and return your retirement election form and supporting documentation to the Andersen Benefits Center. To avoid delaying the start of your payments, return your form and other required information to the Andersen Benefits Center as soon as possible but no later than 60 days before you want benefits to begin.

### Proof of Age

You will be required to submit proof of your age along with your application. If you have elected a payment method which pays a survivor benefit, proof of your beneficiary's age will also be required.

### Taxes on the Benefit

Your retirement benefit is subject to Federal income tax, and in some locations, also to State and local taxes:

- *Federal Tax*:  You can make a Federal tax withholding election before your benefit begins by completing the withholding section the retirement election form you receive from the Andersen Benefits Center.

  If you elect withholding, taxes will be deducted in the same way as they are on wages. If you elect to have no withholding, or if you do not have enough tax withheld, you may have to make estimated tax payments. (Penalties could occur if the tax withheld or your estimated tax payments are insufficient.) If you do not make a withholding election on your form, Federal taxes are automatically withheld as if you are married with three withholding allowances.

- *State and Local Taxes:*  Andersen does not withhold State and local taxes from your retirement benefit. Consult your tax advisor for further information about the tax laws applicable to retirement benefits in your area.

### If Your Application is Denied

The retirement plan pays benefits to eligible, vested plan members. If your request for a retirement plan benefit is denied, you can have it reviewed. The *Plan Information* section of this binder explains the procedure to follow if your request is denied.

## *CONDITIONS AFFECTING YOUR MEMBERSHIP AND BENEFIT*

Your plan membership and eligibility for a retirement benefit can be affected by the following situations.

### Leave of Absence

Approved leaves of absence do not effect vesting or benefit service requirements.  You will continue to earn vesting and benefit service credits as long as you remain in an eligible employment category during your leave.

### Change in Employment Category

☐    **Ineligible to Eligible**

When you move to an eligible employment category, you become eligible for plan membership and a retirement benefit:

- ■    *Plan Membership:*  If you have met the plan membership requirements when your employment category changes, you will enter the plan effective the first day of the pay period in which the change occurred. If you do not meet the membership requirements, you will enter the plan on the January 1 or July 1 following the date you complete one year of vesting service.

    If you were an inactive plan member or an inactive vested plan member, you will become an active plan member or an active vested member on the date your classification changes.

- ■    *Earnings, Vesting Service and Benefit Service:*  You will receive a credit for your earnings from the first day of the plan year in which your employment category changes provided you are in an eligible classification on the last business day of the plan year. (This is the only time earnings are credited while not in an eligible employment category.) Vesting service remains unchanged.  Benefit service begins on the first day of the pay period in which your classification changes.

☐    **Eligible to Ineligible**

Generally, your membership status and vesting service are not affected when you move out of an eligible employment category.  However, you will not continue to earn benefit service and earnings credit after your classification changes:

- ■ *Plan Membership*: If you are a plan member at the time your employment category changes, you continue to be a member. If you met the vesting requirements, you are eligible for a retirement benefit. You will become an inactive plan member or an inactive vested plan member on the date your classification changes.

- ■ *Earnings, Vesting Service and Benefit Service:* You will *not* receive earnings credit for the plan year in which your employment category changes unless the change occurred *on* the last business day of June. Vesting service continues; however, if you are not a plan member at the time your classification changes, you cannot enter the plan until you move back to an eligible employment category. Benefit service ends the last day of the pay period prior to the pay period in which your classification changes. You will keep the benefit service earned prior to the change; however, you will not earn additional benefit service until you move back to an eligible classification.

## Becoming a Partner

Partners are not eligible to join the retirement plan. However, if you are a plan member at the time you become a partner, your plan membership does not end. If you meet the vesting requirements either before or after you become a partner, you are eligible for a retirement plan benefit.

## Termination

If you leave Andersen *before* meeting the vesting requirements, your plan membership ends the date you terminate. You are *not* eligible for a retirement benefit.

If you leave Andersen *after* meeting the vesting requirements, you *are* eligible for a retirement benefit.

- ■ Your benefit will be based on the plan provisions in effect at the time you terminate. Plan amendments made after you leave Andersen will not apply unless stipulated; however your accrued benefit cannot be reduced by future plan changes.

- ■ You will *not* receive earnings credit for the plan year in which you terminated unless your termination date is the last business day of June.

- ■ Your plan membership is based on your age at the time you terminate:

## Termination *(cont'd)*

| If you leave: | You are a: | And your benefit can begin: |
|---|---|---|
| On or after reaching age 55 | *Retired Vested Member* | On the first of the month following the date you leave, subject to the early payment adjustment. If you are under age 62 when you terminate, you may delay your benefit until you reach your normal retirement date. |
| Before reaching age 55 | *Deferred Vested Member* | On the first of the month following the date you reach age 55 subject to the early payment adjustment, or you may delay your benefit until your normal retirement date, and the early payment adjustment will not apply. |

## Rehires

❑ **Plan Membership**

■ If you were *not* a plan member before you terminated, your eligibility for membership will be determined by the plan provisions in effect when you are rehired.

■ If you *were* a plan member before you terminated, you will be reinstated in the plan on your first day of re-employment. Your employment category when you are rehired will determine if you are an active or inactive member.

■ If you met the membership requirements before termination, but had not entered the plan, and are rehired in an eligible employment category, you will become a plan member based on your original entry date and your rehire date.

| If you are rehired: | You will enter the plan: |
|---|---|
| ➢ *After* the January 1 or July 1 you would have entered the plan if you had not terminated. | On your first full day of re-employment. |
| ➢ *Before* the January 1 or July 1 you would have entered the plan if you had not terminated. | On the January 1 or July 1 following your first day of re-employment. |

## Rehires *(cont'd)*

- If you met the membership requirements before termination, but had not entered the plan, and are *not* rehired in an eligible employment category, you will not become a plan member (unless you are employed in an eligible employment category at a later date).

☐ **Earnings History, Vesting Service and Benefit Service**

Your history of earnings, vesting service and benefit service as of the date you terminated will be reinstated. You will begin earning vesting service on your first day of re-employment. If you are rehired in an eligible employment category, you will also begin receiving earnings credit and benefit service on your first day of re-employment.

☐ **Within 12 Months of Termination**

If you are rehired within 12 months of the date you terminated, the time spent away from Andersen will be counted toward your vesting service and/or benefit service as applicable.

☐ **After Retirement**

If you are re-employed after you have begun receiving your retirement benefit, payments will stop except in the following situations:

- You are age 62 or older. You will receive a benefit for any month you work 40 hours or less. (Payment is made the first of the third month following the month you work 40 hours or less.)

- You are over age 70-1/2. Federal regulations require that benefit payments begin no later than April 1 of the calendar year following the date you turn age 70-1/2.

☐ **Second Retirement**

If you are rehired *after* your early retirement date (the first of the month following your 55th birthday) and then retire a second time, your benefit will be calculated as though this was your only retirement. Plan provisions in effect when you retire the second time will apply.

If payments had begun prior to your re-employment, your benefit will be re-calculated to include your additional benefit service and earnings. Your benefit may then be adjusted to reflect the payments you previously received. However, the amount of your second retirement benefit will not be less than the one you were receiving before you were rehired.

## U.S. Citizens Working Outside the U.S. and Puerto Rico

❑   **Plan Membership**

U.S. citizens employed by Andersen Consulting or Arthur Andersen outside the U.S. or Puerto Rico are not eligible for the Andersen plan if they participate in some other form of retirement plan sponsored by these employers or provided under the laws of the country where they work.

U.S. citizens employed by Andersen Worldwide outside the U.S. or Puerto Rico continue to be plan members if they were members immediately prior to employment by Andersen Worldwide. U.S. citizens employed by an affiliated firm of Andersen Worldwide are eligible for plan membership if they transfer to an office outside the U.S. or Puerto Rico as expatriate employees with the expectation of returning to a U.S. or Puerto Rican office.

If you have questions about plan membership in these situations, contact the Andersen Benefits Center and speak to an ABC Representative.

❑   **Earnings and Years of Vesting and Benefit Service**

Eligible employees or plan members working outside the U.S. or Puerto Rico, continue to receive credits for earnings, years of vesting service and years of benefit service as long as they remain in an eligible employment category.

## Citizens of Countries Other than the U.S. Working in the U.S. or Puerto Rico

U.S. citizenship is not a requirement for plan eligibility. You are an eligible employee if you are employed by Andersen on a full-time or part-time basis within the United States or Puerto Rico *unless* you are employed on a temporary basis as an inpatriate employee with the expectation that you will return to employment with a Worldwide employer.

If you have questions about plan membership in this situation, contact Andersen Benefits Center and speak to an ABC Representative.

## *OTHER INFORMATION*

### Assignment of Benefits/Qualified Domestic Relations Orders

Except as may be required by the tax withholding provisions of a Federal or State income tax act, your plan accounts cannot be sold, transferred, alienated, assigned, or subjected to debts or other obligations.

However, in compliance with Federal requirements, a plan member's benefits can be assigned to an alternate payee under a qualified domestic relations order. A qualified domestic relations order is a state court order that gives an alternate payee, such as a spouse, ex-spouse, child or other dependent, the right to receive all or part of the benefits payable to a Plan Member. The most typical example of a situation that might generate a domestic relations order is the settlement of property rights in a divorce. A plan member who may become subject to such an order should contact Andersen Benefits Center and speak to a member of the Andersen Qualified Order team.

### Incompetency

If, in Andersen's opinion, you are unable to manage your financial affairs, Andersen may direct the trustee to make payments to a legal representative, relative, or friend; or apply payments in a manner Andersen believes to be in your best interest.

### Employment Rights

The retirement plan is not an employment contract, and membership in the plan does not give any plan member the right to be retained in Andersen employment.

### Top-Heavy

If the U.S. employees' profit sharing plan or the U.S. retirement plan ever becomes "top-heavy" (as defined in the Internal Revenue Code), special requirements as to minimum contributions or benefits will apply. You will be notified if these requirements every apply.

### Changes of Address, Requests for Forms and Information

After you retire or terminate, or if you are a spouse or non-spouse beneficiary, requests for election forms, completed forms, notification of address changes and general inquiries should be directed to the Andersen Benefits Center. *It is your responsibility to notify the Andersen Benefits Center of any change in your mailing address.*

Retirement Plan                                 RT-28                                        1/1/94

## A WORD ABOUT SOCIAL SECURITY

In addition to the benefits you receive from the Andersen plan, you may be eligible for benefits from Social Security. In addition to your benefits, your dependents may also be entitled to Social Security benefits.

Eligibility for benefits is related to the number of calendar quarters you've worked in a position covered by Social Security. In general, you need to work 40 calendar quarters (or about 10 years) to receive Social Security retirement benefits.

The amount of your benefit depends on the amount of your salary over the years that is subject to Social Security tax. You and Andersen pay taxes to Social Security to fund benefits based on the current tax rate and on the part of your salary subject to taxes. For every tax dollar you pay, Andersen also pays one dollar to the program.

If you will reach age 62 before the year 2000, you will be eligible for a full Social Security benefit if payments begin at age 65. For persons who reach age 62 in the year 2000 or thereafter, the normal Social Security retirement age for full benefits will be raised to age 67, with a gradual phase-in between the years 2000 and 2022. In either case, you may be eligible for reduced benefits when you reach age 62. And if you delay beyond the normal Social Security retirement age, you may receive an increased benefit.

Depending on your income level during retirement, part of your benefit may be subject to Federal income tax.

The best source of information about the Social Security program is your local Social Security office. To find the Social Security office closest to you, call (800) 772-1213.

## *DEFINITIONS*

### *Active Plan Member*

An employee who has entered the plan on the January 1 or July 1 following completion of the plan entry requirements, or a former inactive plan member who has moved back to an eligible employment category.

### *Active Vested Plan Member*

An active plan member who has met the vesting requirements by either completing at least five years of vesting service or by reaching age 62.

### *Benefit Service*

The amount of time spent in an eligible employment category including time spent on an approved leave of absence. Benefit service is part of the calculation used to determine the fixed and variable benefits.

### *Deferred Retirement*

A vested plan member leaving Andersen anytime after his or her normal retirement date.

### *Deferred Vested Plan Member*

An active or inactive vested plan member who leaves Andersen before his or her early retirement date.

### *Deferred Vested Termination*

Leaving Andersen before the vested member's early retirement date.

### *Early Payment Adjustment*

A reduction made to the benefit when a retired or deferred vested plan member elects to begin payments before his or her normal retirement date.

### *Early Retirement*

Retiring on or after a vested plan member's early retirement date and before his or her normal retirement date.

### *Early Retirement Date*

The first of any month following a vested plan member's 55th birthday, but before his or her 62nd birthday.

### Eligible Employees

Personnel other than partners who are U.S. citizens employed by Andersen on a full-time or part-time basis, as a regular or temporary employee, in the U.S. or Puerto Rico, and who are in an eligible employment category.

### Eligible Employment Categories

Any one of the following:

| Arthur Andersen | Andersen Consulting |
|---|---|
| Principals | Associate Partners |
| Tax and Audit Aides and Assistants | Practice Management Personnel |
| Practice Management Personnel | Business Process Management Personnel |
| Practice Services Personnel | Position-based Business Unit Personnel |
| Practice Other Personnel | Certain Grandfathered Personnel |

### Fixed Benefit

A benefit based on the same (or "fixed") dollar amount for all vested plan members multiplied by the individual's years of benefit service.

### Inactive Plan Member

An active plan member who moved out of an eligible employment category.

### Inactive Vested Plan Member

An inactive plan member who has met the vesting requirements.

### Normal Retirement

Retiring on a vested member's normal retirement date.

### Normal Retirement Date

The first of the month following a vested plan member's 62nd birthday.

### Payment Adjustments

Reductions made due to the type of retirement taken and/or payment method elected.

### Payment Method

The manner in which a retired vested member elects to have his or her monthly retirement benefits paid.

## Plan Membership Requirements

Eligible employees must complete at least one year of vesting service.

## Plan Entry Date

The January 1 or July 1 following the date an eligible employee meets the requirements for plan membership.

## Plan Year

July 1 through the following June 30. Plan members must be in an eligible employment category as of the last business day in June to receive earnings credit for that plan year.

## Rule of 80 Retirement

When a vested plan member's is age 55 or older at the time of retirement and his or her years of vesting service (total years with Andersen) plus age (both in whole years rounded down) at retirement equals 80 or more.

## Twenty (20) Year Rule Factor

Used to calculate the variable benefit for vested plan members who were age 40 or older as of June 1, 1976. The factor is 1.5625% (.015625); the maximum number of years of benefit service that can be used with this factor is 20.

## Twenty-five (25) Year Rule Factor

Used to calculate the variable benefit for most vested plan members. The factor is 1.25% (0.125); the maximum number of years of benefit service that can be used with this factor is 25.

## Variable Benefit

A benefit based on the individual earnings history for each vested plan member multiplied by the individual's years of benefit service. (Since no two earnings histories are alike, the benefit "varies" among vested members.)

## Vesting Requirements

Active plan members must complete five years of vesting service, *or* reach age 62, if they have less than five years of vesting service, *or* be over age 62 when they enter the plan.

## Vesting Service

The amount of time spent in any employment category including time spent on an approved leave of absence which begins the first day you work at least one hour and ends the day you terminate. Vesting service is used to determine eligibility for plan membership and vesting.

# EXHIBIT E

# Accenture United States Retirement Plan

# Summary Plan Description

(Effective January 1, 2001)

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................... 1

    Background ...................................................................................................... 1

ELIGIBILITY ........................................................................................................... 1

    Rehired Participants ........................................................................................ 2

THE RETIREMENT BENEFIT................................................................................. 2

    Summary of Retirement Benefits.................................................................... 2

    Benefit Formula ............................................................................................... 2

TYPES OF RETIREMENT BENEFITS.................................................................... 2

    Normal Retirement Benefit ............................................................................. 2

    Deferred Retirement Benefit........................................................................... 2

    Early Retirement Benefit................................................................................. 2

    Deferred Vested Benefit ................................................................................. 3

HOW THE BENEFIT IS PAID ................................................................................. 3

    Normal Forms of Payment .............................................................................. 3

    Optional Forms of Payment............................................................................. 3

SURVIVING SPOUSE BENEFIT ............................................................................ 4

    Form of Elections ............................................................................................ 4

MISCELLANEOUS.................................................................................................. 4

GLOSSARY OF TERMS......................................................................................... 5

# INTRODUCTION

This summary explains the main features of the Accenture United States Retirement Plan (Retirement Plan). The Plan was established by Accenture LLP (Accenture), effective July 1, 1999. Accenture sponsors the Retirement Plan to provide you with retirement and other benefits.

Accenture is the administrator of the Retirement Plan. Accenture may delegate responsibilities for plan administration to other persons. The administrator of the Retirement Plan is referred to in this summary as the "Plan Administrator."

The Retirement Plan covers eligible employees of Accenture and its subsidiaries that have adopted the Retirement Plan. Where appropriate, references to "Accenture" will include the subsidiaries that have adopted the Retirement Plan.

The terms of the Retirement Plan are complicated. This summary is intended to explain the principal terms of the Retirement Plan in non-technical language. The complete terms and conditions of the Retirement Plan are described in a complex legal document. This summary is not intended to cover every circumstance covered in the plan document. Should there be any inconsistency between this summary and the plan document, the terms of the plan document will govern. No benefits shall be provided based on the terms of this summary, unless such benefits are provided for under the terms of the plan document. (Of course, you may examine the complete plan document on which this summary is based. It is available from Accenture.)

## Background

Prior to July 1, 1999, employees of Accenture were eligible to participate in the Andersen Worldwide Societe Cooperative United States Retirement Plan (AW Plan). On July 1, 1999, assets and liabilities attributable to current and former employees of Accenture were transferred to the Plan. If you were a participant in the AW Plan, your accrued benefit under the AW Plan has been transferred to this Plan. All your compensation and years of service under the AW Plan will be counted under the Retirement Plan. Also, your accrued benefit under the Plan will not be less than the benefit you had accrued under the AW Plan. Later in this summary, you will find a Glossary of Terms. You will better understand this summary if you first read the Glossary of Terms.

# ELIGIBILITY

If you were a participant in the AW Plan, you will continue to participate in the Retirement Plan without interruption, subject to the terms of the Plan. If you were employed prior to July 1, 1996, you will cease to accrue benefits under the Retirement Plan if you transfer from the service line in which you were employed on June 30, 1996, to a service line that is not listed below.

If you are not yet a participant in the Retirement Plan, you will be eligible to participate in the Plan if you meet the following requirements:

1.  You are employed by Accenture within the United States or Puerto Rico; and

2.  You are classified in one of the following categories:

    a.  Associate Partners;

    b.  Global Business Practices;

    c.  Global Services Organization;

    d.  Business Process Management;

    e.  Process Innovation and Enablement; or

    f.  Business Integration Providers

If you are employed by a subsidiary of Accenture, you will only be eligible for the Retirement Plan if you transferred employment from Accenture to the subsidiary **and** you were eligible for the Retirement Plan immediately prior to your transfer. If you are a participant in the Accenture Transfer Retirement Plan, you are not eligible to participate in the Retirement Plan. If you meet these eligibility requirements, you will become a participant in the Retirement Plan on the January 1 or July 1 as of which you have completed one Year of Service.

## Rehired Participants

If you terminate employment after becoming a Retirement Plan participant and are reemployed by Accenture, you will become an active participant in the Retirement Plan on the later of your date of reemployment or the date you become eligible for participation in the Retirement Plan. You will receive credit for all your Years of Service and Years of Benefit Service that you had earned prior to your termination of employment.

# THE RETIREMENT BENEFIT

## Summary of Retirement Benefits

Your retirement benefit is calculated under a formula that considers your pay and years of service with Accenture. You may begin to receive retirement benefits on your Normal Retirement Date, Deferred Retirement Date, or Early Retirement Date. The Retirement Plan offers several forms of payment. If you are married, spousal consent may be required to elect certain forms of payment.

## Benefit Formula

Your normal monthly retirement benefit is calculated under the following formula. The current maximum month retirement benefit any employee can receive is $2,250.

- 1.25% of your Average Monthly Earnings multiplied by your Years of Benefit Service (maximum of 25) **plus**

- $20 multiplied by your Years of Benefit Service (maximum of 25).

# TYPES OF RETIREMENT BENEFITS

## Normal Retirement Benefit

The normal retirement benefit is payable beginning on your Normal Retirement Date.

## Deferred Retirement Benefit

The deferred retirement benefit is payable beginning on your Deferred Retirement Date. Your deferred retirement benefit is a monthly benefit equal to your normal retirement benefit calculated based on your Average Monthly Earnings and Years of Benefit Service as of your Deferred Retirement Date.

## Early Retirement Benefit

The early retirement benefit is payable on your Early Retirement Date. Unless your age and Years of Service (both are rounded down) total 80 at your Early Retirement Date, your early retirement benefit will be reduced to reflect that your benefits may be paid for a longer period of time than if you began receiving your benefits at your Normal Retirement Date. Your monthly benefit will be reduced by 0.5% for each month by which payment of your benefit precedes your attainment of age 62. This reduction will be applied before applying the Retirement Plan's cap on the monthly benefit (currently $2,250).

## Deferred Vested Benefit

If you terminate employment before your retirement or death, but after you have completed at least 5 Years of Service, you will have a nonforfeitable right to 100% of your benefit earned to the date of your termination. If you terminate employment before completing 5 Years of Service, you will forfeit your benefit. (If you are reemployed by Accenture, you may continue to vest in your benefit.)

Your deferred vested benefit normally will commence on your Normal Retirement Date. However, you may elect to have your monthly deferred vested benefit commence on an Early Retirement Date. If you elect to commence your benefit on an Early Retirement Date, your deferred vested benefit will be reduced to reflect that your benefits may be paid for a longer period of time than if you began receiving your benefits at your Normal Retirement Date. Your monthly benefit will be reduced by 0.5% for each month by which payment of your benefit precedes your attainment of age 62. This reduction will be applied after applying the Retirement Plan's cap on the monthly benefit (currently $2,250).

# HOW THE BENEFIT IS PAID

## Normal Forms of Payment

- **Not Married/Life Annuity:** Your benefits will be paid in the form of a life annuity if you are not legally married on the date payments commence and do not waive the life annuity form of payment. If you are married, you may elect to receive your benefit in the form of a life annuity if you legally waive the joint and survivor annuity form of payment with your spouse's consent (as described below). The life annuity is a monthly benefit payable during your lifetime.

- **Married/Qualified Joint and Survivor Annuity:** Your benefits will be paid in the form of a qualified joint and survivor annuity if you (1) are legally married on the date payments commence and (2) do not waive the qualified joint and survivor annuity. The qualified joint and survivor annuity is an actuarially reduced monthly benefit payable during your lifetime, and if your spouse is living at your date of death, payment of 50% of such reduced monthly benefit to your spouse until your spouse's death. You may elect to have a 75% or 100% joint and survivor annuity method of payment instead of the 50% qualified joint and survivor annuity method of payment described above without your spouse's consent.

## Optional Forms of Payment

In lieu of the normal forms of payment described above, before payment of your benefits has commenced, you may elect to receive an actuarially equivalent benefit in one of the following methods.

- **Life and 10-Year Certain Annuity:** A reduced monthly payment terminating at your death and, if you die within 120 months of the date payments commenced, a continuing monthly payment of the same amount to a person designated by you for the balance of the 120 month period.

- **Joint and 50%, 75%, or 100% Survivor Annuity:** A reduced monthly payment during your lifetime. If the person designated by you is living at the time of your death, such person will receive payments for such person's lifetime equal to 50%, 75%, or 100% of the monthly amount payable to you during your life.

- **Indexed Life Annuity:** A reduced monthly retirement benefit payable during your lifetime, with the last payment to be made for the month in which you die. As of January 1 of each calendar year, the amount of the monthly benefit will be increased by 3%.

- **Indexed Joint and 50% Spousal Annuity.** A reduced monthly payment during your lifetime and, if your spouse is living at the time of such participant's death, payment of 50% of the last amount payable you while living, to your spouse as long as your spouse lives. Your spouse means the spouse to whom you were married at the date payment of your benefit commenced. As of January 1 of each calendar year, the amount of the monthly benefit payable will be increased by 3%.

# SURVIVING SPOUSE BENEFIT

If you die prior to the date on which you were to begin receiving benefits under the Retirement Plan, your spouse will receive a benefit if you were legally married on the date of your death. Your spouse's benefit will be a monthly benefit for the life of your spouse. The amount of your spouse's benefit will be an amount determined as follows:

- If, as of the date of your death, you had attained your Normal Retirement Date, 50% of your monthly retirement benefit determined as if you had retired and benefit payments had commenced immediately prior to your date of death with benefits payable in a qualified joint and survivor annuity form.

- If, as of the date of your death (or earlier retirement), you had attained your Early Retirement Date, 50% of the monthly early retirement benefit determined as if you had retired and benefit payments had commenced immediately prior to your date of death with benefits payable in a qualified joint and survivor annuity form.

- If, as of the date of your death (or earlier termination of employment), you had not met the requirements in (1) or (2) above, 50% of the monthly deferred vested benefit (based upon your Years of Benefit Service as of your date of death or earlier termination of employment) to which you would have been entitled at the earliest age at which the benefits could have commenced with benefits payable in a qualified joint and survivor annuity form.

In lieu of the benefit described above, whichever is applicable, your spouse may elect, prior to commencement of the spouse's benefit, to receive an actuarially reduced spouse's benefit, the amount of which is increased by 3% as of January 1 of each calendar year.

## Form of Elections

Each election or request required or permitted to be made must be made in accordance with the rules and procedures established by the Plan Administrator and shall be effective as determined by the Plan Administrator.

# MISCELLANEOUS

The Plan Administrator has complete discretion to determine all questions arising under the Retirement Plan, such as questions arising because of ambiguities, inconsistencies, or omissions in the plan document and questions as to the rights or eligibility of employees or participants and their beneficiaries and the value of their benefits under the Retirement Plan. Any interpretation of the Retirement Plan and any good faith decision on any matter within the Plan Administrator's discretion is binding on all persons. A misstatement or other mistake of fact shall be corrected when it becomes known, and the Plan Administrator shall make such adjustment, as it considers equitable and practicable.

Accenture expects and intends that the Retirement Plan will continue indefinitely. However, Accenture reserves the right to amend or terminate the Retirement Plan at any time in its sole discretion.

Your benefits under the Retirement Plan are not assignable (except pursuant to a qualified domestic relations order) nor may you pledge your benefits as security for a loan.

All contributions to the Retirement Plan are actuarially determined and are made by Accenture.

# GLOSSARY OF TERMS

**Average Monthly Earnings**
Generally, the monthly average of the Earnings paid to you during the 3 consecutive Plan Years for which your Earnings were the highest within the last 10 Plan Years prior to your termination of employment.

**Deferred Retirement Date**
The first day of the month following the date you retire after age 62.

**Early Retirement Date**
The first day of the month following the date you retire before your Normal Retirement Date, but after you have completed 5 Years of Service and attained age 55.

**Earnings**
Generally, the total amount paid to you by Accenture as taxable compensation, plus amounts that would have been taxable except for your election to make tax-deferred 401(k) contributions under the Profit Sharing Plan or your election of a benefit under the Accenture Flexible Benefits Program that is in lieu of cash compensation. Your Earnings do not include taxable expense reimbursements or allowances or any income attributable to eUnit awards. As required by the Internal Revenue Code, Earnings for any Plan Year in excess of $170,000 (as adjusted periodically by the Internal Revenue Service) are not used to determine your benefits under the Retirement Plan.

**Normal Retirement Date**
The first day of the month following the date you attain age 62.

**Plan Administrator**
The administrator of the Retirement Plan. Accenture (or its designee) is the Plan Administrator.

**Plan Year**
The twelve-month period ending on each June 30.

**Profit Sharing Plan**
Accenture Employees' Profit Sharing and 401(k) Plan.

**Year of Benefit Service**
Each 12-month period of association as an employee with Accenture during which you are an eligible employee under the Retirement Plan. Years of Benefit Service include both full and fractional years.

**Year of Service**
Each 12-month period of association as an employee with Accenture. Years of Service include both full and fractional years.

# EXHIBIT F

*1995*

# PLAN INFORMATION

### Information Covered in This Section

|  | Page |
|---|---|
| *General Information* | 2 |
| Plan Sponsor and Administrator | |
| The Benefit Plans | |
| Sponsor and Employer Identification | |
| Trustee of the Arthur Andersen & Co, SC, | |
| U.S. Profit Sharing and Retirement Trust | |
| Fiscal Year | |
| Plan Termination | |
| *Employee Rights and Protection* | 6 |
| Employee Retirement Income Security Act (ERISA) Rights | |
| Pension Benefit Guaranty Corporation (PBGC) | |
| *Appeals - Welfare Benefit Plans Claims* | 8 |
| Deductible Medical Plan | |
| Point-of-Service Medical Plan | |
| Health Maintenance Organizations | |
| All Other Plans | |
| If Your Appeal is Denied | |
| Appealing a Procedural Error | |
| *Appeals - Welfare Benefit Plans Eligibility and Enrollment Matters* | 15 |
| *Appeals - Pension Benefit Plans* | 16 |

© 1995 ARTHUR ANDERSEN & CO. SC
ALL RIGHTS RESERVED

## GENERAL INFORMATION

### Plan Sponsor and Administrator

Arthur Andersen & Co, Societe Cooperative is sponsor, administrator, and agent for service of legal process for the following plans. From time to time, Andersen amends the plans to keep them up-to-date with employees' needs and to conform with federal laws and regulations. Plan members are notified of amendments that affect their benefits under the plans.

To contact Andersen as sponsor, administrator, or agent for service of legal process for any of the welfare benefit and pension plans, write or call:

**Managing Director-Compensation and Benefits**
**Arthur Andersen & Co, SC**
**69 West Washington Street**
**Chicago, Illinois 60602-3002**
**(312) 580-0069**

Legal process related to pension benefit plans may also be served on The Northern Trust Company, as Trustee of the Arthur Andersen & Co, SC, U.S. Profit Sharing and Retirement Trust, 50 South La Salle Street, Chicago, Illinois 60675.

### The Benefit Plans

| Plan Name | Type of Plan |
|---|---|
| **U.S. Group Medical Expense Insurance Plan Plan Number 501** | Consisting of the following:<br><br>■ *Deductible Medical Plan*: Self-insured welfare plan providing medical benefits through an administrative services contract with AEtna Life & Casualty - Contract Number 653363<br><br>■ *Point of Service (POS) Medical Plan*: Self-insured welfare plan providing medical benefits through an administrative services contract with CIGNA Employee Benefits Companies - Contract Number 2068224<br><br>■ *Andersen-sponsored Health Maintenance Organizations (HMOs)*: Insured, state regulated medical plans within a proscribed geographic area. |
| **U.S. Group Retiree Medical Insurance Plan Plan Number 507** | Provides retiree medical benefits through the Deductible Medical Plan and Point of Service (POS) Medical Plan. |

## The Benefit Plans *(cont'd)*

| Plan Name | Type of Plan |
|---|---|
| U.S. Group Dental Expense Insurance Plan ("Group Dental") Plan Number 508 | Self-insured welfare plan providing dental benefits through an administrative services contract with AEtna Life & Casualty - Contract Number 653363 |
| U.S. Group Long-Term Disability Insurance Plan ("LTD") Plan Number 505 | Insured welfare plan providing disability benefits through contract with AEtna Life & Casualty - Contract Number LTD 653363. |
| U.S. Group Life Insurance Plan ("Employee Life") Plan Number 502 | Insured welfare plan providing death benefits through contract with AEtna Life & Casualty - Contract Number GP 653363. |
| U.S. Group Dependent Life Insurance Plan ("Dependent Life") Plan Number 506 | Insured welfare plan providing death benefits through contract with AEtna Life & Casualty - Contract Number GP 653363. |
| U.S. Group Accidental Death and Dismemberment Insurance Plan ("AD&D") Plan Number 504 | Insured welfare plan providing accidental death and dismemberment benefits through contract with Hartford Life and Accident Insurance Company - Contract Numbers ADD-5579 (employee AD&D) and ADD-5578 (partner AD&D). |
| Health Care and Dependent Day Care Reimbursement Accounts | Program established under Sections 125 and 129 of the Internal Revenue Code to reimburse certain health and dependent care expenses on a before-tax basis. |
| Arthur Andersen & Co, SC, U.S. Profit Sharing Plan, Plan Number 001 | Defined contribution plan |
| Arthur Andersen & Co, SC, U.S. Retirement Plan, Plan Number 002 | Defined benefit plan |

## Sponsor and Employer Identification

The Arthur Andersen & Co, SC, U.S. employer identification number (EIN) is 98-0037310. The EIN along with each plan name and number identify that specific plan with the federal agencies governing employee benefit plan operations. In addition, Arthur Andersen LLP (EIN 36-0732690), Andersen Consulting LLP (EIN 72-0542904), and Arthur Andersen & Co, SC are employers under the pension benefit plans.

**Trustee of the Arthur Andersen & Co, SC, U.S. Profit Sharing and Retirement Trust**

All contributions by Andersen, members and eligible employees go into the Arthur Andersen & Co, SC, U.S. Profit Sharing and Retirement Trust. The Trustee of the trust is The Northern Trust Company, 50 South LaSalle Street, Chicago, Illinois 60675.

**Fiscal Year**

For record-keeping purposes, the plans operate on a plan year basis. The plan year for the welfare benefit plans begins January 1 and ends December 31. The plan year for the pension benefit plans begins July 1 and ends June 30.

**Plan Termination**

The employers intend to continue these plans indefinitely but must reserve the right to terminate or amend any plan or to change or end their contributions to any plan if such action is considered necessary or desirable.

If plan termination occurs, coverages will be affected as follows. In certain circumstances, health care coverage may be continued under COBRA. Personnel would be advised of their rights in such a case.

| | |
|---|---|
| **Group Deductible Medical Plan** | Coverage for you and your dependents will end at midnight (CST) on the last day of the month in which the plan terminates unless you convert to an individual policy. |
| **Group Point-of-Service (POS) Medical Plan** | Coverage for you and your dependents will end at midnight (CST) on the last day of the month in which the plan terminates unless you convert to an individual policy. |
| **Health Maintenance Organizations (HMOs)** | Coverage for you and your dependents will end at midnight (CST) on the last day of the month in which the plan terminates. |
| **Group Dental Insurance** | Coverage for you and your dependents will end at midnight (CST) on the last day of the month in which the plan terminates. |
| **Group Long-Term Disability Insurance** | Coverage will end at midnight (CST) on the last day of the month in which the plan terminates. |

## Plan Termination *(cont'd)*

| | |
|---|---|
| **Group Life Insurance** | Coverage for you and your dependents will end at midnight (CST) on the last day of the month in which the plan terminates unless you convert to an individual policy. |
| **Group Accidental Death & Dismemberment Insurance** | Coverage will end at midnight (CST) on the last day of the month in which the plan terminates. |
| **Reimbursement Account Plans** | Eligible claims incurred during the year the plans are active must be received by the insurance company by March 15 of the following year. If March 15 is a Saturday, Sunday or holiday, claims must be received by the next working day. |
| **Arthur Andersen & Co, SC, U.S. Profit Sharing Plan** | Your account balance will be payable to you. |
| **Arthur Andersen & Co, SC, U.S. Retirement Plan** | All members will be vested in benefits accrued to date of termination. Plan assets will be allocated to and used for the benefit of members, their spouses and their beneficiaries in accordance with the rules and procedures established by the Pension Benefit Guaranty Corporation, and to the extent funds are available. No money can be returned to Andersen until accrued benefits have been paid to all eligible plan members. |
| | The plan is insured in the event of plan termination by the Pension Benefit Guaranty Corporation. |

## EMPLOYEE RIGHTS AND PROTECTION

### Employee Retirement Income Security Act (ERISA)

The Arthur Andersen & Co, SC, U.S. benefit plans meet the legal requirements established by the Employee Retirement Income Security Act of 1974 (ERISA). ERISA requires that individuals responsible for plan administration ("plan fiduciaries") act solely in the interest of plan participants and beneficiaries. Plan fiduciaries must exercise prudence and good judgment in the performance of plan duties.

ERISA also provides the following rights and protections to plan participants. No one may discharge you or discriminate against you for pursuing a benefit or exercising your ERISA rights.

- You may visit your office Benefits Coordinator to examine all plan documents or obtain copies, as applicable, of the documents without charge. These documents include plan descriptions, the annual financial report, and all other plan documents filed with the Department of Labor.

- You may also obtain copies of official plan documents and other plan information by writing the Managing Director-Compensation and Benefits, in care of Arthur Andersen & Co, SC, 69 West Washington Street, Chicago, Illinois 60602-3002.

- You will automatically receive a written summary of the annual financial reports for the plans.

- If a benefit claim is denied, in whole or in part, you will receive a written explanation from the insurance company or the Managing Director-Compensation and Benefits. You have a right to have your claim reviewed and reconsidered by the plan.

- You can obtain a statement advising you whether you have a right to receive a retirement benefit at normal retirement age (age 62) and, if so, what your benefits would be at age 62 if you stopped working under the plan now. If you do not have a right to a benefit, the statement will tell you how many more years you must work to obtain a right to a benefit. This statement must be requested in writing and is not required to be given more than once a year. The plan must provide the statement free of charge. (Andersen currently distributes an annual benefits statement to employees and intends to continue to do so.)

If it becomes necessary to enforce the above rights, you may take the following action:

- If you request materials from a plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator.

## Employee Retirement Income Security Act (ERISA) *(cont'd)*

☐   If a benefit claim is denied or ignored, in whole or in part, you may file suit in a state or federal court.

☐   If plan fiduciaries are misusing a plan's money, you may file suit in a federal court after exhausting the administrative review process described under *Appeals* in this section of the binder.

If you file suit, the court will determine court costs and legal fee responsibility. If you win your suit, the court may order the person you have sued to pay the costs and fees. If you lose, or if the court decides your suit is frivolous, the court may order you to pay the costs and fees.

If you have questions about your rights under ERISA, contact the Managing Director-Compensation and Benefits or the nearest area office of the U.S. Labor-Management Services Administration, Department of Labor.

If you believe you are being discriminated against under ERISA, contact the nearest area office of the U.S. Labor-Management Services Administration, Department of Labor.


## Pension Benefit Guaranty Corporation (PBGC)

The Pension Benefit Guaranty Corporation (PBGC) is a government insurance agency established to insure benefits under certain types of pension plans.

Generally, the PBGC guarantees most vested normal-age retirement benefits, early retirement benefits, and certain disability and survivor's pensions. However, the PBGC does not guarantee all types of benefits under covered plans and the amount of benefit protection is subject to certain limitations.

The PBGC guarantees vested benefits at the level in effect on the date of plan termination. However, if a plan or plan provision has been in effect less than five years before the plan terminates, or if benefits have been increased within the five years before plan termination, the entire amount of the plan's vested benefits or the benefit increase may not be guaranteed. In addition, there is a ceiling on the amount of monthly benefit that the PBGC guarantees, which is adjusted periodically.

For more information on the PBGC insurance protection and its limitations, contact the Managing Director-Compensation and Benefits in Chicago-69W or the PBGC. Inquiries to the PBGC should be addressed to:

**PBGC**
**Office of Communications**
**2020 K Street NW**
**Washington, D.C. 20006**
**(202) 778-8840**

## *APPEALS - WELFARE BENEFIT PLANS*
## *CLAIMS*

When a claim made to any of the welfare benefit plans is denied, you may appeal that denial.  Your appeal must follow a specified format or it will be rejected. The *nature* of the appeal determines to whom your appeal is sent:

| *To appeal a claim denial or issue pertaining to:* | | *Contact:* |
|---|---|---|
| **Deductible Medical Plan** | • Services requiring HEALTHMARC recommendation. | HEALTHMARC |
| | • Services *not* requiring HEALTHMARC recommendation. | AEtna Member Services |
| | • Services over the reasonable and customary (R&C) charges for your geographic area. | AEtna Member Services |
| **Point-of-Service Medical Plan** | • In-network services including issues regarding network providers, care provided, referrals to specialists, etc. | CIGNA Customer Services |
| | • Out-of-network services including charges over the reasonable and customary (R&C) charges for your geographic area. | CIGNA Customer Services |
| | • Certification for out-of-network hospitalization. | CIGNA Customer Services |
| | • In-network and out-of-network mental health and substance abuse services, including certification for out-of-network hospitalization for mental health and substance abuse. | MCC Behavioral Care |
| **Health Maintenance Organizations (HMOs)** | | Your HMO |
| **Dental Plan** | | AEtna Member Services |
| **Long-Term Disability** | | AEtna Life & Casualty |

| *To appeal a claim denial or issue pertaining to:* | *Contact:* |
|---|---|
| **Employee Life Insurance** | AEtna Life & Casualty |
| **Dependent Life Insurance** | AEtna Life & Casualty |
| **Accidental Death and Dismemberment** | Hartford Life Insurance |
| **Reimbursement Accounts** | AEtna Member Services |

## Deductible Medical Plan

❑ **Services Requiring HEALTHMARC Recommendation**

Under *no* circumstances should appeals for services requiring HEALTHMARC recommendation be sent to AEtna. AEtna will *not* review this type of appeal.

- If you contact HEALTHMARC and disagree with their recommendation or feel your case was incorrectly reviewed, you can appeal. You must appeal within 60 days of receiving HEALTHMARC's written recommendation advising you whether the proposed services will be covered. The written recommendation will explain how to make your appeal.

- If you did *not* contact HEALTHMARC within the required amount of time or failed to contact HEALTHMARC at all and your benefits are denied, you may request that HEALTHMARC perform a retrospective review. You must make your request to HEALTHMARC within 90 days of receiving notice of denial from the insurance company. HEALTHMARC will explain how this review will be completed.

  If HEALTHMARC's retrospective review recommends the services are medically necessary and appropriate, benefits for covered services will be paid at 50%. If the review does *not* recommend the services as medically necessary, the denial will be upheld.

❑ **Services NOT Requiring HEALTHMARC Recommendation *AND* Services over the Reasonable and Customary (R&C) Charge**

- *Within 90 days of submitting a claim,* you will receive payment or a notice of denial of payment. If your claim is denied, the reason for the denial and the plan provisions on which the denial is based will be explained. If further information is necessary to make your claim payable, the denial will explain what is needed and why.

## Deductible Medical Plan *(cont'd)*

- *Within 60 days of receiving the denial,* you (or someone you choose) must submit a written request for a review of the denial to AEtna. With your request, you must include any issues and/or comments which you feel impact your request based on your review of the insurance contract and other relevant documents. If AEtna has requested additional information, you must enclose that also.

- *Within 60 days of receiving your written appeal* and the related documentation, AEtna will give you a written explanation of their decision and the plan provisions on which the decision is based.

## Point-of-Service (POS) Medical Plan

❏   **In-Network Services**

If you have a complaint about a person, a service or your benefits, contact CIGNA Customer Services (for medical services) or MCC Behavioral Care (for mental health and substance abuse services) by phone or in writing. This includes any issues or concerns regarding network providers, care provided, and referrals to specialists. Every attempt will be made to resolve the problem at your initial contact.

If you are not satisfied, you can appeal in writing as directed by CIGNA or MCC. Your written appeal must provide the following information:

- An explanation of your complaint.
- Steps already taken toward resolving the problem.
- Why you feel the services in question should be covered, *or* how you feel the problem should be resolved.

Your appeal will be reviewed and you will be advised of the outcome in writing.

❏   **Out-of-Network Services**

- *Within 90 days of submitting a claim,* you will receive payment or a notice of denial of payment from CIGNA. If your claim is denied, the reason for the denial and the plan provisions on which the denial is based will be explained. If further information is necessary to make your claim payable, the denial will explain what is needed and why.

- *Within 60 days of receiving the denial,* you (or someone you choose) must submit a written request for a review of the denial.

  With your request, you must include any issues and/or comments which you feel impact your request based on your review of the insurance contract and other relevant documents. If CIGNA has requested additional information, you must enclose that also.

## Point-of-Service (POS) Medical Plan *(cont'd)*

- ■ *Within 60 days of receiving your written appeal* and the related documentation, CIGNA will provide a written explanation of their decision and the plan provisions on which the decision is based.

☐ **Certification for Out-of-Network Hospitalization**

- ■ If you contact CIGNA (for hospitalization due to a medical condition) or MCC Behavioral Care (for mental health or substance abuse hospitalization) and disagree with their determination, or if you feel your case was incorrectly reviewed, you can appeal. You must appeal within 60 days of receiving the determination. CIGNA or MCC will explain how to make your appeal at the time they provide the determination.

- ■ If you did not contact CIGNA or MCC *prior* to hospital admission or if you failed to call at any time and benefits are denied, you may request a retrospective review. You must make a *written* request within 90 days of receiving notice of denial. CIGNA or MCC will explain how this review will be completed.

  If the retrospective review certifies hospitalization as medically necessary, benefits will be paid for medically necessary hospital days *only*, and a $500 penalty will apply.

## Health Maintenance Organizations (HMOs)

If you have a complaint about the service or benefits provided by your HMO or wish to appeal a decision, you must contact your HMO directly and follow their appeals process. Andersen can provide you with a copy of the appropriate HMO contract upon request to your Benefits Coordinator.

## All Other Plans

To appeal a denied claim for the dental, employee life, dependent life, LTD, and AD&D plans, and the reimbursement accounts --

- ■ *Within 90 days of submitting a claim,* you will receive payment or a notice of denial of payment. If your claim is denied, the reason for the denial and the plan provisions on which the denial is based will be explained. If further information is necessary to make your claim payable, the denial will explain what is needed and why.

- ■ *Within 60 days of receiving the denial,* you (or someone you choose) must submit a written request for a review of the denial to the appropriate insurance company. With your request, you must include any issues and/or comments which you feel impact your request based on your review of the insurance contract and other relevant documents. If the insurance company has asked for additional information, you must enclose that also.

**All Other Plans** *(cont'd)*

- ■ *Within 60 days of receiving your written appeal* and the related documentation, the insurance company will give you a written explanation of their decision and the plan provisions on which the decision is based.

## If Your Appeal is Denied

The determination made by the insurance company reviewing the appeal is final. In *limited* situations and *only when a procedural error is suspected* will Andersen review a denied appeal.

❑ **Deductible Medical Plan**

It is *AEtna's* responsibility to consider claims and appeals based on the applicable plan provisions. It is *HEALTH-MARC's* responsibility to recommend inpatient hospitalization and certain outpatient care as it relates to the group medical plan, and to consider appeals in its area of responsibility. Therefore, Andersen will not override claim denials, recommendations or appeals.

Andersen will intervene only if a procedural error by AEtna or HEALTHMARC has occurred. (See *Appealing a Procedural Error* in this section for further information.)

❑ **Point-of-Service (POS) Medical Plan**

It is CIGNA's responsibility to consider claims and appeals based on the applicable plan provisions. Therefore, Andersen will not override claim denials, recommendations or appeals.

Andersen will intervene only if a procedural error by CIGNA has occurred. (See *Appealing a Procedural Error* in this section for further information.)

❑ **Health Maintenance Organizations (HMOs)**

Andersen will intervene only where it believes the HMO contract has been violated. (See *Appealing a Procedural Error* in this section for further information.)

❑ **Dental Plan**

It is AEtna's responsibility to consider claims and appeals based on the applicable plan provisions. Therefore, Andersen will not override claim denials, recommendations or appeals.

Andersen will intervene only if a procedural error by AEtna has occurred. (See *Appealing a Procedural Error* in this section for further information.)

## If Your Appeal is Denied *(cont'd)*

| | | |
|---|---|---|
| ❑ | **Long-Term Disability Insurance** | This is a fully insured contract; therefore, decisions made by the insurance company are final. No further appeal is available. |
| ❑ | **Employee Life Insurance** | This is a fully insured contract; therefore, decisions made by the insurance company are final. No further appeal is available. |
| ❑ | **Dependent Life Insurance** | This is a fully insured contract; therefore, decisions made by the insurance company are final. No further appeal is available. |
| ❑ | **Accidental Death and Dismemberment** | This is a fully insured contract; therefore, decisions made by the insurance company are final. No further appeal is available. |
| ❑ | **Reimbursement Accounts** | It is AEtna's responsibility to consider claims and appeals based on the applicable plan provisions. Therefore, Andersen will not override claim denials, recommendations or appeals.<br><br>Andersen will intervene only if a procedural error by AEtna has occurred. (See *Appealing a Procedural Error* in this section for further information.*)* |

## Appealing a Procedural Error

If, after exhausting the appeals process available to you through AEtna, HEALTHMARC, CIGNA, MCC or your HMO, you still disagree with the denial of your claim or a precertification determination, you may make a written request for a review *within 60 days* of receiving the denial or determination. See your Benefits Coordinator for the appropriate form for making your appeal.

Your appeal form will be reviewed to determine if proper procedures were followed or that Andersen's contract was adhered to. *If no procedural error or breach of contract occurred, the denial or determination will stand.* You will be notified of the decision within 60 days of submitting your appeal form.

Before submitting your appeal form, make copies for yourself and for your Benefits Coordinator.

### Appealing a Procedural Error *(cont'd)*

| Appeals for -- | Must be sent to -- |
|---|---|
| AEtna Medical Plan, CIGNA Medical Plan, Dental Plan, and Reimbursement Accounts | SCHR-Claims<br>Chicago 69W-A21A<br>FAX: (312) 507-1399 |
| Health Maintenance Organizations (HMOs) | SCHR-HMO<br>Chicago 69W-A21A<br>FAX: (312) 507-1399 |

## APPEALS - WELFARE BENEFIT PLANS
## ELIGIBILITY AND ENROLLMENT MATTERS

When an eligibility and/or enrollment matter is denied, you may appeal that denial. Your appeal must follow a specified format.

The circumstances under which the coverage you have in effect can be changed are explained in the *Eligibility and Enrollment* section of this binder. It is the responsibility of the employee to understand these rules and their impact on future coverage choices before making annual enrollment elections or life event changes.

If you want to change your current coverage and feel you have a circumstance not addressed by the plan's enrollment and eligibility rules, you may appeal your situation as follows. When your case has been reviewed, you will receive written notification of the outcome.

*All appeals must be made within 60 days of receiving the denial.*

❒   **Consult Your Benefits Coordinator**

   Problems arising from incorrect data entries and changes to dependent status can be handled on the local office level. Your Benefits Coordinator will also give you further clarification of the plan provisions which affect your situation.

❒   **Prepare a Written Appeal**

   If, after discussing your case with your Benefits Coordinator, you want to continue your appeal, you may request a review of the denial. Your request must be in writing. See your Benefits Coordinator for the appropriate form for making your appeal.

❒   **Contact SC Human Resources, Chicago 69W**

   Mail or fax your appeal form with any supporting information to:

   **SCHR - Enrollment**
   **Chicago 69W - A21A**
   **FAX:  (312) 507-1399**

   You must also send a copy of your appeal form to your Benefits Coordinator.

## *APPEALS - PENSION BENEFIT PLANS*

Andersen determines all questions arising under the pension benefit plans due to ambiguities, inconsistencies or omissions, and all questions as to the rights, benefits or eligibility of members and non members of the plans.

If your application for benefits under the U.S. Profit Sharing Plan or the U.S. Retirement Plan should be denied, you can have it reviewed and reconsidered. The steps outlined below show what happens and what you can do if an application is completely or partially denied.

☐ **Within 90 days of filing the application,** you will receive written notice explaining the reason(s) for the denial, the plan provision on which the denial is based, what (if any) additional material or information is needed to make the application acceptable and the necessity for it. The notice will also explain the procedure for requesting a review.

☐ **Within 60 days of receiving the denial,** you or someone you choose must:

     ■ Send a written request to the plan administrator -- (Attention: Managing Director-Compensation and Benefits) for a review of the denial; *and*

     ■ Review relevant documents; *and*

     ■ Provide an explanation of the issues and comments in writing.

☐ **Within 60 days after your request for review is received,** a decision on your application will be made. You will receive a written notice of the decision including the reasons behind it and the provisions on which it is based.

# EXHIBIT G

# PLAN INFORMATION

### Information Covered in This Section

|  | Page |
|---|---|
| *General Information* | 2 |
| Plan Sponsor and Administrator | |
| The Benefit Plans | |
| Sponsor and Employer Identification | |
| Trustee of the Andersen Worldwide, SC | |
| U.S. Profit Sharing/401(k) and Retirement Trust | |
| Fiscal Year | |
| Plan Termination | |
| *Employee Rights and Protection* | 6 |
| Employee Retirement Income Security Act (ERISA) Rights | |
| Pension Benefit Guaranty Corporation (PBGC) | |
| *Appeals - Welfare Benefit Plans Claims* | 8 |
| Deductible Medical Plan | |
| Point-of-Service Medical Plan | |
| Health Maintenance Organizations | |
| All Other Plans | |
| If Your Appeal is Denied | |
| Appealing a Procedural Error | |
| *Appeals - Welfare Benefit Plans Eligibility and Enrollment Matters* | 15 |
| *Appeals - Qualified Retirement Plans* (Profit Sharing/401(k) and Retirement Plans) | 16 |

© 1997 ANDERSEN WORLDWIDE SC
ALL RIGHTS RESERVED

## *GENERAL INFORMATION*

### Plan Sponsor and Administrator

Andersen Societe Cooperative is sponsor, administrator, and agent for service of legal process for the following plans. From time to time, Andersen amends the plans to keep them up-to-date with employees' needs and to conform with federal laws and regulations. Plan members are notified of amendments that affect their benefits under the plans.

To contact Andersen as sponsor, administrator, or agent for service of legal process for any of the welfare benefit and pension plans, write or call:

**Managing Director-Compensation and Benefits**
**Andersen Worldwide SC**
**225 North Michigan Avenue**
**Chicago, Illinois 60601-7600**
**(312) 580-0069**

Legal process related to pension benefit plans may also be served on The Northern Trust Company, as Trustee of the Andersen Worldwide SC, U.S. Profit Sharing/401(k) and Retirement Trust, 50 South LaSalle Street, Chicago, Illinois 60675.

### The Benefit Plans

| *Plan Name* | *Type of Plan* |
|---|---|
| **U.S. Group Medical Expense Insurance Plan Plan Number 501** | Consisting of the following:<br><br>■ *Deductible Medical Plan:* Self-insured welfare plan providing medical benefits through an administrative services contract with AEtna Life & Casualty - Contract Number 653363<br><br>■ *Point of Service (POS) Medical Plan:* Self-insured welfare plan providing medical benefits through an administrative services contract with CIGNA Employee Benefits Companies - Contract Number 2068224<br><br>■ *Andersen-sponsored Health Maintenance Organizations (HMOs):* Insured, state regulated medical plans within a proscribed geographic area. |
| **U.S. Group Retiree Medical Insurance Plan Plan Number 507** | Provides retiree medical benefits through the Deductible Medical Plan, Point of Service (POS) Medical Plan and HMOs. |

## The Benefit Plans *(cont'd)*

| Plan Name | Type of Plan |
|---|---|
| U.S. Group Dental Expense Insurance Plan ("Group Dental") Plan Number 508 | Self-insured welfare plan providing dental benefits through an administrative services contract with AEtna Life & Casualty - Contract Number 653363 |
| U.S. Group Long-Term Disability Insurance Plan ("LTD") Plan Number 505 | Insured welfare plan providing disability benefits through contract with AEtna Life & Casualty - Contract Number LTD 653363. |
| U.S. Group Life Insurance Plan ("Employee Life") Plan Number 502 | Insured welfare plan providing death benefits through contract with AEtna Life & Casualty - Contract Number GP 653363. |
| U.S. Group Dependent Life Insurance Plan ("Dependent Life") Plan Number 506 | Insured welfare plan providing death benefits through contract with AEtna Life & Casualty - Contract Number GP 653363. |
| U.S. Group Accidental Death and Dismemberment Insurance Plan ("AD&D") Plan Number 504 | Insured welfare plan providing accidental death and dismemberment benefits through contract with Hartford Life and Accident Insurance Company - Contract Numbers ADD-5579 (employee AD&D) and ADD-5578 (partner AD&D). |
| Health Care and Dependent Care Reimbursement Accounts | Program established under Sections 125 and 129 of the Internal Revenue Code to reimburse certain health and dependent care expenses on a before-tax basis. |
| Andersen Worldwide SC, U.S. Profit Sharing Plan/401(k), Plan Number 001 | Defined contribution plan |
| Andersen Worldwide SC, U.S. Retirement Plan, Plan Number 002 | Defined benefit plan |

## Sponsor and Employer Identification

The Andersen Worldwide SC, U.S. employer identification number (EIN) is 98-0037310. The EIN along with each plan name and number identify that specific plan with the federal agencies governing employee benefit plan operations. In addition, Arthur Andersen LLP (EIN 36-0732690), Andersen Consulting LLP (EIN 72-0542904), and Andersen Worldwide SC are employers under the welfare and pension benefit plans.

## Trustee of the Andersen Worldwide SC, U.S. Profit Sharing/401(k) and Retirement Trust

All contributions by Andersen, members and eligible employees go into the Andersen Worldwide SC, U.S. Profit Sharing/401(k) and Retirement Trust. The Trustee of the trust is The Northern Trust Company, 50 South LaSalle Street, Chicago, Illinois 60675.

## Fiscal Year

For record-keeping purposes, the plans operate on a plan year basis. The plan year for the welfare benefit plans begins January 1 and ends December 31. The plan year for the pension benefit plans begins July 1 and ends June 30.

## Plan Amendment and Termination

Andersen Worldwide SC intends to continue these plans indefinitely but must reserve the right to terminate or amend any plan or to change or end contributions to any plan if such action is considered necessary or desirable. A plan may be amended or terminated by resolution of the Board of Partners of Andersen Worldwide SC or by written action of the Managing Partner-Chief Executive, Managing Partner-Chief Financial Officer, and Managing Partner-Human Resources.

If plan termination occurs, coverages will be affected as follows. In certain circumstances, health care coverage may be continued under COBRA. Personnel would be advised of their rights in such a case.

| | |
|---|---|
| **Group Deductible Medical Plan** | Coverage for you and your dependents will end at midnight (CST) on the last day of the month in which the plan terminates unless you convert to an individual policy. |
| **Group Point-of-Service (POS) Medical Plan** | Coverage for you and your dependents will end at midnight (CST) on the last day of the month in which the plan terminates unless you convert to an individual policy. |
| **Health Maintenance Organizations (HMOs)** | Coverage for you and your dependents will end at midnight (CST) on the last day of the month in which the plan terminates. |
| **Group Dental Insurance** | Coverage for you and your dependents will end at midnight (CST) on the last day of the month in which the plan terminates. |
| **Group Long-Term Disability Insurance** | Coverage will end at midnight (CST) on the last day of the month in which the plan terminates. |

## Plan Termination *(cont'd)*

| | |
|---|---|
| **Group Life Insurance** | Coverage for you and your dependents will end at midnight (CST) on the last day of the month in which the plan terminates unless you convert to an individual policy. |
| **Group Accidental Death & Dismemberment Insurance** | Coverage will end at midnight (CST) on the last day of the month in which the plan terminates. |
| **Reimbursement Account Plans** | Eligible claims incurred during the year the plans are active must be received by the insurance company by March 15 of the following year. If March 15 is a Saturday, Sunday or holiday, claims must be received by the next working day. |
| **Andersen Worldwide SC, U.S. Profit Sharing Plan/401(k)** | Your account balance will be payable to you. |
| **Andersen Worldwide SC, U.S. Retirement Plan** | All members will be vested in benefits accrued to date of termination. Plan assets will be allocated to and used for the benefit of members, their spouses and their beneficiaries in accordance with the rules and procedures established by the Pension Benefit Guaranty Corporation, and to the extent funds are available. No money can be returned to Andersen until accrued benefits have been paid to all eligible plan members. |
| | The plan is insured in the event of plan termination by the Pension Benefit Guaranty Corporation. |

## *EMPLOYEE RIGHTS AND PROTECTION*

### Employee Retirement Income Security Act (ERISA)

The Andersen Worldwide SC, U.S. benefit plans meet the legal requirements established by the Employee Retirement Income Security Act of 1974 (ERISA). ERISA requires that individuals responsible for plan administration ("plan fiduciaries") act solely in the interest of plan participants and beneficiaries. Plan fiduciaries must exercise prudence and good judgment in the performance of plan duties.

ERISA also provides the following rights and protections to plan participants. No one may discharge you or discriminate against you for pursuing a benefit or exercising your ERISA rights.

☐    You may visit your office Director-Human Resources to examine all plan documents or obtain copies, as applicable, of the documents without charge. These documents include plan descriptions, the annual financial report, and all other plan documents filed with the Department of Labor.

☐    You may also obtain copies of official plan documents and other plan information by writing the Managing Director-Compensation and Benefits, in care of Andersen Worldwide SC, 225 North Michigan Avenue, Chicago, Illinois 60601-7600.

☐    You will automatically receive a written summary of the annual financial reports for the plans.

☐    If a benefit claim is denied, in whole or in part, you will receive a written explanation from the insurance company or the Managing Director-Compensation and Benefits. You have a right to have your claim reviewed and reconsidered by the plan.

☐    You can obtain a statement advising you whether you have a right to receive a retirement benefit at normal retirement age (age 62) and, if so, what your benefits would be at age 62 if you stopped working under the plan now. If you do not have a right to a benefit, the statement will tell you how many more years you must work to obtain a right to a benefit. This statement must be requested in writing and is not required to be given more than once a year. The plan must provide the statement free of charge. (Andersen currently distributes an annual benefits statement to employees and intends to continue to do so.)

If it becomes necessary to enforce the above rights, you may take the following action:

☐    If you request materials from a plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator.

## Employee Retirement Income Security Act (ERISA) *(cont'd)*

☐       If a benefit claim is denied or ignored, in whole or in part, you may file suit in a
          state or federal court.

☐       If plan fiduciaries are misusing a plan's money, you may file suit in a federal
          court after exhausting the administrative review process described under
          *Appeals* in this section of the binder.

If you file suit, the court will determine court costs and legal fee responsibility.  If you win your
suit, the court may order the person you have sued to pay the costs and fees.  If you lose, or if the
court decides your suit is frivolous, the court may order you to pay the costs and fees.

If you have questions about your rights under ERISA, contact the Managing Director-
Compensation and Benefits or the nearest area office of the U.S. Labor-Management Services
Administration, Department of Labor.

If you believe you are being discriminated against under ERISA, contact the nearest area office of
the U.S. Labor-Management Services Administration, Department of Labor.

## Pension Benefit Guaranty Corporation (PBGC)

The Pension Benefit Guaranty Corporation (PBGC) is a government insurance agency established
to insure benefits under certain types of pension plans.

Generally, the PBGC guarantees most vested normal-age retirement benefits, early retirement
benefits, and certain disability and survivor's pensions.  However, the PBGC does not guarantee
all types of benefits under covered plans and the amount of benefit protection is subject to certain
limitations.

The PBGC guarantees vested benefits at the level in effect on the date of plan termination.
However, if a plan or plan provision has been in effect less than five years before the plan
terminates, or if benefits have been increased within the five years before plan termination, the
entire amount of the plan's vested benefits or the benefit increase may not be guaranteed.  In
addition, there is a ceiling on the amount of monthly benefit that the PBGC guarantees, which is
adjusted periodically.

For more information on the PBGC insurance protection and its limitations, contact the Managing
Director-Compensation and Benefits at 225 North Michigan Avenue, Chicago, IL 60601-7600, or
the PBGC.

## APPEALS - WELFARE BENEFIT PLANS
## CLAIMS

When a claim made to any of the welfare benefit plans is denied, you may appeal that denial. Your appeal must follow a specified format or it will be rejected. The *nature* of the appeal determines to whom your appeal is sent:

| To appeal a claim denial or issue pertaining to: | | Contact: |
|---|---|---|
| **Deductible Medical Plan** | • Services requiring HEALTHMARC recommendation. | HEALTHMARC |
| | • Services *not* requiring HEALTHMARC recommendation. | AEtna Member Services |
| | • Services over the reasonable and customary (R&C) charges for your geographic area. | AEtna Member Services |
| **Point-of-Service Medical Plan** | • In-network services including issues regarding network providers, care provided, referrals to specialists, etc. | CIGNA Customer Services |
| | • Out-of-network services including charges over the reasonable and customary (R&C) charges for your geographic area. | CIGNA Customer Services |
| | • Certification for out-of-network hospitalization. | CIGNA Customer Services |
| | • In-network and out-of-network mental health and substance abuse services, including certification for out-of-network hospitalization for mental health and substance abuse. | MCC Behavioral Care |
| **Health Maintenance Organizations (HMOs)** | | Your HMO |
| **Dental Plan** | | AEtna Member Services |
| **Long-Term Disability** | | AEtna Life & Casualty |

| To appeal a claim denial or issue pertaining to: | Contact: |
|---|---|
| **Employee Life Insurance** | AEtna Life & Casualty |
| **Dependent Life Insurance** | AEtna Life & Casualty |
| **Accidental Death and Dismemberment** | Hartford Life Insurance |
| **Reimbursement Accounts** | AEtna Member Services |

## Deductible Medical Plan

❑    **Services Requiring HEALTHMARC Recommendation**

Under *no* circumstances should appeals for services requiring HEALTHMARC recommendation be sent to AEtna.  AEtna will *not* review this type of appeal.

■    If you contact HEALTHMARC and disagree with their recommendation or feel your case was incorrectly reviewed, you can appeal.  You must appeal within 60 days of receiving HEALTHMARC's written recommendation advising you whether the proposed services will be covered.  The written recommendation will explain how to make your appeal.

■    If you did *not* contact HEALTHMARC within the required amount of time or failed to contact HEALTHMARC at all and your benefits are denied, you may request that HEALTHMARC perform a retrospective review.  You must make your request to HEALTHMARC within 90 days of receiving notice of denial from the insurance company.  HEALTHMARC will explain how this review will be completed.

If HEALTHMARC's retrospective review recommends the services are medically necessary and appropriate, benefits for covered services will be paid at 50%.  If the review does *not* recommend the services as medically necessary, the denial will be upheld.

❑    **Services NOT Requiring HEALTHMARC Recommendation *AND* Services over the Reasonable and Customary (R&C) Charge**

■    ***Within 90 days of submitting a claim,*** you will receive payment or a notice of denial of payment.  If your claim is denied, the reason for the denial and the plan provisions on which the denial is based will be explained.  If further information is necessary to make your claim payable, the denial will explain what is needed and why.

## Deductible Medical Plan *(cont'd)*

- ■  *Within 60 days of receiving the denial,* you (or someone you choose) must submit a written request for a review of the denial to AEtna. With your request, you must include any issues and/or comments which you feel impact your request based on your review of the insurance contract and other relevant documents. If AEtna has requested additional information, you must enclose that also.

- ■  *Within 60 days of receiving your written appeal* and the related documentation, AEtna will give you a written explanation of their decision and the plan provisions on which the decision is based.

## Point-of-Service (POS) Medical Plan

❏   **In-Network Services**

If you have a complaint about a person, a service or your benefits, contact CIGNA Customer Services (for medical services) or MCC Behavioral Care (for mental health and substance abuse services) by phone or in writing. This includes any issues or concerns regarding network providers, care provided, and referrals to specialists. Every attempt will be made to resolve the problem at your initial contact.

If you are not satisfied, you can appeal in writing as directed by CIGNA or MCC. Your written appeal must provide the following information:

- ■  An explanation of your complaint.
- ■  Steps already taken toward resolving the problem.
- ■  Why you feel the services in question should be covered, *or* how you feel the problem should be resolved.

Your appeal will be reviewed and you will be advised of the outcome in writing.

❏   **Out-of-Network Services**

- ■  *Within 90 days of submitting a claim,* you will receive payment or a notice of denial of payment from CIGNA. If your claim is denied, the reason for the denial and the plan provisions on which the denial is based will be explained. If further information is necessary to make your claim payable, the denial will explain what is needed and why.

- ■  *Within 60 days of receiving the denial,* you (or someone you choose) must submit a written request for a review of the denial.

  With your request, you must include any issues and/or comments which you feel impact your request based on your review of the insurance contract and other relevant documents. If CIGNA has requested additional information, you must enclose that also.

## Point-of-Service (POS) Medical Plan *(cont'd)*

- *Within 60 days of receiving your written appeal* and the related documentation, CIGNA will provide a written explanation of their decision and the plan provisions on which the decision is based.

☐ **Certification for Out-of-Network Hospitalization**

- If you contact CIGNA (for hospitalization due to a medical condition) or MCC Behavioral Care (for mental health or substance abuse hospitalization) and disagree with their determination, or if you feel your case was incorrectly reviewed, you can appeal. You must appeal within 60 days of receiving the determination. CIGNA or MCC will explain how to make your appeal at the time they provide the determination.

- If you did not contact CIGNA or MCC *prior* to hospital admission or if you failed to call at any time and benefits are denied, you may request a retrospective review. You must make a *written* request within 90 days of receiving notice of denial. CIGNA or MCC will explain how this review will be completed.

    If the retrospective review certifies hospitalization as medically necessary, benefits will be paid for medically necessary hospital days *only*, and a $500 penalty will apply.

## Health Maintenance Organizations (HMOs)

If you have a complaint about the service or benefits provided by your HMO or wish to appeal a decision, you must contact your HMO directly and follow their appeals process. Andersen can provide you with a copy of the appropriate HMO contract upon request.

## All Other Plans

To appeal a denied claim for the dental, employee life, dependent life, LTD, and AD&D plans, and the reimbursement accounts --

- *Within 90 days of submitting a claim,* you will receive payment or a notice of denial of payment. If your claim is denied, the reason for the denial and the plan provisions on which the denial is based will be explained. If further information is necessary to make your claim payable, the denial will explain what is needed and why.

- *Within 60 days of receiving the denial,* you (or someone you choose) must submit a written request for a review of the denial to the appropriate insurance company. With your request, you must include any issues and/or comments which you feel impact your request based on your review of the insurance contract and other relevant documents. If the insurance company has asked for additional information, you must enclose that also.

## All Other Plans (cont'd)

■ *Within 60 days of receiving your written appeal* and the related documentation, the insurance company will give you a written explanation of their decision and the plan provisions on which the decision is based.

## If Your Appeal is Denied

The determination made by the insurance company reviewing the appeal is final. In *limited* situations and *only when a procedural error is suspected* will Andersen review a denied appeal.

❑ **Deductible Medical Plan**

It is *AEtna's* responsibility to consider claims and appeals based on the applicable plan provisions. It is *HEALTH-MARC's* responsibility to recommend inpatient hospitalization and certain outpatient care as it relates to the group medical plan, and to consider appeals in its area of responsibility. Therefore, Andersen will not override claim denials, recommendations or appeals.

Andersen will intervene only if a procedural error by AEtna or HEALTHMARC has occurred. (See *Appealing a Procedural Error* in this section for further information.)

❑ **Point-of-Service (POS) Medical Plan**

It is CIGNA's responsibility to consider claims and appeals based on the applicable plan provisions. Therefore, Andersen will not override claim denials, recommendations or appeals.

Andersen will intervene only if a procedural error by CIGNA has occurred. (See *Appealing a Procedural Error* in this section for further information.)

❑ **Health Maintenance Organizations (HMOs)**

Andersen will intervene only where it believes the HMO contract has been violated. (See *Appealing a Procedural Error* in this section for further information.)

❑ **Dental Plan**

It is AEtna's responsibility to consider claims and appeals based on the applicable plan provisions. Therefore, Andersen will not override claim denials, recommendations or appeals.

Andersen will intervene only if a procedural error by AEtna has occurred. (See *Appealing a Procedural Error* in this section for further information.)

## If Your Appeal is Denied *(cont'd)*

☐ **Long-Term Disability Insurance**

This is a fully insured contract; therefore, decisions made by the insurance company are final. No further appeal is available.

☐ **Employee Life Insurance**

This is a fully insured contract; therefore, decisions made by the insurance company are final. No further appeal is available.

☐ **Dependent Life Insurance**

This is a fully insured contract; therefore, decisions made by the insurance company are final. No further appeal is available.

☐ **Accidental Death and Dismemberment**

This is a fully insured contract; therefore, decisions made by the insurance company are final. No further appeal is available.

☐ **Reimbursement Accounts**

It is AEtna's responsibility to consider claims and appeals based on the applicable plan provisions. Therefore, Andersen will not override claim denials, recommendations or appeals.

Andersen will intervene only if a procedural error by AEtna has occurred. (See *Appealing a Procedural Error* in this section for further information.)

## Appealing a Procedural Error

If, after exhausting the appeals process available to you through AEtna, HEALTHMARC, CIGNA, MCC or your HMO, you disagree with the denial of your claim or a precertification determination, you may make a written request for a review to Andersen *within 60 days* of receiving the denial or determination. (Before submitting your appeal, make a copy for your records.) Your appeal *must* provide the following information:

| PERSONAL INFORMATION | CLAIM INFORMATION | APPEAL INFORMATION |
|---|---|---|
| • Name | • Type of Claim | • Date of This Appeal |
| • Social Security Number | • Insurance Carrier | • Date of Initial Appeal |
| • Date of Hire | • Dates Claim was Submitted | • Carrier Initial Appeal Sent to |
| • Termination Date *(if applicable)* | • Date Claim was Denied | • Date Initial Appeal was Denied |
| • Office Location | • Reason for Denial | • Reason for Denial |
| • Daytime Phone Number | • Name of Provider of Services | • Description of the situation |
| • Business Unit | • Date Services were Provided | • Additional information you |
| • Dependent's Name & Relationship* | | feel is pertinent to your case. |

\*   *If the claim being appealed is for a dependent*

## Appealing a Procedural Error *(cont'd)*

Send your appeal via Lotus Notes, FAX, inter-office mail, or U.S. mail as follows:

| | |
|---|---|
| ■ **Lotus Notes** | USH Benefits Program Services<br>Support Group .OA .AW |
| ■ **FAX** | USH Benefits Program Services Support Group<br>Appeals<br>**1/312/507-1399** |
| ■ **Interoffice Mail** | USH Benefits Program Services Support Group<br>Appeals<br>**225 N Michigan - A16D** |
| ■ **U.S. Mail** | Andersen Worldwide Services<br>USH Benefits Program Services Support Group<br>225 North Michigan Avenue - A16D<br>Chicago, IL 60601-7600<br>Attn:   Appeals |

Your appeal will be reviewed to determine if proper procedures were followed and/or that Andersen's contract was adhered to.  *If no procedural error or breach of contract occurred, the denial or determination will stand.*  You will be notified of the decision within 60 days of submitting your appeal.

## *APPEALS - WELFARE BENEFIT PLANS*
## *ELIGIBILITY AND ENROLLMENT MATTERS*

The circumstances under which your current coverage can be changed are explained in the *Eligibility and Enrollment* section of this binder. It is your responsibility to understand these rules and their impact on your future coverage choices before you make annual enrollment elections or change your coverage at a life event.

To appeal an eligibility or enrollment matter related to new employee enrollment, annual enrollment, life event changes, enrollment deadlines, or dependent coverage, complete the following steps:

❑    **Consult Your Human Resources Department**

Problems arising from incorrect data entries, such as your home mailing address, your office phone number, and employment status information must be changed through the North American Payroll System (NAPS). These changes can *only* be made through your Human Resources Department.

❑    **Contact the Andersen Benefits Center  (1/800/448-1441)**

Call between the hours of 8:00 am and 5:00 pm (Central time) and speak to an ABC Representative. If the ABC Representative is unable to assist you, he or she will send you an *Appeal Form* to be completed and returned to the Andersen Benefits Center. Your case will be reviewed based on the plan's enrollment and eligibility rules, and you will receive a written explanation of that review within 60 days of the date your appeal is received. (Be sure to keep a copy of your completed form for your records.)

If your appeal to the Andersen Benefits Center is denied and you feel you have a circumstance not addressed by the plan's enrollment and eligibility rules, you may request a review by Andersen. Your request must be made in writing *within 60 days* of receiving the denial from the Andersen Benefits Center. Your appeal *must* provide the following information:

| PERSONAL INFORMATION | APPEAL INFORMATION |
|---|---|
| • Name | • Type of Appeal |
| • Social Security Number | • Date of Appeal |
| • Date of Hire | • Date of Initial Appeal to the ABC |
| • Termination Date *(if applicable)* | • Date Initial Appeal was Denied by the ABC |
| • Business Unit | • Reason for the Denial |
| • Office Location | • Brief Description of the Situation |
| • Daytime Phone Number | • Additional information you feel is pertinent to your case. |

Before submitting your appeal, make a copy for your records. Then send your appeal via Lotus Notes, FAX, inter-office mail, or U.S. mail to the address shown on page PI-14 in this section. Your appeal will be reviewed, and you will be notified of the decision within 60 days of the date your appeal is received.

## *APPEALS - QUALIFIED RETIREMENT PLANS*
### *(Profit Sharing/401(k) and Retirement Plans)*

To appeal a benefit claim denial under the U.S. Profit Sharing/401(k) Plan or the U.S. Retirement Plan, contact the Andersen Benefits Center (ABC) at 1/800/448-1441. Call between the hours of 8:00 am and 5:00 pm (Central time) and speak to an ABC Representative. Your appeal will be reviewed based on the plan's rules. If your appeal is denied, the ABC will send you a written explanation within 90 days of your appeal (or 180 days in special circumstances) of the reasons for the denial.

If your appeal to the ABC is denied, you can appeal that denial to Andersen. Your appeal must be made *in writing within 60 days* of receiving the ABC's denial and must provide the following information:

| PERSONAL INFORMATION | APPEAL INFORMATION |
|---|---|
| • Name<br>• Social Security Number<br>• Personnel Number<br>• Date of Hire/Rehire<br>• Termination Date *(if applicable)*<br>• Office Location<br>• Daytime Phone Number | • Date of Appeal<br>• Date of Initial Appeal to the ABC<br>• Date Initial Appeal was Denied by the ABC<br>• Description of the Situation<br>• Additional information you feel is pertinent to your case |

Before submitting your appeal, make a copy for your records. Then send your appeal via Lotus Notes, FAX, interoffice mail, or U.S. mail to Andersen at the address shown on page PI-14 in this section. Your appeal will be reviewed, and you will be notified of Andersen's *final* decision within 60 days of the date your appeal is received.

Under the U.S. Profit Sharing/401(k) Plan and the U.S. Retirement Plan, Andersen has the power to, in its sole discretion, resolve all questions arising under the plans (such as the rights of any individuals to benefits under the plans).

# EXHIBIT H

# GENERAL INFORMATION

## Plan Sponsor and Administrator

Andersen Consulting LLP ("Andersen Consulting") is sponsor, administrator, and agent for service of legal process for the following plans. From time to time, Andersen Consulting amends the plans to keep them up-to-date with employees' needs and to conform them to federal laws and regulations. Plan members are notified of amendments that affect their benefits under the plans.

To contact Andersen Consulting as sponsor, administrator, or agent for service of legal process for any of the welfare benefit and pension plans, write or call:

**Global Managing Partner of Benefits
Andersen Consulting LLP
100 South Wacker
Chicago, Illinois 60606-4006
(312) 693-0161**

Legal process related to profit sharing and 401(k) benefits may be served on The Northern Trust Company, as Trustee of the Andersen Consulting LLP Profit Sharing and 401(k) Trust, 50 South LaSalle Street, Chicago, Illinois 60675. Legal process related to retirement benefits may be served on The Northern Trust Company, as Trustee of the Andersen Consulting LLP Retirement Trust, 50 South LaSalle Street, Chicago, Illinois 60675.

As the administrator of the plans, Andersen Consulting has complete discretionary authority to determine all questions, including factual determinations, arising under each plan, such as questions arising because of ambiguities, inconsistencies or omissions in the plan document and questions as to the rights or eligibility of employees or participants and their beneficiaries and the value of their benefits under the plan. Benefits will be paid under the plans if the administrator determines the claimant is entitled to them. Any interpretation of a plan and any good faith decision on any matter within the plan administrator's discretion is binding on all persons. A misstatement or other mistake shall be corrected when it becomes know, and the plan administrator shall make such adjustment as it considers equitable and practicable.

You must furnish such evidence, data and information as may be required by the plan administrator.

**The Andersen Consulting Benefit Plans**

| Plan Name | Type of Plan |
|---|---|
| Group Medical Insurance Plan<br>Plan Number 601 | Consisting of the following: |
| | ➢ Deductible Medical Plan: Self-insured welfare plan providing medical benefits through an administrative services contract with AEtna Life & Casualty - Contract Number 657455 |
| | ➢ Point of Service (POS) Medical Plan: Self-insured welfare plan providing medical benefits through an administrative services contract with CIGNA Employee Benefits Healthcare Agreement Number 2411697 |
| | ➢ Andersen-sponsored Health Maintenance Organizations (HMOs): Insured, state regulated medical plans within a proscribed geographic area. |
| Group Retiree Medical Insurance Plan<br>Plan Number 606 | Provides retiree medical benefits through the Deductible Medical Plan, Point of Service (POS) Medical Plan and HMOs. |
| Group Dental Insurance Plan<br>("Group Dental")<br>Plan Number 602 | Self-insured welfare plan providing dental benefits through an administrative services contract with AEtna<br>Contract Number 657455 |
| Group Long Term Disability Insurance Plan<br>("LTD")<br>Plan Number 608 | Insured welfare plan providing disability benefits through contract with AEtna Contract Number 657455 |
| Group Life Insurance Plan<br>("Employee Life")<br>Plan Number 603 | Insured welfare plan providing death benefits through contract with AEtna<br>Contract Number 657455 |
| Group Dependent Life Insurance Plan<br>("Dependent Life")<br>Plan Number 604 | Insured welfare plan providing death benefits through contract with AEtna<br>Contract Number 657455 |

| | |
|---|---|
| Group Accidental Death and Dismemberment Insurance Plan ("AD&D") Plan Number 607 | Insured welfare plan providing accidental death and dismemberment benefits through contract with ITT Hartford-Contract Numbers ADD-5579 (employee AD & D) and ADD-5578 (partner AD&D). |
| Flexible Benefits Program (including the Health Care and Dependent Care Reimbursement Accounts) Plan Number 605 | Program established under Sections 125 and 129 of the Internal Revenue Code to reimburse certain health and dependent care expenses on a pre-tax basis. |
| Andersen Consulting LLP Employees' Profit Sharing and 401(k) Plan Plan Number 102 | Defined contribution plan |
| Andersen Consulting LLP Retirement Plan Plan Number 104 | Defined benefit plan |
| Andersen Consulting LLP Partners' Profit Sharing Plan and 401(k) Plan Plan Number 101 | Defined contribution plan |
| Andersen Consulting LLP Transfer Retirement Plan Plan Number 007 | Defined benefit plan |
| Andersen Consulting LLP Defined Contribution Transfer Plan Plan Number 103 | Defined contribution plan |

## Sponsor and Employer Identification

Andersen Consulting's employer identification number (EIN) is 72-0542904. The EIN along with each plan name and number identify that specific plan with the federal agencies governing employee benefit plan operations. The following subsidiaries of Andersen Consulting have adopted the plans for the benefit of their eligible employees:

| Employer | EIN |
|---|---|
| AC Technical Resources LLC | 36-4091629 |
| BABCN LLC (Service Net) | 41-1847722 |
| PRA Solutions | 41-1850413 |
| Utiligent LLC | 41-1846473 |
| Via World Network LLP | 41-1846468 |

## Trustee of the Andersen Consulting LLP Trusts

All contributions under the Employees' Profit Sharing and 401(k) Plan and the Defined Contribution Transfer Plan are paid to the Andersen Consulting LLP Profit Sharing and

401(k) Trust. All contributions under the Retirement Plan and the Transfer Retirement Plan are paid to the Andersen Consulting LLP Retirement Trust. The Trustee of both trusts is The Northern Trust Company, 50 South LaSalle Street, Chicago, Illinois 60675.

## Plan Year

The plan year for the welfare benefit plans begins January 1 and ends December 31. The plan year for the profit sharing and retirement plans begins July 1 and ends June 30.

## Plan Amendment and Termination

Andersen Consulting LLP intends to continue these plans indefinitely but must reserve the right, in its sole discretion, to terminate or amend any plan or to change or end contributions to any plan at any time, with or without notice, if such action is considered necessary or desirable. A plan may be amended or terminated by instrument signed by Andersen Consulting's Administrator, by its Global Managing Partner of Human Resources and Partner Matters (or by the successors to the powers, rights and duties of such partner) or by such other person or persons authorized to effect any such action.

## EMPLOYEE RIGHTS AND PROTECTION

## Employee Retirement Income Security Act (ERISA)

The Andersen Consulting benefit plans meet the legal requirements established by the Employee Retirement Income Security Act of 1974 (ERISA). ERISA requires that individuals responsible for plan administration ("plan fiduciaries") act solely in the interest of plan participants and beneficiaries. Plan fiduciaries must exercise prudence and good judgment in the performance of plan duties.

ERISA also provides the following rights and protections to plan participants. No one may discharge you or discriminate against you for pursuing a benefit or exercising your ERISA rights.

- You may visit your office Director-Human Resources to examine all plan documents or obtain copies, as applicable, of the documents without charge. These documents include plan descriptions, the annual financial report, and all other plan documents filed with the Department of Labor.

- You may also obtain copies of official plan documents and other plan information by writing the Global Managing Partner of Benefits, c/o Andersen Consulting LLP, 100 South Wacker Drive, Chicago, Illinois 60606-4006.

- You will automatically receive a written summary of the annual financial reports for the plans.

- If a benefit claim is denied, in whole or in part, you will receive a written explanation from the insurance company or the Global Managing Partner of Benefits. You have a right to have your claim reviewed and reconsidered by the plan.

- You can obtain a statement advising you whether you have a right to receive a retirement benefit at normal retirement age (age 62) and, if so, what your benefits would be at age 62 if you stopped working under the plan now. If you do not have a right to a benefit, the statement will tell you how many more years you must work to obtain a right to a benefit. This statement must be requested in writing and is not required to be given more than once a year. The plan must provide the statement free of charge. (Andersen Consulting currently distributes an annual benefits statement to employees and intends to continue to do so.)

If it becomes necessary to enforce the above rights, you may take the following action:

- If you request materials from a plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator.

- If a benefit claim is denied or ignored, in whole or in part, you may file suit in a state or federal court.

- If plan fiduciaries are misusing a plan's money, you may file suit in a federal court after exhausting the administrative review process described under Appeals in this section of the binder.

If you file suit, the court will determine court costs and legal fee responsibility. If you win your suit, the court may order the person you have sued to pay the costs and fees. If you lose, or if the court decides your suit is frivolous, the court may order you to pay the costs and fees.

If you have questions about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W. Washington, D.C. 20210.

**Pension Benefit Guaranty Corporation (PBGC)**

The Pension Benefit Guaranty Corporation (PBGC) is a government insurance agency established to insure benefits under certain types of pension plans.  The Retirement Plan and the Transfer Retirement Plan are covered by the PBGC.  (However, the Employees' Profit Sharing and 401(k) Plan and the Defined Contribution Transfer Plan are not covered by the PBGC, because the PBGC only covers defined benefit pension plans.)

Generally, the PBGC guarantees most vested normal retirement benefits, early retirement benefits, and certain disability and survivor's pensions.  However, the PBGC does not guarantee all types of benefits under covered plans and the amount of benefit protection is subject to certain limitations.

The PBGC guarantees vested benefits at the level in effect on the date of plan termination. However, if a plan or plan provision has been in effect less than five years before the plan terminates, or if benefits have been increased within the five years before plan termination, the entire amount of the plan's vested benefits or the benefit increase may not be guaranteed. In addition, there is a ceiling on the amount of monthly benefit that the PBGC guarantees, which is adjusted periodically.

For more information on the PBGC insurance protection and its limitations, ask the plan administrator or the PBGC.  Inquiries to the PBGC should be addressed to the Office of Communications, PBGC, 1200 K Street, N.W., Washington, D.C. 20005-4026.  The PBGC Customer Service Center may also be reached by calling (800) 400-PBGC (800-400-7242).

## WELFARE BENEFIT PLANS CLAIMS AND APPEALS

When a claim made to any of the welfare benefit plans is denied, you may appeal that denial. Your appeal must follow a specified format or it will be rejected.  The nature of the appeal determines to whom your appeal is sent:

| To appeal a claim denial or issue pertaining to: | | Contact: |
|---|---|---|
| Deductible Medical Plan | • Services requiring HEALTHMARC recommendation. | HEALTHMARC |
| | • Services not requiring HEALTHMARC recommendation. | AEtna Member Services |
| | • Services over the reasonable and customary (R&C) charges for your geographic area | AEtna Member Services |
| Point-of-Service Medical Plan | • In-network services including issues regarding network providers, care | CIGNA Customer Services |

|  | provided, referrals to specialists, etc.<br><br>• Out-of-network services including charges over the reasonable and customary (R&C) charges for your geographic area.<br><br>• Certification for out-of-network hospitalization.<br><br>• In-network and out-of-network mental health and substance abuse services, including certification for out-of-network hospitalization for mental health and substance abuse. | CIGNA Customer Services<br><br><br>CIGNA Customer Services<br><br>MCC Behavioral Care |
|---|---|---|
| Health Maintenance Organization (HMO's | | Your HMO |
| Dental Plan | | AEtna Member Services |
| Long-Term Disability | | AEtna |
| Employee Life Insurance | | AEtna |
| Dependent Life Insurance | | AEtna |
| Accidental Death and Dismemberment | | ITT Hartford |
| Reimbursement Accounts | | AEtna Member Services |

**Deductible Medical Plan**

▪ Services Requiring HEALTHMARC Recommendation

Under no circumstances should appeals for services requiring HEALTHMARC recommendation be sent to AEtna. AEtna will not review this type of appeal.

▪ If you contact HEALTHMARC and disagree with their recommendation or feel your case was incorrectly reviewed, you can appeal. You must appeal within 60 days of receiving HEALTHMARC's written recommendation advising you whether the proposed services will be covered. The written recommendation will explain how to make your appeal.

▪ If you did not contact HEALTHMARC within the required amount of time or failed to contact HEALTHMARC at all and your benefits are denied, you may request that HEALTHMARC perform a retrospective review. You must make your request to HEALTHMARC within 90 days of receiving notice of denial from the insurance company. HEALTHMARC will explain how this review will be completed.

▪ If HEALTHMARC's retrospective review recommends the services are medically necessary and appropriate, benefits for covered services will be paid at 50%. If the

review does not recommend the services as medically necessary, the denial will be upheld.

- Services NOT Requiring HEALTHMARC Recommendation AND Services over the Reasonable and Customary (R&C) Charge

  - Within 90 days of submitting a claim, you will receive payment or a notice of denial of payment. If your claim is denied, the reason for the denial and the plan provisions on which the denial is based will be explained. If further information is necessary to make your claim payable, the denial will explain what is needed and why.

  - Within 60 days of receiving the denial, you (or someone you choose) must submit a written request for a review of the denial to AEtna. With your request, you must include any issues and/or comments that you feel impact your request based on your review of the insurance contract and other relevant documents. If AEtna has requested additional information, you must enclose that also.

  - Within 60 days of receiving your written appeal and the related documentation, AEtna will give you a written explanation of their decision and the plan provisions on which the decision is based.

## Point-of-Service (POS) Medical Plan

- In-Network Services

  If you have a complaint about a person, a service or your benefits, contact CIGNA Customer Services (for medical services) or MCC Behavioral Care (for mental health and substance abuse services) by phone or in writing. This includes any issues or concerns regarding network providers, care provided, and referrals to specialists. Every attempt will be made to resolve the problem at your initial contact.

  If you are not satisfied, you can appeal in writing as directed by CIGNA or MCC. Your written appeal must provide the following information:

  - An explanation of your complaint.

  - Steps already taken toward resolving the problem.

  - Why you feel the services in question should be covered, or how you feel the problem should be resolved.

  Your appeal will be reviewed and you will be advised of the outcome in writing.

  Out-of-Network Services

- Within 90 days of submitting a claim, you will receive payment or a notice of denial of payment from CIGNA. If your claim is denied, the reason for the denial and the plan provisions on which the denial is based will be explained. If further information is necessary to make your claim payable, the denial will explain what is needed and why.

- Within 60 days of receiving the denial, you (or someone you choose) must submit a written request for a review of the denial.

- With your request, you must include any issues and/or comments that you feel impact your request based on your review of the insurance contract and other relevant documents. If CIGNA has requested additional information, you must enclose that also.

- Within 60 days of receiving your writ-ten appeal and the related documentation, CIGNA will provide a written explanation of their decision and the plan provisions on which the decision is based.

- Certification for Out-of-Network Hospitalization

    - If you contact CIGNA (for hospitalization due to a medical condition) or MCC Behavioral Care (for mental health or substance abuse hospitalization) and disagree with their determination, or if you feel your case was incorrectly reviewed, you can appeal. You must appeal within 60 days of receiving the determination. CIGNA or MCC will explain how to make your appeal at the time they provide the determination.

    - If you did not contact CIGNA or MCC prior to hospital admission or if you failed to call at any time and benefits are denied, you may request a retrospective review. You must make a written request within 90 days of receiving notice of denial. CIGNA or MCC will explain how this review will be completed.

    - If the retrospective review certifies hospitalization as medically necessary, benefits will be paid for medically necessary hospital days only, and a $500 penalty will apply.

## Health Maintenance Organizations (HMOs)

If you have a complaint about the service or benefits provided by your HMO or wish to appeal a decision, you must contact your HMO directly and follow their appeals process. Andersen Consulting can provide you with a copy of the appropriate HMO contract upon request.

**All Other Plans**

To appeal a denied claim for the dental, employee life, dependent life, LTD, and AD&D plans, and the reimbursement accounts -

- Within 90 days of submitting a claim, you will receive payment or a notice of denial of payment. If your claim is denied, the reason for the denial and the plan provisions on which the denial is based will be explained. If further information is necessary to make your claim payable, the denial will explain what is needed and why.

- Within 60 days of receiving the denial, you (or someone you choose) must submit a written request for a review of the denial to the appropriate insurance company. With your request, you must include any issues and/or comments -,which you feel impact your request based on your review of the insurance contract and other relevant documents. If the insurance company has asked for additional information, you must enclose that also.

- Within 60 days of receiving your written appeal and the related documentation, the insurance company will give you a written explanation of their decision and the plan provisions on which the decision is based.

**If Your Appeal is Denied**

The determination made by the insurance company reviewing the appeal is final. In limited situations and only when a procedural error is suspected will Andersen Consulting review a denied appeal.

| ▪ Deductible Medical Plan | It is AEtna's responsibility to consider claims and appeals based on the applicable plan provisions.  It is HEALTHMARC's responsibility to recommend inpatient hospitalization and certain outpatient care as it relates to the group medical plan, and to consider appeals in its area of responsibility. Therefore, Andersen Consulting will not override claim denials, recommendations or appeals.<br><br>Andersen Consulting will intervene only if a procedural error by AEtna or HEALTHMARC has occurred.  (See Appeling a Procedural Error in this section for further information.) |
|---|---|
| ▪ Point-of-Service (POS) Medical Plan | It is CIGNA's responsibility to consider claims and appeals based on the applicable plan provisions.  Therefore, Andersen Consulting will not override claim denials, recommendations or appeals.<br><br>Andersen Consulting will intervene only if a procedural error by AEtna or HEALTHMARC has occurred.  (See Appealing a Procedural Error in this section for further information. |
| ▪ Health Maintenance Organizations (HMOs) | Andersen Consulting will intervene only where it believes the HMO contract has been violated.  (See Appealing a Procedural Error in this section for further information.) |

| Dental Plan | It is AEtna's responsibility to consider claims and appeals based on the applicable plan provisions.  Therefore, Andersen Consulting will not override claim denials, recommendations or appeals.<br><br>Andersen Consulting will intervene only if a procedural error by AEtna has occurred.  (See Appealing a Procedural Error in this section for further information.) |
|---|---|
| Long-Term Disability | This is a fully insured contract; therefore, decisions made by the insurance company are final.  No further appeal is available. |
| Employee Life Insurance | This is a fully insured contract; therefore, decisions made by the insurance company are final.  No further appeal is available |
| Dependent Life Insurance | This is a fully insured contract; therefore, decisions made by the insurance company are final.  No further appeal is available |
| Accidental Death and Dismemberment | This is a fully insured contract; therefore, decisions made by the insurance company are final.  No further appeal is available |
| Reimbursement Accounts | This is a fully insured contract; therefore, decisions made by the insurance company are final.  No further appeal is available |

**Appealing a Procedural Error**

If, after exhausting the appeals process available to you through AEtna, HEALTHMARC, CIGNA, MCC or your HMO, you disagree with the denial of your claim or a precertification determination, you may make a written request for a review to the Firm within 60 days of

receiving the denial or determination. (Before submitting your appeal, make a copy for your records.) Your appeal must provide the following information:

| PERSONAL INFORMATION | CLAIM INFORMATION | APPEAL INFORMATION |
|---|---|---|
| • Name<br>• Social Security Number<br>• Date of Hire<br><br>• Termination Date (if applicable<br>• Office Location<br>• Daytime Phone Number<br><br>• Dependent's Name and relationship* | • Type<br>• Insurance Carrier<br>• Dates Claim was Submitted<br>• Date Claim was Denied<br><br>• Reason for Denial<br>• Name of Provider of Services<br>• Date Services were Provided | • Date of This Appeal<br>• Date of Initial Appeal<br>• Carrier Initial Appeal Sent to<br>• Date Initial Appeal was Denied<br>• Reason for Denial<br>• Description of the situation<br>• Additional information you feel is pertinent in your case. |

\*    If the claim being appealed is for a dependent.

Your appeal will be reviewed to determine if proper procedures were followed and/or that Andersen Consulting's contract was adhered to. If no procedural error or breach of contract occurred, the denial or determination will stand. You will bee notified of the decision within 60 days of submitting your appeal.

## APPEALS - WELFARE BENEFIT PLANS
## ELIGIBILITY AND ENROLLMENT MATTERS

The circumstances under which your current coverage can be changed are explained in the Eligibility and Enrollment section of the plan summaries. It is your responsibility to understand these rules and their impact on your future coverage choices before you make annual enrollment elections or change your coverage at a life event.

To appeal an eligibility or enrollment matter related to new employee enrollment, annual enrollment, life event changes, enrollment deadlines, or dependent coverage:

• Contact the Andersen Consulting Benefits Information Center 1-877-332-2242

   Call between the hours of 8:00 am and 5:00 p.m. (Central time) and speak to a Benefits Center Representative. If the Benefits Center Representative is unable to assist you, he or she will send you an Appeal Form to be completed and returned to the Andersen Consulting Benefits Information Center. Your case will be reviewed based on the plan's enrollment and eligibility rules, and you will receive a written explanation of that review

within 60 days of the date your appeal is received. (Be sure to keep a copy of your completed form for your records.)

If your appeal to the Andersen Consulting Benefits Information Center is denied and you feel you have a circumstance not addressed by the plan's enrollment and eligibility rules, you may request a review by Andersen Consulting. Your request must be made in writing within 60 days of receiving the denial from the Andersen Benefits Information Center. Your appeal must provide the following information:

| PERSONAL INFORMATION | APPEAL INFORMATION |
|---|---|
| <ul><li>Name</li><li>Social Security Number</li><li>Date of Hire</li><li>Termination Date (if applicable)</li><li>Office Location</li><li>Daytime Phone Number</li></ul> | <ul><li>Type of Appeal</li><li>Date of Appeal</li><li>Date of Initial Appeal to the ABC</li><li>Date Initial Appeal was Denied by the ABC</li><li>Reason for the Denial</li><li>Brief Description of the Situation</li><li>Additional information you feel is pertinent to your case.</li></ul> |

Before submitting your appeal, make a copy for your records. Then send your appeal via Lotus Notes, FAX, inter-office mail, or U.S. mail to the address shown above. Your appeal will be reviewed, and you will be notified of the decision within 60 days of the date your appeal is received.

## PROFIT SHARING/RETIREMENT PLAN CLAIMS AND APPEALS

The following provisions apply if you have a claim under the Employees' Profit Sharing and 401(k) Plan, the Retirement Plan, the Transfer Retirement Plan, or the Defined Contribution Transfer Plan.

If you or your beneficiary file a claim for benefits under the Plan, such claim must be in writing and filed with the Plan Administrator. If a claim is denied, the Plan Administrator, within 90 days (0r 180 days if warranted by special circumstances) after it receives the claim, will notify the claimant of its decision, setting forth the specific reasons for the denial, references to the Plan provisions on which the denial is based, additional information necessary to perfect the claim, if any, and a description of the procedure for review of the denial.

A claimant (or his or her duly authorized representative) may request a review of the denial of a claim for benefits by filing a written application with the Plan Administrator within 60 days after he or she receives notice of the denial. Such a claimant is entitled to review pertinent plan documents and submit written issues and comments to the Plan Administrator. The Plan Administrator, within 90 days (or 180 days if warranted by special circumstances) after it receives a request for review, will furnish the claimant with written notice of its

decision, setting forth the specific reasons for the decision and references to the pertinent Plan provisions on which the decision is based.

## ALL PLAN CLAIMS - LIMITATION ON TIME FOR SUITS

If your claim for benefits is finally denied by the Plan Administrator (or its designee), then you may bring suit in federal court. However, you may only bring suit in federal court if you file such action within 120 days after the date of the final denial of your claim by the Plan Administrator (or its designee).

CHI99 3504265-1.054815.0019

-15-

# EXHIBIT I

2001

# Accenture United States Benefit Plans

# General Information

(Effective January 1, 2001)

## TABLE OF CONTENTS

GENERAL INFORMATION ........................................................................................ 1
    Plan Sponsor and Administrator ...................................................................... 1
    The Accenture Benefit Plans............................................................................ 1
    Sponsor and Employer Identification .............................................................. 2
    Trustee of the Accenture Trusts....................................................................... 3
    Plan Year.......................................................................................................... 3
    Plan Amendment and Termination .................................................................. 3

EMPLOYEE RIGHTS AND PROTECTION............................................................... 3
    Employee Retirement Income Security Act (ERISA)...................................... 3
    Pension Benefit Guaranty Corporation (PBGC) ............................................. 4

WELFARE PLANS CLAIMS AND APPEALS........................................................... 5
    Indemnity Medical Plan ................................................................................... 5
    Preferred Provider Organization (PPO) .......................................................... 6
    BCBS Network Plan ........................................................................................ 7
    Health Maintenance Organizations (HMOs) ................................................... 7
    All Other Plans ................................................................................................ 7
    If Your Appeal is Denied ................................................................................. 8
    Appealing a Procedural Error.......................................................................... 9

WELFARE PLANS APPEALS - ELIGIBILITY AND ENROLLMENT MATTERS ................... 9

PROFIT SHARING AND RETIREMENT PLANS CLAIMS AND APPEALS ........................ 10

ALL PLAN CLAIMS - LIMITATION ON TIME FOR SUITS................................................ 10

# GENERAL INFORMATION

## Plan Sponsor and Administrator

Accenture LLP ("Accenture") is sponsor, administrator, and agent for service of legal process for the following plans. From time to time, Accenture amends the plans to keep them up-to-date with employees' needs, to make other design changes and to conform them to federal laws and regulations. Plan members will be notified of amendments that affect their benefits under the plans.

To contact Accenture as sponsor, administrator, or agent for service of legal process for any of the welfare benefit and pension plans, write or call:

Plan Administrator
Accenture LLP
100 South Wacker
Chicago, Illinois 60606-4006
(312) 693-0161

Legal process related to profit sharing/401(k) benefits may also be served on The Northern Trust Company, as Trustee of the Accenture Profit Sharing and 401(k) Trust, 50 South LaSalle Street, Chicago, Illinois 60675. Legal process related to retirement benefits may also be served on The Northern Trust Company, as Trustee of the Accenture Retirement Trust, 50 South LaSalle Street, Chicago, Illinois 60675.

Accenture is responsible for formulating and carrying out all rules and regulations necessary to administer the plans and has the sole discretionary authority to make factual determinations and decisions regarding eligibility of employees and participants in plans. Accenture has delegated to one or more Claims Administrators and Appeals Administrators the discretionary authority to make decisions regarding the interpretation or application of plan provisions, and the discretionary authority to determine all questions, including factual determinations, as to rights and benefits of employees and participants under the plans. Benefits under the plans will be paid only if the Plan Administrator, Claims Administrator or Appeals Administrator, as applicable, decides in its discretion that the claimant is entitled to them. Any interpretation of a plan and any good-faith decision made by Accenture, a Claims Administrator or an Appeals Administrator is binding on all persons. The Claims and Appeals Administrators for the various plans are identified on the schedule on page 10.

You must furnish such evidence, data, and information as may be required by the plan administrator.

## The Accenture Benefit Plans

| Plan Name | Type of Plan |
|---|---|
| United States Group Medical Plan<br>Plan Number 601 | *Consisting of the following plans:*<br><br>• Indemnity Medical Plan: Self-insured welfare plan providing medical benefits through an administrative services contract with Aetna – Contract Number 657455<br><br>• Preferred Provider Organization (PPO): Self-insured welfare plan providing medical benefits through an administrative services contract with UnitedHealthcare Agreement Number 226288<br><br>• BCBS Network Plan. Self-insured welfare plan providing medical benefits through an administrative services contract with Blue Cross Blue Shield Agreement Number 287823<br><br>• Accenture-sponsored Health Maintenance Organizations (HMOs): Insured, state regulated medical plans within a proscribed geographic area |

United States Group Retiree Medical Plan
Plan Number 606

- Provides retiree medical benefits through the Indemnity Medical Plan, Preferred Provider Organization (PPO), the BCBS Network Plan and HMOs.

United States Group Dental Plan ("Group Dental")
Plan Number 602

- Self-insured welfare plan providing dental benefits through an administrative services contract with Aetna - Contract Number 657455

United States Group Long Term Disability Insurance Plan ("LTD")
Plan Number 608

- Insured welfare plan providing disability benefits through contract with Aetna - Contract Number 657455

United States Group Life/Accidental Death and Dismemberment Insurance Plan ("Employee Life/AD&D")
Plan Number 603

- Insured welfare plan providing death and accidental death and dismemberment benefits through contract with Aetna - Contract Number 657455  Provides only AD&D coverage for partners.

United States Group Dependent Life/Accidental Death and Dismemberment Insurance Plan ("Dependent Life/AD&D")
Plan Number 604

- Insured welfare plan providing death and accidental death and dismemberment benefits through contract with Aetna - Contract Number 657455

United States Flexible Benefits Program (including the Health Care and Dependent Care Spending Accounts)
Plan Number 605

- Program established under Sections 125 and 129 of the Internal Revenue Code to reimburse certain health and dependent care expenses on a pre-tax basis.

Accenture United States Employees' Profit Sharing and 401(k) Plan
Plan Number 102

- Defined contribution plan

Accenture United States Partners' Profit Sharing and 401(k) Plan
Plan Number 101

- Defined contribution plan

Accenture United States Retirement Plan
Plan Number 104

- Defined benefit plan

Accenture United States Transfer Retirement Plan
Plan Number 007

- Defined benefit plan

Accenture United States Defined Contribution Transfer Plan
Plan Number 103

- Defined contribution plan

## Sponsor and Employer Identification

Accenture's employer identification number (EIN) is 72-0542904.  The EIN along with each plan name and number identify that specific plan with the federal agencies governing employee benefit plan operations.  The following subsidiaries of Accenture have adopted the plans for the benefit of their eligible employees:

| Employer | EIN |
|---|---|
| AC Technical Resources LLC | 36-4091629 |
| BABCN LLP (Service Net) | 41-1847722 |
| BABCN2 LLP | 41-1867302 |
| Performance Learning Technologies, Inc. | 13-4136192 |

## Trustee of the Accenture Trusts

All contributions under the Employees' Profit Sharing and 401(k) Plan and the Defined Contribution Transfer Plan are paid to the Accenture Profit Sharing and 401(k) Trust. All contributions under the Retirement Plan and the Transfer Retirement Plan are paid to the Accenture Retirement Trust. The Trustee of both trusts is The Northern Trust Company, 50 South LaSalle Street, Chicago, Illinois 60675.

## Plan Year

The plan year for the welfare benefit plans begins January 1 and ends December 31. The plan year for the profit sharing and retirement plans begins July 1 and ends June 30.

## Plan Amendment and Termination

Accenture intends to continue these plans indefinitely but must reserve the right, in its sole discretion, to terminate or amend any plan or to change or end contributions to any plan at any time, with or without notice, if such action is considered necessary or desirable. A plan may be amended or terminated by instrument signed by Accenture's Administrator, by its Global Managing Partner of Human Resources and Partner Matters (or by the successors to the powers, rights and duties of such partner) or by such other person or persons authorized to effect any such action.

# EMPLOYEE RIGHTS AND PROTECTION

## Employee Retirement Income Security Act (ERISA)

The Accenture benefit plans meet the legal requirements established by the Employee Retirement Income Security Act of 1974 (ERISA). ERISA requires that individuals responsible for plan administration ("plan fiduciaries") act solely in the interest of plan participants and beneficiaries. Plan fiduciaries must exercise prudence and good judgment in the performance of plan duties.

ERISA also provides the following rights and protections to plan participants. No one may discharge you or discriminate against you for pursuing a benefit or exercising your ERISA rights.

- You may contact US Employee Benefits to examine all plan documents or obtain copies, as applicable, of the documents without charge. These documents include plan descriptions, the annual financial report, and all other plan documents filed with the Department of Labor.

- You may also obtain copies of official plan documents and other plan information by writing the Plan Administrator, Benefits, c/o Accenture, 100 South Wacker Drive, Chicago, Illinois 60606-4006.

- You will automatically receive a written summary of the annual financial reports for the plans.

- If a benefit claim is denied, in whole or in part, you will receive a written explanation from the insurance company or the Plan Administrator of Benefits. You have a right to have your claim reviewed and reconsidered by the plan.

- You can obtain a statement advising you whether you have a right to receive a retirement benefit at normal retirement age (age 62) and, if so, what your benefits would be at age 62 if you stopped working under the plan now. If you do not have a right to a benefit, the statement will tell you how many more years you must work to obtain a right to a benefit. This statement must be requested in writing and is not required to be given more than once a year. The plan must provide the statement free of charge. (Accenture currently distributes an annual benefits statement to employees and intends to continue to do so.)

If it becomes necessary to enforce the above rights, you may take the following action:

- If you request materials from a plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator.

- If a benefit claim is denied or ignored, in whole or in part, you may file suit in a state or federal court.

- If plan fiduciaries are misusing a plan's money, you may file suit in a federal court after exhausting the administrative review process described under Appeals in this document.

If you file suit, the court will determine court costs and legal fee responsibility. If you win your suit, the court may order the person you have sued to pay the costs and fees. If you lose, or if the court decides your suit is frivolous, the court may order you to pay the costs and fees.

If you have questions about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W. Washington, D.C. 20210.

## Pension Benefit Guaranty Corporation (PBGC)

The Pension Benefit Guaranty Corporation (PBGC) is a government insurance agency established to insure benefits under certain types of pension plans. The Retirement Plan and the Transfer Retirement Plan are covered by the PBGC. (However, the Employees' Profit Sharing and 401(k) Plan and the Defined Contribution Transfer Plan are not covered by the PBGC, because the PBGC only covers defined benefit pension plans.)

Generally, the PBGC guarantees most vested normal retirement benefits, early retirement benefits, and certain disability and survivor's pensions. However, the PBGC does not guarantee all types of benefits under covered plans, and the amount of benefit protection is subject to certain limitations.

The PBGC guarantees vested benefits at the level in effect on the date of plan termination. However, if a plan has been in effect less than 5 years before it terminates, or if benefits have been increased within the 5 years before plan termination, the whole amount of the plan's vested benefits or the benefit increase may not be guaranteed. In addition, there is a ceiling on the amount of monthly benefit that the PBGC guarantees, which is adjusted periodically.

For more information on the PBGC insurance protection and its limitations, ask the plan administrator or the PBGC. Inquiries to the PBGC should be addressed to:

The Office of Communications, PBGC
200 K Street N.W.
Washington, D.C. 20005-4026
(800) 400-7242

# WELFARE PLANS CLAIMS AND APPEALS

When a claim made to any of the welfare benefit plans is denied, you may appeal that denial. Your appeal must follow a specified format or it will be rejected. The nature of the appeal determines to whom your appeal is sent:

| To appeal a claim denial or issue concerning -- | | Contact -- |
|---|---|---|
| Indemnity Medical Plan | • Services requiring HEALTHMARC notification. | HEALTHMARC |
| | • Services not requiring HEALTHMARC notification. | Aetna Member Services |
| | • Services over the reasonable and customary (R&C) charges for your geographic area. | Aetna Member Services |
| Preferred Provider Organization (PPO) | • In-network services including issues regarding network providers, care provided, etc. | UnitedHealthcare |
| | • Out-of-network services including charges over the reasonable and customary (R&C) charges for your geographic area. | UnitedHealthcare |
| | • Certification for out-of-network hospitalization. | UnitedHealthcare |
| BCBS Network Plan | • In-network services including issues regarding network providers, care provided, etc. | Blue Cross Blue Shield |
| | • Mental health and substance abuse services, including certification for hospitalization | Blue Cross Blue Shield |
| Health Maintenance Organization (HMO) | | Your HMO |
| Dental Plan | | Aetna Member Services |
| Long-Term Disability | | Aetna |
| Employee Life Insurance/AD&D | | Aetna |
| Dependent Life Insurance/AD&D | | Aetna |
| Flexible Spending Accounts | | Aetna Member Services |

## Indemnity Medical Plan

• Services Requiring HEALTHMARC Notification

Under no circumstances should appeals for services requiring HEALTHMARC notification be sent to Aetna. Aetna will not review this type of appeal.

■ If you contact HEALTHMARC and disagree with their recommendation or feel your case was incorrectly reviewed, you can appeal. You must appeal within 60 days of receiving HEALTHMARC's written review advising you whether the proposed services will be covered. The written review will explain how to make your appeal.

■ If you did not contact HEALTHMARC within the required amount of time or failed to contact HEALTHMARC at all and your benefits are denied, you may request that HEALTHMARC perform a retrospective review. You must make your request to HEALTHMARC within 90 days of receiving notice of denial from the insurance company. HEALTHMARC will explain how this review will be completed.

- ■ If HEALTHMARC's retrospective review recommends the services are medically necessary and appropriate, benefits for covered services will be paid at 50%. If the review does not recommend the services as medically necessary, the denial will be upheld.

- Services NOT Requiring HEALTHMARC Notification AND Services over the Reasonable and Customary (R&C) Charge

  - ■ Within 90 days of submitting a claim, you will receive payment or a notice of denial of payment. If your claim is denied, the reason for the denial and the plan provisions on which the denial is based will be explained. If further information is necessary to make your claim payable, the denial will explain what is needed and why.

  - ■ Within 60 days of receiving the denial, you (or someone you choose) must submit a written request for a review of the denial to Aetna. With your request, you must include any issues and/or comments that you feel impact your request based on your review of the insurance contract and other relevant documents. If Aetna has requested additional information, you must enclose that also.

  - ■ Within 60 days of receiving your written appeal and the related documentation, Aetna will give you a written explanation of their decision and the plan provisions on which the decision is based.

## Preferred Provider Organization (PPO)

If you have a complaint about a person, a service or your benefits, contact UnitedHealthcare by phone or in writing. This includes any issues or concerns regarding network providers, care provided, etc. Every attempt will be made to resolve the problem at your initial contact. If you are not satisfied, you can appeal in writing as directed by UnitedHealthcare. Your written appeal must provide the following information:

- An explanation of your complaint.

- Steps already taken toward resolving the problem.

- Why you feel the services in question should be covered, or how you feel the problem should be resolved.

- Within 90 days of submitting a claim, you will receive payment or a notice of denial of payment from UnitedHealthcare. If your claim is denied, the reason for the denial and the plan provisions on which the denial is based will be explained. If further information is necessary to make your claim payable, the denial will explain what is needed and why.

- Within 60 days of receiving the denial, you (or someone you choose) must submit a written request for a review of the denial.

- With your request, you must include any issues and/or comments that you feel impact your request based on your review of the insurance contract and other relevant documents. If UnitedHealthcare has requested additional information, you must enclose that also.

- Within 60 days of receiving your written appeal and the related documentation, UnitedHealthcare will provide a written explanation of their decision and the plan provisions on which the decision is based.

## BCBS Network Plan

If you have a complaint about a person, a service or your benefits, contact Blue Cross Blue Shield by phone or in writing. This includes any issues or concerns regarding network providers, care provided, etc. Every attempt will be made to resolve the problem at your initial contact. If you are not satisfied, you can appeal in writing as directed by BCBS. Your written appeal must provide the following information:

- An explanation of your complaint.

- Steps already taken toward resolving the problem.

- Why you feel the services in question should be covered, or how you feel the problem should be resolved.

- Within 90 days of submitting a claim, you will receive payment or a notice of denial of payment from Blue Cross Blue Shield. If your claim is denied, the reason for the denial and the plan provisions on which the denial is based will be explained. If further information is necessary to make your claim payable, the denial will explain what is needed and why.

- Within 60 days of receiving the denial, you (or someone you choose) must submit a written request for a review of the denial.

- With your request, you must include any issues and/or comments that you feel impact your request based on your review of the insurance contract and other relevant documents. If Blue Cross Blue Shield has requested additional information, you must enclose that also.

- Within 60 days of receiving your written appeal and the related documentation, Blue Cross Blue Shield will provide a written explanation of their decision and the plan provisions on which the decision is based.

## Health Maintenance Organizations (HMOs)

If you have a complaint about the service or benefits provided by your HMO or wish to appeal a decision, you must contact your HMO directly and follow their appeals process. Accenture can provide you with a copy of the appropriate HMO contract upon request.

## All Other Plans

To appeal a denied claim for the dental, employee life/AD&D, dependent life/AD&D, LTD, and the flexible spending accounts:

- Within 90 days of submitting a claim, you will receive payment or a notice of denial of payment. If your claim is denied, the reason for the denial and the plan provisions on which the denial is based will be explained. If further information is necessary to make your claim payable, the denial will explain what is needed and why.

- Within 60 days of receiving the denial, you (or someone you choose) must submit a written request for a review of the denial to the appropriate insurance company. With your request, you must include any issues and/or comments which you feel impact your request based on your review of the insurance contract and other relevant documents. If the insurance company has asked for additional information, you must enclose that also.

- Within 60 days of receiving your written appeal and the related documentation, the insurance company will give you a written explanation of their decision and the plan provisions on which the decision is based.

## If Your Appeal is Denied

The determination made by the insurance company reviewing the appeal is final. In limited situations and only when a procedural error is suspected will Accenture review a denied appeal.

- **Indemnity Medical Plan:** Aetna has the sole discretionary authority to determine claims and appeals under the Indemnity portions of the Medical Plan and the Retiree Medical Plan. HEALTHMARC has the sole discretionary authority to recommend inpatient hospitalization and certain outpatient care as it relates to the Indemnity Plan and to consider appeals in its area of discretion. Therefore, Accenture will not override claim denials, recommendations or appeals. Accenture will intervene only if a procedural error by Aetna or HEALTHMARC has occurred. (See Appealing a Procedural Error in this section for further information.)

- **Preferred Provider Organization (PPO):** UnitedHealthcare has the sole discretionary authority to determine claims and appeals under the PPO portions of the Medical Plan and the Retiree Medical Plan. Therefore, Accenture will not override claim denials, recommendations or appeals. Accenture will intervene only if a procedural error by UnitedHealthcare has occurred. (See Appealing a Procedural Error in this section for further information.)

- **BCBS Network Plan:** Blue Cross Blue Shield has the sole discretionary authority to determine claims and appeals under the BCBS Network portions of the Medical Plan and the Retiree Medical Plan. Therefore, Accenture will not override claim denials, recommendations or appeals. Accenture will intervene only if a procedural error by Blue Cross Blue Shield has occurred. (See Appealing a Procedural Error in this section for further information.)

- **Health Maintenance Organizations (HMOs):** Each HMO has the sole discretionary authority to determine claims and appeals under its respective HMO contract. (See Appealing a Procedural Error in this section for further information.)

- **Dental Plan:** Aetna has the sole discretionary authority to determine claims and appeals under the Dental Plan. Therefore, Accenture will not override claim denials, recommendations or appeals. Accenture will intervene only if a procedural error by Aetna has occurred. (See Appealing a Procedural Error in this section for further information.)

- **Long-Term Disability:** Aetna has the sole discretionary authority to determine claims and appeals under the LTD Plan. This is a fully insured contract; therefore, decisions made by the insurance company are final. No further appeal is available.

- **Employee Life/AD&D Insurance:** Aetna has the sole discretionary authority to determine claims and appeals under the Employee Life/AD&D Plan. This is a fully insured contract; therefore, decisions made by the insurance company are final. No further appeal is available.

- **Dependent Life/AD&D Insurance:** Aetna has the sole discretionary authority to determine claims and appeals under the Dependent Life/AD&D Plan. This is a fully insured contract; therefore, decisions made by the insurance company are final. No further appeal is available.

- **Flexible Spending Accounts:** Aetna has the sole discretionary authority to determine claims and appeals under the Flexible Benefits Plan. Accenture will intervene only if a procedural error by Aetna has occurred.

## Appealing a Procedural Error

If, after exhausting the appeals process available to you through your insurance carrier, you disagree with the denial of your claim or a precertification determination, you may make a written request for a review to Accenture within 60 days of receiving the denial or determination. (Before submitting your appeal, make a copy for your records.)  Your appeal must provide the following information:

| Personal Information | Claim Information | Appeal Information |
|---|---|---|
| ▪ Name | ▪ Type of claim | ▪ Date of this appeal |
| ▪ Social Security number | ▪ Insurance carrier | ▪ Date of initial appeal |
| ▪ Date of hire | ▪ Dates claim was submitted | ▪ Carrier initial appeal sent to |
| ▪ Termination date (if applicable) | ▪ Date claim was denied | ▪ Date initial appeal was denied |
| ▪ Office location | ▪ Reason for denial | ▪ Reason for denial |
| ▪ Daytime phone number | ▪ Name of provider of services | ▪ Description of the situation |
| ▪ Dependent's name and relationship* | ▪ Date services were provided | ▪ Additional information you feel is pertinent in your case. |

\*    If the claim being appealed is for a dependent.

Your appeal will be reviewed to determine if proper procedures were followed and/or that Accenture's contract was adhered to.  If no procedural error or breach of contract occurred, the denial or determination will stand.  You will be notified of the decision within 60 days of submitting your appeal.

# WELFARE PLANS APPEALS - ELIGIBILITY AND ENROLLMENT MATTERS

The circumstances under which your current coverage can be changed are explained in the Eligibility and Enrollment section of the plan summaries.  It is your responsibility to understand these rules and their impact on your future coverage choices before you make annual enrollment elections or change your coverage at a life event.

To appeal an eligibility or enrollment matter related to new employee enrollment, annual enrollment, life event changes, enrollment deadlines, or dependent coverage contact the Accenture Benefits Center (1-877-332-2242).

Call between the hours of 9:00 am and 5:00 p.m. (Central time) and speak to a Benefits Center representative.  If the representative is unable to assist you, he or she will send you an Appeal Form to be completed and returned to the Accenture Benefits Center.  Your case will be reviewed based on the plan's enrollment and eligibility rules, and you will receive a written explanation of that review within 60 days of the date your appeal is received. (Be sure to keep a copy of your completed form for your records.)

If your appeal to the Accenture Benefits Center is denied and you feel you have a circumstance not addressed by the plan's enrollment and eligibility rules, you may request a review by Accenture.  Your request must be made in writing within 60 days of receiving the denial from the Accenture Benefits Information Center.  Your appeal must provide the following information:

| Personal Information | Appeal Information |
|---|---|
| ■ Name | ■ Type of appeal |
| ■ Social Security number | ■ Date of appeal |
| ■ Date of hire | ■ Date of initial appeal to the Benefits Center |
| ■ Termination date (if applicable) | ■ Date initial appeal was denied by the Benefits Center |
| ■ Office location | ■ Reason for the denial |
| ■ Daytime phone number | ■ Brief description of the situation |
| | ■ Additional information you feel is pertinent to your case. |

Before submitting your appeal, make a copy for your records. Then send your appeal via FAX (312-737-7937), inter-office mail, or U.S. mail to the Global Managing Partner of Benefits, 100 South Wacker Drive, Chicago Illinois 60606-4006. Your appeal will be reviewed, and you will be notified of the decision within 60 days of the date your appeal is received.

## PROFIT SHARING AND RETIREMENT PLANS CLAIMS AND APPEALS

The following provisions apply if you have a claim under the Employees' Profit Sharing and 401(k) Plan, the Retirement Plan, the Transfer Retirement Plan, or the Defined Contribution Transfer Plan.

If you or your beneficiary file a claim for benefits under the Plan, such claim must be in writing and filed with the Plan Administrator. If a claim is denied, the Plan Administrator, within 90 days (or 180 days if warranted by special circumstances) after it receives the claim, will notify the claimant of its decision, setting forth the specific reasons for the denial, references to the Plan provisions on which the denial is based, additional information necessary to perfect the claim, if any, and a description of the procedure for review of the denial.

A claimant (or his or her duly authorized representative) may request a review of the denial of a claim for benefits by filing a written application with the Plan Administrator within 60 days after he or she receives notice of the denial. Such a claimant is entitled to review pertinent plan documents and submit written issues and comments to the Plan Administrator. The Plan Administrator, within 90 days (or 180 days if warranted by special circumstances) after it receives a request for review, will furnish the claimant with written notice of its decision, setting forth the specific reasons for the decision and references to the pertinent Plan provisions on which the decision is based.

## ALL PLAN CLAIMS - LIMITATION ON TIME FOR SUITS

If your claim for benefits is finally denied by the Plan Administrator (or its designee), then you may bring suit in federal court. However, you may only bring suit in federal court if you file such action within 120 days after the date of the final denial of your claim by the Plan Administrator (or its designee).

# EXHIBIT J

# Accenture United States Benefit Plans
## General Information

(Effective January 1, 2003)

# TABLE OF CONTENTS

GENERAL INFORMATION ........................................................................................... 1
    Introduction.................................................................................................................. 1
    Plan Sponsor and Administrator ................................................................................ 1
    The Accenture Benefit Plans..................................................................................... 2
    Sponsor and Employer Identification ........................................................................ 3
    Trustee of the Accenture Trusts................................................................................ 4
    Plan Year.................................................................................................................... 4
    Plan Amendment and Termination ............................................................................ 4

EMPLOYEE RIGHTS AND PROTECTION.............................................................. 4
    ERISA Rights Statement............................................................................................ 4
    Pension Benefit Guaranty Corporation (PBGC) ....................................................... 6

WELFARE PLANS CLAIMS AND APPEALS PROCEDURES .............................. 7
    Medical Plan, Dental Plan, Retiree Medical Plan and Health Care Spending Account
    Procedures ................................................................................................................. 7
    Long Term Disability Plan Procedures...................................................................... 10
    Employee Life/AD&D Plan and Dependent Life/AD&D Plan Procedures ...................... 10

WELFARE PLANS APPEALS PROCEDURES – ELIGIBILITY AND ENROLLMENT
MATTERS.................................................................................................................... 11

PROFIT SHARING AND RETIREMENT PLANS CLAIMS AND APPEALS PROCEDURES 11

ALL PLAN CLAIMS – LIMITATION ON TIME FOR SUITS .................................. 12

APPENDIX A – Claims and Appeals Administrators and HMOs – Contact Information ...... 13

# GENERAL INFORMATION

## Introduction

The following constitutes a part of the summary plan descriptions of the benefit plans sponsored by Accenture LLP ("Accenture") that are listed below. This document is intended to provide general information related to each plan, as required by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). To the extent there are any inconsistencies, however, between the summary plan description and the applicable plan document, the applicable plan document always governs. You are welcome to examine the plan document. It is available from Accenture.

## Plan Sponsor and Administrator

Accenture is plan sponsor, plan administrator, and agent for service of legal process for the plans listed below. From time to time, Accenture amends the plans to keep them up-to-date with employees' needs, to make other design changes and to conform them to federal laws and regulations. Plan members will be notified of amendments that affect their benefits under the plans.

To contact Accenture as plan sponsor, plan administrator, or agent for service of legal process for any of these welfare benefit and pension plans, write or call:

Plan Administrator
Accenture LLP
233 North Michigan Avenue
Chicago, Illinois 60601
(312) 693-0161

Legal process related to profit sharing/401(k) benefits may also be served on The Northern Trust Company, as Trustee of the Accenture United States Profit Sharing and 401(k) Trust, 50 South LaSalle Street, Chicago, Illinois 60675. Legal process related to retirement benefits may also be served on The Northern Trust Company, as Trustee of the Accenture United States Retirement Trust, 50 South LaSalle Street, Chicago, Illinois 60675.

Accenture is responsible for formulating and carrying out all rules and regulations necessary to administer the plans and has the sole discretionary authority to make factual determinations and decisions regarding eligibility or benefits of employees and participants in the plans. Accenture has delegated to one or more Claims Administrators and Appeals Administrators the discretionary authority to make decisions regarding the interpretation or application of plan provisions, and the discretionary authority to determine all questions, including factual determinations, as to rights and benefits of employees and participants under certain of the plans. Benefits under the plans will be paid only if the Plan Administrator, Appeals Committee, Claims Administrator or Appeals Administrator, as applicable, decides in its discretion that the claimant is entitled to them. Any interpretation of a plan and any good faith decision made by Accenture, the Appeals Committee, a Claims Administrator or an Appeals Administrator is final and binding on all persons. The Claims and Appeals Administrators for the various plans are identified in Appendix A on page 13.

You must furnish such evidence, data, and information as may be required by the Plan Administrator.

## The Accenture Benefit Plans

| Plan Name | Type of Plan |
|---|---|
| Accenture United States Group Medical Plan<br>Plan Number 601 | *Consisting of the following plans:*<br><br>• Indemnity Medical Plan: Self-insured welfare plan providing medical benefits through an administrative services contract with Aetna - Contract Number 657455<br><br>• Preferred Provider Organization (PPO): Self-insured welfare plan providing medical benefits through an administrative services contract with United Healthcare - Agreement Number 226288<br><br>• BCBS Network Plan: Self-insured welfare plan providing medical benefits through an administrative services contract with Blue Cross Blue Shield - Agreement Number 287823<br><br>• Accenture-sponsored Health Maintenance Organizations (HMOs): Insured, state regulated medical plans within a prescribed geographic area |
| Accenture United States Group Retiree Medical Plan<br>Plan Number 606 | • Provides retiree medical benefits through the Indemnity Medical Plan, Preferred Provider Organization (PPO), the BCBS Network Plan and HMOs. |
| Accenture United States Group Dental Plan<br>Plan Number 602 | • Self-insured welfare plan providing dental benefits through an administrative services contract with Aetna - Contract Number 657455 |
| Accenture United States Group Long Term Disability Insurance Plan ("LTD")<br>Plan Number 608 | • Insured welfare plan providing disability benefits through contract with Aetna - Contract Number 657455 for claims prior to June 2003 and UNUM Provident – Policy Number 578456 for claims after June 2003 |
| Accenture United States Group Life/Accidental Death and Dismemberment Insurance Plan ("Employee Life/AD&D")<br>Plan Number 603 | • Insured welfare plan providing death and accidental death and dismemberment benefits through contract with MetLife - Contract Number 105819-1-G (Partners are eligible only for AD&D coverage under this contract.) |
| Accenture United States Group Dependent Life/Accidental Death and Dismemberment Insurance Plan ("Dependent Life/AD&D")<br>Plan Number 604 | • Insured welfare plan providing death and accidental death and dismemberment benefits through contract with MetLife - Contract Number 105819-1-G |
| Accenture United States Flexible Benefits Program (including the Health Care and Dependent Care Spending Accounts)<br>Plan Number 605 | • Program established under Sections 125 and 129 of the Internal Revenue Code to reimburse certain health and dependent care expenses on a pre-tax basis. |
| Accenture United States Group Variable Universal Life Insurance Plan<br>Plan Number 611 | • Insured welfare plan providing group variable universal life insurance benefits for partners |

| | |
|---|---|
| Accenture United States Retirement Plan Plan Number 104 | • Defined benefit plan |
| Accenture United States Transfer Retirement Plan Plan Number 007 | • Defined benefit plan |
| Accenture United States Profit Sharing and 401(k) Plan Plan Number 102 | • Defined contribution plan |
| Accenture United States Defined Contribution Transfer Plan Plan Number 103 | • Defined contribution plan |
| Accenture United States Group Dental Plan for Affiliates Plan Number 613 | • Self-insured welfare plan providing dental benefits through an administrative services contract with Aetna - Contract Number 657455 |
| United States Group Life and Accidental Death and Dismemberment Insurance Plan For Affiliates("Employee Life/AD&D" for Affiliates) Plan Number 614 | • Insured welfare plan providing death and accidental death and dismemberment benefits through contract with MetLife - Contract Number 105819-1-G |

Accenture also sponsors separation benefits plans, which are welfare benefit plans. Employees eligible for separation benefits will be provided with separate information (including a summary plan description) about those benefits.

## Sponsor and Employer Identification

Accenture's employer identification number (EIN) is 72-0542904. The EIN, the plan name and the plan number identify each Accenture employee benefit plan with the federal agencies governing employee benefit plan operations. The following subsidiaries of Accenture have adopted some or all of the plans for the benefit of their eligible employees:

| Participating Employer | Address | Employer Identification Number |
|---|---|---|
| Accenture HR Services, Inc. | 233 North Michigan Avenue Chicago, IL 60601 | 06-1606783 |
| Indeliq, Inc. | One N. Franklin, Suite 2200 Chicago, IL 00611 | 13-4136192 |
| Imagine Broadband Limited USA, LLC | 11951 Freedom Dr. Reston, VA 20190 | 84-1569210 |
| Accenture Technology Solutions – US, Inc. | 161 North Clark Street Chicago, IL 60601 | 41-2048318 |
| Accenture National Security Services, LLC | 161 North Clark Street Chicago, IL 60601 | 41-2048319 |

## Trustee of the Accenture Trusts

All contributions under the Profit Sharing and 401(k) Plan and the Defined Contribution Transfer Plan are paid to the Accenture United States Profit Sharing and 401(k) Trust. All contributions under the Retirement Plan and the Transfer Retirement Plan are paid to the Accenture United States Retirement Trust. Contributions under certain of the welfare benefit plans sponsored by Accenture are paid to the Accenture United States Benefit Trust. The trustee of these trusts is The Northern Trust Company, 50 South LaSalle Street, Chicago, Illinois 60675.

## Plan Year

The plan year for the welfare benefit plans begins January 1 and ends December 31. The plan year for the Profit Sharing and 401(k) Plan, the Defined Contribution Transfer Plan and the Transfer Retirement Plan begins July 1 and ends June 30. The plan year for the Retirement Plan begins May 31 and ends on May 30.

## Plan Amendment and Termination

Accenture intends to continue these plans indefinitely but reserves the right, in its sole discretion, to terminate or amend any plan or to change or end contributions to any plan at any time, with or without notice. A plan may be amended or terminated by instrument signed by Accenture's Administrator or by such other person or persons authorized to amend or terminate the plans.

# EMPLOYEE RIGHTS AND PROTECTION

## ERISA Rights Statement

The employee benefit plans sponsored and administered by Accenture meet the legal requirements established by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). As a plan participant, you are entitled to certain rights and protections under ERISA. ERISA provides that all plan participants shall be entitled to:

## Receive Information About Your Plans and Benefits

- You may contact US Employee Benefits to examine, without charge, all governing plan documents, including insurance contracts, and a copy of the latest annual report (Form 5500 Series) filed by the applicable plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration. You may also obtain copies of official plan documents and other documents governing the operation of the plans and copies of the latest annual reports (Form 5500 Series) and updated summary plan descriptions by writing to the Plan Administrator, Benefits, c/o Accenture, 233 North Michigan Avenue, Chicago, Illinois 60601. The Plan Administrator may make a reasonable charge for the copies.

- You will automatically receive a written summary of the annual financial reports for your plans. The Plan Administrator is required by law to furnish each participant with a copy of these summary annual reports.

- You can obtain a statement advising you whether you have a right to receive a retirement benefit at normal retirement age and, if so, what your benefits would be at normal retirement age if you stopped working under the applicable plan now. If you do not have a right to a benefit, the statement will tell you how many more years you must work to obtain a right to a benefit under the applicable plan. This statement must be requested in writing and is not required to be given more than once every twelve (12) months. The plans must provide the statement free of charge.

- You and your beneficiaries can obtain, without charge, a copy of a plan's procedures governing qualified domestic relations order ("QDRO") or qualified medical child support order ("QMCSO") determinations by contacting the Plan Administrator.

## Continue Group Health Plan Coverage

- You have the right to continue health care coverage for yourself, your spouse, or your dependents if there is a loss of health care coverage under a plan to which COBRA applies as a result of a qualifying event. You or your dependents may have to pay for such coverage. Review the summary plan description and the documents governing the particular plan under which you seek continuation coverage to learn more about the rules governing your COBRA continuation coverage rights.

- If applicable, you have the right to reduce or eliminate an exclusionary period of coverage for preexisting conditions under your group health plan if you have creditable coverage from another plan. You should be provided a certificate of creditable coverage, free of charge, from your group health plan or health insurance issuer when you lose coverage under the plan, when you become entitled to elect COBRA continuation coverage, when your COBRA continuation coverage ceases, if you request it before losing coverage, or if you request it up to 24 months after losing coverage. Without evidence of creditable coverage, you may be subject to a pre-existing condition exclusion for 12 months (18 months for late enrollees) after your enrollment date in your coverage.

## Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plans. The people who operate your plans, called "fiduciaries" of the plans, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a retirement or welfare benefit or exercising your rights under ERISA.

## Enforce Your Rights

If your claim for a retirement or welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from a plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court after exhausting the administrative review process described in the applicable "Appeals Procedures" section of this document. In addition, if you disagree with the Plan Administrator's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in a Federal court.

If it should happen that the plan fiduciaries misuse a plan's money or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

## Assistance with Your Questions

If you have any questions about your plans, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone

directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## Pension Benefit Guaranty Corporation (PBGC)

The Pension Benefit Guaranty Corporation (PBGC) is a federal insurance agency established to insure benefits under certain types of pension plans. Pension benefits under the Retirement Plan and the Transfer Retirement Plan are insured by the PBGC. Benefits under the Profit Sharing and 401(k) Plan, the Defined Contribution Transfer Plan, and the welfare benefit plans, however, are not insured by the PBGC, because the PBGC only insures defined benefit pension plans. If the Retirement Plan or Transfer Retirement Plan terminates (ends) without enough money to pay all benefits, the PBGC will step in to pay pension benefits. Most people receive all of the pension benefits they would have received under their plan, but some people may lose certain benefits.

Generally, the PBGC guarantee covers: (1) normal and early retirement benefits; (2) disability benefits if you become disabled before the Transfer Retirement Plan terminates; and (3) certain benefits for your survivors.

The PBGC guarantee generally does not cover: (1) benefits greater than the maximum guaranteed amount set by law for the year in which the plan terminates; (2) some or all of benefit increases and new benefits based on plan provisions that have been in place for fewer than 5 years at the time the plan terminates; (3) benefits that are not vested because you have not worked long enough for the company; (4) benefits for which you have not met all of the requirements at the time the plan terminates; (5) certain early retirement payments (such as supplemental benefits that stop when you become eligible for Social Security) that result in an early retirement monthly benefit greater than your monthly benefit at the plan's normal retirement age; and (6) non-pension benefits, such as health insurance, life insurance, certain death benefits, vacation pay, and severance pay.

Even if certain of your benefits under the Retirement Plan or Transfer Retirement Plan are not guaranteed, you still may receive some of those benefits from the PBGC depending on how much money your plan has and on how much the PBGC collects from employers.

For more information about the PBGC and the benefits it guarantees, ask the Plan Administrator or contact the PBGC. Inquiries to the PBGC should be addressed to:

PBGC, Technical Assistance Division
1200 K Street N.W., Suite 930
Washington, D.C. 20005-4026
(202) 326-4000 (not a toll-free number)

TTY/TDD users may call the federal relay service toll-free at 1-800-877-8339 and ask to be connected to (202) 326-4000. Additional information about the PBGC's pension insurance program is available through the PBGC's website on the Internet at http://www.pbgc.gov.

# WELFARE PLANS CLAIMS AND APPEALS PROCEDURES

Coverage under the welfare plans is offered under a variety of options. Some of these options are self-insured and other options are insured. Under the self-insured options, Accenture contracts with a third-party administrator (the "Claims Administrator") to administer the options. However, all benefits are paid directly from Accenture's general assets or a benefits trust. As described below, Accenture has delegated to a third-party administrator (the "Appeals Administrator") the final, discretionary authority to determine if an Urgent Care Claim or a Pre-Service Claim is payable under the terms of the plans. Accenture's ERISA Appeals Committee retains the final, discretionary authority to determine if a Post-Service Claim is payable under the terms of the plans.

If an option is fully-insured, for example an HMO, Accenture purchases an insurance contract from an insurer. All claims are paid from the insurer's assets. Other than for questions related to eligibility, the insurer retains all final, discretionary authority to determine whether a claim is payable under a fully-insured option under the plans.

Appendix A to this summary lists the Claims and Appeals Administrators under the plans, the contact information for each Claims and Appeals Administrator, and whether the plan option is insured or self-insured. If you have any questions, you should contact the Plan Administrator at the number listed in the "Plan Sponsor and Administrator" section on page 1 of this summary.

## Medical Plan, Dental Plan, Retiree Medical Plan and Health Care Spending Account Procedures

**The claims procedures in this section only apply to the self-insured options under the plans. If you participate in an insured option under the Medical Plan or the Retiree Medical Plan, any claim for benefits and any appeal should be filed according to the HMO's claims procedures.**

Either you or your authorized representative may file claims for plan benefits. An "authorized representative" means a person you authorize, in writing, to act on your behalf. The plan will also recognize a court order giving a person authority to submit claims on your behalf. In the case of an Urgent Care Claim, a health care professional with knowledge of your condition may always act as your authorized representative. All communications from the plan will be directed to your authorized representative unless your written designation provides otherwise.

Your initial claim should be filed with the applicable Claims Administrator listed in Appendix A. All claims are treated as filed on the date they are received. If your claim is denied in whole or in part, you will receive a written notice of the denial directly from the Claims Administrator. The notice will explain the reason for the denial and the review procedures.

## Urgent Care Claims

If the plan requires advance approval of a service, supply or procedure before a benefit will be payable, and if the plan or your physician determines that it is an Urgent Care Claim, you will be notified whether the service, supply or procedure is payable under the plan no later than 72 hours after the claim is received, either orally or in writing.

"Urgent Care Claim" means a claim for services received for an illness, injury or condition that could seriously jeopardize your life or health or your ability to regain maximum function or a condition that, in your treating physician's opinion, could subject you to severe pain that cannot adequately be managed without such care or treatment.

For Urgent Care Claims that name a specific claimant, medical condition, and service or supply for which approval is required, and that are submitted to the plan representative responsible for handling benefit matters, but otherwise fail to follow the plan's procedures, you will be notified of the failure within 24 hours of receipt of the claim. You also will be informed of the proper procedures to

be followed. The notice may be oral unless you or your authorized representative request a written notification.

If there is not sufficient information to decide the claim, your physician will be notified of the specific information necessary to complete the claim as soon as possible, but no later than 24 hours after receipt of the claim. Your physician will be given a reasonable additional amount of time, but not less than 48 hours, to provide the information. Your physician will be notified of the decision no later than 48 hours after the end of the additional time period (or after receipt of the information, if earlier). If the decision is provided to you orally (unless you or your representative request a written notification), your physician will be provided a written or electronic notification no later than three days after you received the oral notification.

## Pre-Service and Post-Service Claims

If the plan requires you to obtain advance approval of a service, supply or procedure before a benefit will be payable, such a claim will be considered a Pre-Service Claim. You will be notified of the decision no later than 15 days after receipt of the Pre-Service Claim. All other claims will be deemed to be Post-Service Claims. You will be notified of a Post-Service Claim decision no later than 30 days after receipt of such claim.

For Pre-Service Claims that name a specific claimant, medical condition, and service or supply for which approval is required, and that are submitted to the plan representative responsible for handling benefit matters, but which otherwise fail to follow the plan's procedures, you will be notified of the failure within 5 days for Pre-Service Claims. You also will be informed of the proper procedures to be followed. The notice may be provided to you orally unless you or your representative request written notification.

For either a Pre-Service or a Post-Service Claim, the time period in which the decision must be made may be extended up to an additional 15 days due to circumstances beyond the plan's control. In that case, you will be notified of the extension before the end of the initial 15 or 30 day period.

If there is not sufficient information to decide the claim, the notice of extension will specifically describe the information necessary to complete the claim. You will have at least 45 days from the date you receive the notice to provide the specified information. The Claims Administrator's period for making the determination will exclude the period of time from the date the notification of the extension is sent to you until the date you respond to the request for additional information. If you fail to supply the requested information within the 45-day period, your claim will be denied.

## Ongoing Course of Treatment

If you are receiving an ongoing course of treatment, you will be notified in advance if the plan intends to terminate or reduce previously authorized benefits for the course of treatment so that you will have the opportunity to appeal the decision before the termination or reduction takes effect. If the course of treatment involves an Urgent Care Claim, and you request an extension of the course of treatment at least 24 hours before its expiration, you will be notified of the decision within 24 hours after receipt of the request.

## Filing an Appeal of an Adverse Benefits Determination

With the exception of Urgent Care Claims, you will have 180 days following receipt of an adverse benefit decision to appeal the decision. Your appeal must be in writing and submitted to the appropriate Claims Administrator listed in Appendix A. You will be notified of the decision no later than 15 days (for Pre-Service Claims) or 30 days (for Post-Service Claims) after the appeal is received. Along with your claim for benefits, you may submit written comments, documents, records and other information related to your claim, whether or not the comments, documents, records or information were submitted in connection with the initial claim. You also may request that the plan provide you, free of charge, copies of all documents, records and other information relevant to the claim.

The review will be made by a person different from the person who made the initial determination, and no deference will be afforded to the initial determination. The individual making the appeal determination will not be a subordinate of the original decision maker. In the case of a claim denied on the grounds of a medical judgment, a health professional with appropriate training and experience will be consulted. The health care professional who is consulted on appeal will not be the individual who was consulted during the initial determination or a subordinate to such person. If the advice of a medical expert was obtained in connection with the denial of your claim, the names of each such expert will be provided upon request, regardless of whether the advice was relied upon.

If your claim involves an Urgent Care Claim, an expedited appeal may be initiated by a telephone call to the Member Services telephone number on your Identification Card. You or your authorized representative may appeal Urgent Care Claim denials either orally or in writing. All necessary information, including the appeal decision, will be communicated between you or your authorized representative and the plan by telephone, facsimile, or other similar method. If the appeal decision is communicated to you orally, you will receive a written determination within three days following the oral determination. You will be notified of the decision no later than 36 hours after the appeal is received.

If you disagree with the appeal determination, you may file a second level of appeal. This appeal should be made in writing within 60 days of receipt of the first level appeal decision.

## Second Level of Appeal

If you receive coverage under a self-insured option, you may voluntarily appeal the Claims Administrator's final adverse benefit determination by filing a written appeal with the Appeals Administrator (for Pre-Service Claims) or the Appeals Committee (for Post-Service Claims), as applicable. Such appeal must be filed within 60 days of the final denial for Pre-Service and Post-Service Claims. The Appeals Administrator will make its determination on a Pre-Service Claim no later than 15 days after the appeal is received by the Appeals Administrator. The Appeals Committee will make its determination on a Post-Service Claim no later than 30 days after the appeal is received by the Appeals Committee. Any such determination shall be final and binding. After receiving such a determination, you will have exhausted your administrative remedies under the plan, and you will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B).

If your appeal involves an Urgent Care Claim, an expedited appeal to the Appeals Administrator may be initiated by a telephone call to the Member Services telephone number on your Identification Card. You or your authorized representative may appeal the Claims Administrator's final adverse benefit determination on an Urgent Care Claim either orally or in writing. All necessary information, including the appeal decision, will be communicated between you or your authorized representative and the plan by telephone, facsimile, or other similar method. If the appeal decision is communicated to you orally, you will receive a written determination within three days following the oral determination. You will be notified of the Appeals Administrator's determination no later than 36 hours after the appeal is received. Any such determination shall be final and binding. After receiving such a determination, you will have exhausted your administrative remedies under the plan, and you will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B).

Benefits will be paid under the plan only if the Appeals Administrator or the Appeals Committee, as applicable, determines in its discretion that you are entitled to them.

## Health Maintenance Organizations (HMOs)

If you have a complaint about the service or benefits provided by your HMO or wish to appeal a decision, you must contact your HMO directly and follow its appeals process. Accenture can provide you with a copy of the appropriate HMO contract upon request.

## Long Term Disability Plan Procedures

When a claim for long term disability plan benefits is denied, you or an authorized representative may appeal that denial. An authorized representative is a person you authorize in writing to act on your behalf.

The Claims Administrator will provide you with notice of the status of your claim within a reasonable period of time after a complete claim has been filed, but no later than 45 days after receipt of your claim for benefits. The Claims Administrator may request an additional 30-day extension if special circumstances warrant by notifying you of the extension before the expiration of the initial 45-day period. If a decision still cannot be made within this 30-day extension period due to circumstances outside the plan's control, the time period may be extended for an additional 30 days, in which case you will be notified before the expiration of the original 30-day extension.

If you have not submitted sufficient information to the Claims Administrator to process your claim, you will be notified of the incomplete claim and given 45 days to submit additional information. This will extend the time in which the Claims Administrator has to respond to your claim from the date the notice of insufficient information is sent to you until the date you respond to the request. If you do not submit the requested missing information to the Claims Administrator within 45 days of the date of the request, your claim will be denied.

If your claim is denied, you will receive a notice which will include (i) the specific reasons for the denial, (ii) reference to the pertinent plan provisions upon which the denial is based, (iii) a description of any additional information you might be required to provide with an explanation of why it is needed, and (iv) an explanation of the plan's claims review and appeal procedures.

You, or a duly authorized representative, may appeal a denial of a claim for benefits by filing a written request with the Appeals Administrator within 180 days of your receipt of the initial denial notice. In connection with your appeal, you may request that the plan provide you, free of charge, copies of all documents, records and other information relevant to the claim. You may also submit written comments, records, documents and other information relevant to your appeal, whether or not such documents were submitted in connection with the initial claim. The Appeals Administrator may consult with medical or vocational experts in connection with deciding your claim for benefits.

The Appeals Administrator will conduct a full and fair review of the documents and evidence submitted and will ordinarily render a decision no later than 45 days after receipt of your request for review on appeal. If there are special circumstances, the decision will be made as soon as possible, but not later than 90 days after receipt of your request for review on appeal. If such an extension of time is needed, you will be notified in writing prior to the end of the first 45-day period. The Appeals Administrator's final written decision will include specific reasons for the decision, specific references to the pertinent plan provisions on which the decision is based, and an explanation of your rights under ERISA's claims and appeals rules. Any such decision shall be final and binding. After receiving such a decision, you will have exhausted your administrative remedies under the plan, and you will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B). Benefits will be paid under the plan only if the Appeals Administrator determines in its discretion that you are entitled to them.

## Employee Life/AD&D Plan and Dependent Life/AD&D Plan Procedures

If you or your beneficiary apply for employee or dependent life/AD&D plan benefits and the application is denied, the Claims Administrator will notify the claimant of such denial in writing within 90 days, or within 180 days if the Claims Administrator notifies the claimant in writing that special circumstances require additional time for processing the claim. The notice will (i) explain the reason for the denial, (ii) refer to the pertinent plan provisions on which the denial is based, (iii) describe any additional material necessary to perfect the claim and explain why such material is necessary, and (iv) explain the steps to be taken if the claimant wishes to submit the claim for review.

A claimant (or his or her duly authorized representative) may appeal the Claims Administrator's denial of a claim by filing a written appeal with the Appeals Administrator within 60 days of the original denial. The appeal must contain (i) the date on which the original application was filed, (ii)

the specific portions of the denial the claimant wishes the Appeals Administrator to review, (iii) a statement setting forth the reasons the denial should be reversed, and (iv) any written material the claimant wishes the Appeals Administrator to examine when reconsidering the claim. The Appeals Administrator will permit the claimant to examine any documents that are relevant to his or her claim. The Appeals Administrator will notify the claimant of its decision on the appeal in writing within 60 days, or within 120 days if the Appeals Administrator notifies the claimant in writing that special circumstances require additional time for reviewing the appeal. The Appeals Administrator's decision will be final and binding on all parties. After receiving such a decision, the claimant will have exhausted his or her administrative remedies under the plan, and will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B). Benefits will be paid under the plan only if the Appeals Administrator determines in its discretion that the claimant is entitled to them.

# WELFARE PLANS APPEALS PROCEDURES – ELIGIBILITY AND ENROLLMENT MATTERS

The circumstances under which your current coverage can be changed are explained in the "Eligibility and Enrollment" section of the applicable plan summary. It is your responsibility to understand these rules and their impact on your future coverage choices before you make annual enrollment elections or change your coverage upon experiencing a life event.

To appeal an eligibility or enrollment matter related to new employee enrollment, annual enrollment, life event changes, enrollment deadlines, or dependent coverage, contact the Accenture Benefits Center (1-877-332-2242).

Call between the hours of 9:00 am and 5:00 p.m. (Central time) and speak to a Benefits Center representative. If the representative is unable to assist you, he or she will send you an Appeal Form to be completed and returned to the Accenture Benefits Center. Your case will be reviewed based on the plan's enrollment and eligibility rules, and you will receive a written explanation of that review within 60 days of the date your appeal is received. (Be sure to keep a copy of your completed form for your records.)

If your appeal to the Accenture Benefits Center is denied and you feel you have a circumstance not addressed by the plan's enrollment and eligibility rules, you may request a review by the Appeals Committee. Your request must be made in writing within 60 days of receiving the denial from the Accenture Benefits Center. Your appeal must provide the following information:

| Personal Information | Appeal Information |
|---|---|
| ▪ Name | ▪ Type of appeal |
| ▪ Social Security number | ▪ Date of appeal |
| ▪ Date of hire | ▪ Date of initial appeal to the Benefits Center |
| ▪ Termination date (if applicable) | ▪ Date initial appeal was denied by the Benefits Center |
| ▪ Office location | ▪ Reason for the denial |
| ▪ Daytime phone number | ▪ Brief description of the situation |
| | ▪ Additional information you feel is pertinent to your case. |

Before submitting your appeal, make a copy for your records. Then send your appeal inter-office mail, or U.S. mail to the Accenture ERISA Appeals Committee, c/o Accenture HR Services, 233 North Michigan Avenue, Chicago, Illinois 60601. Your appeal will be reviewed, and you will be notified of the decision within 60 days of the date your appeal is received.

# PROFIT SHARING AND RETIREMENT PLANS CLAIMS AND APPEALS PROCEDURES

The following provisions apply if you have a claim under the Profit Sharing and 401(k) Plan, the Retirement Plan, the Transfer Retirement Plan, or the Defined Contribution Transfer Plan.

If you or your beneficiary file a claim for benefits under one of the plans listed above, such claim must be in writing and filed with the Plan Administrator. If a claim is denied, the Plan Administrator

will notify the claimant in writing within 90 days after it receives the claim (or within 180 days if special circumstances warrant additional time and the claimant is notified of the extension). The notification of denial will set forth the specific reasons for the denial, with references to the plan provisions on which the denial is based, and will describe the additional information necessary to perfect the claim, if any, and the procedure for requesting a review of the denial.

A claimant (or his or her duly authorized representative) may request a review of the denial of a claim for benefits by filing a written application with the Appeals Committee within 60 days after he or she receives notice of the denial. Such a claimant is entitled to review pertinent plan documents and submit written issues and comments to the Appeals Committee. The Appeals Committee will furnish the claimant with written notice of its decision within 60 days after it receives a request for review (or within 120 days if special circumstances warrant additional time and the claimant is notified of the extension). The Appeals Committee's notice will set forth the specific reasons for the decision, with references to the plan provisions on which the decision is based. The Appeals Committee's decision will be final and binding on all parties. After receiving such a decision, the claimant will have exhausted his or her administrative remedies under the plan, and will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B). Benefits will be paid under the plans only if the Appeals Committee decides in its discretion that the claimant is entitled to them.

## ALL PLAN CLAIMS – LIMITATION ON TIME FOR SUITS

If your claim for benefits is finally denied by the Appeals Committee or Appeals Administrator, as applicable, then you may bring suit in federal court. You may not commence a suit in court for benefits under a plan until the plan's claim process has been completed. However, you may only bring suit in federal court if you file such action within 120 days after the date of the final denial of your claim by the Appeals Committee or Appeals Administrator, as applicable.

# APPENDIX A
## Claims and Appeals Administrators and HMOs
### Contact Information

| Type of the Plan | Provider | Address |
| --- | --- | --- |
| Self-Insured Medical Indemnity | Aetna US Healthcare | P.O. Box 26981<br>Milwaukee, WI  53266-0981<br>800/638-3864 |
| Self-Insured Medical PPO | United Healthcare | P.O. Box 740800<br>Atlanta, GA 30374-0800<br>877/468-0998 |
| Self-Insured Medical BCBS Network | Blue Cross/Blue Shield | 300 East Randolph<br>Chicago, IL  60601<br>800/435-0108 |
| Insured HMOs | Aetna US Healthcare  (719) | P.O. Box 26981<br>Milwaukee, WI  53266-0981<br>800/638-3864 |
| | Aetna US Healthcare (760) | P.O. Box 26981<br>Milwaukee, WI  53266-0981<br>800/638-3864 |
| | Capital District Physician's Health Plan (768) | Patroon Creek Corporation Center<br>1223 Washington Avenue<br>Albany, NY 12206-1057<br>800/755-3901 |

| Insured HMOs | | |
|---|---|---|
| ConnectiCare (698) | 30 Batterson Park Road<br>Farmington, CT 06032<br>800/251-7722 | |
| Group Health Cooperative (851) | 521 Wall Street<br>Seattle, WA 98121<br>888/901-4636 | |
| Group Health Plan, Inc. (820) | 111 Corporate Office Drive, Suite 400<br>Earth City, MO 63045<br>800/755-3901 | |
| HAP (689) | 2850 West Grand Blvd.<br>Detroit, MI 48202<br>800/422-4641 | |
| Health Plan Hawaii (700) | 818 Keeaumohu Street<br>Honolulu, HI 96814-2365<br>808/948-6372 | |
| Humana – Illinois (651) | 500 West Main Street<br>Louisville, KY 40201<br>800/448-6262 | |
| Humana – Kansas City (717) | 500 West Main Street<br>Louisville, KY 40201<br>800/448-6262 | |
| Kaiser –LA (722) | 393 East Walnut Street<br>Pasadena, CA 91188<br>800/464-4000 | |

General Information                    15                    January 2003

| Insured HMOs | Kaiser – San Francisco (770) | 393 East Walnut Street<br>Pasadena, CA  91188<br>800/464-4000 |
|---|---|---|
| | Kaiser – Denver/Boulder (682) | 2500 S. Havana Street<br>Aurora, CO  80014<br>303/338-3800 |
| | Kaiser – DC, MD, VA (891) | 2101 E. Jefferson Street, Box 6233<br>Rockville, MD  20849-6233<br>800/777-7902 |
| | Kaiser – Atlanta (607) | 3495 Piedmont Road, N.E.<br>Ten Piedmont Center<br>Atlanta, GA  30305<br>404/261-2590 |
| | Kaiser – Cleveland (663) | North Point Tower, Suite 1200<br>1001 Lakeside Avenue<br>Cleveland, OH  44114-1153<br>800/686-7100 |
| | Kaiser Consumer Choice – Atlanta (608A) | 3495 Piedmont Road, N.E.<br>Ten Piedmont Center<br>Atlanta, GA  30305<br>404/261-2590 |
| Self-Insured Dental Plan | Aetna US Healthcare | P.O. Box 26981<br>Milwaukee, WI  53266-0981<br>800-638-3864 |

General Information                  16                  January 2003

| Health Care Spending Account | United Healthcare | P.O. Box 740800<br>Atlanta, GA 30374-0800<br>877-468-0998 |
| Insured Long Term Disability Plan | Aetna Life Insurance Company (Claims before June 2003)<br><br>UNUM Provident (Claims after June 2003) | P.O. Box 26981<br>Milwaukee, WI 53266-0981<br>800-638-3864<br><br>UNUM Provident Corporation<br>P.O. Box 12030<br>Chattanooga, TN 37401-3030<br>800-633-7479 |
| Insured Life/AD&D | MetLife | P.O. Box 3016<br>Utica, NY 13504-3016 |
| Insured Dependent Life /AD&D | MetLife | P.O. Box 3016<br>Utica, NY 13504-3016 |

# EXHIBIT K

# Accenture United States Benefit Plans

# General Information

(Effective January 1, 2005)

# TABLE OF CONTENTS

GENERAL INFORMATION..................................................................................1
    Introduction ................................................................................................1
    Plan Sponsor and Administrator................................................................1
    The Accenture Benefit Plans ....................................................................1
    Sponsor and Employer Identification........................................................3
    Trustee of the Accenture Trusts ...............................................................3
    Plan Year ..................................................................................................3
    Plan Amendment and Termination ............................................................3

EMPLOYEE RIGHTS AND PROTECTION .......................................................4
    ERISA Rights Statement ...........................................................................4
    Pension Benefit Guaranty Corporation......................................................5

WELFARE PLANS – CLAIMS AND APPEALS PROCEDURES ......................6
    Medical Plan, Retiree Medical Plan, Dental Plan, Dental Plan for Affiliates and Health Care
    Spending Account Procedures...................................................................6
    Long Term Disability Plan Procedures ......................................................8
    Employee Life/AD&D Plan, Employee Life/AD&D Plan for Affiliates and Dependent Life/AD&D
    Plan Procedures .......................................................................................9

WELFARE PLANS APPEALS PROCEDURES – ELIGIBILITY & ENROLLMENT MATTERS ..........10

401(K), PROFIT SHARING & PENSION PLANS – CLAIMS & APPEALS PROCEDURES..............10

ALL PLAN CLAIMS – LIMITATION ON TIME FOR SUITS ..............................11

APPENDIX A CLAIMS AND APPEALS ADMINISTRATORS AND HMOS/APPEALS COMMITTEE
CONTACT INFORMATION................................................................................12

# GENERAL INFORMATION

## Introduction

The following constitutes a part of the summary plan descriptions of the benefit plans sponsored by Accenture LLP ("Accenture") that are listed on the next two pages. This document is intended to provide general information related to each plan, as required by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). To the extent there are any inconsistencies, however, between the summary plan description and the applicable plan document, the applicable plan document always governs. You are welcome to examine the plan document. It is available from Accenture.

## Plan Sponsor and Administrator

Accenture is plan sponsor, plan administrator, and agent for service of legal process for the plans listed below. From time to time, Accenture amends the plans to keep them up-to-date with employees' needs, to make other design changes and to conform them to federal laws and regulations. Plan members will be notified of amendments that affect their benefits under the plans.

To contact Accenture as plan sponsor, plan administrator, or agent for service of legal process for any of these welfare benefit and pension plans, write or call:

Plan Administrator
c/o Accenture HR Services
233 North Michigan Avenue
Chicago, Illinois 60601
1-800-207-2109

Legal process related to profit sharing/401(k) benefits may also be served on The Northern Trust Company, as Trustee of the Accenture United States Profit Sharing and 401(k) Trust, 50 South LaSalle Street, Chicago, Illinois 60675. Legal process related to pension benefits may also be served on The Northern Trust Company, as Trustee of the Accenture United States Pension Trust, 50 South LaSalle Street, Chicago, Illinois 60675.

Accenture is responsible for formulating and carrying out all rules and regulations necessary to administer the plans and has the sole discretionary authority to make factual determinations and decisions regarding eligibility or benefits of employees and participants in the plans. Accenture has delegated to an Appeals Committee and to one or more Claims Administrators and Appeals Administrators the discretionary authority to make decisions regarding the interpretation or application of plan provisions, and the discretionary authority to determine all questions, including factual determinations, as to rights and benefits of employees and participants under certain of the plans. Benefits under the plans will be paid only if the Plan Administrator, the Appeals Committee, a Claims Administrator or an Appeals Administrator, as applicable, decides in its discretion that the claimant is entitled to them. Any interpretation of a plan and any good faith decision made by Accenture, the Appeals Committee, a Claims Administrator or an Appeals Administrator is final and binding on all persons. The Claims Administrators and Appeals Administrators for the various plans are identified in Appendix A, beginning on page 12. Appendix A includes contact information for the Claims Administrators, Appeals Administrators and the Appeals Committee. You must furnish such evidence, data, and information as may be required by the Plan Administrator.

## The Accenture Benefit Plans

| Plan Name | Type of Plan |
|---|---|
| Accenture US Group Medical Plan<br>Plan Number 601 | • Indemnity Medical Plan: Self-insured welfare plan providing medical benefits through an administrative services contract with Aetna - Contract Number 657455<br><br>• Preferred Provider Organization (PPO): Self-insured welfare plans providing medical benefits through an administrative services contract with United Healthcare - Agreement Number 226288 and with Blue Cross Blue Shield of Illinois - Agreement Number 287823 |

| Plan Name | Type of Plan |
|---|---|
| Accenture US Group Medical Plan<br>Plan Number 601 | • Accenture-sponsored Health Maintenance Organizations (HMOs): Insured, state regulated medical plans within a prescribed geographic area |
| Accenture US Group Retiree Medical Plan<br>Plan Number 606 | • Provides retiree medical benefits through the Indemnity Medical Plan, Preferred Provider Organizations (PPO) with United Healthcare and Blue Cross Blue Shield of Illinois and HMOs. |
| Accenture US Group Dental Plan<br>Plan Number 602 | • Self-insured welfare plan providing dental benefits through an administrative services contract with Aetna - Contract Number 657455 |
| Accenture US Group Long Term Disability Insurance Plan ("LTD")<br>Plan Number 608 | • Insured welfare plan providing disability benefits through contract with UNUM Provident - Policy Number 578456 |
| Accenture US Life Insurance Plan ("Basic Employee Life/AD&D")<br>Plan Number 603 | • Insured welfare plan providing death and accidental death and dismemberment benefits through contract with MetLife - Contract Number 105819-1-G (Partners are eligible only for AD&D coverage under this contract.) |
| Accenture US Group Accidental Death and Dismemberment Insurance Plan ("Dependent Life/AD&D")<br>Plan Number 607 | • Insured welfare plan providing accidental death and dismemberment benefits through contract with MetLife - Contract Number 105819-1-G |
| Accenture US Group Dependent Life/Accidental Death and Dismemberment Insurance Plan ("Dependent Life/AD&D")<br>Plan Number 604 | • Insured welfare plan providing Death and accidental death and dismemberment benefits through contract with MetLife - Contract Number 105819-1-G |
| Accenture US Flexible Benefits Program (including the Health Care and Dependent Day Care Spending Accounts)<br>Plan Number 605 | • Program established under Sections 105, 125 and 129 of the Internal Revenue Code to reimburse certain health and dependent care expenses on a pre-tax basis. |
| Accenture US Group Variable Universal Life Insurance Plan<br>Plan Number 611 | • Insured welfare plan providing group variable universal life insurance benefits for partners. |
| Accenture US Pension Plan<br>Plan Number 104 | • Defined benefit plan. |
| Accenture US Transfer Pension Plan<br>Plan Number 007 | • Defined benefit plan. |
| Accenture US 401(k) Match and Savings Plan<br>Plan Number 102 | • Defined contribution plan. |
| Accenture US Discretionary Profit Sharing Plan<br>Plan Number 105 | • Defined contribution plan. |

| Plan Name | Type of Plan |
|---|---|
| Accenture US Defined Contribution Transfer Plan<br>Plan Number 105 | • Defined contribution plan. |
| Accenture US Group Dental Plan for Affiliates Plan<br>Plan Number 613 | • Self-insured welfare plan providing dental benefits through an administrative services contract with Aetna – Contract Number 657455. |
| Accenture US Group Life and Accidental Death and Dismemberment Insurance Plan For Affiliates("Employee Life/AD&D" for Affiliates)<br>Plan Number 614 | • Insured welfare plan providing death and accidental death and dismemberment benefits through contract with MetLife - Contract Number 105819-1-G. |

Accenture also sponsors separation benefits plans, which are welfare benefit plans. Employees eligible for separation benefits will be provided with separate information (including a summary plan description) about those benefits.

<u>Sponsor and Employer Identification</u>

Accenture's employer identification number (EIN) is 72-0542904. The EIN, the plan name and the plan number identify each Accenture employee benefit plan with the federal agencies governing employee benefit plan operations. The following subsidiaries of Accenture have adopted some or all of the plans for the benefit of their eligible employees:

| Participating Employer | Address | Employer ID # |
|---|---|---|
| Accenture HR Services, Inc. | 233 North Michigan Ave. Chicago, IL 60601 | 06-1606783 |
| Accenture Technology Solutions – US, Inc. | 161 North Clark St. Chicago, IL 60601 | 41-2048318 |
| Accenture National Security Services, LLC | 161 North Clark St, Chicago, IL 60601 | 41-2048319 |

<u>Trustee of the Accenture Trusts</u>

All contributions under the 401(k) Match and Savings Plan, the Discretionary Profit Sharing Plan and the Defined Contribution Transfer Plan are paid to the Accenture United States Profit Sharing and 401(k) Trust. All contributions under the Pension Plan and the Transfer Pension Plan are paid to the Accenture United States Pension Trust. Contributions under certain of the welfare benefit plans sponsored by Accenture are paid to the Accenture United States Benefit Trust. The trustee of these trusts is The Northern Trust Company, 50 South LaSalle Street, Chicago, Illinois 60675.

<u>Plan Year</u>

The plan year for the welfare benefit plans and the 401(k) Match and Savings Plan begins January 1 and ends December 31. The plan year for the Pension Plan begins May 31 and ends on May 30. The plan year for the Defined Contribution Transfer Plan and the Transfer Pension Plan begins July 1 and ends June 30. The plan year for the Discretionary Profit Sharing Plan begins September 1 and ends August 31.

<u>Plan Amendment and Termination</u>

Accenture expects and intends to continue these plans indefinitely but reserves the right, in its sole discretion, to terminate or amend any plan or to change or end contributions to any plan at any time, with or without notice. A plan may be amended or terminated by instrument signed by Accenture's Administrator or by such other person or persons authorized to amend or terminate the plans.

# EMPLOYEE RIGHTS AND PROTECTION

## ERISA Rights Statement

The employee benefit plans sponsored and administered by Accenture meet the legal requirements established by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). As a plan participant, you are entitled to certain rights and protections under ERISA. ERISA provides that all plan participants shall be entitled to:

- **Receive Information about Your Plans and Benefits**

  You may contact US Employee Benefits to examine, without charge, all governing plan documents, including insurance contracts, and a copy of the latest annual report (Form 5500 Series) filed by the applicable plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration. You may also obtain copies of official plan documents and other documents governing the operation of the plans and copies of the latest annual reports (Form 5500 Series) and updated summary plan descriptions by writing to the Plan Administrator, c/o Accenture HR Services, 233 North Michigan Avenue, Chicago, Illinois 60601. The Plan Administrator may make a reasonable charge for the copies.

  You will automatically receive a written summary of the annual financial reports for your plans. The Plan Administrator is required by law to furnish each participant with a copy of these summary annual reports.

  You can obtain a statement advising you whether you have a right to receive a retirement benefit at normal retirement age and, if so, what your benefits would be at normal retirement age if you stopped working under the applicable plan now. If you do not have a right to a benefit, the statement will tell you how many more years you must work to obtain a right to a benefit under the applicable plan. This statement must be requested in writing and is not required to be given more than once every twelve (12) months. The plans must provide the statement free of charge.

  You and your beneficiaries can obtain, without charge, a copy of a plan's procedures governing qualified domestic relations order ("QDRO") or qualified medical child support order ("QMCSO") determinations by contacting the Plan Administrator.

- **Continue Group Health Plan Coverage**

  You have the right to continue health care coverage for yourself, your spouse, or your dependents if there is a loss of health care coverage under a plan to which COBRA applies as a result of a qualifying event.

  You or your dependents may have to pay for such coverage. Review the summary plan description and the documents governing the particular plan under which you seek continuation coverage to learn more about the rules governing your COBRA continuation coverage rights.

  If applicable, you have the right to reduce or eliminate an exclusionary period of coverage for preexisting conditions under your group health plan if you have creditable coverage from another plan. You should be provided a certificate of creditable coverage, free of charge, from your group health plan or health insurance issuer when you lose coverage under the plan, when you become entitled to elect COBRA continuation coverage, when your COBRA continuation coverage ceases, if you request it before losing coverage, or if you request it up to 24 months after losing coverage. Without evidence of creditable coverage, you may be subject to a pre-existing condition exclusion for 12 months (18 months for late enrollees) after your enrollment date in your coverage.

- **Prudent Actions by Plan Fiduciaries**

  In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plans. The people who operate your plans, called "fiduciaries" of the plans, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a retirement or welfare benefit or exercising your rights under ERISA.

- **Enforce Your Rights**

  If your claim for a retirement or welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

  Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from a plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

  If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court after exhausting the administrative review process described in the applicable "Appeals Procedures" section of this document. In addition, if you disagree with the Plan Administrator's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in a Federal court.

  If it should happen that the plan fiduciaries misuse a plan's money or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

- **Assistance with Your Questions**

  If you have any questions about your plans, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## Pension Benefit Guaranty Corporation

The Pension Benefit Guaranty Corporation ("PBGC") is a federal insurance agency established to insure benefits under certain types of pension plans. Pension benefits under the Pension Plan and the Transfer Pension Plan are insured by the PBGC. Benefits under the 401(k) Match and Savings Plan, the Discretionary Profit Sharing Plan, the Defined Contribution Transfer Plan, and the welfare benefit plans, however, are not insured by the PBGC, because the PBGC only insures defined benefit pension plans. If the Pension Plan or Transfer Pension Plan terminates (ends) without enough money to pay all benefits, the PBGC will step in to pay pension benefits. Most people receive all of the pension benefits they would have received under their plan, but some people may lose certain benefits.

Generally, the PBGC guarantee covers: (1) normal and early retirement benefits; (2) disability benefits if you become disabled before the Transfer Pension Plan terminates; and (3) certain benefits for your survivors.

The PBGC guarantee generally does not cover: (1) benefits greater than the maximum guaranteed amount set by law for the year in which the plan terminates; (2) some or all of benefit increases and new benefits based on plan provisions that have been in place for fewer than 5 years at the time the plan terminates; (3) benefits that are not vested because you have not worked long enough for the company; (4) benefits for which you have not met all of the requirements at the time the plan terminates; (5) certain early retirement payments (such as supplemental benefits that stop when you become eligible for Social Security) that result in an early retirement monthly benefit greater than your monthly benefit at the plan's normal retirement age; and (6) non-pension benefits, such as health insurance, life insurance, certain death benefits, vacation pay, and severance pay.

Even if certain of your benefits under the Pension Plan or Transfer Pension Plan are not guaranteed, you still may receive some of those benefits from the PBGC depending on how much money your plan has and on how much the PBGC collects from employers.

For more information about the PBGC and the benefits it guarantees, ask the Plan Administrator or contact the PBGC. Inquiries to the PBGC should be addressed to:

PBGC, Technical Assistance Division
1200 K Street N.W., Suite 930
Washington, D.C. 20005-4026
(202) 326-4000 *(not a toll-free number)*

TTY/TDD users may call the federal relay service toll-free at 1-800-877-8339 and ask to be connected to (202) 326-4000. Additional information about the PBGC's pension insurance program is available through the PBGC's website on the Internet at http://www.pbgc.gov.

# WELFARE PLANS – CLAIMS AND APPEALS PROCEDURES

Coverage under the welfare plans is offered under a variety of options. Some of these options are self-insured and other options are insured. Under the self-insured options, Accenture contracts with a third-party administrator (the "Claims Administrator") to administer the options. However, all benefits are paid directly from Accenture's general assets or a benefits trust. As described below, Accenture has delegated to a third-party administrator (the "Appeals Administrator") the final, discretionary authority to determine if an Urgent Care Claim or a Pre-Service Claim is payable under the terms of the plans. Accenture's Appeals Committee retains the final, discretionary authority to determine if a Post-Service Claim is payable under the terms of the plans.

If an option is fully-insured, for example an HMO, Accenture purchases an insurance contract from an insurer. All claims are paid from the insurer's assets. Other than for questions related to eligibility, the insurer retains all final, discretionary authority to determine whether a claim is payable under a fully-insured option under the plans.

Appendix A to this summary lists the Claims and Appeals Administrators under the plans, the contact information for each Claims and Appeals Administrator, and whether the plan option is insured or self-insured. If you have any questions, you should contact the Plan Administrator at the number listed in the "Plan Sponsor and Administrator" section on page 1 of this summary.

## Medical Plan, Retiree Medical Plan, Dental Plan, Dental Plan for Affiliates and Health Care Spending Account Procedures

*The claims procedures in this section only apply to the self-insured options under the plans. If you participate in an insured option under the Medical Plan or the Retiree Medical Plan, any claim for benefits and any appeal should be filed according to the HMO's claims procedures.*

Either you or your authorized representative may file claims for plan benefits. An "authorized representative" means a person you authorize, in writing, to act on your behalf. The plan will also recognize a court order giving a person authority to submit claims on your behalf. In the case of an Urgent Care Claim, a health care professional with knowledge of your condition may always act as your authorized representative. All communications from the plan will be directed to your authorized representative unless your written designation provides otherwise.

Your initial claim should be filed with the applicable Claims Administrator listed in Appendix A. All claims are treated as filed on the date they are received. If your claim is denied in whole or in part, you will receive a written notice of the denial directly from the Claims Administrator. The notice will explain the reason for the denial and the review procedures.

- **Urgent Care Claims**
  If the plan requires advance approval of a service, supply or procedure before a benefit will be payable, and if the plan or your physician determines that it is an Urgent Care Claim, you will be notified whether the service, supply or procedure is payable under the plan no later than 72 hours after the claim is received, either orally or in writing.

  "Urgent Care Claim" means a claim for services received for an illness, injury or condition that could seriously jeopardize your life or health or your ability to regain maximum function or a condition that, in your treating physician's opinion, could subject you to severe pain that cannot adequately be managed without such care or treatment.

For Urgent Care Claims that name a specific claimant, medical condition, and service or supply for which approval is required, and that are submitted to the plan representative responsible for handling benefit matters, but otherwise fail to follow the plan's procedures, you will be notified of the failure within 24 hours of receipt of the claim.  You also will be informed of the proper procedures to be followed.  The notice may be oral unless you or your authorized representative request a written notification.

If there is not sufficient information to decide the claim, your physician will be notified of the specific information necessary to complete the claim as soon as possible, but no later than 24 hours after receipt of the claim.  Your physician will be given a reasonable additional amount of time, but not less than 48 hours, to provide the information.  Your physician will be notified of the decision no later than 48 hours after the end of the additional time period (or after receipt of the information, if earlier).  If the decision is provided to you orally (unless you or your representative request a written notification), your physician will be provided a written or electronic notification no later than three days after you received the oral notification.

- **Pre-Service and Post-Service Claims**
  If the plan requires you to obtain advance approval of a service, supply or procedure before a benefit will be payable, such a claim will be considered a Pre-Service Claim.  You will be notified of the decision no later than 15 days after receipt of the Pre-Service Claim.  All other claims will be deemed to be Post-Service Claims.  You will be notified of a Post-Service Claim decision no later than 30 days after receipt of such claim.

  For Pre-Service Claims that name a specific claimant, medical condition, and service or supply for which approval is required, and that are submitted to the plan representative responsible for handling benefit matters, but which otherwise fail to follow the plan's procedures, you will be notified of the failure within 5 days for Pre-Service Claims.  You also will be informed of the proper procedures to be followed.  The notice may be provided to you orally unless you or your representative request written notification.

  For either a Pre-Service or a Post-Service Claim, the time period in which the decision must be made may be extended up to an additional 15 days due to circumstances beyond the plan's control.  In that case, you will be notified of the extension before the end of the initial 15 or 30 day period.

  If there is not sufficient information to decide the claim, the notice of extension will specifically describe the information necessary to complete the claim.  You will have at least 45 days from the date you receive the notice to provide the specified information.  The Claims Administrator's period for making the determination will exclude the period of time from the date the notification of the extension is sent to you until the date you respond to the request for additional information.  If you fail to supply the requested information within the 45-day period, your claim will be denied.

- **Ongoing Course of Treatment**
  If you are receiving an ongoing course of treatment, you will be notified in advance if the plan intends to terminate or reduce previously authorized benefits for the course of treatment so that you will have the opportunity to appeal the decision before the termination or reduction takes effect.  If the course of treatment involves an Urgent Care Claim, and you request an extension of the course of treatment at least 24 hours before its expiration, you will be notified of the decision within 24 hours after receipt of the request.

- **Filing an Appeal of an Adverse Benefits Determination**
  You will have 180 days following receipt of an adverse benefit decision to appeal the decision.  With the exception of Urgent Care Claims, your appeal must be in writing and submitted to the appropriate Claims Administrator listed in Appendix A.  You will be notified of the decision no later than 15 days (for Pre-Service Claims) or 30 days (for Post-Service Claims) after the appeal is received.

  Along with your claim for benefits, you may submit written comments, documents, records and other information related to your claim, whether or not the comments, documents, records or information were submitted in connection with the initial claim.  You also may request that the plan provide you, free of charge, copies of all documents, records and other information relevant to the claim.

The review will be made by a person different from the person who made the initial determination, and no deference will be afforded to the initial determination. The individual making the appeal determination will not be a subordinate of the original decision maker. In the case of a claim denied on the grounds of a medical judgment, a health professional with appropriate training and experience will be consulted. The health care professional who is consulted on appeal will not be the individual who was consulted during the initial determination or a subordinate to such person. If the advice of a medical expert was obtained in connection with the denial of your claim, the names of each such expert will be provided upon request, regardless of whether the advice was relied upon.

If your claim involves an Urgent Care Claim, an expedited appeal may be initiated by a telephone call to the Member Services telephone number on your Identification Card. You or your authorized representative may appeal Urgent Care Claim denials either orally or in writing. All necessary information, including the appeal decision, will be communicated between you or your authorized representative and the plan by telephone, facsimile, or other similar method. If the appeal decision is communicated to you orally, you will receive a written determination within three days following the oral determination. You will be notified of the decision no later than 36 hours after the appeal is received.

If you disagree with the appeal determination, you may file a second level of appeal. This appeal should be made in writing within 60 days of receipt of the first level appeal decision.

- **Second Level of Appeal**
  If you receive coverage under a self-insured option, you may voluntarily appeal the Claims Administrator's final adverse benefit determination by filing a written appeal with the Appeals Administrator (for Pre-Service Claims) or the Appeals Committee (for Post-Service Claims), as applicable. Such appeal must be filed within 60 days of the final denial for Pre-Service and Post-Service Claims. The Appeals Administrator will make its determination on a Pre-Service Claim no later than 15 days after the appeal is received by the Appeals Administrator. The Appeals Committee will make its determination on a Post-Service Claim no later than 30 days after the appeal is received by the Appeals Committee. Any such determination shall be final and binding. After receiving such a determination, you will have exhausted your administrative remedies under the plan, and you will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B).

  If your appeal involves an Urgent Care Claim, an expedited appeal to the Appeals Administrator may be initiated by a telephone call to the Member Services telephone number on your Identification Card. You or your authorized representative may appeal the Claims Administrator's final adverse benefit determination on an Urgent Care Claim either orally or in writing. All necessary information, including the appeal decision, will be communicated between you or your authorized representative and the plan by telephone, facsimile, or other similar method. If the appeal decision is communicated to you orally, you will receive a written determination within three days following the oral determination. You will be notified of the Appeals Administrator's determination no later than 36 hours after the appeal is received. Any such determination shall be final and binding. After receiving such a determination, you will have exhausted your administrative remedies under the plan, and you will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B). Benefits will be paid under the plan only if the Appeals Administrator or the Appeals Committee, as applicable, determines in its discretion that you are entitled to them.

- **Health Maintenance Organizations (HMOs)**
  If you have a complaint about the service or benefits provided by your HMO or wish to appeal a decision, you must contact your HMO directly and follow its appeals process. Accenture can provide you with a copy of the appropriate HMO contract upon request.

Long Term Disability Plan Procedures
When a claim for long term disability plan benefits is denied, you or an authorized representative may appeal that denial. An "authorized representative" is a person you authorize in writing to act on your behalf.

The Claims Administrator will provide you with notice of the status of your claim within a reasonable period of time after a complete claim has been filed, but no later than 45 days after receipt of your claim for benefits.  The Claims Administrator may request an additional 30-day extension if special circumstances warrant by notifying you of the extension before the expiration of the initial 45-day period.  If a decision still cannot be made within this 30-day extension period due to circumstances outside the plan's control, the time period may be extended for an additional 30 days, in which case you will be notified before the expiration of the original 30-day extension.

If you have not submitted sufficient information to the Claims Administrator to process your claim, you will be notified of the incomplete claim and given 45 days to submit additional information.  This will extend the time in which the Claims Administrator has to respond to your claim from the date the notice of insufficient information is sent to you until the date you respond to the request.  If you do not submit the requested missing information to the Claims Administrator within 45 days of the date of the request, your claim will be denied.

If your claim is denied, you will receive a notice which will include (i) the specific reasons for the denial, (ii) reference to the pertinent plan provisions upon which the denial is based, (iii) a description of any additional information you might be required to provide with an explanation of why it is needed, and (iv) an explanation of the plan's claims review and appeal procedures.

You, or a duly authorized representative, may appeal a denial of a claim for benefits by filing a written request with the Appeals Administrator within 180 days of your receipt of the initial denial notice.  In connection with your appeal, you may request that the plan provide you, free of charge, copies of all documents, records and other information relevant to the claim.  You may also submit written comments, records, documents and other information relevant to your appeal, whether or not such documents were submitted in connection with the initial claim.  The Appeals Administrator may consult with medical or vocational experts in connection with deciding your claim for benefits.

The Appeals Administrator will conduct a full and fair review of the documents and evidence submitted and will ordinarily render a decision no later than 45 days after receipt of your request for review on appeal.  If there are special circumstances, the decision will be made as soon as possible, but not later than 90 days after receipt of your request for review on appeal.  If such an extension of time is needed, you will be notified in writing prior to the end of the first 45-day period.  The Appeals Administrator's final written decision will include specific reasons for the decision, specific references to the pertinent plan provisions on which the decision is based, and an explanation of your rights under ERISA's claims and appeals rules.  Any such decision shall be final and binding.  After receiving such a decision, you will have exhausted your administrative remedies under the plan, and you will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B).  Benefits will be paid under the plan only if the Appeals Administrator determines in its discretion that you are entitled to them.

<u>Employee Life/AD&D Plan, Employee Life/AD&D Plan for Affiliates and Dependent Life/AD&D Plan Procedures</u>
If you or your beneficiary apply for employee or dependent life/AD&D plan benefits and the application is denied, the Claims Administrator will notify the claimant of such denial in writing within 90 days, or within 180 days if the Claims Administrator notifies the claimant in writing that special circumstances require additional time for processing the claim.  The notice will (i) explain the reason for the denial, (ii) refer to the pertinent plan provisions on which the denial is based, (iii) describe any additional material necessary to perfect the claim and explain why such material is necessary, and (iv) explain the steps to be taken if the claimant wishes to submit the claim for review.

A claimant (or his or her duly authorized representative) may appeal the Claims Administrator's denial of a claim by filing a written appeal with the Appeals Administrator within 60 days of the original denial.  The appeal must contain (i) the date on which the original application was filed, (ii) the specific portions of the denial the claimant wishes the Appeals Administrator to review, (iii) a statement setting forth the reasons the denial should be reversed, and (iv) any written material the claimant wishes the Appeals Administrator to examine when reconsidering the claim.  The Appeals Administrator will permit the claimant to examine any documents that are relevant to his or her claim.

The Appeals Administrator will notify the claimant of its decision on the appeal in writing within 60 days, or within 120 days if the Appeals Administrator notifies the claimant in writing that special circumstances require additional time for reviewing the appeal. The Appeals Administrator's decision will be final and binding on all parties. After receiving such a decision, the claimant will have exhausted his or her administrative remedies under the plan, and will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B). Benefits will be paid under the plan only if the Appeals Administrator determines in its discretion that the claimant is entitled to them.

## WELFARE PLANS APPEALS PROCEDURES
## ELIGIBILITY AND ENROLLMENT MATTERS

The circumstances under which your current coverage can be changed are explained in the "Eligibility and Enrollment" section of the applicable plan summary. It is your responsibility to understand these rules and their impact on your future coverage choices before you make annual enrollment elections or change your coverage upon experiencing a life event.

To appeal an eligibility or enrollment matter related to new employee enrollment, annual enrollment, life event changes, enrollment deadlines, or dependent coverage, contact the Benefits Center (1-877-332-2242).

Call between the hours of 9:00 am and 5:00 p.m. (Central time) and speak to a Benefits Center representative. If the representative is unable to assist you, he or she will send you an Appeal Form to be completed and returned to the Benefits Center. Your case will be reviewed based on the plan's enrollment and eligibility rules, and you will receive a written explanation of that review within 60 days of the date your appeal is received. (Be sure to keep a copy of your completed form for your records.)

If your appeal to the Benefits Center is denied and you feel you have a circumstance not addressed by the plan's enrollment and eligibility rules, you may request a review by the Appeals Committee. Your request must be made in writing within 60 days of receiving the denial from the Benefits Center. Your appeal must provide the following information:

| Personal Information | Appeal Information |
|---|---|
| ▪ Name | ▪ Type of appeal |
| ▪ Social Security number | ▪ Date of appeal |
| ▪ Date of hire | ▪ Date of initial appeal to the Benefits Center |
| ▪ Termination date (if applicable) | ▪ Date initial appeal was denied by the Benefits Center |
| ▪ Office location | ▪ Reason for the denial |
| ▪ Daytime phone number | ▪ Brief description of the situation |
| | ▪ Additional information you feel is pertinent to your case |

Before submitting your appeal, make a copy for your records. Then send your appeal by inter-office mail or U.S. mail to the Accenture ERISA Appeals Committee, c/o Accenture HR Services, 233 North Michigan Avenue, Chicago, Illinois 60601. Your appeal will be reviewed, and you will be notified of the decision within 60 days of the date your appeal is received.

## 401(K), PROFIT SHARING AND PENSION PLANS
## CLAIMS AND APPEALS PROCEDURES

The following provisions apply if you have a claim under the 401(k) Match and Savings Plan, the Discretionary Profit Sharing Plan, the Defined Contribution Transfer Plan, the Pension Plan or the Transfer Pension Plan.

If you or your beneficiary file a claim for benefits under one of the plans listed above, such claim must be in writing and filed with the Plan Administrator.  If a claim is denied, the Plan Administrator will notify the claimant in writing within 90 days after it receives the claim (or within 180 days if special circumstances warrant additional time and the claimant is notified of the extension).  The notification of denial will set forth the specific reasons for the denial, with references to the plan provisions on which the denial is based, and will describe the additional information necessary to perfect the claim, if any, and the procedure for requesting a review of the denial.

A claimant (or his or her duly authorized representative) may request a review of the denial of a claim for benefits by filing a written application with the Appeals Committee within 60 days after he or she receives notice of the denial.  Such a claimant is entitled to review pertinent plan documents and submit written issues and comments to the Appeals Committee.  The Appeals Committee will furnish the claimant with written notice of its decision within 60 days after it receives a request for review (or within 120 days if special circumstances warrant additional time and the claimant is notified of the extension).  The Appeals Committee's notice will set forth the specific reasons for the decision, with references to the plan provisions on which the decision is based.  The Appeals Committee's decision will be final and binding on all parties.  After receiving such a decision, the claimant will have exhausted his or her administrative remedies under the plan, and will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B).  Benefits will be paid under the plans only if the Appeals Committee decides in its discretion that the claimant is entitled to them.

## ALL PLAN CLAIMS – LIMITATION ON TIME FOR SUITS

If your claim for benefits is finally denied by the Appeals Committee or Appeals Administrator, as applicable, then you may bring suit in federal court.  You may not commence a suit in court for benefits under a plan until the plan's claim process has been completed.  However, you may only bring suit in federal court if you file such action within 120 days after the date of the final denial of your claim by the Appeals Committee or Appeals Administrator, as applicable.

APPENDIX A
CLAIMS AND APPEALS ADMINISTRATORS - CONTACT INFORMATION

| Type of Plan | Provider | Address |
|---|---|---|
| Self-Insured Medical Indemnity | Aetna US Healthcare | P.O. Box 981107<br>El Paso, TX 79998<br>800/638-3864 |
| Self-Insured Medical PPO | United Healthcare Options PPO Plan | P.O. Box 740800<br>Atlanta, GA 30374-0800<br>877/468-0998 |
| | United Healthcare Choice Plus PPO Plan | P.O. Box 740800<br>Atlanta, GA 30374-0800<br>877/468-0998 |
| | Blue Cross Blue Shield PPO Plan | 300 East Randolph<br>Chicago, IL 60601<br>800/435-0108 |
| Self-Insured United Healthcare iPlan | United Healthcare | P.O. Box 740800<br>Atlanta, GA 30374-0800<br>877/468-0998 |
| Insured HMOs | Group Health Cooperative (851) | 521 Wall Street<br>Seattle, WA 98121<br>888/901-4636 |
| | HAP (689) | 2850 West Grand Blvd.<br>Detroit, MI 48202<br>800/422-4641 |
| | Health Plan Hawaii (700) | 818 Keeaumohu Street<br>Honolulu, HI 96814-2365<br>808/948-6372 |
| | Kaiser – LA (722)<br>Kaiser – San Francisco (770) | 393 East Walnut Street<br>Pasadena, CA 91188<br>800/464-4000 |
| | Kaiser – Denver/Boulder (682) | 2500 S. Havana Street<br>Aurora, CO 80014<br>303/338-3800 |
| | Kaiser – DC, MD, VA (891) | 2101 E. Jefferson St. Box 6233<br>Rockville, MD 20849-6233<br>800/777-7902 |
| | Kaiser – Cleveland (663) | North Point Tower, Suite 1200<br>1001 Lakeside Avenue<br>Cleveland, OH 44114-1153<br>800/686-7100 |
| | Kaiser – Atlanta (607)<br>Kaiser Consumer Choice – Atlanta (608A) | 3495 Piedmont Road, N.E.<br>Ten Piedmont Center<br>Atlanta, GA 30305<br>404/261-2590 |
| Self-Insured Dental Plan | Aetna US Healthcare | P.O. Box 14091<br>Lexington, KY 40512-4091<br>800/525-4207 |
| Health Care Spending Account | United Healthcare | P.O. Box 981178<br>El Paso, TX 79998-1178<br>877/468-0998 |
| Insured Long Term Disability Plan | UNUM Provident | P.O. Box 12030<br>Chattanooga, TN 37401-3030<br>800/633-7479 |
| Insured Life and AD&D<br>Insured Dependent Life/AD&D | MetLife | P.O. Box 3016<br>Utica, NY 13504-3016 |
| Appeals Committee | Accenture ERISA Appeals Committee | c/o Accenture HR Services<br>233 North Michigan Avenue<br>Chicago, Illinois 60601 |

# EXHIBIT L

Accenture United States Benefit Plans

General Information Summary

(Effective January 1, 2007)

# TABLE OF CONTENTS

GENERAL INFORMATION ........................................................................................................1
    Introduction ..................................................................................................................1
    Plan Sponsor and Administration .................................................................................1
    The Accenture Benefit Plans ........................................................................................1
    Sponsor and Employer Identification ...........................................................................3
    Trustee of the Accenture Trusts ..................................................................................3
    Plan Year .....................................................................................................................3
    Plan Amendment and Termination ...............................................................................4

EMPLOYEE RIGHTS AND PROTECTION ..............................................................................4
    ERISA Rights Statement ..............................................................................................4
    Pension Benefit Guaranty Corporation ........................................................................5

WELFARE PLANS – CLAIMS AND APPEALS PROCEDURES ..............................................6
    Medical Plan, Retiree Medical Plan, Dental Plan, Dental Plan for Affiliates and
       Health Care Spending Account Procedures ............................................................6
    Long-Term Disability Plan Procedures .........................................................................9
    Employee Life/AD&D Plan, Employee Life/AD&D Plan for Affiliates, Dependent
       Life/AD&D Plan, Legal Plan & Long-Term Care (Non-Medical Benefits) Plan Procedures ...........10

WELFARE PLANS APPEALS PROCEDURES –
    ELIGIBILITY & ENROLLMENT MATTERS ...................................................................10

401(k), PROFIT SHARING & PENSION PLANS –
    CLAIMS & APPEALS PROCEDURES ..........................................................................11

ALL PLAN CLAIMS – LIMITATIONS ON TIME FOR SUITS ..................................................11

APPENDIX A – CLAIMS AND APPEALS ADMINISTRATORS CONTACT INFORMATION

# GENERAL INFORMATION

## Introduction

The following constitutes a part of the summary plan descriptions of the benefit plans sponsored by Accenture LLP ("Accenture") that are listed on the next two pages. This document is intended to provide general information related to each plan, as required by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). To the extent there are any inconsistencies, however, between the summary plan description and the applicable plan document, the applicable plan document always governs. You are welcome to examine the plan document. It is available from Accenture.

## Plan Sponsor and Administrator

Accenture is plan sponsor, plan administrator, and agent for service of legal process for the plans listed below. From time to time, Accenture amends the plans to keep them up-to-date with employees' needs, to make other design changes and to conform them to federal laws and regulations. Plan members will be notified of amendments that affect their benefits under the plans.

To contact Accenture as plan sponsor, plan administrator, or agent for service of legal process for any of these welfare benefit and pension plans, write or call:

Plan Administrator
c/o Accenture
180 North LaSalle Street
Chicago, Illinois 60601
1-800-207-2109

Legal process related to profit sharing/401(k) benefits may also be served on The Northern Trust Company, as Trustee of the Accenture United States Profit Sharing and 401(k) Trust, 50 South LaSalle Street, Chicago, Illinois 60675. Legal process related to pension benefits may also be served on The Northern Trust Company, as Trustee of the Accenture United States Pension Trust, 50 South LaSalle Street, Chicago, Illinois 60675.

Accenture is responsible for formulating and carrying out all rules and regulations necessary to administer the plans and has the sole discretionary authority to make factual determinations and decisions regarding eligibility or benefits of employees and participants in the plans. Accenture has delegated to an Appeals Committee and to one or more Claims Administrators and Appeals Administrators the discretionary authority to make decisions regarding the interpretation or application of plan provisions, and the discretionary authority to determine all questions, including factual determinations, as to rights and benefits of employees and participants under certain of the plans. Benefits under the plans will be paid only if the Plan Administrator, the Appeals Committee, a Claims Administrator or an Appeals Administrator, as applicable, decides in its discretion that the claimant is entitled to them. Any interpretation of a plan and any good faith decision made by Accenture, the Appeals Committee, a Claims Administrator or an Appeals Administrator is final and binding on all persons. The Claims Administrators and Appeals Administrators for the various plans are identified in Appendix A. Appendix A includes contact information for the Claims Administrators, Appeals Administrators and the Appeals Committee. You must furnish such evidence, data, and information as may be required by the Plan Administrator.

## The Accenture Benefit Plans

| Plan Name | Type of Plan |
|---|---|
| Accenture US Group Medical Plan<br>Plan Number 601 | • Indemnity Medical Plan: Self-insured welfare plan providing medical benefits through an administrative services contract with Aetna - Contract Number 657455<br><br>• Preferred Provider Organization (PPO): Self-insured welfare plans providing medical benefits through an administrative services contract with United Healthcare - Agreement Number 226288 and with Blue Cross Blue Shield of Illinois - Agreement Number 287823 |

| Plan Name | Type of Plan |
|---|---|
| Accenture US Group Medical Plan<br>Plan Number 601 | • Accenture-sponsored Health Maintenance Organizations (HMOs):  Insured, state regulated medical plans within a prescribed geographic area |
| Accenture US Group Retiree Medical Plan<br>Plan Number 606 | • Provides retiree medical benefits through the Indemnity Medical Plan, Preferred Provider Organizations (PPO) with United Healthcare and Blue Cross Blue Shield of Illinois and HMOs |
| Accenture US Group Dental Plan<br>Plan Number 602 | • Self-insured welfare plan providing dental benefits through an administrative services contract with Aetna - Contract Number 657455<br><br>• Accenture-sponsored Dental Maintenance Organization (DMO): Insured, state regulated dental plan within a prescribed geographic area administered by Aetna – Contract Number 657455 |
| Accenture US Group Long Term Disability Insurance Plan<br>Plan Number 608 | • Insured welfare plan providing disability benefits through contract with Cigna Life Insurance Company of North America - Policy Number  VDT980011 |
| Accenture US Life Insurance Plan<br>Plan Number 603 | • Insured welfare plan providing death and accidental death and dismemberment benefits through contract with MetLife - Contract Number 105819-1-G |
| Accenture US Group Accidental Death and Dismemberment Insurance Plan<br>Plan Number 607 | • Insured welfare plan providing accidental death and dismemberment benefits through contract with MetLife - Contract Number 105819-1-G (LoR 1-3 Senior Executives are eligible only for AD&D coverage under this contract.) |
| Accenture US Group Dependent Life/Accidental Death and Dismemberment Insurance Plan<br>Plan Number 604 | • Insured welfare plan providing death and accidental death and dismemberment benefits through contract with MetLife - Contract Number 105819-1-G |
| Accenture US Flexible Benefits Program (including the Health Care and Dependent Day Care Flexible Spending Accounts)<br>Plan Number 605 | • Program established under Sections 105, 125 and 129 of the Internal Revenue Code to reimburse certain health and dependent care expenses on a pre-tax basis. |
| Accenture US Group Variable Universal Life Insurance Plan<br>Plan Number 611 | • Insured welfare plan providing group variable universal life insurance benefits for Level 1 – 3 senior executive |
| Accenture US Group Dental Plan for Affiliates<br>Plan Number 613 | • Self-insured welfare plan providing dental benefits through an administrative services contract with Aetna - Contract Number 657455<br><br>• Accenture-sponsored Dental Maintenance Organization (DMO): Insured, state regulated dental plan within a prescribed geographic area administered by Aetna – Contract Number 657455 |
| Accenture US Group Life and Accidental Death and Dismemberment Insurance Plan For Affiliates<br>Plan Number 614 | • Insured welfare plan providing death and accidental death and dismemberment benefits through contract with MetLife - Contract Number 105819-1-G. |
| Accenture US Group Legal Plan<br>Plan Number 616 | • Insured welfare plan providing group legal benefits through MetLife/Hyatt Legal – Contract 1500269 |
| Accenture US Group Long Term Care Plan<br>Plan Number 618 | • Insured welfare plan providing group long term care benefits through MetLife – Contract 119185-G |

| Plan Name | Type of Plan |
|---|---|
| Accenture US Pension Plan<br>Plan Number 104 | • Defined benefit plan. |
| Accenture US Transfer Pension Plan<br>Plan Number 007 | • Defined benefit plan. |
| Accenture US 401(k) Match and Savings Plan<br>Plan Number 102 | • Defined contribution plan. |
| Accenture US Discretionary Profit Sharing Plan<br>Plan Number 105 | • Defined contribution plan. |
| Accenture US Defined Contribution Transfer Plan<br>Plan Number 103 | • Defined contribution plan. |

Accenture also sponsors separation benefits plans, which are welfare benefit plans. Employees eligible for separation benefits will be provided with separate information (including a summary plan description) about those benefits.

## Sponsor and Employer Identification

Accenture's employer identification number (EIN) is 72-0542904. The EIN, the plan name and the plan number identify each Accenture employee benefit plan with the federal agencies governing employee benefit plan operations. The following subsidiaries of Accenture have adopted some or all of the plans for the benefit of their eligible employees:

| Participating Employer | Address | Employer ID # |
|---|---|---|
| Accenture HR Services, Inc. | 233 North Michigan Ave.<br>Chicago, IL 60601 | 06-1606783 |
| Accenture Technology Solutions – US, Inc. | 161 North Clark St.<br>Chicago, IL 60601 | 41-2048318 |
| Accenture National Security Services, LLC | 161 North Clark St,<br>Chicago, IL 60601 | 41-2048319 |
| Accenture BPO Services, LLC | 8200 Thorn Drive<br>Suite 300<br>Wichita, KS 67226 | 30-0144843 |

## Trustee of the Accenture Trusts

All contributions under the 401(k) Match and Savings Plan, the Discretionary Profit Sharing Plan and the Defined Contribution Transfer Plan are paid to the Accenture United States Profit Sharing and 401(k) Trust. All contributions under the Pension Plan and the Transfer Pension Plan are paid to the Accenture United States Pension Trust. Contributions under certain of the welfare benefit plans sponsored by Accenture are paid to the Accenture United States Benefit Trust. The trustee of these trusts is The Northern Trust Company, 50 South LaSalle Street, Chicago, Illinois 60675.

## Plan Year

The plan year for the welfare benefit plans and the 401(k) Match and Savings Plan begins January 1 and ends December 31. The plan year for the Pension Plan begins May 31 and ends on May 30. The plan year for the Defined Contribution Transfer Plan and the Transfer Pension Plan begins July 1 and ends June 30. The plan year for the Discretionary Profit Sharing Plan begins September 1 and ends August 31.

Plan Amendment and Termination

Accenture expects and intends to continue these plans indefinitely but reserves the right, in its sole discretion, to terminate or amend any plan or to change or end contributions to any plan at any time, with or without notice. A plan may be amended or terminated by instrument signed by Accenture's Administrator or by such other person or persons authorized to amend or terminate the plans.

# EMPLOYEE RIGHTS AND PROTECTION

## ERISA Rights Statement

The employee benefit plans sponsored and administered by Accenture meet the legal requirements established by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). As a plan participant, you are entitled to certain rights and protections under ERISA. ERISA provides that all plan participants shall be entitled to:

- Receive Information about Your Plans and Benefits

  You may contact US Employee Benefits to examine, without charge, all governing plan documents, including insurance contracts, and a copy of the latest annual report (Form 5500 Series) filed by the applicable plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration. You may also obtain copies of official plan documents and other documents governing the operation of the plans and copies of the latest annual reports (Form 5500 Series) and updated summary plan descriptions by writing to the Plan Administrator, c/o Accenture, 180 North LaSalle Street, Chicago, Illinois 60601. The Plan Administrator may make a reasonable charge for the copies.

  You will automatically receive a written summary of the annual financial reports for your plans. The Plan Administrator is required by law to furnish each participant with a copy of these summary annual reports.

  You can obtain a statement advising you whether you have a right to receive a retirement benefit at normal retirement age and, if so, what your benefits would be at normal retirement age if you stopped working under the applicable plan now. If you do not have a right to a benefit, the statement will tell you how many more years you must work to obtain a right to a benefit under the applicable plan. This statement must be requested in writing and is not required to be given more than once every twelve (12) months. The plans must provide the statement free of charge.

  You and your beneficiaries can obtain, without charge, a copy of a plan's procedures governing qualified domestic relations order ("QDRO") or qualified medical child support order ("QMCSO") determinations by contacting the Plan Administrator.

- Continue Group Health Plan Coverage

  You have the right to continue health care coverage for yourself, your spouse, or your dependents if there is a loss of health care coverage under a plan to which COBRA applies as a result of a qualifying event.

  You or your dependents may have to pay for such coverage. Review the summary plan description and the documents governing the particular plan under which you seek continuation coverage to learn more about the rules governing your COBRA continuation coverage rights.

  If applicable, you have the right to reduce or eliminate an exclusionary period of coverage for preexisting conditions under your group health plan if you have creditable coverage from another plan. You should be provided a certificate of creditable coverage, free of charge, from your group health plan or health insurance issuer when you lose coverage under the plan, when you become entitled to elect COBRA continuation coverage, when your COBRA continuation coverage ceases, if you request it before losing coverage, or if you request it up to 24 months after losing coverage. Without evidence of creditable coverage, you may be subject to a pre-existing condition exclusion for 12 months (18 months for late enrollees) after your enrollment date in your coverage.

- **Prudent Actions by Plan Fiduciaries**
  In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plans. The people who operate your plans, called "fiduciaries" of the plans, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a retirement or welfare benefit or exercising your rights under ERISA.

- **Enforce Your Rights**
  If your claim for a retirement or welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

  Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from a plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

  If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court after exhausting the administrative review process described in the applicable "Appeals Procedures" section of this document. In addition, if you disagree with the Plan Administrator's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in a Federal court.

  If it should happen that the plan fiduciaries misuse a plan's money or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

- **Assistance with Your Questions**
  If you have any questions about your plans, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## Pension Benefit Guaranty Corporation

The Pension Benefit Guaranty Corporation ("PBGC") is a federal insurance agency established to insure benefits under certain types of pension plans. Pension benefits under the Pension Plan and the Transfer Pension Plan are insured by the PBGC. Benefits under the 401(k) Match and Savings Plan, the Discretionary Profit Sharing Plan, the Defined Contribution Transfer Plan, and the welfare benefit plans, however, are not insured by the PBGC, because the PBGC only insures defined benefit pension plans. If the Pension Plan or Transfer Pension Plan terminates (ends) without enough money to pay all benefits, the PBGC will step in to pay pension benefits. Most people receive all of the pension benefits they would have received under their plan, but some people may lose certain benefits.

Generally, the PBGC guarantee covers: (1) normal and early retirement benefits; (2) disability benefits if you become disabled before the Transfer Pension Plan terminates; and (3) certain benefits for your survivors.

The PBGC guarantee generally does not cover: (1) benefits greater than the maximum guaranteed amount set by law for the year in which the plan terminates; (2) some or all of benefit increases and new benefits based on plan provisions that have been in place for fewer than 5 years at the time the plan terminates; (3) benefits that are not vested because you have not worked long enough for the company; (4) benefits for which you have not met all of the requirements at the time the plan terminates; (5) certain early retirement payments (such as supplemental benefits that stop when you become eligible for Social Security) that result in an early retirement monthly benefit greater than your monthly benefit at the plan's normal retirement age; and (6) non-pension benefits, such as health insurance, life insurance, certain death benefits, vacation pay, and severance pay.

Even if certain of your benefits under the Pension Plan or Transfer Pension Plan are not guaranteed, you still may receive some of those benefits from the PBGC depending on how much money your plan has and on how much the PBGC collects from employers.

For more information about the PBGC and the benefits it guarantees, ask the Plan Administrator or contact the PBGC. Inquiries to the PBGC should be addressed to:

PBGC, Technical Assistance Division
1200 K Street N.W., Suite 930
Washington, D.C. 20005-4026
(202) 326-4000 *(not a toll-free number)*

TTY/TDD users may call the federal relay service toll-free at 1-800-877-8339 and ask to be connected to (202) 326-4000. Additional information about the PBGC's pension insurance program is available through the PBGC's website on the Internet at http://www.pbgc.gov.

## WELFARE PLANS – CLAIMS AND APPEALS PROCEDURES

Coverage under the welfare plans is offered under a variety of options. Some of these options are self-insured and other options are insured. Under the self-insured options, Accenture contracts with a third-party administrator (the "Claims Administrator") to administer the options. However, all benefits are paid directly from Accenture's general assets or a benefits trust. As described below, Accenture has delegated to a third-party administrator (the "Appeals Administrator") the final, discretionary authority to determine if an Urgent Care Claim or a Pre-Service Claim is payable under the terms of the plans. Accenture's Appeals Committee retains the final, discretionary authority to determine if a Post-Service Claim is payable under the terms of the plans.

If an option is fully-insured, for example an HMO, Accenture purchases an insurance contract from an insurer. All claims are paid from the insurer's assets. Other than for questions related to eligibility, the insurer retains all final, discretionary authority to determine whether a claim is payable under a fully-insured option under the plans.

Appendix A to this summary lists the Claims and Appeals Administrators under the plans, the contact information for each Claims and Appeals Administrator, and whether the plan option is insured or self-insured. If you have any questions, you should contact the Plan Administrator at the number listed in the "Plan Sponsor and Administrator" section on page 1 of this summary.

<u>Medical Plan, Retiree Medical Plan, Dental Plan, Dental Plan for Affiliates, Health Care Spending Account Procedures</u>

*The claims procedures in this section only apply to the medical benefits under the Long Term Care Plan and to the self-insured options under the other plans. If you participate in an insured option under the Medical Plan, the Retiree Medical Plan or the Dental Plan, any claim for benefits and any appeal should be filed according to the HMO's/DMO claims procedures.*

Either you or your authorized representative may file claims for plan benefits. An "authorized representative" means a person you authorize, in writing, to act on your behalf. The plan will also recognize a court order giving a person authority to submit claims on your behalf. In the case of an Urgent Care Claim, a health care professional with knowledge of your condition may always act as your authorized representative. All communications from the plan will be directed to your authorized representative unless your written designation provides otherwise.

Your initial claim should be filed with the applicable Claims Administrator listed in Appendix A. All claims are treated as filed on the date they are received. If your claim is denied in whole or in part, you will receive a written notice of the denial directly from the Claims Administrator. The notice will explain the reason for the denial and the review procedures.

- Urgent Care Claims
  If the plan requires advance approval of a service, supply or procedure before a benefit will be payable, and if the plan or your physician determines that it is an Urgent Care Claim, you will be notified whether the service, supply or procedure is payable under the plan no later than 72 hours after the claim is received, either orally or in writing.

  "Urgent Care Claim" means a claim for services received for an illness, injury or condition that could seriously jeopardize your life or health or your ability to regain maximum function or a condition that, in your treating physician's opinion, could subject you to severe pain that cannot adequately be managed without such care or treatment.

  For Urgent Care Claims that name a specific claimant, medical condition, and service or supply for which approval is required, and that are submitted to the plan representative responsible for handling benefit matters, but otherwise fail to follow the plan's procedures, you will be notified of the failure within 24 hours of receipt of the claim. You also will be informed of the proper procedures to be followed. The notice may be oral unless you or your authorized representative request a written notification.

  If there is not sufficient information to decide the claim, your physician will be notified of the specific information necessary to complete the claim as soon as possible, but no later than 24 hours after receipt of the claim. Your physician will be given a reasonable additional amount of time, but not less than 48 hours, to provide the information. Your physician will be notified of the decision no later than 48 hours after the end of the additional time period (or after receipt of the information, if earlier). If the decision is provided to you orally (unless you or your representative request a written notification), your physician will be provided a written or electronic notification no later than three days after you received the oral notification.

- Pre-Service and Post-Service Claims
  If the plan requires you to obtain advance approval of a service, supply or procedure before a benefit will be payable, such a claim will be considered a Pre-Service Claim. You will be notified of the decision no later than 15 days after receipt of the Pre-Service Claim. All other claims will be deemed to be Post-Service Claims. You will be notified of a Post-Service Claim decision no later than 30 days after receipt of such claim.

  For Pre-Service Claims that name a specific claimant, medical condition, and service or supply for which approval is required, and that are submitted to the plan representative responsible for handling benefit matters, but which otherwise fail to follow the plan's procedures, you will be notified of the failure within 5 days for Pre-Service Claims. You also will be informed of the proper procedures to be followed. The notice may be provided to you orally unless you or your representative request written notification.

  For either a Pre-Service or a Post-Service Claim, the time period in which the decision must be made may be extended up to an additional 15 days due to circumstances beyond the plan's control. In that case, you will be notified of the extension before the end of the initial 15 or 30 day period.

If there is not sufficient information to decide the claim, the notice of extension will specifically describe the information necessary to complete the claim. You will have at least 45 days from the date you receive the notice to provide the specified information. The Claims Administrator's period for making the determination will exclude the period of time from the date the notification of the extension is sent to you until the date you respond to the request for additional information. If you fail to supply the requested information within the 45-day period, your claim will be denied.

- **Ongoing Course of Treatment**
  If you are receiving an ongoing course of treatment, you will be notified in advance if the plan intends to terminate or reduce previously authorized benefits for the course of treatment so that you will have the opportunity to appeal the decision before the termination and reduction takes effect. If the course of treatment involves an Urgent Care Claim, and you request an extension of the course of treatment at least 24 hours before its expiration, you will be notified of the decision within 24 hours after receipt of the request.

- **Filing an Appeal of an Adverse Benefits Determination**
  You will have 180 days following receipt of an adverse benefit decision to appeal the decision. With the exception of Urgent Care Claims, your appeal must be in writing and submitted to the appropriate Claims Administrator listed in Appendix A. You will be notified of the decision no later than 15 days (for Pre-Service Claims) or 30 days (for Post-Service Claims) after the appeal is received.

  Along with your claim for benefits, you may submit written comments, documents, records and other information related to your claim, whether or not the comments, documents, records or information were submitted in connection with the initial claim. You also may request that the plan provide you, free of charge, copies of all documents, records and other information relevant to the claim.

  The review will be made by a person different from the person who made the initial determination, and no deference will be afforded to the initial determination. The individual making the appeal determination will not be a subordinate of the original decision maker. In the case of a claim denied on the grounds of a medical judgment, a health professional with appropriate training and experience will be consulted. The health care professional who is consulted on appeal will not be the individual who was consulted during the initial determination or a subordinate to such person. If the advice of a medical expert was obtained in connection with the denial of your claim, the names of each such expert will be provided upon request, regardless of whether the advice was relied upon.

  If your claim involves an Urgent Care Claim, an expedited appeal may be initiated by a telephone call to the Member Services telephone number on your Identification Card. You or your authorized representative may appeal Urgent Care Claim denials either orally or in writing. All necessary information, including the appeal decision, will be communicated between you or your authorized representative and the plan by telephone, facsimile, or other similar method. If the appeal decision is communicated to you orally, you will receive a written determination within three days following the oral determination. You will be notified of the decision no later than 36 hours after the appeal is received.

  If you disagree with the appeal determination, you may file a second level of appeal. This appeal should be made in writing within 60 days of receipt of the first level appeal decision.

- **Second Level of Appeal**
  If you receive coverage under a self-insured option, you may voluntarily appeal the Claims Administrator's final adverse benefit determination by filing a written appeal with the Appeals Administrator (for Pre-Service Claims) or the Appeals Committee (for Post-Service Claims), as applicable. Such appeal must be filed within 60 days of the final denial for Pre-Service and Post-Service Claims. The Appeals Administrator will make its determination on a Pre-Service Claim no later than 15 days after the appeal is received by the Appeals Administrator. The Appeals Committee will make its determination on a Post-Service Claim no later than 30 days after the appeal is received by the Appeals Committee. Any such determination shall be final and binding.

After receiving such a determination, you will have exhausted your administrative remedies under the plan, and you will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B).

If your appeal involves an Urgent Care Claim, an expedited appeal to the Appeals Administrator may be initiated by a telephone call to the Member Services telephone number on your Identification Card. You or your authorized representative may appeal the Claims Administrator's final adverse benefit determination on an Urgent Care Claim either orally or in writing. All necessary information, including the appeal decision, will be communicated between you or your authorized representative and the plan by telephone, facsimile, or other similar method. If the appeal decision is communicated to you orally, you will receive a written determination within three days following the oral determination. You will be notified of the Appeals Administrator's determination no later than 36 hours after the appeal is received. Any such determination shall be final and binding. After receiving such a determination, you will have exhausted your administrative remedies under the plan, and you will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B). Benefits will be paid under the plan only if the Appeals Administrator or the Appeals Committee, as applicable, determines in its discretion that you are entitled to them.

- Health Maintenance Organizations (HMOs) / Dental Maintenance Organization (DMO)
  If you have a complaint about the service or benefits provided by your HMO or DMO or wish to appeal a decision, you must contact your HMO/DMO directly and follow its appeals process. Accenture can provide you with a copy of the appropriate HMO/DMO contract upon request.

Long Term Disability Plan Procedures

When a claim for long term disability plan benefits is denied, you or an authorized representative may appeal that denial. An "authorized representative" is a person you authorize in writing to act on your behalf.

The Claims Administrator will provide you with notice of the status of your claim within a reasonable period of time after a complete claim has been filed, but no later than 45 days after receipt of your claim for benefits. The Claims Administrator may request an additional 30-day extension if special circumstances warrant by notifying you of the extension before the expiration of the initial 45-day period. If a decision still cannot be made within this 30-day extension period due to circumstances outside the plan's control, the time period may be extended for an additional 30 days, in which case you will be notified before the expiration of the original 30-day extension.

If you have not submitted sufficient information to the Claims Administrator to process your claim, you will be notified of the incomplete claim and given 45 days to submit additional information. This will extend the time in which the Claims Administrator has to respond to your claim from the date the notice of insufficient information is sent to you until the date you respond to the request. If you do not submit the requested missing information to the Claims Administrator within 45 days of the date of the request, your claim will be denied.

If your claim is denied, you will receive a notice which will include (i) the specific reasons for the denial, (ii) reference to the pertinent plan provisions upon which the denial is based, (iii) a description of any additional information you might be required to provide with an explanation of why it is needed, and (iv) an explanation of the plan's claims review and appeal procedures.

You, or a duly authorized representative, may appeal a denial of a claim for benefits by filing a written request with the Appeals Administrator within 180 days of your receipt of the initial denial notice. In connection with your appeal, you may request that the plan provide you, free of charge, copies of all documents, records and other information relevant to the claim. You may also submit written comments, records, documents and other information relevant to your appeal, whether or not such documents were submitted in connection with the initial claim. The Appeals Administrator may consult with medical or vocational experts in connection with deciding your claim for benefits.

The Appeals Administrator will conduct a full and fair review of the documents and evidence submitted and will ordinarily render a decision no later than 45 days after receipt of your request for review on appeal.  If there are special circumstances, the decision will be made as soon as possible, but not later than 90 days after receipt of your request for review on appeal.  If such an extension of time is needed, you will be notified in writing prior to the end of the first 45-day period.  The Appeals Administrator's final written decision will include specific reasons for the decision, specific references to the pertinent plan provisions on which the decision is based, and an explanation of your rights under ERISA's claims and appeals rules.  Any such decision shall be final and binding.  After receiving such a decision, you will have exhausted your administrative remedies under the plan, and you will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B).  Benefits will be paid under the plan only if the Appeals Administrator determines in its discretion that you are entitled to them.

## Employee Life/AD&D Plan, Employee Life/AD&D Plan for Affiliates, Dependent Life/AD&D Plan, Legal Plan and Long Term Care Plan (Non-Medical Benefits) Procedures

If you or your beneficiary apply for employee or dependent life/AD&D plan benefits and the application is denied, the Claims Administrator will notify the claimant of such denial in writing within 90 days, or within 180 days if the Claims Administrator notifies the claimant in writing that special circumstances require additional time for processing the claim.  The notice will (i) explain the reason for the denial, (ii) refer to the pertinent plan provisions on which the denial is based, (iii) describe any additional material necessary to perfect the claim and explain why such material is necessary, and (iv) explain the steps to be taken if the claimant wishes to submit the claim for review.

A claimant (or his or her duly authorized representative) may appeal the Claims Administrator's denial of a claim by filing a written appeal with the Appeals Administrator within 60 days of the original denial.  The appeal must contain (i) the date on which the original application was filed, (ii) the specific portions of the denial the claimant wishes the Appeals Administrator to review, (iii) a statement setting forth the reasons the denial should be reversed, and (iv) any written material the claimant wishes the Appeals Administrator to examine when reconsidering the claim.  The Appeals Administrator will permit the claimant to examine any documents that are relevant to his or her claim.

The Appeals Administrator will notify the claimant of its decision on the appeal in writing within 60 days, or within 120 days if the Appeals Administrator notifies the claimant in writing that special circumstances require additional time for reviewing the appeal.  The Appeals Administrator's decision will be final and binding on all parties.  After receiving such a decision, the claimant will have exhausted his or her administrative remedies under the plan, and will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B).  Benefits will be paid under the plan only if the Appeals Administrator determines in its discretion that the claimant is entitled to them.

# WELFARE PLANS APPEALS PROCEDURES
# ELIGIBILITY AND ENROLLMENT MATTERS

The circumstances under which your current coverage can be changed are explained in the "Eligibility and Enrollment" section of the applicable plan summary.  It is your responsibility to understand these rules and their impact on your future coverage choices before you make annual enrollment elections or change your coverage upon experiencing a life event.

To appeal an eligibility or enrollment matter related to new employee enrollment, annual enrollment, life event changes, enrollment deadlines, or dependent coverage, contact the Benefits Center (1-877-332-2242).

Call between the hours of 9:00 am and 5:00 p.m. (Central time) and speak to a Benefits Center representative.  If the representative is unable to assist you, he or she will send you an Appeal Form to be completed and returned to the Benefits Center.  Your case will be reviewed based on the plan's enrollment and eligibility rules, and you will receive a written explanation of that review within 60 days of the date your appeal is received. (Be sure to keep a copy of your completed form for your records.)

If your appeal to the Benefits Center is denied and you feel you have a circumstance not addressed by the plan's enrollment and eligibility rules, you may request a review by the Appeals Committee. Your request must be made in writing within 60 days of receiving the denial from the Benefits Center. Your appeal must provide the following information:

| Personal Information | Appeal Information |
|---|---|
| ▪ Name<br>▪ Social Security number<br>▪ Date of hire<br>▪ Termination date (if applicable)<br>▪ Office location<br>▪ Daytime phone number | ▪ Type of appeal<br>▪ Date of appeal<br>▪ Date of initial appeal to the Benefits Center<br>▪ Date initial appeal was denied by the Benefits Center<br>▪ Reason for the denial<br>▪ Brief description of the situation<br>▪ Additional information you feel is pertinent to your case |

Before submitting your appeal, make a copy for your records. Then send your appeal by inter-office mail or U.S. mail to the Accenture ERISA Appeals Committee, c/o Accenture, 180 North LaSalle Street, Chicago, Illinois 60601. Your appeal will be reviewed, and you will be notified of the decision within 60 days of the date your appeal is received.

## 401(K), PROFIT SHARING AND PENSION PLANS
## CLAIMS AND APPEALS PROCEDURES

The following provisions apply if you have a claim under the 401(k) Match and Savings Plan, the Discretionary Profit Sharing Plan, the Defined Contribution Transfer Plan, the Pension Plan or the Transfer Pension Plan.

If you or your beneficiary file a claim for benefits under one of the plans listed above, such claim must be in writing and filed with the Plan Administrator. If a claim is denied, the Plan Administrator will notify the claimant in writing within 90 days after it receives the claim (or within 180 days if special circumstances warrant additional time and the claimant is notified of the extension). The notification of denial will set forth the specific reasons for the denial, with references to the plan provisions on which the denial is based, and will describe the additional information necessary to perfect the claim, if any, and the procedure for requesting a review of the denial.

A claimant (or his or her duly authorized representative) may request a review of the denial of a claim for benefits by filing a written application with the Appeals Committee within 60 days after he or she receives notice of the denial. Such a claimant is entitled to review pertinent plan documents and submit written issues and comments to the Appeals Committee. The Appeals Committee will furnish the claimant with written notice of its decision within 60 days after it receives a request for review (or within 120 days if special circumstances warrant additional time and the claimant is notified of the extension). The Appeals Committee's notice will set forth the specific reasons for the decision, with references to the plan provisions on which the decision is based. The Appeals Committee's decision will be final and binding on all parties. After receiving such a decision, the claimant will have exhausted his or her administrative remedies under the plan, and will have a right to bring an action for benefits under ERISA Section 502(a)(1)(B). Benefits will be paid under the plans only if the Appeals Committee decides in its discretion that the claimant is entitled to them.

## ALL PLAN CLAIMS – LIMITATION ON TIME FOR SUITS

If your claim for benefits is finally denied by the Appeals Committee or Appeals Administrator, as applicable, then you may bring suit in federal court. You may not commence a suit in court for benefits under a plan until the plan's claim process has been completed. However, you may only bring suit in federal court if you file such action within 120 days after the date of the final denial of your claim by the Appeals Committee or Appeals Administrator, as applicable.

# APPENDIX A

## CLAIMS AND APPEALS ADMINISTRATORS - CONTACT INFORMATION

| Type of Plan | Provider | Address |
|---|---|---|
| Self-Insured Medical Indemnity | Aetna US Healthcare | P.O. Box 981107<br>El Paso, TX 79998<br>800/638-3864 |
| Self-Insured Medical PPO | United Healthcare Enhanced PPO Plan | P.O. Box 740800<br>Atlanta, GA 30374-0800<br>877/468-0998 |
| | United Healthcare Basic PPO Plan | P.O. Box 740800<br>Atlanta, GA 30374-0800<br>877/468-0998 |
| | Blue Cross Blue Shield PPO Plan | 300 East Randolph<br>Chicago, IL 60601<br>800/435-0108 |
| Self-Insured United Healthcare Definity HRA iPlan | United Healthcare | P.O. Box 740800<br>Atlanta, GA 30374-0800<br>877/468-0998 |
| Insured HMOs | Group Health Options (Kaiser) (851) | 521 Wall Street<br>Seattle, WA 98121<br>888/901-4636 |
| | HAP (689) | 2850 West Grand Blvd.<br>Detroit, MI 48202<br>800/422-4641 |
| | Kaiser of Southern California – LA (722)<br>Kaiser eHealth HMO of Northern California (775)<br>Kaiser of Northern California – San Francisco (770) | 393 East Walnut Street<br>Pasadena, CA 91188<br>800/464-4000 |
| | Kaiser eHealth HMO of Denver – Denver/Boulder (685) | 2500 S. Havana Street<br>Aurora, CO 80014<br>303/338-3800 |
| | Kaiser Mid-Atlantic States – DC, MD, VA (891)<br>Kaiser eHealth HMO of Mid-Atlantic States (895) | 2101 E. Jefferson St. Box 6233<br>Rockville, MD 20849-6233<br>800/777-7902 |
| | Kaiser of Ohio – Cleveland (663) | North Point Tower, Suite 1200<br>1001 Lakeside Avenue<br>Cleveland, OH 44114-1153<br>800/686-7100 |
| | Kaiser – Atlanta (607)<br>Kaiser Consumer Choice Option – Atlanta (608A) | 3495 Piedmont Road, N.E.<br>Ten Piedmont Center<br>Atlanta, GA 30305<br>404/261-2590 |
| Self-Insured PPO Dental Plan | Aetna | P.O. Box 14094<br>Lexington, KY 40512-4094<br>800/525-4207 |
| Insured DMO | Aetna | P.O. Box 14094<br>Lexington, KY 40512-4094<br>877/238-6200 |

Case 1:08-cv-03082   Document 22-13   Filed 08/26/2008   Page 16 of 16

| Type of Plan | Provider | Address |
|---|---|---|
| Flexible Spending Accounts | United Healthcare | P.O. Box 981178<br>El Paso, TX 79998-1178<br>877/468-0998 |
| Insured Long Term Disability Plan | Cigna Life Insurance Company of North America | 12225 Greenville Avenue<br>Dallas, TX 75243<br>800/352-0611 |
| Insured Life and AD&D<br>Insured Dependent Life/AD&D | MetLife | P.O. Box 3016<br>Utica, NY 13504-3016 |
| Insured Legal Plan | Hyatt Legal | Hyatt Legal Plans, Inc.<br>1111 Superior Avenue<br>Cleveland, OH 44114-2407<br>800/821-6400 |
| Insured Long Term Care Plan | MetLife | Metropolitan Life Insurance Co.<br>Long-Term Care Group<br>P.O. Box 937<br>Westport, CT 06881-0937 |
| Appeals Committee | Accenture ERISA Appeals Committee | c/o Accenture<br>180 North LaSalle Street<br>Chicago, IL 60601 |