**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OMAR HAKIM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  08-cv-3682 |
| | ) | |
| ACCENTURE UNITED STATES | ) | Judge Robert M. Dow, Jr. |
| PENSION PLAN, ACCENTURE LLP, | ) | |
| ACCENTURE INC., ACCENTURE LLC, | ) | |
| and ACCENTURE LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Omar Hakim ("Hakim"), filed a putative class action complaint [1] on June 27, 2008 on behalf of himself and all others similarly situated under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101 *et seq.* ("ERISA"), against Accenture United States Pension Plan and Accenture LLP.  Subsequently, on September 2, 2008, Plaintiff filed a first amended class action complaint [29] adding additional defendants.  The first amended complaint asserts five counts under ERISA against Accenture United States Pension Plan (the "Plan"), Accenture LLP, Accenture Inc., Accenture LLC, and Accenture Ltd. (collectively "Defendants").  Currently before the Court is Defendants' motion to dismiss [59] Plaintiff's first amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

## I. Background[1]

On October 4, 1993, Defendant Accenture LLP (then operating as Andersen Consulting LLP) hired Plaintiff to work in its Los Colinas, Texas office. As of the date that he was hired, Plaintiff was a "participant" in the Plan, and accrued benefits under the terms of the Plan.[2] Defendants altered the Plan's eligibility requirements in an amendment to the Plan that took effect on July 1, 1996. Under the 1996 Amendment, Plan participants could become ineligible to accrue additional benefits if they switched jobs within Accenture. Plaintiff received no notice of the 1996 Amendment.

On December 16, 1999, Accenture promoted and transferred Plaintiff to a different service line within the company. Pursuant to the 1996 Amendment, Plaintiff's promotion made him ineligible to continue accruing benefits under the Plan. According to Plaintiff, he did not realize that he had stopped accruing benefits until July 7, 2003, when he received his final statement of benefits from Defendants.[3] The final benefits statement showed that Plaintiff had accrued benefits for the 6.202 years of service he performed between October 4, 1993 – when he was first hired – and December 16, 1999, but that he had accrued no Plan benefits between his promotion on December 16, 1999 and his termination on May 16, 2003. Based on the 6.202 years of service during which Defendants say Plaintiff accrued benefits under the Plan, Plaintiff will be entitled to a monthly benefit payment of $766.28 beginning at age 62. According to Plaintiff, if his monthly benefit were calculated on the basis of his full 9.619 years of service

---

[1] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the first amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

[2] The Plan, formerly known as the Accenture United States Retirement Plan, is the successor in interest to the Andersen Consulting LLP Retirement Plan which, in turn, was the successor in interest to the Andersen Worldwide Societe Cooperative United States Retirement Plan.

[3] Plaintiff's employment with Defendants was terminated on May 16, 2003, due to a workforce reduction.

(between October 4, 1993 and May 16, 2003) – as he claims it should be – he will receive $1,963.76 per month in benefits.

On July 21, 2003, Plaintiff made a written request to Defendants requesting assistance in determining his pension eligibility dates and benefits. In response, on or around July 29, 2003, Defendants provided Plaintiff with a copy of the Plan; at that time, Defendants did not provide Plaintiff with any summary plan descriptions or other documents. On December 12, 2003, Defendants informed Plaintiff that, pursuant to the 1996 Amendment, he had become ineligible to participate in the Plan on December 16, 1999.

Plaintiff later sent Defendants a letter notifying them that he intended to file a lawsuit seeking benefits under the Plan. Defendants responded on July 9, 2007 by informing Plaintiff that he had not exhausted his administrative remedies, and inviting him to do so. On July 27, 2007, Plaintiff made an administrative claim for benefits and an express written request for the plan documents in effect during Plaintiff's service, including plan documents containing "the provisions regarding appeal." Defendants denied Plaintiff's claim for benefits on November 20, 2007. Plaintiff appealed that denial on November 29, 2007; at that time, Plaintiff also made a written request for the plan documents in effect during Plaintiff's service, including "[a]ny and all summary plan descriptions from January 1, 1995 through December 31, 2003." On January 25, 2008, Defendants provided copies of the 1995, 1996, 1997, 1999, 2001, and 2003 summary plan descriptions. Plaintiff's appeal of the denial of his claim for benefits was denied on April 2, 2008. At that time, Defendants informed Plaintiff that he had now exhausted his administrative remedies under the Plan's terms, and notified him that could "exercise his right to bring a civil lawsuit in federal court under Section 502(a) of ERISA to challenge this adverse benefit determination" within 120 days of the date of the letter.

Plaintiff filed this putative class action on June 27, 2008. Count I seeks equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3), for Defendants' alleged failure to provide *timely* notice of the 1996 Amendment in violation of ERISA § 204(h), 29 U.S.C. § 1054(h) (1996). Count II sets forth an identical claim for equitable relief under ERISA § 502(a)(3) for Defendants' alleged failure to provide *proper* notice of the 1996 Amendment (including notice of the amendment's wording and the fact that it might reduce benefits), as required by ERISA § 204(h). Count III, which also seeks equitable relief pursuant to ERISA § 502(a)(3), alleges that Defendants violated ERISA § 102, 29 U.S.C. § 1022, by failing to provide Summary Plan Descriptions ("SPDs") that contained comprehensible descriptions of the Plan's eligibility requirements and the circumstances that may result in disqualification, ineligibility or denial or loss of benefits.

The equitable relief that Plaintiff requests in each of Counts I-III consists of an order declaring the 1996 Amendment ineffective and "the incidental monetary relief mechanically flowing from that injunctive relief" in an amount equal to the difference between the pension benefits as calculated under the 1996 Amendment and as re-calculated under the terms of the pre-Amendment Plan.

Count IV sets forth an alternative claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), based on the statutory violations alleged in Counts I-III. In Count IV, Plaintiff seeks damages in an amount equal to the difference between the pension benefits as calculated under the 1996 Amendment and as re-calculated under the terms of the pre-Amendment Plan. Thus, the "damages" sought in the alternative in Count IV are identical to the "incidental monetary relief" sought in Counts I-III.

Count V seeks statutory damages pursuant to ERISA § 502(c)(1), 29 U.S.C. §1132(c)(1), for Defendants' alleged failure, upon written request, to provide Plaintiff with SPDs that complied with ERISA § 104.

## II.    Legal Standard On Motion To Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case.  See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom.  See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

On a Rule 12(b)(6) motion to dismiss, the Court generally must confine its inquiry to the factual allegations set forth within the four corners of the operative complaint.  See *Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661 (7th Cir. 2002).  In the usual case, therefore, if a party moving for a 12(b)(6) dismissal submits documents with its motion to dismiss, the Court either must ignore the documents or convert the motion to one for summary judgment.  See Fed. R.

Civ. Pro. 12(b); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings," and may be considered on a motion to dismiss, "if they are referred to in the plaintiff's complaint and are central to her claim." *Venture*, 987 F.2d at 431. Documents that fall within this "narrow" exception must be "concededly authentic." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

Here, the Court will consider three categories of documents that were not attached to the complaint: (1) the 1997, 1999, 2001, and 2003 SPDs[4]; (2) the General Information portions of the 1995, 1997, 1999, 2001, 2003, 2005, and 2007 SPDs[5]; and (3) Plaintiff's written requests to Defendants for information and Defendants' responses.[6]

---

[4] These SPDs are the basis for Plaintiff's ERISA § 102 claim (asserted in Counts III and IV); thus they are referred to in the complaint and are central to Plaintiff's claim. The SPDs are attached as exhibits A-D to Defendants' Memorandum of Law in Support of Renewed Motion to Dismiss [61] and as exhibits F-I to Plaintiff's response brief [67]. By attaching the SPDs to his brief, Plaintiff has conceded their authenticity.

[5] As the Court explained in its February 4, 2009 order [57], the General Information portions of the SPDs are part of the SPDs, and, consequently, are central to Plaintiff's SPD-related claims. The General Information sections are attached as exhibits F-L to Defendants' Memorandum of Law in Support of Renewed Motion to Dismiss [61]. Defendants have submitted an affidavit supporting the authenticity of their exhibits, including the General Information portions of the SPDs, [61-6], and Plaintiff has not challenged the authenticity of these documents as Court directed. See [57] ("Plaintiff is given to 3/4/09 in which to file any motion challenging the authenticity of the exhibits attached to Defendants' renewed motion to dismiss").

[6] In particular the Court will consider the August 31, 2007 Letter from Accenture to Richard Anton, which is attached as exhibit P to Defendants' Memorandum of Law in Support of Renewed Motion to Dismiss [61-17]. As discussed in Section III.D. below, this correspondence is central to Plaintiff's claim, set forth in Count V, regarding the timeliness of Defendants' responses to his requests for information. Defendants attached this letter to their first motion to dismiss [50-18], and Plaintiff did not move to strike it, as he did most of the other exhibits to Defendant's first motion to dismiss. See [57]. Nor has Plaintiff challenged the authenticity of exhibit P. Finally, Plaintiff relies on Defendants' exhibit P in his response brief as proof of the Defendants' untimely response to his request for information. [63, at 15].

**III.    Analysis**

   **A.    Motion to Dismiss Claims for Equitable Relief Under ERISA § 502(a)(3) Set Forth in Counts I-III**

In Counts I-III, Plaintiff seeks equitable relief pursuant to ERISA § 502(a)(3) for Defendants' alleged violations of ERISA §§ 204(h) and 102.  ERISA § 502(a)(3) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  Defendants move to dismiss Counts I-III on the grounds that (1) equitable relief under § 502(a)(3) is not available as a matter of law because Plaintiff has a claim for benefits under § 502(a)(1)(B) (which he asserts in Count IV); and (2) even if Plaintiff could assert claims under § 502(a)(3), the monetary relief that he seeks is not "appropriate equitable relief" within the meaning of the statute.  Because the Court finds that dismissal of Counts I-III is warranted based on Defendants' first argument, it will not reach their second contention regarding the availability of monetary relief under § 502(a)(3).

For their first argument – that Plaintiff cannot maintain a claim under § 502(a)(3) because he has an adequate remedy under § 502(a)(1)(B) – Defendants rely on the Supreme Court's discussion of § 502(a)(3) in *Varity Corporation v. Howe,* 516 U.S. 489 (1996).  In *Varity,* the Court described § 502(a)(3) as a "catchall" provision that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."  516 U.S. at 512.  The Court noted that "the statute authorizes [only] '*appropriate*' equitable relief," and stated that "equitable relief * * * normally would not be 'appropriate' * * * where Congress elsewhere provided adequate relief for a beneficiary's injury."  *Id.* at 515.

The Seventh Circuit has not determined whether, under *Varity*, a claim for benefits under § 502(a)(1)(B) bars a § 502(a)(3) claim for equitable relief. However, as the Seventh Circuit recently recognized, "a majority of the circuits" have interpreted *Varity* to mean that "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un*available under subsection (a)(3)." *Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) (citing *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006) (joining the 5th, 6th, 8th, 9th, and 11th Circuits in holding that "a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3)")). Likewise, a number of "judges of this court have interpreted [*Varity*] to mean that a claim for equitable relief under § 1132(a)(3) must be dismissed if relief may be obtained under § 1132(a)(1)(B)." *Rice ex rel. Rice v. Humana Ins. Co.*, 2007 WL 1655285, at *4 (N.D. Ill. June 4, 2007); see also *Heroux v. Humana Ins. Co.*, 2005 WL 1377854, at *4 (N.D. Ill. June 8, 2005) (at motion to dismiss stage, stating that a §1132(a)(3) claim "would be foreclosed by the relief [sought] * * * under § 1132(a)(1)(B)"); *Erikson v. Ungaretti & Harris-Exclusive Provider Plan*, 2003 WL 22836462, at *3 (N.D. Ill. Nov. 24, 2003) (granting motion to dismiss § 502(a)(3) claim that rested "on the exact same basis as [plaintiff's] claims for denial of benefits" under § 502(a)(1)(B)); *Clark v. Hewitt Associates, LLC*, 294 F.Supp.2d 946, 950 (N.D. Ill. 2003) (holding that a plaintiff who has the right to bring a claim under ERISA § 502(a)(1)(B), regardless of its merits, may not seek relief under ERISA § 502(a)(3)); *Jurgovan v. ITI Enterprises*, 2004 WL 1427115, at *4 (N.D. Ill. June 23, 2004) (granting motion to dismiss ERISA § 502(a)(3) claim under *Varity* where plaintiff had a claim for benefits under § 502(a)(1)(B)).

This is not to say that an ERISA plaintiff may never simultaneously bring claims under both § 502(a)(1)(B) and § 502(a)(3). *Gore v. El Paso Energy Corp. Long Term Disability Plan,*

477 F.3d 833, 839-40 (6th Cir. 2007) (dismissal of § 502(a)(3) claim is appropriate where it is merely "a repackaged claim for individual benefits," but not where plaintiff's § 502(a)(3) claim and § 502(a)(1)(B) claim address "two separate and distinct injuries"). Courts generally are in agreement that where a plaintiff's § 502(a)(3) and § 502(a)(1)(B) claims are largely indistinguishable (*i.e.*, "the equitable claims * * * are 'nothing more than repackaged denial of benefits claims"), the equitable claims must be dismissed. *Crummett v. Metropolitan Life Ins. Co.*, 2007 WL 2071704, at *2 (D.D.C. July 16, 2007) (citation omitted). For example, courts consistently have dismissed § 502(a)(3) claims where a plaintiff seeks identical relief under §§ 502(a)(3) and 502(a)(1)(B). See *Rice*, 2007 WL 1655285, at *4 (granting motion to dismiss ERISA § 502(a)(3) claim where plaintiff also asserted ERISA § 502(a)(1)(B) claim and sought identical relief under both claims); *Kaliebe*, 2003 WL 22282379, at *3 (dismissing § 502(a)(3) claim where beneficiary sought the same remedy – "restoration of the level of benefits that the beneficiary believes to have been required under the plan" – for claims under §§ 502(a)(3) and 502(a)(1)(B)); *Erikson*, 2003 WL 22836462, at *3 ("Unless [plaintiff] can state that she is entitled to some type of relief that would be unavailable to her under § 502(a)(1)(B), she may not bring a claim under § 502(a)[](3)."); *Jurgovan*, 2004 WL 1427115, at *4 (plaintiff's "§ 502(a)(3) claim * * * must be dismissed because it seeks relief which duplicates the relief sought in her claim for benefits under § 502(a)(1)(B)"); *Wald v. Southwestern Bell Corp. Customcare Medical Plan*, 83 F.3d 1002, 1006 (8th Cir. 1996) (finding that plaintiff did "not have a cause of action under section 502(a)(3)" where she sought "no different relief" under § 502(a)(3) than she did under § 502(a)(1)(B)). Similarly, courts have concluded that where a plaintiff's §§ 502(a)(3) and 502(a)(1)(B) claims rely on identical the factual allegations, the § 502(a)(3) must be dismissed. See *Jones v. American General Life and Acc. Ins. Co.*, 370 F.3d 1065, 1073 (11th

Cir. 2004) ("the relevant concern in *Varity,* in considering whether the plaintiffs had stated a claim under Section 502(a)(3), was whether the plaintiffs also had a cause of action, based on the same allegations, under Section 502(a)(1)(B) or ERISA's other more specific remedial provisions"); *Moffat v. Unicare Midwest Plan Group 314541*, 2005 WL 1766372, at *5 (N.D. Ill. July 25, 2005) (dismissing plaintiff's § 502(a)(3) claim where the same allegations supported plaintiff's § 502(a)(1)(B) claim).

By contrast, courts have declined to dismiss § 502(a)(3) claims that are not simply "repackaged" claims for benefits. See *Ehrman v. Standard Ins. Co.*, 2007 WL 1288465, at *4 (N.D. Cal. May 2, 2007) (refusing to dismiss § 502(a)(3) claim at pleading stage where the plaintiff "alleged wrongful conduct that * * * [went] beyond the mere wrongful calculation of benefits" and thus § 502(a)(1)(B) might not provide complete relief); *Black v. Long Term Disability Ins.*, 373 F.Supp.2d 897, 902 (E.D. Wis. 2005) (motion to dismiss § 502(a)(3) claim should be denied under certain circumstances, including where plaintiff alleges one set of facts in support of § 502(a)(1)(B) claim and different facts in support of § 502(a)(3) claim); *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005) (holding that district court erred in dismissing § 502(a)(3) claim seeking injunctive relief to alter the manner in which defendant calculated benefits going forward because an award of benefits would not provide plaintiff with complete relief).

Here, Plaintiff asserts claims for equitable relief based alleged violations of ERISA §§ 204(h) and 102 in Counts I-III, and an alternative claim for benefits based on those same statutory violations in Count IV. Defendants argue that, under *Varity* and its progeny, Counts I-III must be dismissed.

Plaintiff contends that the Court should decline to address Defendants' *Varity* argument at this stage in the litigation for two reasons. First, Plaintiff argues that it is too early for the Court to determine whether Plaintiff can recover under § 502(a)(1)(B), and therefore dismissal of his § 502(a)(3) claims would be premature, as it could leave him without a remedy. But, as many courts have recognized, whether Plaintiff's § 502(a)(1)(B) claim will succeed is irrelevant; the pertinent inquiry is whether Plaintiff can state a claim under § 502(a)(1)(B). See *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1089 (11th Cir. 1999) (fact that plaintiff did not prevail on the merits of her § 502(a)(1)(B) claim was irrelevant because "the availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it guarantee, an adjudication in one's favor"); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (that plaintiff "did not prevail on his claim under section 1132(a)(1) does not make his alternative claim under section 1132(a)(3) viable."); *Clark*, 294 F.Supp.2d at 950 (rejecting plaintiff's argument that she should not be precluded from seeking relief under § 502(a)(3) because her claim under § 502(a)(1)(B) might fail, reasoning that the fact that she had "the *right* to bring a claim under § 1132(a)(1)(B), regardless of its merits," barred her § 502(a)(3) claim); *Kaliebe*, 2003 WL 22282379, at *4 (rejecting argument that dismissal of equitable relief claim would be "premature" where it was "possible that Plaintiff [would] not recover under that theory," reasoning that "[i]t is always possible that a plaintiff will not recover, but the inquiry is adequacy not recoverability"). Therefore, Plaintiff's contention that his claims for equitable relief should not be dismissed because he may not prevail on his claim for benefits is not well-taken.

Second, Plaintiff argues that dismissal of his § 502(a)(3) claims at this stage because would be inconsistent with Federal Rule of Civil Procedure 8(d)(2), under which he may plead

two alternate theories of liability. A number of courts have addressed this argument, with mixed results. See *Kaliebe*, 2003 WL 22282379, at *4 (stating that dismissal of § 502(a)(3) claim as duplicative on the pleadings contradicted Rule 8, but finding that *Variety* required that result); *Jurgovan*, 2004 WL 1427115, at *4 ("the fact that alternative pleading is proper under the Federal Rules is irrelevant under this court's interpretation of *V[a]rity* because the existence of a claim for relief under § 502(a)(1)(B) (as opposed to the receipt of actual relief under than section) means that relief under § 502(a)(3) is not available as a matter of law"); *Rice*, 2007 WL 1655285, at *4 (same); *Donaldson v. Pharmacia Pension Plan*, 435 F.Supp.2d 853, 869 n.5 (S.D. Ill. 2006) (under Federal Rule 8 "Plaintiffs are entitled to assert claims under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), in the same complaint, and are not required to elect a remedy before entry of final judgment"); *Black*, 373 F.Supp.2d at 902-03 (dismissing plaintiff's § 502(a)(3) claim "as duplicative at the pleading stage of a case would * * * violate Rule 8"); *Parente v. Bell Atlantic-Pennsylvania,* 2000 WL 419981, at *3 (E.D. Pa. April 18, 2000) (permitting plaintiff to proceed under both §§ 502(a)(1)(B) and (a)(3)) in light of "the longstanding principle of allowing parties to plead in the alternative").

The Court cannot agree that dismissal would violate Rule 8. As discussed above, courts have interpreted *Varity* as prohibiting plaintiffs from repackaging "denial of benefits" claims as claims for equitable relief. In other words, *Varity* and its progeny bar plaintiffs from getting two bites at the apple by asserting identical claims under §§ 502(a)(3) and 502(a)(1)(B). Therefore, the dismissal of Plaintiff's equitable claims under *Varity* would not bar Plaintiff from asserting inconsistent legal theories, as Rule 8 allows, but from asserting the same legal theory twice under separate labels.

Turning to Plaintiff's claims, for the reasons discussed below, the Court finds that the ERISA §§ 204(h) and 102 claims asserted in Counts I-III are essentially repackaged benefits claims, which must be dismissed.

First, Plaintiff seeks the same relief under his § 502(a)(3) claims as he does under his § 502(a)(1)(B) claim – namely, a monetary award equal to the difference between the pension benefits as calculated under the 1996 Amendment and as re-calculated under the terms of the pre-Amendment Plan. While Plaintiff's equitable claims also seek an order declaring the 1996 Amendment ineffective, that relief also is available under § 502(a)(1)(B). See *Rice*, 2007 WL 1655285, at *4 (plaintiff's "request for an injunction against future denial of benefits is available under § 1132(a)(1)(B)," which allows him to "clarify his right to future benefits under the plan").[7]

Second, the allegations supporting Counts I-III are identical to the allegations supporting Plaintiff's § 502(a)(1)(B) claim. Indeed, Count IV contains no substantive allegations of its own, and merely incorporates by reference the allegations set forth in Counts I-III.

Finally, courts have held that both § 204(h) claims and § 102 claims can be fully remedied under § 502(a)(1)(B), and thus equitable relief under § 502(a)(3) is not available to remedy such claims. With respect to § 204(h), in *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006), the Second Circuit affirmed the dismissal of the plaintiffs' claims for equitable relief

---

[7] Moreover, with respect to Plaintiff's § 204(h) claims, the 1996 amendment can be declared ineffective as to Plaintiff if he proceeds under § 502(a)(1)(B) and prevails on those claims. See *Bilello v. JPMorgan Chase Retirement Plan*, 592 F.Supp.2d 654, 666 (S.D.N.Y. 2009) (characterizing § 204(h) claim as a claim to recover plan benefits under § 502(a)(1)(B) because success on that claim would invalidate the amendment as to plaintiff entitle him to additional benefits under the plan); *Frommert v. Conkright*, 433 F.3d 254, 268 (2d Cir. 2006) (finding amendment to be "ineffective" as to Plan participants who did not receive the requisite notice under § 204(h)); *Hirt v. Equitable Ret. Plan*, 441 F.Supp.2d 516, 539 (S.D.N.Y. 2006) (stating that "[t]he statute makes a sufficient notice a precondition to the effectiveness of the plan amendment" and thus "[t]he insufficiency of [the] Notice * * * vitiates the amendment itself").

as duplicative, finding that the plaintiffs' § 204(h) claim could be adequately remedied under § 502(a)(1)(B). The *Frommert* court noted that the relief the plaintiffs sought – "recalculation of their benefits consistent with the terms of the Plan" – fell "comfortably within the scope of § 502(a)(1)(B)." *Id.* Similalry, in *Bilello v. JPMorgan Chase Retirement Plan*, 592 F.Supp.2d 654, 666 (S.D.N.Y. 2009), the court concluded that the plaintiff's § 204(h) claim could be characterized as a § 502(a)(1)(B) claim for benefits. In concluding that the plaintiff was really asserting a claim for plan benefits, the court noted that if the plaintiff prevailed on his § 204(h) claim, the plan amendment could "be deemed ineffective," in which case the plaintiff would "be entitled to the allegedly more generous stream of benefits due under the Pre-[amendment] Plan." *Id.*; see also *Calder v. SBC Pension Ben. Plan*, 549 F.Supp.2d 824 (W.D. Tex. 2008) (finding that the "gravamen" of plaintiff's claim that defendant violated ERISA § 204(h) was "a claim for benefits"). Here, like the plaintiff in *Frommert*, Plaintiff seeks recalculation of his benefits consistent with the terms of the pre-amendment Plan. In addition, as was the case in *Bilello*, if Plaintiff prevails on his § 204(h) claims, the 1996 Amendment can be deemed ineffective as to him, and he may be entitled to additional Plan benefits. See *Prod. Employees' Local 504 v. Roadmaster Corp.,* 954 F.2d 1397, 1406-08 (7th Cir. 1992) (applying version of § 204(h) that applies here and affirming district court decision "rescinding" Plan amendment where defendant violated § 204(h) by giving Plan participants untimely and inadequate notice). If the 1996 Amendment is invalidated, Plaintiff may be entitled to additional benefits under the Plan.

Courts likewise have concluded that violations of ERISA § 102 can be remedied under § 502(a)(1)(B). For example, in *Wilkins v. Mason Tenders Dist. Council Pension Fund,* 445 F.3d 572, 583 (2d Cir. 2006), the Second Circuit held that the plaintiff's § 102 claim was akin to a claim for benefits, and was cognizable under § 502(a)(1)(B). See also, *Rothwell v. Chenango*

*County N.Y.S.A.R.C. Pension Plan*, 2005 WL 2276023, at *4-5 (N.D.N.Y. Sept. 19, 2005) (dismissing plaintiff's claims for equitable relief under § 502(a)(3) as duplicative of her § 502(a)(1)(B) claim where all claims were based on defendant's alleged violation of ERISA § 102); *Engers v. AT&T*, 428 F.Supp.2d 213, 236 (D. N.J. 2006) (holding that plaintiffs could not "sustain a claim under § 502(a)(3) for an alleged breach of fiduciary duty based upon a violation of § 102 or other ERISA section relating to SPD's" because plaintiffs had "the ability to proceed under § 502(a)(1)(B) for Defendants' alleged violation of § 102"); *In re Managed Care Litigation*, 185 F.Supp.2d 1310, 1326, 1329-31 (S.D. Fla. 2002) (holding that plaintiffs could not assert claims under § 502(a)(3) based on alleged violation of § 102 because plaintiffs had an adequate remedy under either § 502(c) or § 502(a)(1)(B)).

Here, Plaintiff's §§ 204(h) and 102 claims can be remedied adequately under § 502(a)(1)(B). Therefore, Counts I-III are dismissed; the Court will address Defendants alleged violations of §§ 204(h) and 102 in the context of Count IV.

## B. Motion to Dismiss ERISA § 102 Claim

Plaintiff alleges that the SPDs issued by Defendants in 1997, 1999, 2001, and 2003 failed to comply with the requirements of ERISA §§ 102(a) and (b). ERISA § 102(a) provides, in relevant part, that SPDs "shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." ERISA § 102(b) requires, in relevant part, that SPDs "contain * * * the plan's requirements respecting eligibility for participation and benefits; * * * [and] circumstances which may result in disqualification,

ineligibility, or denial or loss of benefits." According to Plaintiff, the SPDs did not contain sufficiently comprehensible descriptions of the Plan's eligibility requirements.

Defendants move to dismiss Plaintiff's ERISA § 102 claims on the grounds that the eligibility requirements set forth in the relevant SPDs comply with ERISA § 102 as a matter of law. In addition, for the first time in their reply brief, Defendants argue that the § 102 claims should be dismissed for failure to satisfy the federal pleading standard under *Twombly*.

As a threshold matter, the Court will consider whether Plaintiff's § 102 claims are subject to dismissal for failure to "enough facts to state a claim to relief that is plausible on its face." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). To survive a Rule 12(b)(6) motion to dismiss, the complaint must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint "does not need detailed factual allegations" to survive dismissal; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Seventh Circuit has interpreted *Twombly* to mean that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Killingsworth*, 507 F.3d at 619 (citation omitted).

Here, Plaintiff alleges that the SPDs' descriptions of the Plan's eligibility requirements are not "comprehensible." Plaintiff further alleges that but for the lack of comprehensible eligibility descriptions, "Plaintiff and Class members may have acted differently with respect to

accepting promotions and transfers to new service lines within Andersen Consulting," and that Defendants' alleged violation of § 102 caused Plaintiff and other Class members to lose pension benefits. Am. Cmplt. ¶¶ 69-70. Plaintiff does not identify any specific language that he considers to be incomprehensible, or explain precisely how the descriptions are not sufficiently calculated to be understood by the average participant. Thus, Plaintiff's allegations provide little detail about the ways in which the eligibility descriptions are incomprehensible. However, the allegations in paragraphs 69 and 70 of the first amended complaint reveal the basis for Plaintiff's § 102 claims – namely, that the SPDs did not adequately explain the impact a promotion or transfer to a new service line would have on a participant's pension benefits. Because the allegations are not "so sketchy" that they fail to provide Defendants with fair notice of the grounds for the § 102 claims, the Court concludes that Plaintiff has satisfied the liberal federal pleading requirements.

The second basis that Defendants advance for dismissal of Plaintiff's § 102 claims is that the SPDs at issue comply with the statute as a matter of law (*i.e.*, they set forth Plan eligibility requirements – including the impact of a promotion or transfer to a new service line on eligibility – in a manner calculated to be understood by the average plan participant).[8] All of the SPDs at issue explain that a change in a participant's employment category may affect their eligibility to accrue benefits under the Plan. The 1997 SPD identifies certain "covered employment categories," and explains that employees in those categories are "eligible for membership in the retirement plan." [63-7, RT-3]. The SPD further explains that, "[i]f you move out of an eligible

---

[8] The parties agree that whether an SPD complies with ERISA § 102 is a question of law that this Court can resolve on the pleadings. See also, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) (affirming grant of motion to dismiss claim that SPD violated ERISA §§ 102(a) and (b)); *Baker v. Kingsley*, 387 F.3d 649, (7th Cir. 2004) (affirming grant of motion to dismiss ERISA § 102 claim); *Doyle v. Local 25*, 1999 WL 1044206, at *6 (N.D. Ill. Nov. 9, 1999) ("the question whether the SPD satisfies ERISA's disclosure requirements is a question of law that must be examined by the court de novo").

employment category, your plan membership and benefits could be affected," and directs the reader to the *Conditions Affecting Your Membership and Benefit* section of the SPD for further information. [63-7, RT-4]. The *Conditions Affecting Your Membership and Benefit* section in turn advises that, "[g]enerally, your membership status and vesting service are not affected when you move out of an eligible employment category. However, you will not continue to earn benefit service and earnings credit after your classification changes." [63-7, RT-22]. Finally, the *How the Benefit is Calculated* section of the 1997 SPD reiterates that "[w]hen you move out of an eligible employment category, you stop accruing benefit service," and sets forth equations for calculating one's monthly benefit, which show that the benefit is a multiple of the years of benefit service. [63-7, RT-13-14]. The average plan participant would understand from the 1997 SPD that moving out of an eligible employment category would make them ineligible to continue accruing benefits under the Plan. For these reasons, the 1997 SPD complied with ERISA § 102.

The 1999, 2001, and 2003 SPDs state that "[i]f you were employed prior to July 1, 1996, you will cease to accrue benefits under the Retirement Plan if you transfer from the service line in which you were employed on June 30, 1996, to a service line that is not listed below." [63-8, 2]; [63-9, 1]; [63-10, 1]. The average plan participant would understand from this language that transferring to an ineligible employment category (*i.e.*, a service line not listed in the SPD) would make them ineligible to continue accruing benefits under the Plan. Therefore, like the 1997 SPD, these SPDs complied with ERISA § 102. Therefore, Plaintiff's § 102 claim is dismissed.

## C.      Motion to Dismiss on Statute of Limitations Grounds

Defendants move to dismiss most of Plaintiff's remaining claims as untimely. As a threshold matter, the Court notes that, because complaints are not required to anticipate affirmative defenses, dismissal under Rule 12(b)(6) on statute of limitations grounds is considered "irregular." *United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). However, dismissal is appropriate where a plaintiff pleads itself out of court by establishing that a defendant is entitled to a statute of limitations defense. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (motion to dismiss appropriate where "complaint plainly reveals that an action is untimely under the governing statute of limitations"); *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) ("a litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense"). Therefore, the Court will consider whether Plaintiff has pled himself out of court on the remaining claims.

ERISA does not contain a statute of limitations for non-fiduciary duty claims such as those alleged by Plaintiff. See *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 65 (7th Cir. 1996); *Calobrace v. America Nat. Can Co.*, 1995 WL 557410, at *8 (N.D. Ill. Sept. 19, 1995). Therefore, this Court must identify and apply the most analogous state statute of limitations for each of Plaintiff's claims. *Jenkins v. Local 705 Int'l Brotherhood of Teamsters Pension Plan,* 713 F.2d 247, 251 (7th Cir. 1983). To determine the applicable limitations period, the Court must "'characterize the essence' of the federal claim in question and find the most analogous cause of action in Illinois law." *Teumer v. General Motors Corp.*, 34 F.3d 542, 546-47 (7th Cir. 1994).

Even when borrowing a state statute of limitations, this Court looks to federal common law to determine the accrual date of a cause of action. *Daill*, 100 F.3d at 65. The Seventh

Circuit has applied the federal discovery rule to determine when ERISA claims accrue. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1139 (7th Cir. 1992). Under the discovery rule, "a claim accrues once the party performs the alleged unlawful act and once the party bringing a claim discovers an injury resulting from this unlawful act." *Id.* With respect to § 502(a)(1)(B) in particular, the Seventh Circuit has held that claims for benefits due "accrue[] upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary." *Daill*, 100 F.3d at 66.

### 1. Timeliness of Plaintiff's § 204(h) Claims

#### a. Applicable Statute of Limitations

In 1996, ERISA § 204(h) provided that a plan "may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to * * * each participant in the plan." Plaintiff alleges that Defendants violated § 204(h) by failing to provide timely and proper notice of the 1996 amendment; he seeks to have his benefits re-calculated under the terms of the pre-amendment Plan.

In order to determine the applicable state statute of limitations, this Court's first task is to "characterize the essence" of Plaintiff's § 204(h) claims. *Teumer*, 34 F.3d at 546-47. Defendants argue that the § 204(h) claims are statutory interpretation claims that have no counterpart in Illinois law. Therefore, according to Defendants, Illinois's five-year catch-all limitations period for "all actions not otherwise provided for," 735 ILCS 5/13-205, applies to the § 204(h) claims. Defendants rely heavily on *Romero v. Allstate Corp.*, 404 F.3d 212 (3d Cir. 2005), in support of their view of the applicable limitations period. In *Romero*, the Third Circuit

was required to determine the appropriate Pennsylvania statute of limitations to apply to the plaintiff's ERISA §§ 204(g) and 204(h) claims. In a prior case, the Third Circuit had applied Pennsylvania's general six-year limitations period to a § 204(g) claim, reasoning that the claim involved statutory interpretation and had no counterpart in Pennsylvania law. 404 F.3d at 220 (citing *Gluck v. Unisys Corp.,* 960 F.2d 1168 (3d Cir. 1992)). In *Romero*, the parties assumed that Pennsylvania's six-year limitations period applied to both the § 204(g) claim and the § 204(h) claim. *Id.* at 221. The court applied Pennsylvania's six-year limitations period to the § 204(h) claim because, "as pleaded, and as characterized by plaintiffs * * *, the [§§ 204(g) and 204(h)] claims * * * appear[ed to the court] to be intrinsically tied together." *Id.* at 221. However, the court expressly recognized "that an ERISA § 204(h) claim can arise in a context independent of ERISA § 204(g)(2)," and refused to "decide the statute of limitations applicable to every possible iteration of an ERISA § 204(h) claim." *Id.* at 221 n.7. Here, Plaintiff does not even assert a § 204(g) claim. Therefore, the holding in *Romero* – which the court explicitly limited to the situation in which a § 204(h) claim arises in the context of a § 204(g) claim – is not overly helpful.

Plaintiff contends that his § 204(h) claims are governed by Illinois's ten-year statute of limitations for written contracts, 735 ILCS 5/13-206. In support of this position, Plaintiff notes that the Seventh Circuit has held that where a plan participant alleges a § 502(a)(1)(B) claim seeking to recover benefits purportedly due to him under the written terms of an ERISA-governed pension plan, the most analogous Illinois statute of limitations is the 10-year limitations period for suits pertaining to written contracts. *Daill*, 100 F.3d at 65; *Jenkins*, 713 F.2d at 253; *Lumpkin v. Envirodyne Industries, Inc*., 933 F.2d 449, 465 (7th Cir. 1991). Defendants respond that the ten-year statute of limitations is not applicable because the § 204(h)

claims are premised on alleged statutory violations, not on the written terms of the Plan, and thus the claims are not akin to contract interpretation claims. Plaintiff counters that ERISA's statutory requirements – including the notice requirements set forth in § 204(h) – are implied by law as terms of all pension plans governed by ERISA. In support of this claim, Plaintiff points to the Seventh Circuit's decision in *May Dept. Stores Co. v. Federal Ins. Co.*, 305 F.3d 597, 601 (7th Cir. 2002), in which the court reasoned that the provisions of ERISA are implied by law as terms of pension plans governed by the statute. According to Plaintiff, the requirements of § 204(h) are terms of the Plan, and thus claims alleging violations of that statutory provision should be construed as breach of contract claims.

In an effort to determine the essence of Plaintiff's § 204(h) claims, the Court considers what is required to resolve those claims. Plaintiff asks this Court to (1) find that Defendants have violated § 204(h), (2) declare the 1996 Amendment ineffective as to him, and (3) recalculate his benefits under the written terms of the Plan, as they appeared prior to the 1996 Amendment. Therefore, the resolution of Plaintiff's § 204(h) claims requires interpretation and application of both the statute (§ 204(h)) and the Plan. While the claims involve elements of statutory interpretation, the Court concludes that the most analogous Illinois statute of limitations nevertheless is the one for written contracts. Like any plaintiff asserting a claim for benefits, Plaintiff "is seeking pension benefits and a clarification of his rights under the terms of the employee pension benefit plan based on the written terms of the Plan." *Jenkins*, 713 F.2d at 253 (applying Illinois statute of limitations for written contracts to § 502(a)(1)(B) claim); see also *Bilello v. JPMorgan Chase Retirement Plan*, 607 F. Supp. 2d 586, 592 (S.D.N.Y. 2009) (applying New York statute of limitations for written contracts to § 502(a)(1)(B) and § 204(h) claims); *Hirt v. Equitable Retirement Plan for Employees, Managers and Agents*, 450 F. Supp.

2d 331, 333 (applying New York statute of limitations for written contracts to § 204(h) claim), *aff'd*, 285 Fed. Appx. 802 (2d Cir. 2008). Thus, both Seventh Circuit precedent and the recent decisions of other courts in analogous cases support the application of the ten-year limitations period.[9] Because Plaintiff filed this action on June 27, 2008, his claims are untimely unless they accrued on or after June 27, 1998.

### b. Accrual Date of Plaintiff's § 204(h) Claims

The parties also dispute the date on which the § 204(h) claims accrued. In *Daill*, the Seventh Circuit held that "a cause of action [for benefits] accrues upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary." 100 F.3d at 66. In the context of § 204(h), courts have held that a claim accrues when the plaintiff was made aware of a Plan amendment that clearly repudiated his right to continue accruing benefits under the Plan. See *Romero*, 404 F.3d at 224, 226 (3d Cir. 2005) (concluding that § 204(h) claim accrues when plaintiffs "knew or should have known that the amendment has brought about a clear repudiation of certain rights that [plaintiffs] believed [they] had under the plan" and, "correspondingly, that they had not received the required notice"); *Hirt v. Equitable Retirement Plan for Employees, Managers and Agents*, 285 Fed. Appx. 802, 804 (2d Cir. 2008) (affirming district court's holding that § 204(h) claim accrued upon receipt of "a clear repudiation of any pre-amendment benefits that plaintiffs could possibly claim"); *Charles v.*

---

[9] This approach is also consistent with the fact that "ERISA is a remedial statute to be liberally construed in favor of employee fund participants." *Kross v. Western Elec. Co., Inc.*, 701 F.2d 1238, 1242 (7th Cir. 1983). See *Central States, Southeast and Southwest Areas Pension Fund v. Profit-Sharing Plan of G & S Terminals, Inc.*, 1993 WL 735808, at *8 (N.D. Ill. March 26, 1993) (concluding that applying longer of two potentially applicable limitations periods to ERISA claim "would comport with Congressional intent that ERISA be construed broadly in favor of pension fund beneficiaries"); *Christensen v. Chesebrough-Pond's, Inc.*, 1993 U.S. Dist. LEXIS 21278, at *16 (D. Conn. Nov. 24, 1993) (finding application of longer limitations period to ERISA claim to be "consonant with 'the remedial nature of ERISA, and the liberal construction traditionally given to the Act'") (citation omitted).

*Pepco Holdings, Inc.*, 2006 WL 1652749, at *3 (D. Del. June 12, 2006) (§ 204(h) claim accrued when "plaintiffs should have known that the ERISA notice requirements were triggered").

Here, Defendants argue that Plaintiff knew or should have known about the change to his right to accrue benefits under the Plan in 1997, or at the latest in 1999, when the Plaintiff received the SPDs containing descriptions of the Plan's post-amendment eligibility requirements. Plaintiff alleges that the eligibility requirement descriptions in the SPDs were not sufficiently comprehensible (and thus did not constitute a clear repudiation as Defendants contend), and that he was not aware of the 1996 Amendment or its effect on his benefits until July 7, 2003 when, he received the final benefits statement. As noted above, Plaintiff's claims are timely if they accrued on or after June 27, 1998. Therefore, Defendants' motion to dismiss Plaintiff's § 204(h) claims fails unless those claims accrued upon his receipt of the 1997 SPD.

Courts have held that even where a beneficiary does not receive direct notice of a Plan amendment, "a clear description in the SPD [may] put [Plan beneficiaries] on notice of [the] plan's terms, including its clear repudiation of a claim for benefits." *Bilello*, 607 F. Supp. 2d at 593-94 (stating that whether plan documents attached to Plaintiff's complaint established a clear repudiation of the rights giving rise to his claims could be addressed on a motion to dismiss). For example, in a case cited by Defendants, the Second Circuit affirmed the district court's conclusion on summary judgment that the plaintiff's § 204(h) insufficient notice claim "accrued upon the distribution of [an SPD]," where the SPD "'unequivocally repudiated' * * * any pre-amendment benefits that plaintiffs could possibly claim." *Hirt*, 285 Fed. Appx. at 804. As the court in *Fenwick v. Merrill Lynch & Co., Inc.*, 570 F.Supp.2d 366, 371 (D. Conn. 2008) explained, the *Hirt* court's "holding hinged upon the fact that the participants had received a summary plan description that 'unequivocally repudiated' a participant's entitlement to pre-

amendment benefits by 'plainly and accurately' communicating the plan terms *and* distinguishing between pre- and post-amendment benefits." (Emphasis added).

The Court concludes that the *Hirt* court's approach, as amplified in *Fenwick*, provides a sensible way to evaluate the repudiation issue. Here, as the Court found above in the context of Plaintiff's § 102 claim, the first prong of the *Hirt* analysis is satisfied – the 1997 SPD "'plainly and accurately' communicat[ed] the plan terms." *Id.* However, unlike the SPD at issue in *Hirt*, the 1997 SPD did not distinguish between pre- and post-amendment benefits.[10] The failure of the 1997 SPD to identify the differences between the pre- and post-amendment Plans precludes the Court from finding that the 1997 SPD unequivocally *repudiated* Plaintiff's entitlement to pre-amendment benefits. "Repudiate" means "to refuse to have anything to do with; to disown or cast off publicly." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1218 (4th ed. 2007). By not highlighting the distinctions between the old and new versions of the Plan, the SPD cannot be said to have cast off publicly the provisions of the old, pre-amendment Plan. For these reasons, the Court cannot find, at this early stage of the case and on the present record, that Plaintiff's § 204(h) claims accrued prior to June 27, 1998. Accordingly, Defendants' motion to dismiss Plaintiff's § 204(h) claims as untimely is denied.

### 2. Timeliness of Plaintiff's § 502(c) Claim

In Count V, Plaintiff seeks statutory damages pursuant to ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), for Defendants' alleged failure, upon written request, to provide Plaintiff with

---

[10] The Court notes that the subsequent SPDs, including the 1999 SPD, drew at least some distinction between the pre- and post-amendment Plans by highlighting the importance of the amendment's effective date. See [63-8, 2] ("[i]f you were employed prior to July 1, 1996, you will cease to accrue benefits under the Retirement Plan if you transfer from the service line in which you were employed on June 30, 1996, to a service line that is not listed below"). However, the Court need not determine whether the 1999 SPD distinguished sufficiently between pre- and post-amendment benefits to "unequivocally repudiate" Plaintiff's entitlement to pre-amendment benefits, because even if Plaintiff's § 204(h) claims accrued when he received the 1999 SPD, they would not be time-barred.

SPDs that complied with ERISA § 104. In support of Count V, Plaintiff alleges that he made three requests for plan documents – one on July 29, 2003, one on July 27, 2007, and one on November 20, 2007. Defendants move to dismiss the § 502(c)(1) claim arising out of the 2003 request as time-barred. Defendants also seek dismissal of what they characterize as "the ERISA § 104 claim in Count V" on statute of limitations grounds. Because Defendants appear to misconstrue the claims asserted in Count V, the Court will clarify those claims before addressing the statute of limitations issue.

Section 502(c)(1)(B) provides, in pertinent part:

> Any administrator * * * who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary * * * by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

In order to state a claim under § 502(c), a plaintiff "must establish (1) that the administrator was required by ERISA to make available to the participant the information the participant requested, and (2) that the participant requested and the administrator failed or refused to provide the information requested." *Kleinhans v. Lisle Savings Profit Sharing Trust,* 810 F.2d 618, 622 (7th Cir. 1987). Only then will a court consider exercising its discretion to impose a statutory penalty. *Id.*

ERISA requires pension plan administrators to provide, upon written request, various Plan documents, including "a copy of the latest updated summary[] plan description." 29 U.S.C. § 1024(b)(4). ERISA § 104(c), 29 U.S.C. § 1024(c), authorizes the Secretary of Labor to require that Plan administrators provide participants with "a statement of the rights of participants and beneficiaries under this subchapter." Pursuant to this authorization, the Secretary has

promulgated a regulation requiring that SPDs contain such a statement of ERISA rights. See 29 C.F.R. § 2520.102-3(t)(1). Here, Plaintiff claims that Defendants violated § 502(c) by (1) not providing requested information within 30 days, and (2) providing SPDs that failed to contain a statement of ERISA rights, as required by § 104(c) and 29 C.F.R. § 2520.102-3(t)(1).

Contrary to Defendants' apparent understanding, Count V does not assert an independent claim for violation of § 104. Rather, Count V asserts claims under § 502(c)(1), which are premised in part on Defendants' alleged failure to provide SPDs that complied with § 104. In other words, according to Plaintiff, Defendants violated § 502(c) by providing him with SPDs that failed to contain a statement of ERISA rights, as required by § 104 and 29 C.F.R. § 2520.102-3(t)(1).[11] In view of that clarification, the Court need not address Defendants' argument that the § 104 claim in Count V is time-barred.

Defendants also move to dismiss Plaintiff's § 502(c)(1) claim based on the 2003 request as untimely under the most analogous Illinois statute of limitations, which, according to Defendants, is the two-year limitations period for statutory penalty claims, 735 ILCS 5/13-202. Plaintiff maintains that Illinois's ten-year statute of limitations for written contracts, 735 ILCS 5/13-206, applies to Count V.

There is no consensus as to the most appropriate statute of limitations for § 502(c) claims among the circuit courts that have considered the issue. The Fourth and Eighth Circuits have characterized § 502(c) as "a statutory penalty scheme," and held that the forum state's statute of limitations for actions upon a statute for a penalty or forfeiture applies to § 502(c)(1) claims. *Iverson v. Ingersoll-Rand Co.*, 125 Fed. Appx. 73, 76-77 (8th Cir. 2004) (unpublished) (applying

---

[11] See Am. Cmplt. ¶ 14 (describing Count V as seeking "statutory damages against Defendants pursuant to ERISA § 502(c)(1), 29 U.S.C. §1132(c)(1), for failing to provide summary plan descriptions which set out their ERISA rights in compliance with ERISA § 104, 29 U.S.C. § 1024, and the related promulgated regulations.").

North Dakota statute of limitations for "action[s] upon a statute for a penalty or forfeiture" to § 502(c)(1) claim); see also *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 337-39 (4th Cir. 2009) (stating that state statute of limitations for "[a]n action upon a statute for a penalty or forfeiture * * * fit[] precisely with a claim for penalties under 29 U.S.C. § 1132(c) for failure to respond to a request for information"). In contrast, the Ninth Circuit has concluded that § 502(c) is *not* akin to a penalty or forfeiture, but a compensatory remedy, and thus refused to apply the statute of limitations for statutory penalty claims. *Stone v. Travelers Corp.*, 58 F.3d 434, 439 (9th Cir. 1995). In an unpublished opinion, the Fifth Circuit took yet a third approach, applying the state statute of limitations for an action for breach of fiduciary duty to a § 502(c)(1) claim. *Hattenberg v. Red Adair Co. Inc. Employees' Profit Sharing Plan*, 79 Fed. Appx. 709, 715 (5th Cir. 2003).

The Seventh Circuit has not determined what limitations period applies to claims for nondisclosure penalties under § 502(c)(1). However, its decisions provide some guidance on the matter. In *Mondry*, the court reasoned that "the purpose of [§ 502(c)(1)] penalties is to induce the plan administrator to comply with the statutory mandate rather than to compensate the plan participant for any injury she suffered as a result of non-compliance." 557 F.3d at 806. Moreover, in *Anderson v. Flexel, Inc.*, 47 F.3d 243, 247 (7th Cir. 1995), the court stated that it "might be inclined to find that the * * * [state] statute of limitations for statutory penalties applies to § 1132(c) claims," but declined to rule on the issue because the argument had been waived. These cases suggest that, like the Fourth and Eighth Circuits, the Seventh Circuit considers § 502(c)(1) to be penal, not compensatory, and would apply the state statute of

limitations for statutory penalty claims. Therefore, this Court will apply Illinois's two-year limitations period for statutory penalty claims to Plaintiff's § 502(c)(1) claims.[12]

Plaintiff's § 502(c)(1) claim based on his July 29, 2003 request for information accrued when Defendants failed to provide the requested information thirty days after the request was made. See 29 U.S.C. § 1132(c)(1); *Gregorovich*, 602 F.Supp.2d at 517; *Tritt v. Automatic Data Processing, Inc. Long Term Disability Plan Administrator*, 2008 WL 2228841, at *7 (D. Conn. May 27, 2008) ("cause of action under Section 502(c) accrued thirty days after [plaintiff] made * * * request [for plan documents]"). Because that § 502(c)(1) claim accrued for more than two years before Plaintiff filed his initial complaint on June 27, 2008, it is dismissed as untimely. The two remaining § 502(c)(1) claims – those based on Plaintiff's July 27, 2007 and November 20, 2007 requests – are not time-barred. However, Defendants also argue that Plaintiff's § 502(c)(1) claims are subject to dismissal for failure to state a claim; the Court will address that argument next.

### D. Motion to Dismiss § 502(c) Claims

In support of the remaining § 502(c)(1) claims, Plaintiff alleges that on July 27, 2007, he made an express written request for the plan documents in effect during his employment with Accenture, specifically including plan documents containing "the provisions regarding appeal." Am. Cmplt. at ¶ 80. Plaintiff concedes that Defendants responded to this request, and does not

---

[12] A number of district courts that have addressed the issue have reached the same conclusion. See *Lewalski v. Sanlo Mfg. Co., Inc.*, 2009 WL 1370950 (N.D. Ind. May 14, 2009) (applying Indiana's statute of limitations for a forfeiture of penalty provided by statute to § 502(c)(1) claim); *Gregorovich v. E.I. du Pont de Nemours*, 602 F.Supp.2d 511, 517 (D. Del. 2009) ("Because § 502(c)(1) is penal in nature, the most analogous statute must involve an action for a civil penalty and/or forfeiture"); *Kumar v. Higgins*, 91 F.Supp.2d 1119, 1124 (N.D. Ohio 2000) (reasoning that because the Sixth Circuit has characterized "the damages portion of § 1132(c)(1) [as] a penalty[,] * * * the closest analogous state statute of limitations is [the one for] * * * 'action[s] upon a statute for a penalty or forfeiture'"); *Damon v. Unisys Corp.*, 841 F.Supp. 1094, 1097 (D. Colo. 1994) (concluding that "the state law claim most analogous to a § 1132(c) civil penalty claim is an action for civil penalties pursuant to a penal statute").

object to the content of that response. [63, 15]. However, Plaintiff complains that Defendants should be held liable under § 502(c)(1) because they did not respond within 30 days, as the statute requires. Defendants responded to Plaintiff's July 27th request on August 31, 2007 – four days after the August 26th deadline.

Plaintiff alleges that he made another written request for the plan documents on November 29, 2007. Am. Cmplt. at ¶ 81. The November 29th letter requested various documents, including "[a]ny and all Summary Plan Descriptions from January 1, 1995 through December 31, 2003." *Id.* Plaintiff concedes that on January 25, 2008, Defendants responded to that request by providing copies of the 1995, 1996, 1997, 1999, 2001, and 2003 SPDs. *Id.* at ¶ 82. According to Plaintiff, this Court nevertheless should impose penalties on Defendants under § 502(c)(1) based on that response because (1) it was nearly a month late, and (2) the Defendants provided incomplete SPDs. Specifically, Defendants did not send the "General Information" portion of each SPD, which the parties agree sets forth information regarding a participant's ERISA rights and the Plan's administrative claims/appeal procedures.

Defendants move to dismiss the remaining claims in Count V on a number of grounds. First, Defendants argue that Plaintiff's failure to allege harm resulting from any failure to disclose is fatal to his claims. The Seventh Circuit has held that harm or prejudice is not a necessary element to a § 502(c)(1) claim. See *Mondry*, 557 F.3d at 806 (stating that while allegations of harm due to the delay in obtaining documents "is a material consideration [in] * * * the assessment of statutory penalties" under § 502(c)(1), it is "not a prerequisite"); *Harsch v. Eisenberg*, 956 F.2d 651, 662 (7th Cir. 1992) ("the district court may award statutory penalties [under § 502(c)] even when there is no provable injury"). Therefore, Plaintiff's failure to allege harm does not warrant the dismissal of Count V.

Second, although Defendants concede that their responses were untimely, they contend that because (1) the responses were no more than a month late, and (2) Plaintiff alleges no prejudice, this Court should exercise its discretion to decline to impose statutory penalties, and dismiss Count V on that basis. "[T]he length of the delay" and "the existence of any prejudice to the participant or beneficiary" are among the factors courts consider in determining whether to impose a § 502(c)(1) penalty. *Blazejewski v. William E. Gibson Money Purchase Pension Plan and Trust*, 1999 WL 1044892, at *3 (N.D. Ill. Nov. 10, 1999) (citation omitted); see also *Cherry v. Toussaint*, 126 Fed.Appx. 496, 497 (2d Cir. 2005) (identifying length of delay and prejudice as factors district courts should consider in assessing a § 502(c)(1) claim for penalties); *Romero v. SmithKline Beecham*, 309 F.3d 113, 120 (3d Cir. 2002) (same). While the alleged delay is quite short, excessive delay is not an element of a claim for statutory penalties. More importantly, Plaintiff was not required to allege prejudice to state a claim under § 502(c)(1); therefore, it would be manifestly unfair to dismiss his § 502(c)(1) claims for failure to do so. Furthermore, "the presence of injury or prejudice to the plaintiff is a question of fact that cannot be resolved on a motion to dismiss." *Maryonovich v. Market Data Retrieval, Inc.*, 716 F. Supp. 343, 352 (N.D. Ill. 1989) (declining to dismiss § 502(c)(1) claim). In short, it would be premature for the Court to decide whether to exercise its discretion to impose statutory penalties at this stage.

Finally, Defendants refute Plaintiff's claim that they have never provided complete, ERISA-compliant SPDs, arguing that they are not statutorily required to provide the "General Information" portions of the SPDs at issue. According to Defendants, ERISA obligates them to provide only the most recent version of the General Information section, which they claim they did in response to Plaintiff's July 27th request. Defendants contend that they cannot be held liable for failing to provide outdated versions of plan documents, like the General Information

portions of the SPDs at issue.  In support of this position, Defendants cite *Shields v. Local 705, Intern. Broth. of Teamsters Pension Plan*, 188 F.3d 895, 903 (7th Cir. 1999), in which the Seventh Circuit affirmed the district court's dismissal of a § 502(c) claim that was based on the defendant's failure to provide copies the 1989 and 1967 versions of the Pension Plan, on the grounds that "'outdated plan descriptions do not fall into any of the categories of documents a plan administrator must provide to plan participants' under section 1024(b)(4)."  (Citation omitted).

The purpose of ERISA's disclosure requirements is to ensure that individual participants have "the information necessary to determine [their] eligibility for benefits under the plan, to understand [their] rights under the plan, to identify the persons to whom management of plan funds has been entrusted, and to ascertain the procedures [they] must follow in order to obtain benefits." *Mondry*, 557 F.3d at 793 (internal citations omitted).  The ruling in *Shields* is consistent with this statutory purpose – generally, outdated plan documents "are not necessary in order to determine one's rights under the current plan." *Davis v. Retirement Plan of Phibro Animal Health Corp. and Subsidiaries and Affiliates*, 2009 WL 1376245, at *3 (S.D. Ill. May 14, 2009).  In *Mondry*, the Seventh Circuit clarified its holding in *Shields*, recognizing that a plan participant would be entitled to outdated plan documents where a claims administrator expressly relied on such documents because, under those circumstances, the participant would need to "have access to [the outdated documents] in order to understand what the claims administrator [was] doing and to effectively assert his rights under the plan."  557 F.3d at 800.

These cases teach that Plaintiff was entitled to the General Information portions of the outdated SPDs if they contained information necessary for him to understand and assert his rights under the Plan.  Here, Defendants provided Plaintiff with the 2007 version of the General

Information section on August 31, 2007. See [61-17] (listing the 2007 version of the General Information section as an enclosure). The 2007 version contains a statement of Plaintiff's ERISA rights and a description of the appeals procedures, and thus provided Plaintiff with the information he needed to assert his rights under the Plan. Under *Shields* and *Mondry*, Defendants cannot be required also to provide Plaintiff with the General Information portions of the outdated SPDs, which merely would have furnished Plaintiff with duplicative information. Therefore, to the extent that Plaintiff's § 502(c)(1) claim is based on his claim that Defendants failed to provide him with complete, ERISA-compliant SPDs, it is dismissed. However, the Court declines to dismiss Plaintiff's § 502(c)(1) claims to the extent that they are based on the timeliness of Defendant's responses.

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [59]. In particular, Counts I-III, the ERISA § 102 claim in Count IV, the § 502(c)(1) claim based on Plaintiff's July 29, 2003 request for information, and the § 502(c)(1) claim based on Defendants' alleged failure to provide Plaintiff with ERISA-compliant SPDs are dismissed. Defendant's motion to dismiss is denied with respect to the § 204(h) claims asserted in Count IV and the § 502(c)(1) claims based on the timeliness of Defendant's responses to Plaintiff's requests for information asserted in Count V.

Dated: September 3, 2009

_____
Robert M. Dow, Jr.
United States District Judge

33