**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OMAR HAKIM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 08-cv-3682 |
| | ) | |
| ACCENTURE UNITED STATES | ) | Judge Robert M. Dow, Jr. |
| PENSION PLAN, ACCENTURE LLP, | ) | |
| ACCENTURE INC., ACCENTURE LLC, | ) | |
| and ACCENTURE LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are Defendants' motion for summary judgment [72] and Plaintiff's motion for partial summary judgment on Count IV [87].[1]  For the reasons stated below, Defendants' motion for summary judgment [72] is granted in part and denied in part, and Plaintiff's motion for partial summary judgment on Count IV [87] is denied.

**I.     Background**

**A.     Procedural Background**

Plaintiff filed this putative class action against Accenture United States Pension Plan (the "Plan"), Accenture LLP, Accenture Inc., Accenture LLC, and Accenture Ltd. (collectively

---

[1] Also pending before the Court is Defendants' motion to strike portions of Plaintiff's reply in support of his motion for partial summary judgment or to file a surreply [110].  In that motion, Defendants contend that Plaintiff improperly raised two new issues in his reply brief.  In particular, Defendants point to the following arguments: (1) that a May 6, 1999 letter from the American Society of Pension Professionals & Actuaries to the Pension and Welfare Benefits Administration of the Department of Labor supports his position that electronic notice was *per se* impermissible in 1996; and (2) that even if electronic notice was permissible in 1996, Defendants have not provided any evidence that their method of delivery was otherwise sufficient under section 204(h) of the applicable regulations.  Those arguments are not new; rather, they are variations on the arguments Plaintiff advanced in his opening brief.  Therefore, Defendants' motion to file a surreply [110] is denied.  The Court further notes that even if either argument could be considered new, Defendants suffer no prejudice from the Court's denial of their motion, as the Court concludes that neither argument entitles Plaintiff to judgment as a matter of law on Count IV.

"Defendants") alleging violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101 *et seq.* ("ERISA"). On September 3, 2009, the Court dismissed three of Plaintiff's five claims against Defendants. Plaintiff's remaining claims are set forth in Counts IV and V of the first amended class action complaint [29]. Count IV states a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), based on Defendants' failure to provide proper notice of a plan amendment which significantly reduced Plaintiff's benefit as required by 29 U.S.C. § 1054(h) (1996) (a "204(h) notice"). Count V seeks statutory damages pursuant to ERISA § 502(c)(1), 29 U.S.C. §1132(c)(1), for Defendants' alleged failure, upon written request, to provide Plaintiff with Summary Plan Descriptions ("SPDs") that complied with ERISA § 104.

Following the dismissal of Counts I-III, Defendants filed a motion for summary judgment [72] as to the remaining counts. Plaintiff responded by filing a Rule 56(f) motion to deny or stay Defendants' Motion for Summary Judgment [78], arguing, among other things, that he needed to conduct limited discovery in order to respond to certain arguments raised in Defendants' summary judgment motion. Plaintiff also filed a motion for summary judgment as to Count IV. Because Plaintiff's request for discovery related to only some of the grounds raised in Defendants' summary judgment motion, the Court ordered that briefing go forward on those aspects of the cross-motions for summary judgment as to which the parties agreed that no further discovery was required. See [91].[2] In particular, the Court directed the parties to brief the following issues: (1) as to Count IV, whether e-mail notice satisfied ERISA § 204(h) in 1996, and, even if Plaintiff did not receive timely notice, whether Plaintiff suffered prejudice; (2)

---

[2] The remaining issues raised in Defendants' motion for summary judgment [72], as well as Plaintiff's Rule 56(f) motion [78], are currently being held in abeyance. Defendant's motion for summary judgment [72] is denied without prejudice with respect to the issues not addressed in this opinion. Similarly, Plaintiff's Rule 56(f) motion [78] is denied without prejudice. Defendants are free to seek summary judgment on the grounds not addressed in this opinion if they so choose. If Defendants do so and Plaintiff believes that he needs additional discovery to respond, he may file another Rule 56(f) motion.

whether the release Plaintiff signed when he left Accenture in 2003 bars his claims in Count IV;

(3) whether Plaintiff is entitled to the statutory penalties he seeks in Count V; and (4) whether all

Defendants are proper defendants as to each count.

### B. Factual Background

The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1

statements[3]: Defendants' Statement of Facts ("Def. SOF") [74], Plaintiffs' Response to

Defendants' Statement of Facts and Statement of Additional Facts ("Pl. SOAF") [99],

Defendants' Response to Plaintiffs' Statement of Additional Facts ("Def. Resp.") [108],

Plaintiff's Statement of Facts ("Pl. SOF") [89], Defendants' Response to Plaintiffs' Statement of

Facts ("Def. SOAF") [101], Plaintiff's Response to Defendants' Statement of Additional Facts

("Pl. Resp.") [106].

Plaintiff was an employee of Accenture LLP between October 4, 1993 and May 16, 2003.

Def. SOF ¶¶ 9, 35. When he was hired in the Las Colinas office, Plaintiff participated in the

Plan. Def. SOF ¶¶ 9, 11. The Plan is a "defined benefit plan" within the meaning of ERISA.

---

[3] L.R. 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See*, e.g., Koszola v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See*, e.g., Malec,* 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec,* 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 528 (7th Cir. 2000). In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See*, e.g., Malec,* 191 F.R.D. at 584 (citing *Midwest Imports,* 71 F.3d at 1317). Similarly, the Court disregards a denial that, although supported by admissible record evidence, does more than negate its opponent's fact statement – that is, it is improper for a party to smuggle new facts into its response to a party's L.R. 56.1 statement of fact. See*, e.g., Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

Def. SOF ¶ 4.  Accenture LLP is an Illinois limited liability partnership with a total of two partners: Accenture Inc. and Accenture LLC.  Def. SOF ¶ 5.  Accenture LLP is the "Plan administrator."  Def. SOF ¶ 6.  The Plan provides that, as the Plan administrator, Accenture LLP has the sole and exclusive discretion to determine the eligibility of employees for and the amount of benefits under the terms of the Plan.  Def. SOF ¶ 7.  The Plan also authorizes Accenture LLP to amend the Plan at any time.  Def. SOF ¶ 8.

At the time that Plaintiff was hired, the Plan provided that all associate partners were considered to be eligible employees, regardless of the service line in which they were employed, and that all other employees were considered to be eligible employees unless they worked in the following service lines: (i) Strategic Services; (ii) Change Management Services; and (iii) Systems Integration.  Def. SOF ¶ 13.  Plaintiff was an eligible employee when he was hired.  On June 13, 1996, Accenture LLP (then operating as Andersen Consulting LLP) adopted an amendment to the Plan, to be effective on July 1, 1996 (the "1996 Amendment"), which altered the Plan's eligibility rule.  Def. SOF ¶ 14.  The 1996 Amendment amended Section 2.2(b) of the Plan to provide that only certain categories of employees in would be considered to be eligible employees.  Def. SOF ¶ 15.  The amended Section 2.2(b) further provided that each employee who was employed prior to July 1, 1996 and was an eligible employee under the prior Plan would remain an eligible employee after July 1, 1996, so long as that employee did not transfer service lines.  *Id.*  However, the amended eligibility rule provided that if an employee transferred to an ineligible service line, that employee would cease to be an eligible employee on the later of (A) July 1, 1996, or (B) the date of the employee's transfer.  *Id.*

On June 13, 1996 at 4:57 p.m., Jeanette Harris, Executive Assistant to Julianne Grace, sent an e-mail directing all US Office Human Resources ("HR") Leads to:

> Please distribute the following memo and attachment to all personnel in your location. The memo notifies employees of the changes in retirement eligibility and is similar to the memo distributed earlier to all of HR. The attachment is a legally required document that must be delivered no later than Friday afternoon, June 14, 1996.

Def. SOF ¶ 16. On June 14, 1996, Vickie Lee, the HR Lead for the Dallas, Infomart and Las Colinas office locations in the Dallas Metro Area, directed Rene Edwards, People Values Culture ("PVC") manager for the Dallas Metro offices, to provide the June 13, 1996 Notice of Change in Benefit Accruals memorandum and attachment regarding the July 1, 1996 Amendment to the Plan to all Dallas, Infomart, and Las Colinas personnel. Def. SOF ¶ 17. At approximately 4:30 p.m. on July 14, 1996, Rene Edwards distributed the June 13, 1996 memorandum and attachment via e-mail to all Dallas, Infomart, and Las Colinas personnel. Def. SOF ¶ 18. The e-mail indicates that it was sent to various distribution lists, including one labeled "LasColinas.Personnell.All.AC." Ex. A to Ex. 3 to [74]. Plaintiff was an employee in the Los Colinas office at that time. However, he denies ever receiving the memorandum and attachment via e-mail from Rene Edwards. At least two other employees in the Las Colinas office did receive the notice. Def.'s SOAF ¶ 11.

The memorandum stated, in relevant part:

> If, at any time, a retirement eligible employee transfers to a non-eligible group, as described above, s/he will remain a plan member but will become inactive. Only those years accrued as an active member qualify as benefit service for the employee. (Employees continue to accrue vesting service even as inactive members.) * * * If an employee transfers from the service line of Andersen Consulting LLP in which the employee was employed on June 30, 1995, to an ineligible category, the employee will cease accruing benefits as of the later of (a) July 1, 1996, or (b) the date of transfer to the ineligible category. Only those years accrued as an active member qualify as benefit service for the employee. (Employees continue to accrue vesting service even as inactive members.)

Def. SOF ¶¶ 19-20. Attached to the memorandum was the "Notice of Change in Benefit Accruals," which summarized the amendment and stated that "The Plan amendment is effective

July 1, 1996.  This notice is being provided to you pursuant to the requirements of Section 204(h) of the Employee Retirement Income Security Act of 1974 (ERISA)."  Def. SOF ¶ 21.

In 1997, Andersen Consulting LLP issued a 1997 SPD for the Plan.  Def. SOF ¶ 23.  At that time, Andersen's benefits department sent out packets to all personnel summarizing the changes to the SPD.  Def. SOF ¶ 27.  In 1999, Andersen created a Benefits Information database and sent an e-mail to all personnel telling them how to view the SPDs electronically.  Def. SOF ¶ 28.  That year's SPD is dated October 1999.  Pl. SOAF ¶ 63.

In 1999, Plaintiff was promoted into a new service line within Andersen Consulting LLP. Def. SOF ¶ 29.  Plaintiff testified that he began negotiating with Andre Hughes about a promotion and transfer in the summer of 1999, and that he began performing his job duties for his new position in September of 1999.  Pl. SOAF ¶¶ 49-50.  Accenture denies that it negotiates the terms of individual transfers and promotions with employees at Plaintiff's level.  Plaintiff's promotion officially took effect on December 16, 1999.  Def. SOF ¶ 29.  Plaintiff requested a retroactive pay raise for the time he spent working in his new position prior to December 16, 1999. Pl. SOAF ¶ 54. Accenture's Human Resources Department paid Plaintiff retroactive pay for the period October 1, 1999 through December 16, 1999.  Pl. SOAF ¶ 55; see also Ex. 1 to Ex. B to [99] (HR employee transfer form stating that Plaintiff "was approved for a transfer to C&HT LoB-NT with a salary increase reflective of his eCommerce premium, effective 10/1/99").

Plaintiff's new service line was an ineligible service line under the 1996 Amendment. Def. SOF ¶ 32.  Therefore, Plaintiff stopped accruing additional benefit service in December 1999.  On June 30, 2000, Plaintiff received an individual benefit statement stating:

> Because of your current employment classification, you are ineligible to participate in the Retirement Plan. However, you have engaged a monthly benefit

based on your prior period(s) as an eligible employee. Contact the Andersen Consulting Benefits Information Center and select the Retirement Plan option if you would like more information.

Def. SOF ¶ 33.

Plaintiff left employment at Accenture on May 16, 2003 as part of a reduction in force.

Def. SOF ¶¶ 35, 37. Accenture LLP offered all employees affected by the reduction in force a Separation Benefits Plan in exchange for signing a Release. Def. SOF ¶ 37. Plaintiff accepted the offer of Separation Benefits and signed the seven-page Agreement containing the Release on May 15, 2003. Def. SOF ¶¶ 38, 43. The Release stated:

> As a material inducement to Accenture to enter into this Agreement and as part of the consideration for the Separation Benefits offered to you, to which you agree you are not otherwise entitled, you hereby forever release, waive and discharge Accenture LLP, its parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and all of their present and former directors, officers, partners, employees, representatives, fiduciaries, attorneys and agents ("Released Parties") from any and all claims of any nature whatsoever, known or unknown which you now have, or at any time may have had, against the Released Parties up to and including the date you sign this Agreement ("Claims"). This General Release of Claims includes, without limitation, any Claims related to your employment, your activities on behalf of Accenture and its predecessors, parent, subsidiaries, divisions and affiliates, the termination and layoff of your employment, Claims of wrongful discharge, Claims for the payment of any salary, wages, bonuses and commissions, Claims of discrimination under the common law or any federal or state statute (including, without limitation, Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, all as amended), Claims relating to the Company's intellectual property, confidential and proprietary information and trade secrets, Claims of misrepresentation, Claims of detrimental reliance, and all other statutory, common law or other Claims of any nature whatsoever. This General Release of Claims does not apply to any Claims concerning breach of this Agreement or any Claims arising after you sign this Agreement.

Def. SOF ¶ 39. On or about July 7, 2003, Hakim received a final statement of benefits from Accenture LLP showing that he stopped accruing pension benefits under the Plan on December 16, 1999. Def. SOF ¶ 36.

On July 27, 2007, Plaintiff pursued an administrative claim for additional benefits under the Plan, which the Accenture ERISA Benefit Claims Committee (the "Committee") denied on November 20, 2007. Def. SOF ¶ 44. Plaintiff appealed the denial of his claim for benefits, and his appeal was denied on April 2, 2008. Def. SOF ¶ 46.

Also on July 27, 2007, Plaintiff sent a written request for plan documents to Defendants. Pl. SOAF ¶ 71. Defendants responded to Plaintiff's July 27, 2007 written request on August 31, 2007. Pl. SOAF ¶ 72. Plaintiff requested additional documents on November 29, 2007. Pl. SOAF ¶ 73. Defendants responded to Plaintiff's second written request on January 25, 2008. Pl. SOAF ¶ 74.

## II.    Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III.   Analysis

### A.   Count IV

#### 1.   Proper Defendants

As an initial matter, the Court must determine whether all five named Defendants are proper parties with respect to Count IV. Defendants contend that the Plan is the only proper defendant as to that count, in which Plaintiff asserts a claim for plan benefits. "Generally, in a suit for ERISA benefits, the plaintiff is 'limited to a suit against the Plan.'" *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 610 (7th Cir. 2007) (quoting *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan,* 378 F.3d 669, 674 (7th Cir. 2004)); see also *Neuma, Inc. v. AMP, Inc.,* 259 F.3d 864, 872 n.4 (7th Cir. 2001) ("We have continually noted that 'ERISA permits suits to recover benefits only against the Plan as an entity.'") (quoting *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1490 (7th Cir. 1996)). However, the Seventh Circuit has allowed plaintiffs to sue a party other than the plan in a claim for ERISA benefits "in some limited instances," including where the plan administrator and the plan are closely intertwined. *Mote*, 502 F.3d at 610-11.

In support of his contention that all of the named Defendants should remain in the lawsuit, Plaintiff relies principally on *Mein v. Carus Corp.*, 241 F.3d 581 (7th Cir. 2001), a case in which the Seventh Circuit found that the employer and the plan were sufficiently closely

intertwined to allow the plaintiff to assert a claim for benefits against the employer. As the court repeatedly noted, the facts of the case were highly unusual and in some respects defied common sense. Most notably, the plaintiff insisted that he did not have a claim against the plan and only reluctantly added the plan as a defendant (*id*. at 584) even though his claim "involve[d] a matter of plan interpretation, and plan interpretation is a matter for the plan administrator." *Id*. at 585. In those circumstances, the court of appeals held that because (1) the SPD referred to the employer, not the plan, making "the close relationship between the corporation [(*i.e.*, the employer)] and the plan * * * evident"; (2) the employer was the designated agent for legal process is the corporation; and (3) the employer was plan administrator, and had "complete control of the administration of the Plan," the plaintiff "avoided pleading himself out of court" notwithstanding his insistence that he had no claim and sought no relief against the plan itself and instead sought recovery only from his employer. *Id.* At the same time, the court reiterated that "ordinarily" a plaintiff should name the plan as a defendant in a suit for benefits under ERISA (*id*. at 584) and added that "it is silly not to name the plan as a defendant in an ERISA suit" (*id*. at 585).

In another of the cases illustrating the limited exceptions to the ordinary rule, the Seventh Circuit allowed the plaintiff to proceed against the employer, rather than the plan itself, where "the exact relationship between [the employer] and the plan [was] not clearly set out." *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (1997). In particular, the court noted that the "plan documents themselves refer[red] to [the employer] and the plan nearly interchangeably, and the company designated itself as the plan's agent for service of process." *Id.* The *Riordan* court also was persuaded by the fact that the company did not move for summary judgment on the ground that it was not the proper defendant. *Id.* Since *Riordan*, courts in this district have

noted that where the Seventh Circuit has made exceptions to the general rule barring claims for ERISA benefits against entities other than the plan, it often has done so because some confusion existed as to the identity of the Plan. See *Zuckerman v. United of Omaha Life Ins. Co*., 2010 WL 2927694, at *2 (N.D. Ill. July 21, 2010) ("exceptions allow a plaintiff to proceed against a party other than the plan – specifically the employer – when the identity of the plan is not discernable because of the close relationship between the employer and the plan."); *Leonardo v. Health Care Service Corp.*, 2010 WL 317520, at *5 (N.D. Ill. Jan. 20, 2010) ("the Seventh Circuit generally uses the 'closely intertwined' exception as a means to allow suit in the face of confusion or uncertainty.").

Here, Plaintiff contends that, under the standard established in *Mein*, his claim for benefits should be permitted to go forward against all five named Defendants.[4] With respect to his employer, Accenture LLP, Plaintiff claims that the employer and the Plan are sufficiently closely intertwined to allow the claim against Accenture LLP to go forward. In particular, Plaintiff notes that Accenture LLP (1) is the Plan sponsor and administrator; (2) has the authority to modify, amend, and terminate the Plan; and (3) accepts legal service of process on behalf of the Plan.

Although the question is not entirely free from doubt, the Court concludes that the rationales for the limited exceptions that the Seventh Circuit has recognized to the usual rule that a suit for ERISA benefits can be maintained "only against the Plan" (*Neuma,* 259 F.3d at 872 n.4) are not present in this case. This is not a case like *Mein*, where keeping the employer in the case may be necessary to secure an opportunity to pursue full relief for the plaintiff. In addition,

---

[4] Plaintiff also contends that two entities that are not named as defendants – Accenture SCA and Accenture PLC – are closely intertwined with the Plan and thus would be proper defendants on a claim for benefits. Because neither Accenture SCA nor Accenture PLC currently is a party to this case, the Court declines to consider whether Plaintiff hypothetically could assert a claim for benefits against either entity.

as Defendant observes, Plaintiff here seeks pension benefits under a plan that is funded not from the employer's general assets, but rather by a separate trust. Nor is this a case like *Riordan*, where confusion exists as to the separate identities of the plan and the employer. Plaintiff does not contend than any confusion exists as to the separate identities of the Plan and the other Defendants.[5] Consequently, summary judgment is granted for Accenture Ltd., Accenture Inc., and Accenture LLC, and Accenture LLP on Count IV.

### 2. The Release Does Not Bar Plaintiff's Claim for Benefits

Defendants contend that the release Plaintiff signed when he left Accenture in May 2003 bars the claim set forth in Count IV. The release stated, in pertinent part:

> As a material inducement to Accenture to enter into this Agreement and as part of the consideration for the Separation Benefits offered to you, to which you agree you are not otherwise entitled, you hereby forever release, waive and discharge Accenture LLP, its parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and all of their present and former directors, officers, partners, employees, representatives, fiduciaries, attorneys and agents ("Released Parties") from *any and all claims of any nature whatsoever, known or unknown which you now have*, or at any time may have had, against the Released Parties up to and including the date you sign this Agreement ("Claims"). This General Release of Claims includes, without limitation, any Claims related to your employment, your activities on behalf of Accenture and its predecessors, parent, subsidiaries, divisions and affiliates, the termination and layoff of your employment, * * * and all other statutory, common law or other Claims of any nature whatsoever. This General Release of Claims *does not apply to * * * any Claims arising after you sign this Agreement*.

(emphasis added).

Plaintiff responds that the release does not bar his ERISA claim for additional benefits for two reasons. First, Plaintiff maintains that his claim for benefits did not accrue until Defendants denied his administrative claim for benefits on April 2, 2008. Because the release does not apply

---

[5] The facts that Accenture Ltd. may have a role in maintaining and/or administering the Plan and that Accenture Inc.'s Finance Committee is responsible for "review[ing] and recommend[ing] to the Board [of Directors] on funding and oversight of various pension, 401(k) and benefit plans of the Company" do not give rise to the type of confusion at issue in *Mein* and *Riordan*.

to claims arising after Plaintiff signed it on May 15, 2003, Plaintiff maintains that the release cannot bar his claim for benefits. Second, Plaintiff argues that ERISA's "anti-alienation" provision prohibits the release of ERISA claims through a general release. As discussed below, the Court finds that, by virtue of the anti-alienation provision of ERISA, the release cannot bar Plaintiff's claim for benefits. Therefore, the Court need not determine when Plaintiff's claim accrued.

ERISA's anti-alienation provision provides that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Under Seventh Circuit precedent, "[p]ension entitlements are, without exception, subject to the anti-alienation provision of ERISA," but "[c]ontested pension claims * * * are 'simply outside the realm of the provision.'" *Lynn v. CSX Transp.*, 84 F.3d 970, 975 (7th Cir. 1996) (citation omitted). Therefore, the pertinent question is whether Plaintiff's claim for benefits was a pension entitlement or a contested pension claim at the time he signed the release; Plaintiff's claim for benefits is barred by the release only if it was the latter.

"A contested pension claim * * * arises under a settlement agreement." *Lynn*, 84 F.3d at 975. A claim can be either actually or constructively contested. *Id.* A constructively contested claim is one that "the claimant had actual or constructive knowledge of * * * at the time of signing the release," such "that it could have been contested and resolved at the time the release was entered into (but was not)." *Id.* In determining whether a claim may be considered contested, the pertinent inquiry is not whether "the parties actually wrangled over a particular claim," but "whether the claimant knew of the claim and knowingly relinquished it (relinquishment of course including failure to act or to raise the issue at all)." *Id.* With respect to "whether a retiree knowingly relinquished a claim, the court must look to all of the

circumstances to determine what the claimant knew or reasonably should have known." *Id.* at 976.

A pension entitlement, in contrast to a contested claim, arises under the terms of the pension plan itself. *Lynn*, 84 F.3d at 975. In distinguishing between pension entitlements and contested pension claims, the *Lynn* court explained that "[a] release may prevent a plan participant from asserting claims based on a settlement agreement," meaning contested pension claims, "but may not bar claims based on pension entitlements." *Id.* at 975. Here, Plaintiff's claim arises out of the Plan itself, not the terms of the release. Like the plaintiff in *Lynn*, Plaintiff is asking the Court to interpret the pension plan itself, not the language of the release. *Id.* at 976-77. Therefore, as in *Lynn*, Plaintiff's claim is not barred by the release. See also *Boeckman v. A.G. Edwards, Inc.*, 461 F. Supp. 2d 801, 813 (S.D. Ill. 2006) (finding that plaintiff's claim for benefits asserted "rights that arise under the Plan and ERISA, not the release," and therefore was a "pension entitlement" subject to ERISA's anti-alienation provision that could not be barred by the release of claims plaintiff executed as a condition of receiving a severance package when he left his employment with defendant).

### 3. The Propriety of E-Mail as a Method to Distribute an ERISA § 204(h) Notice in 1996

In 1996, ERISA § 204(h) stated:

(h) Notice of significant reduction in benefit accruals

(1) A [defined benefit] plan * * * may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to—

(A) each participant in the plan.

ERISA § 204(h)(1), 29 U.S.C. § 1054(h)(1) (1996). The parties do not dispute that the 1996 amendment effected a "significant reduction in benefit accruals," such that plan participants, including Plaintiff, were required to be given notice pursuant to § 204(h) in order for the amendment to take effect. See *Production and Maintenance Employees Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992) ("an amendment reducing the rate of future benefit accruals adopted without proper notice under § 204(h) is ineffective"). What they dispute is the propriety of using e-mail to distribute a § 204(h) notice in 1996. Plaintiff contends that e-mail was not an acceptable method of communicating important benefit information to Plan participants in 1996. Consequently, according to Plaintiff, the notice sent by Defendants by e-mail on June 14, 1996 did not satisfy the requirements of ERISA § 204(h).

The regulations that implemented ERISA § 204(h), which were promulgated in temporary form in 1995 and were in effect in 1996, required the plan administrator to "use any method reasonably calculated to ensure actual receipt." See 26 C.F.R. § 1.411(d)-6T (1996); 60 Fed. Reg. 64,320 (Dec. 15, 1995). The regulation went on to specify that "[f]irst class mail to the last known address of the party is an acceptable delivery method. Likewise, hand delivery is acceptable." *Id.* Based on that language, Plaintiff invokes the canon of construction that *expressio unius est exclusio alterius* – the expression of one thing is the exclusion of another – to argue that, in 1996, first class mail and hand delivery were the *only* acceptable methods of providing § 204(h) notice. The Seventh Circuit has expressed skepticism regarding the application of that maxim, noting that "the omission of other items from a list may reflect no more than a belief that other options are provided for elsewhere." *In re Matter of Continental Cas. Co.,* 29 F.3d 292, 294 (7th Cir. 1994). The Court is not persuaded to apply the maxim as Plaintiff wishes in this case. Plaintiff would have the Court read the phrase authorizing the "use

any method reasonably calculated to ensure actual receipt" out of the regulation entirely.  If the Secretary of the Treasury intended to approve only the use of first class mail and hand delivery, then the reference to "any method reasonably calculated to ensure actual receipt" would have been unnecessary.  The better reading of the regulation, in the Court's view, is that first class mail and hand delivery simply are examples of delivery methods that were considered to be "reasonably calculated to ensure actual receipt" in 1996.

The regulations have since been amended to authorize the provision of ERISA § 204(h) notice in electronic form using so-called "new technologies."  In particular, Congress amended ERISA § 204(h)(7) in 2001 to provide that "[t]he Secretary [of Treasury] may by regulations allow notice under this subsection to be provided by using new technologies." See Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. No. 107-16, 115 Stat. 38 (2001). Pursuant to that authorization, on April 9, 2003, the Secretary of Treasury issued final regulations providing guidance as to the requirements imposed by § 204(h), including 26 C.F.R. § 54.4980F-1, which governs electronic 204(h) notice today. See 67 Fed. Reg. 19, 713 (Apr. 23, 2002); 68 Fed. Reg. 17,277 (Apr. 9, 2003).  The regulations now provide that "[a] plan administrator (including a person acting on behalf of the plan administrator, such as the employer or plan trustee) must provide section 204(h) notice through a method that results in actual receipt of the notice or the plan administrator must take appropriate and necessary measures reasonably calculated to ensure that the method for providing section 204(h) notice results in actual receipt of the notice."  26 C.F.R. § 54.4980F-1 (Q&A 13).  The regulations further state that "Section 204(h) notice must be provided either in the form of a paper document or in an electronic form that satisfies the requirements of paragraph (c) of this Q&A-13." *Id.*

According to Plaintiff, the fact that electronic notice was not expressly contemplated by Congress or the Secretary of the Treasury until 2001 at the earliest compels the conclusion that e-mail was not a permissible form of notice in 1996. The Court disagrees. The change in the regulations simply acknowledges that as of the date of the change electronic methods of delivery were considered sufficiently reliable to result in the actual receipt of the notice. But the fact that the prior regulation did not expressly mention electronic delivery methods does not necessarily mean that delivery by e-mail was not "reasonably calculated to ensure actual receipt" in 1996.

Few courts have considered what constitutes a proper method of delivery for purposes of an ERISA § 204(h) notice. In *Hirt v. Equitable Ret. Plan*, 441 F. Supp. 2d 516, 542 (S.D.N.Y. 2006), the court considered whether "hand delivery of notices to participants' desks and/or cubby holes" was an appropriate method of delivery under ERISA § 204(h). The court concluded that such a method could meet the statutory standard "provided that there is assurance that procedures for distribution actually were followed and that they were effective." *Id.* at 542. The court concluded that one notice distributed by that method "was not distributed in a way reasonably calculated to ensure its receipt." *Id.* at 543. In reaching that conclusion the court noted the following: (1) the notice was "not individually addressed to recipients" and "was not accompanied with instructions regarding who was to receive it"; (2) the notice appeared "insignificant" and consequently "was not treated as priority material"; and (3) "[n]early none of Plaintiffs' witnesses remembered having received the 1990 Notice." *Id.* at 542-43. The court also was troubled by "[t]he absence of a corporate written protocol covering" the delivery of the notice, which the court found made "it difficult to make a reliable finding that Equitable's delivery system was reasonably calculated to cause notices of amendments to be given to each participant." 441 F. Supp. 2d at 542. By contrast, the court found that two other notices

delivered by hand delivery met the statutory standard. The court was persuaded by a number of factors, including: (1) the notices took the form of multi-page booklets that were too important looking to be lost in the shuffle in the mailroom; (2) the notices were distributed directly to employees' desks; and (3) witnesses testified that they remembered receiving them. *Id.* at 543.

Here, Plaintiff has testified that he did not receive the notice. There is evidence in the summary judgment record that at least two other employees in the Las Colinas office did receive the notice. Def.'s SOAF ¶ 11. However, that two employees received the notice is not sufficient for the Court to determine, as a matter of law, that the use of e-mail was reasonably calculated to result in actual receipt of the notice. The notices were not sent to individual e-mail addresses, but were sent using group distribution lists. While the use of distribution lists is not inherently less reliable than the use of individual addresses, here, Defendants cannot identify the individuals included on those group e-mail lists. Therefore, whether the notice even was sent to Plaintiff is not clear. Further, like the *Hirt* court, the Court finds that the lack of any written protocol or other system by which Defendants could confirm that the e-mails were in fact received makes it difficult to make a reliable finding that delivery by e-mail was reasonably calculated to cause notices of amendments to be given to each participant. 441 F. Supp. 2d at 542. It is common knowledge that not every e-mail that is sent arrives safely in the intended inbox. As anyone who has received a "failed delivery" e-mail from mailer-daemon knows, various problems can prevent the delivery of an e-mail message. For example, a message may be undeliverable because the recipient's address is misspelled, or because the recipient's inbox has reached its maximum capacity. Based on the current record, the Court finds that there is a genuine issue of material fact as to whether Defendants' use of e-mail was reasonably calculated to ensure delivery. For that reason, Plaintiff motion for partial summary judgment is denied.

### 4. Whether the 1997 or 1999 SPD Satisfied the Requirements of ERISA § 204(h)

Defendants contend that even if the 1996 e-mail notice did not satisfy the requirements of ERISA § 204(h), Plaintiff received adequate notice of the amendment in the form of either the 1997 SPD or the 1999 SPD. Courts have held that an SPD "can qualify as notice of a plan amendment pursuant to ERISA section 204(h)." *Hirt*, 441 F. Supp. 2d at 539; see also, *Normann v. Amphenol Corp.*, 956 F. Supp. 158, 166 (N.D.N.Y. 1997) (recognizing that SPD can satisfy the notice requirements of § 204(h)); *Taylor v. Pension Plan*, 2009 WL 1812794, at *7 (D. Ma. June 11, 2009) (finding that SPD provided sufficient notice of amendment to satisfy § 204(h)). The Court agrees that an SPD can provide ERISA § 204(h) notice so long as it satisfies the requirements of ERISA § 204(h). In particular, to satisfy ERISA § 204(h), an SPD must (1) be "a written notice," (2) "set[] forth the plan amendment and its effective date," and (3) be provided to "each participant in the plan." 29 U.S.C. § 1054(h). Of course an ERISA § 204(h) notice – regardless of what form it takes – also must be provided to plan participants "not less than 15 days before the effective date of the plan amendment." *Id.*; see also *Hurlic v. So. Cal. Gas Co.*, 539 F.3d 1024, 1039 (9th Cir. 2008) (SPD did not satisfy ERISA § 204(h) where it was not provided fifteen days prior to the effective date of the amendment).

Here, neither SPD was distributed prior to the effective date of the 1996 amendment. According to Defendants, if either SPD met the substantive requirements of ERISA § 204(h), and Plaintiff received that SPD before transferring to an ineligible service line in 1999, then Plaintiff suffered no harm and the Court should decline to find an ERISA § 204(h) violation. Put differently, Defendants contend that the 1996 amendment became effective – at the latest – when Plaintiff received § 204(h) notice in the form of the 1997 SPD or the 1999 SPD, both of which Defendants contend Plaintiff received prior to transferring to an ineligible position. Even if

Defendants are correct that tardy notice (*i.e.*, notice not provided fifteen days prior to the effective date) can satisfy the statutory requirement where a plan participant receives the notice before suffering any harm, the Court nevertheless must deny Defendants' motion for summary judgment as to Count IV because the Court cannot find as a matter of law that either of the SPDs provided proper § 204(h) notice.

The 1997 SPD did not give adequate notice to plan participants about the 1996 amendment. The 1997 SPD explains that "as long as you remain in an eligible employment category, you are an active plan member. If you transfer or are promoted out of an eligible employment category, you become inactive, however, you are still a plan member." The SPD sets forth a list of eligible employment categories, which includes "certain grandfathered personnel." The 1997 SPD defines an "Inactive Plan Member" as: "An active plan member who moved out of an eligible employment category." As the Court noted in its September 3, 2009 order, the 1997 SPD does not distinguish between pre- and post-amendment benefits. Therefore, in order to discover what changes were made by the amendment, participants would have had to review the SPDs and Plan information that they had received previously. See *Hirt*, 441 F. Supp. 2d at 537 (finding that notice that "did not offer a comparison of benefits under the [amended] plan to those under the former plan," and thus required participants to review old documents to understand the reductions in benefits that would result from the amendment, failed to provide adequate notice pursuant to § 204(h)). More importantly, the SPD does not specify how grandfathered employees like Plaintiff might trigger the significant reduction in retirement benefits produced by the amendment. As an initial matter, the SPD does not explain which employees are considered grandfathered. Furthermore, the SPD does not explain that an employee could move out of the category of "certain grandfathered personnel" by transferring

positions within the company. A plan participant reading the 1997 SPD might easily conclude that once one is "grandfathered," one cannot move out of that category. For these reasons, the Court determines that the 1997 SPD did not constitute proper § 204(h) notice.

The 1999 SPD is more clear regarding the impact of the 1996 amendment, stating "[i]f you were employed prior to July 1, 1996, you will cease to accrue benefits under the Retirement Plan if you transfer from the service line in which you were employed on June 30, 1996, to a service line that is not listed below." However, the Court need not decide whether the 1999 SPD provided adequate § 204(h) notice because there is a genuine issue of material fact regarding when Plaintiff received that SPD, which precludes summary judgment. As noted above, to the extent that the 1999 SPD can satisfy § 204(h), it can only do so if Plaintiff received the notice before deciding to accept the promotion and transfer, such that he understood the impact of that decision – namely, that by transferring he would cease to accrue benefits under the Plan.

According to Defendants, Plaintiff was not officially transferred until December 16, 2009. However, the record evidence indicates that Plaintiff began performing his new position's job duties in October of 1999. Indeed, Defendants concede that they paid Plaintiff at his new position's higher salary for the work he completed beginning in October 1999. Therefore, Plaintiff must have made the decision to accept the transfer in early October 1999 at the latest. The 1999 SPD is dated October 1999. Because the exact date on which the SPD was distributed to Plan participants is not clear from the summary judgment record, there is a genuine issue of material fact as to whether Plaintiff received the 1999 SPD before accepting the transfer. For that reason, Defendants motion for summary judgment as to Count IV must be denied.

### B. Count V

#### 1. Proper Defendants

Defendants submit that Accenture LLP is the only proper defendant as to Count V because the Plan administrator is the only proper defendant under ERISA Section 502(c). The Court agrees. The Seventh Circuit has held that "liability under section 1132(c)(1) is confined to the plan administrator and [has] rejected the contention that other parties * * * can be held liable for the failure to supply participants with the plan documents they seek." *Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781 (7th Cir. 2009) (collecting cases). Therefore, summary judgment is granted in Defendants favor on Count V as to the Plan, Accenture Inc., Accenture LLC, and Accenture Ltd.

#### 2. Analysis

ERISA section 502(c)(1) establishes a thirty-day deadline for plan administrators to respond to requests for information, and allows courts the discretion to impose up to a $100 a day penalty on plan administrators who fail or refuse to comply with such a request for information. See 29 U.S.C. § 1132(c)(1) (1996). In Count V, Plaintiff seeks a statutory penalty under ERISA section 502(c)(1), for Defendants' failure to timely respond to Plaintiff's written requests for Plan documents. Plaintiff's § 502(c)(1) claim is based on requests for information that he made on July 27, 2007 and November 29, 2007. It is undisputed that Defendants responded to both of Plaintiff's requests, but that they failed to do so within 30 days, as the statute requires. Rather, Defendants responded to the two requests on August 31, 2007 and January 25, 2008 – four and twenty-seven days late, respectively. Defendants have offered no explanation for their delay in responding.

The decision to award statutory penalties lies in the trial court's discretion. See *Jacobs v. Xerox Corp. Long Term Disability Income Plan*, 520 F. Supp. 2d 1022, 1030 (N.D. Ill. 2007); 29

U.S.C. § 1132(c)(1). In deciding whether to assess a section 502(c) penalty, courts may consider various factors, including (1) the length of delay; (2) the number of requests made and documents withheld; (3) whether there is evidence that the administrator acted in bad faith; and (4) whether the failure to provide documentation prejudiced the plan beneficiary. *Jacobs*, 520 F. Supp. 2d at 1030; see also *Romero v. SmithKline Beecham*, 309 F.3d 113, 120 (3d Cir. 2002).

Based on the factors set forth above, the Court determines that sanctions are not warranted in this case. The lengths of the delays – four and twenty-seven days – are relatively short. See *Jacobs*, 520 F. Supp. 2d at 1044 (refusing to impose a section 502(c) penalty for a 24-day delay, referring to such a delay as "minimal"). There is no evidence or suggestion in the record that the delays were the result of bad faith, nor is there any evidence that Plaintiff suffered prejudice as a result of the brief delays in receiving the Plan documents. In light of those factors, the Court concludes in its discretion that statutory penalties are not appropriate in this matter. Therefore, Defendants' motion for summary judgment is granted as to Count V.

## III.    Class Certification

Also pending before the Court are Plaintiff's motion to certify class [84], which Plaintiff filed after Defendants moved for summary judgment, and Defendants' motion to strike Plaintiff's motion to certify class [92]. In the briefing on Defendants' motion to strike, the parties debate whether it is appropriate for the Court to consider the parties' cross-motions for summary judgment before resolving the question of class certification.

Federal Rule of Civil Procedure 23(c)(1) provides that courts must determine whether to certify an action as a class action "[a]t an early practicable time after a person sues or is sued as a class representative." Prior to 2003, the Rules required courts to determine whether to certify a class "as soon as practicable after commencement of an action." The Rule was amended in 2003

to "capture[] the many valid reasons that may justify deferring the initial certification decision," including that "[t]he party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified." Fed. R. Civ. P. 23(c) Notes of Advisory Committee on 2003 Amendment. Even before the Rule was amended to provide more flexibility concerning the timing for consideration of class certification issues, the Seventh Circuit had recognized that, in certain circumstances, the better course may be for a court to rule on a pending motion for summary judgment before ruling on a motion for class certification. See *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995) ("It is true that Rule 23(c)(1) of the civil rules requires certification as soon as practicable, which will usually be before the case is ripe for summary judgment. But 'usually' is not 'always,' and 'practicable' allows for wiggle room."). In such cases, the defendants lose the preclusive effect of the judgment on the merits against would-be class members, but save the cost of defending a class action. *Id.* at 941-42.

Courts in this district have recognized that one instance in which it may be appropriate for a court to rule on a summary judgment motion prior to ruling on a class certification motion is "when there is sufficient doubt regarding the likelihood of success on the merits of a plaintiff's claims." *Larson v. Evanston Northwestern Healthcare,* 1999 WL 518901, at *1 (N.D. Ill. July 19, 1999); see also *Allen v. Aronson Furniture Co.*, 971 F. Supp. 1259, 1261 (N.D. Ill. 1997). Here, in light of Defendants' arguments casting doubt on the merits of the named plaintiff's claims, the Court determined that it was in the interest of judicial economy to decide Defendants' motion for summary judgment before addressing the question of class certification.

Plaintiff has recognized that the timing of class certification is left to the sound discretion of the trial court and that Seventh Circuit law permits the court to defer consideration of class

certification until after it rules on motions to dismiss and/or for summary judgment. However, Plaintiff raises a concern relating to the statute of limitations. But as a Seventh Circuit case cited in Plaintiff's own brief recognizes (Opp. to Mot. to Strike at 4), "the filing of a class action suit tolls the statute of limitations for all the members of the class, but when the suit is dismissed without prejudice or when class certification is denied the statute resumes running for the class members." *Culver v. City of Milwaukee,* 277 F.3d 908, 914 (7th Cir. 2002); see also *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983). The limitations period was tolled when Plaintiff filed his lawsuit on June 27, 2008, and it will remain tolled for all members of the putative class until the Court rules that the case may not proceed as a class action or dismisses the case. Because neither of those pivotal events has occurred in this case, any concerns over potential statute of limitations problems for the putative class members are premature.

In view of the absence of any prejudice to Plaintiff and the putative class members and the possibility that Plaintiff may wish to alter his class certification motion and supporting memorandum in light of the Court's ruling today, the Court concludes that the prudent course is to grant Defendant's motion to strike [92] and to strike Plaintiff's motion for class certification [84] without prejudice. If Plaintiff believes that no modifications are warranted, Plaintiff is free to refile the identical motion and memorandum.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for partial summary judgment on Count IV [87] is denied, and Defendants' motion for summary judgment [72] is granted in part and denied in part. In particular, Defendants' motion for summary judgment is granted on Count V and on Count IV as to Accenture Ltd., Accenture Inc., and Accenture LLC., and Accenture LLP. Defendants' motion for summary judgment is denied on Count IV as to Accenture United States

Pension Plan (the "Plan"). Finally, Defendant's motion to strike Plaintiff's motion for class certification [92] is granted, and Plaintiff's motion for class certification [84] is stricken without prejudice.

Dated: August 16, 2010

_____
Robert M. Dow, Jr.
United States District Judge