# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OMAR HAKIM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 08-cv-3682 |
| ) | |
| ACCENTURE UNITED STATES ) | Judge Robert M. Dow, Jr. |
| PENSION PLAN, ACCENTURE LLP, ) | |
| ACCENTURE INC., ACCENTURE LLC, ) | |
| and ACCENTURE LTD., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendants' motion for reconsideration [141] of the Court's August 16, 2010 Order [118] in light of the Seventh Circuit's decision in *Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011). For the reasons stated below, Defendants' motion [141] is granted.

## I.  Background[1]

In its August 16, 2010 Order, the Court granted in part and denied in part Defendants' motion for summary judgment. The Court granted Defendants' motion as to all of Plaintiffs claims except for Count IV. As to that count, the Court concluded that by virtue of the anti-alienation provision of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1056(d)(1), the release that Plaintiff executed did not bar his claim for additional benefits based on alleged violations of ERISA Section 204(h), 29 U.S.C. § 1054(h).

---

[1] The August 16 Order [118] provides relevant procedural and factual background, which the Court will not repeat here.

On January 21, 2011, in *Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011), the Seventh Circuit held that a similar release was enforceable as to an ERISA claim for additional ERISA plan benefits. Defendants' now ask the Court to reconsider its August 16 Order in light of the *Howell* decision.

## II. Legal Standard

Because the Court's August 16, 2010 Order did not dispose of this case in its entirety, the Court reviews Defendants' motion for reconsideration under Federal Rule of Civil Procedure 54(b), which states in relevant part: "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Accordingly, under Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders because such orders may be revised at any time before the Court enters a final judgment. See *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"); *Sims v. EGA Prods., Inc.,* 475 F.3d 865, 870 (7th Cir. 2007) ("nonfinal orders are generally modifiable").

However, it is well established in this district and circuit that "'[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.'" *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006) (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1269 (7th Cir. 1996)). In regard to the "manifest error" prong, the Seventh Circuit has explained that a motion to reconsider is proper only when "the Court has patently

2

misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); see also *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party," instead it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'"); *Bilek v. American Home Mortg. Servicing,* 2010 WL 3306912, at *1 (N.D. Ill. Aug. 19, 2010). And with respect to the second prong, the court of appeals has explained that a motion to reconsider may be appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee*, 906 F.2d at 1191. Defendants argue that there has been a change in the law in light of the Seventh Circuit's opinion in *Howell*, and thus the Court proceeds under the second prong.

## III.  Analysis

### A.  *Howell v. Motorola, Inc.*

Howell was a former employee of Motorola. 633 F.3d at 558. While employed, he was enrolled in a defined-contribution plan. *Id*. at 556. When Motorola terminated Howell's employment as part of a general reduction in force, Howell received a severance package that included additional severance pay for employees willing to sign a general release. *Id*. at 558. The release essentially prohibited Howell from bringing any and all causes of action that he had or might have had against Motorola at the time that he signed the agreement. The Seventh Circuit found that while the plaintiff "remains entitled to sue to recover the money that was in his retirement account at the time he signed the release . . . he cannot now claim that his account would have been worth even more had the defendants not breached a fiduciary duty." *Id*. at 561.

3

The court went on to explain that the release Howell signed "settle[d], in advance, any claims that he might have brought against [defendant] arising out of his employment there or his participation in the Plan, with the exception of those benefits that were due to him under the Plan at the time he signed his release." *Id*.

Here, Defendants' argue that Plaintiff has been awarded all benefits to which he is entitled under the Plan and that his current claim seeks only additional benefits based upon purported violations of ERISA Section 204(h), which under *Howell* he relinquished when he signed the release. Plaintiff counters that *Howell* does not apply for several reasons: (1) *Howell* involved a defined contribution plan, whereas Plaintiff had a defined benefit plan; (2) *Howell* does not change the fact that under ERISA's anti-alienation provision Plaintiff cannot release pension entitlements; and (3) the release does not apply because Plaintiff's claim did not accrue until it was denied, which did not occur until he signed the release.

### B. Defined Benefit Plans v. Defined Contribution Plans

Plaintiff first argues that *Howell* does not apply because the plaintiff in *Howell* was enrolled in a defined contribution plan, whereas Plaintiff participated in a defined benefit plan. In a defined contribution plan, a participant may contribute up to a specified amount to an account and receives upon retirement whatever amount has accumulated in the account through contributions and investment earnings. 29 U.S.C. § 1002(34*); Howell*, 633 F.3d at 556 (describing a defined contribution plan). In a defined benefit plan, an employee receives a set monthly benefit after retiring for the rest of his or her life based on the participant's wages and length of service. 29 U.S.C. § 1002(35*); In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n. 9 (3d Cir. 2009).

According to Plaintiff, this difference makes *Howell* inapplicable. But Plaintiff cites—and the Court finds—no authority to support this proposition. Nothing in *Howell* limits its holding or rationale to defined contribution plans. Moreover, in assessing a release's effect on an individual's ability to bring an ERISA Section 502(a)(2) claim, the Third Circuit opined that "defined contribution ERISA plan claims are no different in this regard from defined benefit ERISA plan claims." *In re Schering Plough.*, 589 F.3d at 594. The Court agrees that any differences between defined contribution and defined benefit plans are immaterial for the purpose of evaluating the release at issue in this case. Accordingly, the principles articulated in *Howell* apply equally here.

### C. ERISA's Anti-Alienation Provision and Contested Claims

ERISA's anti-alienation provision provides that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). In *Lynn v. CSX Transp.*, the Seventh Circuit explained that "[p]ension entitlements are, without exception, subject to the anti-alienation provision of ERISA," but "[c]ontested pension claims . . . are 'simply outside the realm of the provision.'" 84 F.3d 970, 975 (7th Cir. 1996) (citation omitted). A contested claim is one that "the claimant had actual or constructive knowledge of . . . at the time of the signing of the release," such "that it could have been contested and resolved at the time the release was entered into (but was not)." *Id*. In determining whether a claim may be considered contested, the Court inquires into "whether the claimant knew of the claim and knowingly relinquished it (relinquishment of course including failure to act or to raise the issue at all)." *Id*. With respect to "whether a retiree knowingly relinquished a claim, the court must look to all of the circumstances to determine what the claimant knew or reasonably should have known." *Id*. at 976. In its August 16 Order, the Court found that Plaintiff's claim was a pension

entitlement and thus was protected by the anti-alienation provision, as it was in *Lynn*. The question before the Court now is whether *Howell* requires the Court to alter its previous analysis.

In *Lynn*, the plaintiff sought "to protect military service benefits to which he believe[d] he [was] entitled to under the terms of the plan." *Lynn*, 84 F.3d at 977. The court found that the plaintiff was "asking the court to interpret the pension plan itself" and thus the plaintiff's claim involved a pension entitlement subject to the anti-alienation provision. In *Howell*, however, the Seventh Circuit enforced a release similar to the one in this case, finding that while plaintiff "remains entitled to sue to recover the money that was in his retirement account at the time he signed the release . . . he cannot now claim that his account would have been worth even more had the defendants not breached a fiduciary duty." *Howell*, 633 F.3d at 561. In other words, under *Howell*, and consistent with *Lynn*, a release cannot bar a plaintiff's recovery of his pension as it stood when he signed a release, but it can bar claims that a plaintiff is entitled to additional benefits based on purported ERISA violations, provided that the plaintiff had actual or constructive notice of the claims at the time that he executed the release.[2]

Defendants argue that the facts here resemble those in *Howell*, not those in *Lynn*. The Court agrees. The release that Plaintiff signed stated that he "hereby forever release[s], waive[s], and discharge[s] [Defendants] from any and all claims of any nature whatsoever, known or unknown which [he] now has, or at any time may have had. . . up to an including the date [he] sign[s] this Agreement." This language closely tracks the release at issue in *Howell*. And Plaintiff is not suing to recover money that was in the retirement account at the time he signed the release—as the Plaintiff was in *Lynn*. Rather, Plaintiff is asking the Court to find that the account would have been worth more if the Defendants had not violated section 204(h)—as the

---

[2] The Seventh Circuit also found, as a practical matter, that applying the anti-alienation provision to all such releases "would make it impossible . . . to settle any ERISA case." *Howell,* 633 F.3d at 561.

6

Plaintiff was in *Howell*. See *Howell*, 633 F.3d at 561. Plaintiff's remaining claim is exactly the type of claim that, under *Howell*, is not covered by the anti-alienation provision of ERISA. Thus, in light of the Seventh Circuit's further guidance and holding in *Howell*, the Court now concludes that Plaintiff's claim is a contested claim, not a pension entitlement, and therefore his claim does not receive protection from ERISA's anti-alienation provision.

### D.  Constructive Notice

Because the Court concludes that the anti-alienation provision does not preserve Plaintiff's claim, it must determine whether Plaintiff had notice of the claim before he signed the release.[3]  By its terms, the release bars only claims that existed prior to the date that it was signed. Plaintiff argues that even if ERISA's anti-alienation clause does not apply to the release, his claim for benefits did not accrue until Defendants denied his administrative claim on April 2, 2008—several years after he signed the release. In the context of §204(h) claims, however, courts have held that a claim accrues when the plaintiff was made aware of a plan amendment that clearly repudiated his right to continue accruing benefits under the plan. See *Romero v. Allstate Corp.*, 404 F.3d 212, 223-226 (3rd Cir. 2005) (concluding that §204(h) claims accrue when plaintiffs "*knew or should have known* that the amendment has brought about a clear repudiation of certain rights that [plaintiffs] believe [they] had under the plan" and, "correspondingly, that they had not received the required notice")(emphasis added).

Here, Plaintiff's claim accrued, at the absolute latest, when he received his Individual Benefit Statement in 2000, which stated, "[b]ecause of your current employment classification,

---

[3] The Court did not reach this issue in the August 16 Order because it was irrelevant once the Court concluded that the anti-alienation provision applied.

you are ineligible to participate in the Retirement Plan."[4]  Plaintiff does not dispute that he signed the agreement knowingly and voluntarily.  Thus, Plaintiff had notice of—he knew or should have known about—his claim well before he signed the release in 2003 and he is barred by the release from raising that claim now.

**IV.     Conclusion**

For the foregoing reasons, the Court finds that, in light of the Seventh Circuit's decision in *Howell*, the anti-alienation provision does not apply and Plaintiff's claim is barred under the terms of the release that he signed.  Defendants' motion for reconsideration [141] is granted.  Defendant is entitled to judgment on Count IV.  In view of the Court's prior rulings, all claims in this case now have been adjudicated as to all parties.  Accordingly, a final judgment will be entered in favor of Defendants and against Plaintiff, all other pending motions [160, 162, 187] are stricken as moot.

Dated:  September 29, 2011          _____
                                    Robert M. Dow, Jr.
                                    United States District Judge

---

[4] The Court notes that in addition to the benefit statement in 2000, Plaintiff received Summary Plan Descriptions in 1997 and 1999 that also advised Plaintiff that if he transferred to an ineligible position he would stop accruing benefits under the Plan.

8